**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RODNEY GRANT** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-2797** |
| **MARLIN GUSMAN, et al.** | **SECTION: "G"** |

## ORDER

Pending before this Court is a "Motion to Dismiss for Failure to State a Claim" filed by Defendants Sheriff Marlin Gusman ("Gusman"), the Sheriff for the Orleans Parish Sheriff's Office (the "OPSO"); Sidney Holt ("Holt"), a Captain for the OPSO; and Corey Amacker ("Amacker"), the Classifications Deputy for the OPSO (collectively, "OPSO Defendants").[1] In this litigation, Plaintiff Rodney Grant ("Plaintiff") alleges that he was unlawfully detained first at the Orleans Parish Prison by OPSO Defendants and subsequently at the Madison Parish Correctional Center by the Department of Public Safety & Corrections (the "DOC") for a total of 27 days after being sentenced to time served. In the instant motion, OPSO Defendants argue that Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted and assert they are entitled to qualified immunity. Having considered the motion, the memoranda in support and opposition, and the applicable law, the Court will grant the motion as to Plaintiff's Section 1983 claim based on *respondeat superior* liability, deny the motion as to all other claims, and grant Plaintiff leave to file a Rule 7(a)(7) reply as to Plaintiff's Section 1983 claims against OPSO Defendants in their individual capacities and to amend the complaint.

---

[1] Rec. Doc. 25.

## I. Background

### A. *Factual Background*

In the Amended Complaint, Plaintiff alleges that on July 2, 2000, Plaintiff was arrested in New Orleans for simple burglary and spent 61 days in Orleans Parish Prison ("OPP").[2] Plaintiff avers that he was released from custody on September 3, 2000, because the district attorney did not file a Bill of Information within the statutory deadline.[3] Plaintiff further avers that the District Attorney filed a Bill of Information against him on October 30, 2000, and an arraignment was set for November 29, 2000.[4] According to Plaintiff, he did not appear for the arraignment because he did not receive a summons, and a warrant was issued for his arrest.[5] Plaintiff asserts that the Bill of Information eventually expired by operation of law, but his arrest warrant "stayed in the system."[6]

Plaintiff avers that between 2008 and 2015, he was incarcerated at the Dixon Correctional Institute for a different crime.[7]

On June 27, 2016, approximately one year after his release from Dixon Correctional Institute, Plaintiff avers that he was trying to obtain a driver's license when he was arrested based

---

[2] Rec. Doc. 16 at 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 1–2.

on the warrant issued in November 2000.[8] On June 30, 2016, Plaintiff avers, he pleaded guilty in Orleans Parish Criminal District Court before Judge Camille Buras to simple burglary.[9] Plaintiff avers that Judge Buras sentenced him to "a one year sentence, with credit for time served for the seven years he had just served" at Dixon Correctional Institute.[10] According to Plaintiff, Judge Buras contacted Blake Arcuri ("Arcuri"), an attorney for OPSO, and "requested that the Sheriff expedite processing for [Plaintiff's] release."[11] Plaintiff alleges that the attorney notified OPSO of Judge Buras' request via email in which the attorney stated that Plaintiff "really shouldn't have to actually serve any time once DOC processes it" and that his sentence was "one year DOC credit for time served from 2008-present."[12]

In less than an hour and a half, Plaintiff avers, Sheriff Gusman responded to Arcuri's email, stating that once Plaintiff enters a plea and is sentenced, they could have DOC compute his time.[13] That same morning, Plaintiff avers, Captain Holt responded that he forwarded Arcuri's email to DOC Classifications Deputy for OPSO, Defendant Corey Amacker, and would "have him contact DOC and see what can be done."[14]

According to Plaintiff, Corey Amacker responded that he would "work on getting [Plaintiff's] packet sent to the DOC tomorrow but with the holiday weekend he will not get

---

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 2, 8.

[12] *Id.*

[13] *Id.* at 8.

[14] *Id.*

calculated till Tuesday most likely."[15] On July 7, 2016, Plaintiff avers, the DOC sent OPSO an inmate transfer request for Plaintiff to be transferred on July 12, 2016, but OPSO did nothing to move the transfer date up.[16]

Plaintiff alleges that OPSO did not release Plaintiff due to "a policy of indefinitely detaining inmates ordered to the custody of the [DOC] until the Sheriff's Office receives word from the Department to bring the inmate to Baton Rouge."[17] Due to this policy, Plaintiff asserts that he remained detained at the OPP until July 12, 2016, when custody was transferred to the DOC, who processed Plaintiff through Elayn Hunt Correctional Center.[18] Plaintiff avers that he was then sent to the Madison Parish Correctional Center ("MPCC") in Tallulah, Louisiana, which is operated by the private prison corporation, LaSalle Corrections.[19]

At intake at LaSalle Corrections, Plaintiff avers, he attempted to explain that his time was served, and although the intake officer agreed, he was not released.[20] According to Plaintiff, on or about July 15, 2016, his friend, Alfred Marshall, spoke to Judge Buras, who then contacted Sheriff Gusman and Warden Chris Stinson of LaSalle Corrections to ask why Plaintiff had not been released.[21] On July 18, 2016, Plaintiff avers, Judge Buras held another hearing, at which she vacated Plaintiff's sentence and resentenced him to "CREDIT FOR TIME SERVED."[22] "Despite

---

[15] *Id.*

[16] *Id.* at 9.

[17] *Id.* at 2.

[18] *Id.* at 2–3.

[19] *Id.* at 3.

[20] *Id.*

[21] *Id.* at 3, 9.

[22] *Id.* at 3.

having no legal authority to hold [him]," Plaintiff contends, the DOC did not release him.[23] On

July 25, 2016, Plaintiff avers, Judge Buras contacted two DOC employees to inquire as to why

Plaintiff had not been released.[24] Finally, according to Plaintiff, on July 27, 2016, 27 days after his

guilty plea and initial sentencing, Plaintiff was released.[25]

## B.    *Procedural Background*

On April 2, 2017, Plaintiff filed the complaint against OPSO Defendants;[26] Carmen

DeSadier, the former Chief of Corrections for the OPSO; Djuana Bierria, a Sergeant for the

Orleans Parish Sheriff's Office; James LeBlanc, the Secretary of the DOC; Timothy Hooper, the

Warden of Elayn Hunt Correctional Center; Chris Stinson, the Warden of Madison Parish

Correctional Center; and LaSalle Management Company, L.L.C.[27]

On June 14, 2017, Plaintiff filed the First Amended Complaint.[28] In the Amended

Complaint, Carmen Desadier and Djuana Bierria are not named as Defendants.[29] On October 3,

2017, Plaintiff voluntarily dismissed his claims against Chris Stinson and LaSalle Management

Company, L.L.C.[30]

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Rec. Doc. 1 at 3–4.

[27] Rec. Doc. 1 at 4.

[28] Rec. Doc. 16.

[29] *Id.* Chief Carmen Desadier and Captain Djuana Bierria are included in a list of defendants on page 8 of the First Amended Complaint; however, as their names appear nowhere else in the document, it appears the inclusion was in error.

[30] Rec. Doc. 35.

On July 13, 2017, OPSO Defendants filed the instant motion to dismiss.[31] On July 25, 2017, Plaintiff filed an opposition to OPSO Defendants' motion to dismiss.[32] On October 31, 2017, with leave of Court, Plaintiff filed a supplemental memorandum in opposition to OPSO Defendants' motion to dismiss.[33]

## II. Parties' Arguments

### A.    *OPSO Defendants' Motion to Dismiss*

In the motion to dismiss, OPSO Defendants first argue that Plaintiff was sentenced to the custody of the DOC, not to the custody of the OPSO.[34] Accordingly, OPSO Defendants argue, the OPSO was "stripped of any power to release [Plaintiff] absent a valid release order received from the Department of Corrections, which state law designates as being responsible for the administration, care, custody, and correction of its inmates."[35]

Second, OPSO Defendants argue that there is no federal constitutional right to credit for time served.[36] Moreover, OPSO Defendants assert that Plaintiff was not entitled to credit for time served under Louisiana law.[37] Specifically, OPSO Defendants argue that Louisiana Code of Criminal Procedure article 880 only allows that credit be given for time that has not been credited

---

[31] Rec. Doc. 25.

[32] Rec. Doc. 26.

[33] Rec. Doc. 39.

[34] Rec. Doc. 25-1 at 6–7.

[35] *Id*. at 7.

[36] *Id*. at 8 (citing *Gremillion v. Henderson*, 425 F.2d 1293, 1294 (5th Cir. 1970); *Boutwell v. Nagle*, 861 F.2d 1530, 1532 (11th Cir. 1988); *Palmer v. Dugger*, 833 F.2d 253, 254 (11th Cir. 1987); *Bayless v. Estelle*, 583 F.2d 730, 732 (5th Cir. 1978); *Paprskar v. Estelle*, 566 F.2d 1277, 1279 (5th Cir. 1978); *Jackson v. Alabama*, 530 F.2d 1231, 1236–37 (5th Cir. 1976)).

[37] *Id*.

against any other sentence.[38] OPSO Defendants state that this may be the reason Judge Buras vacated the original sentence and resentenced Plaintiff to time served for the simple burglary offense.[39] Furthermore, OPSO Defendants argue that this may be the reason Plaintiff was not released from DOC custody based on the original sentence.[40]

Third, OPSO Defendants generally argue that OPSO wholly complied with Judge Buras' request for expedited processing of Plaintiff's paperwork.[41] Moreover, OPSO Defendants note that Judge Buras never ordered the release of Plaintiff.[42]

Fourth, OPSO Defendants argue that all claims against them in their individual capacities should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted.[43] OPSO Defendants assert that it is undisputed "that they provided the Plaintiff's classification paperwork to DOC the day following the Plaintiff's sentencing, wherein his legal custody was transferred to DOC."[44] Moreover, OPSO Defendants contend that there is no law that would entitle Plaintiff to recovery for an alleged failure to release him from custody when there was not a release order but instead a DOC commitment order.[45]

---

[38] *Id.*

[39] *Id.* at 8–9.

[40] *Id.* at 9.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 11.

[44] *Id.*

[45] *Id.*

According to OPSO Defendants, *Douthit v. Jones*, a Fifth Circuit case cited by Plaintiff in the Amended Complaint, actually supports OPSO Defendants' position.[46] OPSO Defendants assert that in *Douthit*, the defendant sheriffs sought qualified immunity for failing to release a man in contradiction to the release date on a valid commitment order issued by a court.[47] OPSO Defendants represent that in *Douthit*, both defendants admitted that a commitment order was the only means by which the sheriff's department could have imposed a continued hold in a criminal case.[48] In this case, OPSO Defendants contend, there was no order of release, and in fact, there was a commitment order.[49] In effect, OPSO Defendants contend that it is Plaintiff's position that OPSO should have violated the commitment order by releasing Plaintiff, which OPSO asserts it had no authority to do.[50]

OPSO Defendants next assert that *Whirl v. Kern*, another Fifth Circuit case cited by Plaintiff in the Amended Complaint, is not comparable to the facts of this case.[51] OPSO Defendants assert that in *Whirl*, the plaintiff was held for nine months following dismissal of an indictment and all charges against him; whereas in the instant matter, Plaintiff pleaded guilty as charged and was sentenced to one year in the custody of the DOC.[52]

Moreover, OPSO Defendants argue, Plaintiff can provide no support, law, or jurisprudence for the contention that: (1) OPSO could have legally calculated the amount of time previously

---

[46] *Id.* (citing 619 F.2d 527, 532 (5th Cir. 1980)).

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 11–12.

[51] *Id.* at 12.

[52] *Id.*

served in a different jurisdiction for a conviction in a different parish; (2) OPSO could have legally determined the release date of an inmate legally transferred from OPSO custody to the custody of the DOC; (3) OPSO could have released an inmate legally in DOC custody; or (4) that Plaintiff was entitled to receive credit for time served on a previous sentence.[53] Thus, OPSO Defendants argue, "[w]ithout any support for the contention that the OPSO Defendants had any authority to release an inmate legally in the custody of the DOC, and who had not been ordered released by the Court," Plaintiff cannot recover on either claim for violation of his due process rights pursuant to the Fourteenth Amendment of the United States Constitution or the Louisiana Constitution.[54]

OPSO Defendants also contend that Plaintiff has not stated a claim for false imprisonment.[55] OPSO Defendants acknowledge that they intentionally detained Plaintiff when they held him in the Orleans Parish Prison from June 27, 2016 to July 12, 2016.[56] However, OPSO Defendants argue, they were legally required to hold Plaintiff during that time.[57] Therefore, OPSO Defendants contend, this claim should be dismissed.[58]

OPSO Defendants also argue that Plaintiff's negligence and failure to intervene claims must be dismissed because, accepting Plaintiff's allegations as true, there is no indication that any OPSO Defendant was negligent or failed to intervene.[59] On the contrary, OPSO Defendants contend they replied to the email containing the request for expedited processing within 90 minutes

---

[53] *Id.*

[54] *Id.* at 12–13.

[55] *Id.* at 13.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 14.

and timely reacted to Judge Buras' request.[60] OPSO Defendants assert that "Amacker transmitted the packet to DOC the following day on July 1, at which time OPSO's processing of the Plaintiffs [sic] classification per Judge Buras' request was completed."[61]

Alternatively, OPSO Defendants assert they are entitled to qualified immunity for all claims brought against them in their individual capacities.[62] OPSO Defendants argue that Plaintiff has not alleged any violation of a clearly established right.[63] Moreover, OPSO Defendants argue that Plaintiff is unable to provide any jurisprudence "which supports the theory that a failure of a local sheriff to immediately release an individual sentenced to the custody of the state without a release order from either the legal custodian (the DOC) or the Court amounts to a constitutional violation."[64] Furthermore, OPSO Defendants argue that their actions do not meet the standard requiring that all reasonable officers in OPSO Defendants' circumstance would have known that the conduct in question violated the Constitution, particularly given that OPSO Defendants complied with Judge Buras' request.[65] Accordingly, OPSO Defendants argue, even if there was a constitutional violation, OPSO Defendants are entitled to qualified immunity.[66]

Fifth, OPSO Defendants argue that the claims against Defendant Sheriff Gusman in his official capacity are really claims against the government entity itself and are only viable in the

---

[60] *Id.* at 14.

[61] *Id.* at 14.

[62] *Id.* at 14–17.

[63] *Id.* at 17.

[64] *Id.*

[65] *Id.*

[66] *Id.*

event that Gusman implemented a policy that directly led to the constitutional violation.[67] OPSO Defendants note that supervisors cannot be held liable for actions of their subordinates under a theory of *respondeat superior*.[68] Moreover, OPSO Defendants further argue that Plaintiff has alleged no facts which, if taken as true, establish a pattern or practice sufficient to support a *Monell* claim against Gusman for failure to train or supervise.[69] Furthermore, OPSO Defendants argue that Plaintiff has not pointed to sufficient facts to establish that there was a pattern of overdetention, since Plaintiff points to incidents that are not factually similar to this case or impermissibly relies on incidents that occurred after the conduct giving rise to this case.[70] Accordingly, OPSO Defendants argue, the claims against Sheriff Gusman in his official capacity should be dismissed.[71]

**B.    *Plaintiff's Arguments in Opposition to OPSO Defendants' Motion to Dismiss***

In opposition, Plaintiff first asserts that it is well-settled in the Fifth Circuit that "a jailer has a duty to ensure that inmates are timely released from prison."[72] Plaintiff contends that OPSO Defendants seek to "flip" this rule to an opposite rule that "a jailer may not timely release an inmate until they receive notice from someone else."[73] Plaintiff argues that contrary to OPSO Defendants argument that they had no authority to release Plaintiff, a correct statement of the law is that OPSO Defendants had no authority to hold Plaintiff after his sentence expired absent a court order.[74]

---

[67] *Id.* at 17–18.

[68] *Id.* at 18.

[69] *Id.* at 18–20.

[70] *Id.* at 20–23.

[71] *Id.* at 24.

[72] Rec. Doc. 26 at 4 (citing *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)).

[73] *Id.*

[74] *Id.* at 5 (citing *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980); *Johnson v. Greer*, 477 F.2d 101, 104 (5th Cir. 1973)).

Plaintiff further argues that OPSO Defendants seek to shift the power to determine an inmate's length of incarceration from the courts to the DOC.[75] Specifically, Plaintiff argues that if a release order from the DOC is required to release an inmate, then such a rule would shift OPSO Defendants' obligation to follow the orders of courts to an obligation to follow the orders of the DOC.[76] Furthermore, Plaintiff argues that in *Ocampo v. Gusman, et al.*, another district judge in the Eastern District of Louisiana ordered the immediate release of a prisoner who had been held past the due date of his detainer, notwithstanding Sheriff Gusman's explanation that he had not received notice from the clerk's office that the prisoner was entitled to release.[77] In *Ocampo*, Plaintiff represents, the district court found that holding the prisoner any longer would violate his right to due process.[78] Moreover, Plaintiff argues that OPSO Defendants had two options: (1) OPSO Defendants must either have actually handed Plaintiff over to DOC custody; or (2) "bear the legally-imposed responsibility to ensure that DOC-sentenced inmates are timely released."[79]

Plaintiff next argues that OPSO Defendants' attempt to introduce facts in the motion to dismiss that are not contained in the Amended Complaint regarding the documentation or records practices of the OPSO is improper, and such facts should not be considered.[80] Moreover, even if the Court were to consider this evidence, Plaintiff argues that OPSO Defendants' assertion that it could not have calculated or provided any credited time for Plaintiff fails because the "Fifth Circuit

---

[75] *Id*. at 4.

[76] *Id*. at 5.

[77] *Id*. at 5–6 (citing Case No. 2010-4309 (E.D. La.) (Vance, J.).

[78] *Id*. at 6.

[79] *Id*. at 6–7.

[80] *Id*. at 8.

has condemned this kind of 'we didn't have the paperwork' excuse."[81] Plaintiff argues that OPSO Defendants "had plenty of other ways to seek [Plaintiff's] release" and knew Plaintiff's sentence was over.[82] Accordingly, Plaintiff argues OPSO Defendants' motion should be denied.[83]

Next, Plaintiff argues that he was entitled to credit for time served because that was the sentence issued by Judge Buras.[84] In support of this argument, Plaintiff cites *Boddye v. Louisiana Deptartment of Corrections*, a case decided by the Louisiana First Circuit Court of Appeal.[85] Pursuant to *Boddye*, Plaintiff asserts, where there is a conflict between a judge's order and the Louisiana Code of Criminal Procedure, the judge's order controls.[86] Moreover, Plaintiff argues that OPSO Defendants understood the effect of Judge Buras' sentence when their counsel wrote in an email that Plaintiff "really shouldn't have to serve any time once DOC processes it."[87]

Plaintiff further argues that there is no indication that OPSO Defendants followed Judge Buras' instructions to their counsel, and even if they did, simply doing so does not "immunize them from a jailor's 'duty to ensure that inmates are timely released from prison.'"[88] In addition, Plaintiff contends that there is a factual dispute over the content of Judge Buras' instructions to the extent that Plaintiff asserts that Judge Buras intended for Plaintiff's immediate release, while

---

[81] *Id*. at 8–9 (citing *Whirl v. Kern*, 407 F.2d 781, 798 (5th Cir. 1968)).

[82] *Id*. at 9.

[83] *Id*.

[84] *Id*.

[85] *Id*. at 11 (citing *Boddye v. La. Dept. of Corrections*, 14-1836 (La. App. 1 Cir. 6/26/15); 175 So. 3d 437, 441).

[86] *Id*.

[87] *Id*.

[88] *Id*. at 11–12 (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)).

OPSO Defendants appear to assert that Judge Buras intended for OPSO Defendants to hold Plaintiff indefinitely until a response from the DOC was received.[89]

Plaintiff also responds to OPSO Defendants' argument that the entirety of Plaintiff's allegations against OPSO Defendants are based on one email by pointing to five key facts that Plaintiff contends are sufficient to state a claim against OPSO Defendants: (1) OPSO Defendants were jailers; (2) jailers violate an inmate's constitutional and basic liberty rights when they hold him beyond the period of his lawful sentence; (3) the period of Plaintiff's lawful sentence ended immediately upon sentencing; (4) OPSO Defendants were aware of that fact, having been told that Plaintiff "really shouldn't have to actually serve any time;" and (5) instead of releasing Plaintiff or quickly handing him over to the custody of the DOC, OPSO Defendants held Plaintiff in jail for 13 days.[90] Accordingly, Plaintiff argues, his federal and state claims for violation of due process should not be dismissed.[91]

Next, Plaintiff asserts that his false imprisonment claim should not be dismissed.[92] Plaintiff argues that OPSO Defendants admit the first element of a false imprisonment claim—that they intentionally detained Plaintiff.[93] Regarding the second element which requires that the detention was unlawful, Plaintiff argues that OPSO Defendants' argument that they were legally required to hold Plaintiff fails because OPSO Defendants cite no authority in support of such legal

---

[89] *Id.* at 12.

[90] *Id.* at 12–13 (quoting Rec. Doc. 16 at ¶¶ 9, 44, 79, 89).

[91] *Id.* at 13.

[92] *Id.* at 10 (citing *Boddye*, 175 So. 3d at 441).

[93] *Id.*

requirement; and Plaintiff further argues that OPSO Defendants' argument that they were simply obeying Judge Buras' order is an insufficient defense.[94]

Regarding the negligence and failure to intervene claims, Plaintiff argues that OPSO Defendants have "a duty to ensure that inmates are timely released from prison."[95] The fact that OPSO Defendants were aware of their duty and did not ensure that Plaintiff was timely released, Plaintiff argues, is sufficient to state claims for negligence and failure to intervene.[96]

Plaintiff next asserts that OPSO Defendants are not entitled to qualified immunity.[97] Plaintiff argues that the Amended Complaint alleges facts sufficient to establish, at least plausibly, that OPSO Defendants violated Plaintiff's constitutional rights by holding him beyond the period of his lawful sentence.[98] Plaintiff further argues that according to the Fifth Circuit, there is a clearly established right to timely release from prison.[99] Specific to the circumstances of this case, Plaintiff argues, it was "'well settled' as of 2015 'that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant's custodian.'"[100] Moreover, Plaintiff argues that the "clearly established" requirement of qualified immunity is also satisfied by Judge Buras' clear order, which OPSO Defendants actually and correctly understood to mean Plaintiff should not have to serve time.[101]

---

[94] *Id*. at 14.

[95] *Id*. (citing *Porter*, 659 F.3d at 445).

[96] *Id*. (citing *Whirl v*. Kern, 407 F.2d at 792).

[97] *Id*. at 14.

[98] *Id*. at 15.

[99] *Id*. (citing *Porter*, 659 F.3d at 445).

[100] *Id* at 16 (quoting *Boddye*, 175 So. 3d at 441).

[101] *Id*. (citing *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994)).

Furthermore, Plaintiff argues, another section of the Eastern District of Louisiana previously explained the law to Gusman during a hearing, explaining that "if the prisoner was entitled to be released in August, to hold him past the due date of the detainer would violate his due process right because he was at that point entitled to be released."[102] Accordingly, Plaintiff asserts OPSO Defendants are not entitled to qualified immunity.[103]

Plaintiff acknowledges that OPSO Defendants are correct that there is no *respondeat superior* liability under Section 1983.[104] However, Plaintiff argues that he has sufficiently pleaded a pattern or practice to hold Gusman liable in his official capacity under a theory of *Monell* liability.[105] Plaintiff points to five allegations made in the Amended Complaint regarding the OPSO's alleged policy of overdetention.[106] Plaintiff also contends that a pattern of overdetention was specifically alleged in the Amended Complaint.[107] Therefore, Plaintiff argues, the Amended Complaint contains a host of factual allegations that, if taken as true, state a claim that is plausible on its face; and therefore, OPSO Defendants' motion to dismiss as to the Section 1983 *Monell* liability claim should be denied.[108]

Finally, Plaintiff requests that should any part of OPSO Defendants' motion be granted, he be granted leave to amend the complaint.[109]

---

[102] *Id*. at 17 (citing Rec. Doc. 16 at ¶ 21; Exhibit 1).

[103] *Id*.

[104] *Id*.

[105] *Id*.

[106] *Id*. at 18–19 (citing Rec. Doc. 16 at ¶¶ 10, 11, 47, 80, 103).

[107] *Id*. at 19 (citing Rec. Doc. 16 at ¶¶ 9, 20, 55, 56–68, 103).

[108] *Id*. at 20.

[109] *Id*. at 21.

## C. Plaintiff's Arguments in Further Opposition to OPSO Defendants' Motion to Dismiss

Plaintiff filed a supplemental memorandum in opposition to OPSO Defendants' motion to dismiss to notify the Court of the Fifth Circuit's opinion in *Jauch v. Choctaw County*, issued during the pendency of DOC Defendants' motion.[110] In *Jauch*, Plaintiff represents, the Fifth Circuit denied a sheriff qualified immunity.[111] According to Plaintiff, in *Jauch*, the sheriff held the plaintiff for 96 days before bringing her to court for a bail hearing.[112] Likening *Jauch* to the circumstances of this case, Plaintiff quotes the Fifth Circuit in its dismissal of the sheriff's argument that the court that issued the capias was the responsible party: "This is simply wrong. [The sheriff] is responsible for those incarcerated in his jail . . . and the capias did not require him to impose the unconstitutional detention policy."[113]

## III. Law

### A. Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[114] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[115] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[116] "Factual allegations must be enough to raise a right to relief above the

---

[110] Rec. Doc. 39 at 1 (citing *Jauch v. Choctaw County*, 874 F.3d 425 (5th Cir. 2017)).

[111] *Id.*

[112] *Id.*

[113] *Id.* (quoting *Jauch*, 874 F.3d at 425).

[114] Fed. R. Civ. P. 12(b)(6).

[115] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[116] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

speculative level."[117] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[118]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[119] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[120] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[121] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[122] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[123] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[124] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[125] If factual allegations are insufficient to raise a right to relief

---

[117] *Twombly*, 550 U.S. at 556.

[118] *Id.* at 570.

[119] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[120] *Iqbal*, 556 U.S. at 677–78.

[121] *Id.* at 679.

[122] *Id.* at 678.

[123] *Id.*

[124] *Id.*

[125] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[126]

## B.  *Legal Standard on Qualified Immunity*

To plead a Section 1983 claim, Plaintiff is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[127]

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[128] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[129] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[130] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[131]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[132] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

---

[126] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[127] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[128] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[129] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[130] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[131] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[132] 533 U.S. 194 (2001).

conduct violated a constitutional right?"[133] Part two inquires into whether the allegedly violated

right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted."[134] The Court does not have to address these two questions

sequentially; it can proceed with either inquiry first.[135]

"If the defendant's actions violated a clearly established constitutional right, the court then

asks whether qualified immunity is still appropriate because the defendant's actions were

'objectively reasonable' in light of 'law which was clearly established at the time of the disputed

action.'"[136] Officials "who reasonably but mistakenly commit a constitutional violation are entitled

to immunity."[137]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's

pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[138]

"Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow

the court to draw the reasonable inference that the defendant is liable for the harm he has alleged

and that defeat a qualified immunity defense with equal specificity."[139] After the district court

determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule

on the immunity defense without further clarification of the fact,' it may issue a discovery order

---

[133] *Id.* at 201.

[134] *Id.* at 202.

[135] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[136] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

[137] *Williams*, 180 F.3d at 703 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

[138] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

[139] *Id.* at 645.

'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[140]

## IV. Analysis

Plaintiff brings the following claims against OPSO Defendants: (1) a Section 1983 claim for violation of Plaintiff's federal constitutional right to due process; (2) a state law claim for violation of Plaintiff's state constitutional right to due process; (3) a state law false imprisonment claim; (4) a state law negligence claim; (5) a state law failure to intervene claim; (6) a *Monell* and supervisory liability claim against Gusman; (7) a *respondeat superior* claim against Gusman; and (8) an indemnification claim against Gusman. OPSO Defendants argue that all of Plaintiff's claims against them should be dismissed for failure to state a claim upon which relief can be granted. Alternatively, OPSO Defendants argue they are entitled to qualified immunity. Plaintiff acknowledges that OPSO Defendants are correct that there is no *respondeat superior* liability under Section 1983, however, Plaintiff argues that all other claims should not be dismissed.

### A.     *Whether OPSO Defendants Are Entitled to Qualified Immunity*

OPSO Defendants assert they are entitled to qualified immunity as to Plaintiff's Section 1983 claim against them in their individual capacities because Plaintiff has failed to plead sufficient facts to show that OPSO Defendants violated a clearly established constitutional right, or that OPSO Defendants' conduct was objectively unreasonable in light of any clearly established law. Plaintiff, in turn, argues that OPSO Defendants are not entitled to qualified immunity because OPSO Defendants violated Plaintiff's clearly established right to timely release from prison.

Pursuant to *Saucier v. Katz*, the facts alleged must show the officer's conduct violated a constitutional right, and the allegedly violated right is "clearly established" in that "it would be

---

[140] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987).

clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[141] In

*Kinney v. Weaver*, the Fifth Circuit explained the standard requiring that the law be "clearly

established" to defeat qualified immunity:

> [A]n official does not lose qualified immunity merely because a certain right is
> clearly established in the abstract. It is clearly established that the government may
> not deny due process or inflict cruel and unusual punishments, for example, but
> those abstract rules give officials little practical guidance as to the legality of
> particular conduct. Qualified immunity should not be denied unless the law is clear
> in the more particularized sense that reasonable officials should be on notice that
> their conduct is unlawful. The central concept is that of "fair warning": The law can
> be clearly established "despite notable factual distinctions between the precedents
> relied on and the cases then before the Court, so long as the prior decisions gave
> reasonable warning that the conduct then at issue violated constitutional rights.[142]

Accordingly, a case directly on point is not required, but "existing precedent must have placed the

statutory or constitutional question beyond debate."[143]

Plaintiff argues that the right to timely release from prison is clearly established. In support,

Plaintiff cites *Whirl v. Kern*, a Fifth Circuit case.[144] In *Whirl*, the plaintiff was arrested on suspicion

of felony theft, and indicted by a grand jury.[145] Approximately two months after the plaintiff's

arrest, the indictments pending against the plaintiff were dismissed.[146] Notice of the dismissal was

sent to the sheriff's office, but the sheriff testified that "he was not apprised of these

proceedings."[147] As a result, the plaintiff remained in jail for almost nine months after all charges

---

[141] 533 U.S. at 202.

[142] 367 F.3d 337, 350 (5th Cir. 2004).

[143] *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).

[144] 407 F.2d 781 (5th Cir. 1968).

[145] *Id.* at 785.

[146] *Id.*

[147] *Id.*

against him were dismissed.[148] The plaintiff brought claims against the sheriff for false imprisonment under Texas law and for deprivation of civil rights under Section 1983.[149] Following a trial, a jury returned a verdict for the sheriff.[150] On appeal, the Fifth Circuit reversed the jury verdict reasoning that a jailer has "the duty to effect [the inmate's] timely release." [151] The Fifth Circuit further stated, "Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint."[152] However, the Fifth Circuit recognized that a jailer's "duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained."[153] Based on the facts of the case, the Fifth Circuit determined that the sheriff's ignorance for nine months after the termination of all proceedings against the plaintiff was an unreasonable time, and therefore held that the district court should have granted plaintiff's motion for directed verdict as to liability.[154]

Approximately ten years after *Whirl*, in *Baker v. McCollan*, the Supreme Court addressed whether the plaintiff's erroneous detention violated his due process rights.[155] In *Baker*, the plaintiff was stopped for a routine traffic violation and arrested on a facially valid warrant.[156] It was later

---

[148] *Id.*

[149] *Id.*

[150] *Id.*

[151] *Id.* at 792.

[152] *Id.*

[153] *Id.*

[154] *Id.* at 792–93.

[155] 443 U.S. 137 (1979).

[156] *Id.* at 143.

discovered that the warrant was intended for the plaintiff's brother, who had procured a duplicate of the plaintiff's driver's license and represented himself to be the plaintiff during a prior booking.[157] As a result, the plaintiff was wrongfully detained for three days.[158] The Supreme Court held that the sheriff had not violated the plaintiff's due process rights, reasoning that "a sheriff executing a valid arrest warrant is not required by the Constitution to investigate independently every claim of innocence . . . Nor is the official maintaining custody of the person named in the warrant required by the Constitution to perform an error-free investigation of such a claim."[159]

Plaintiff also relies on *Douthit v. Jones*, a Fifth Circuit case holding that "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."[160] The Fifth Circuit reasoned that the case was distinguishable from the Supreme Court's decision in *Baker*, noting that whether a jailer violates the Due Process Clause by unduly detaining an individual depends on "the context of this case."[161]

Plaintiff also cites *Porter v. Epps*.[162] There, the Fifth Circuit reversed a jury verdict holding the commissioner of the Mississippi Department of Corrections liable under Section 1983 for violating the plaintiff's constitutional rights by unlawfully incarcerating him for fifteen months beyond the expiration of his sentence.[163] The Fifth Circuit recognized that there is a clearly

---

[157] *Id.*

[158] *Id.*

[159] *Id.* at 145–46.

[160] *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980), *reh'g denied* 641 F.2d 345, 346 (5th Cir. 1981).

[161] *Id.*

[162] 659 F.3d 440 (5th Cir. 2011).

[163] *Id.* at 443.

established right to timely release from prison.[164] However, the Fifth Circuit determined that no reasonable jury could have found the commissioner's conduct objectively unreasonable.[165] The Fifth Circuit noted that "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[166] The Fifth Circuit stated that "[l]iability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference."[167] The Fifth Circuit further explained that in assessing an assertion of qualified immunity in the context of a claim, the court "must consider whether [the defendant's] actions were objectively unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such an official may be liable for failure to promulgate policy or failure to train/supervise if he acted with deliberate indifference to constitutional rights."[168] In *Porter*, the Fifth Circuit found that there was insufficient evidence to show that the commissioner's failure to promulgate adequate policies in the records department or that the training/supervision of the employees was objectively unreasonable in light of clearly established law.[169] Accordingly, the Fifth Circuit concluded that the commissioner was entitled to qualified immunity.[170]

---

[164] *Id*. at 445–46.

[165] *Id*. at 446.

[166] *Id*.

[167] *Id*.

[168] *Id*.

[169] *Id*. at 447–48.

[170] *Id*. at 449.

Finally, in a supplemental memorandum in opposition to OPSO Defendants' motion to dismiss, Plaintiff cites *Jauch v. Choctaw County*, a recent Fifth Circuit case.[171]  There, the Fifth Circuit considered whether detention of a person for 96 days after arrest, without ever being brought before a judge for a bail hearing, was an unconstitutional deprivation of due process.[172] In *Jauch*, the county had a policy of holding a person without an arraignment or bond hearing until the court that issued the warrant's next term convened.[173] The Fifth Circuit held that "indefinite pre-trial detention without an arraignment or other court appearance" violates the detainee's Fourteenth Amendment right to due process.[174]  Furthermore, the Fifth Circuit determined that the sheriff was not entitled to qualified immunity because "[t]he right at issue [] was clearly established and its contours 'sufficiently clear' that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior to bringing them before a judge."[175]

In this case, Plaintiff alleges he was unconstitutionally detained by the OPSO for 13 days.[176] OPSO Defendants assert they are entitled to qualified immunity as to Plaintiff's Section 1983 claim against them in their individual capacities because Plaintiff has failed to plead sufficient facts to show that OPSO Defendants violated a clearly established constitutional right, or that OPSO Defendants' conduct was objectively unreasonable in light of any clearly established

---

[171] 874 F.3d 425 (5th Cir. 2017).

[172] *Id.* at 427.

[173] *Id.* at 430.

[174] *Id.* at 432, 436.

[175] *Id.* at 436.

[176] Plaintiff alleges that he was physically in the custody of OPSO from June 30, 2016 until July 12, 2016. Rec. Doc. 16 at ¶¶ 7, 11. Depending on how the days are counted this would be either 12 or 13 days. Plaintiff alleges that he was overdetained for a period of 27 days total. *Id.* at ¶ 54. Plaintiff does appear to allege that OPSO Defendants are liable for the period he was in the physical custody of the DOC.

law.[177] In response, Plaintiff contends that the amended complaint alleges facts sufficient to establish that OPSO Defendants' violated his constitutional rights.[178] Specifically, Plaintiff points to the following allegations against OPSO Defendants:

- OPSO Defendants were [Plaintiff's] jailers.[179]
- Jailers violate an inmate's constitutional and basic liberty rights when they hold him beyond his lawful sentence.[180]
- The period of [Plaintiff's] lawful sentence ended immediately upon sentencing.[181]
- OPSO Defendants knew that having been told that [Plaintiff] "really shouldn't have to actually serve any time."[182]
- Instead of releasing [Plaintiff] or quickly handing him over to the custody of the DOC, OPSO Defendants held [Plaintiff] in jail for thirteen days.[183]

Therefore, Plaintiff alleges that OPSO Defendants had a duty to release Plaintiff and violated that duty by detaining him and then transferring him to the DOC. As noted above, in *Whirl*, the Fifth Circuit recognized that a jailer's "duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained."[184] Plaintiff alleges that jailers have up to 48 hours to process an inmate's release from custody, and any period exceeding 48 hours is unreasonable.[185] However, in *Baker*, the Supreme Court held that the plaintiff's due process rights were not violated when he was

---

[177] Rec. Doc. 25-1 at 17.

[178] Rec. Doc. 26 at 12, 15–17.

[179] *Id*. at 12, 15 (citing Rec. Doc. 16 at ¶ 10).

[180] *Id*. (citing Rec. Doc. 16 at ¶ 71).

[181] *Id*. (citing Rec. Doc. 16 at ¶ 9).

[182] *Id*. (citing Rec. Doc. 16 at ¶¶ 9, 44, 79, 89).

[183] *Id*. (citing Rec. Doc. 16 at ¶¶ 7–11).

[184] 407 F.2d at 792.

[185] Rec. Doc. 16 at 14.

wrongfully detained for a period of three days.[186] Moreover, the Fifth Circuit has recognized that a determination of whether a jailer violates the Due Process Clause by unduly detaining an individual depends on "the context of this case."[187]

Looking at the facts of this case in context, Plaintiff has not alleged that OPSO Defendants acted unreasonably in light of clearly established law. Plaintiff alleges that on June 30, 2016, Arcuri, an attorney for OPSO, emailed OPSO Defendants to request "that the Sheriff expedite processing for [Plaintiff's] release."[188] Plaintiff avers that Arcuri's email to OPSO Defendants stated that Plaintiff "really shouldn't have to actually serve any time once DOC processes it" and that Plaintiff's sentence was "one year DOC credit for time served from 2008-present."[189] Plaintiff further alleges Sheriff Gusman responded to Arcuri's email within an hour and a half, stating that once Plaintiff entered a plea and was sentenced, they could have DOC compute his time.[190] That same morning, Plaintiff avers, Captain Holt responded that he forwarded Arcuri's email to Amacker, the DOC Classifications Deputy for OPSO.[191] Plaintiff further alleges that Amacker responded that he would send Plaintiff's "packet" to the DOC the following day, which was July 1, 2016.[192] According to the Amended Complaint, the DOC sent an inmate transfer request to OPSO on July 7, 2016, setting a transfer date of July 12, 2016.[193]

---

[186] 443 U.S. at 137.

[187] *Douthit*, 619 F.2d at 532.

[188] Rec. Doc. 16 at 2, 8.

[189] *Id*. at 2.

[190] *Id*. at 8.

[191] *Id*.

[192] *Id*.

[193] *Id*. at 9.

Taking Plaintiff's allegations as true, it appears that on June 30, 2016, OPSO Defendants were aware that Plaintiff had been sentenced to one year in the custody of the DOC, but that Plaintiff would not have to serve any time once the DOC processed Plaintiff's release. To expedite Plaintiff's release, it appears that Amacker then sent Plaintiff's paperwork to DOC the following day. The DOC then waited until July 7, 2016, to send an inmate transfer request to OPSO. Therefore, considering these allegations against OPSO, it appears that any delay in Plaintiff's release was caused by the DOC, not the OPSO. Accordingly, Plaintiff has not plead any facts showing that OPSO Defendants acted unreasonably in light of any clearly established law. Accordingly, Plaintiff has not carried his burden of alleging facts that would overcome the OPSO Defendants' qualified immunity defense.

The Fifth Circuit in *Schultea v. Wood* explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7) after evaluating the complaint under the ordinary pleading standard.[194] Therefore, the Fifth Circuit has generally found that, when faced with a motion to dismiss, a district court ought to allow a plaintiff to file a Rule 7(a)(7) reply before dismissing a case on the basis of qualified immunity.[195] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[196]Accordingly, considering this precedent, the Court will deny OPSO Defendants' motion to dismiss at this time and grant Plaintiff leave to amend his complaint to allege facts "tailored to an answer pleading the defense of qualified

---

[194] *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

[195] *See Todd v. Hawk*, 66 F.3d 320 (5th Cir. 1995) ("*Schultea* makes it clear that this two-step process—requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.").

[196] *Schultea v. Wood*, 47 F.3d at 1433.

immunity."[197]

**B.**     *Section 1983 Claim Pursuant to Monell Liability*

OPSO Defendants argue that Plaintiff has alleged no facts which, if taken as true, establish a pattern or practice sufficient to support a *Monell* claim against Sheriff Gusman for failure to train or supervise. Furthermore, OPSO Defendants argue that Plaintiff has not pointed to sufficient facts to establish that there was a pattern of overdetention, since Plaintiff points to incidents that are not factually similar to this case or impermissibly relies on incidents that occurred after the conduct giving rise to this case. Plaintiff, in turn, argues that he has sufficiently pleaded a pattern or practice to support a *Monell* claim insofar as OPSO Defendants acknowledge that Plaintiff attempted to allege a pattern of overdetention, which is sufficient to support a claim for *Monell* liability that is plausible on its face.

With respect to a Section 1983 claim against an entity, the Supreme Court held in *Monell v. Department of Social Services of City of New York*, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983."[198] Moreover, "[a] § 1983 plaintiff . . . may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'"[199] In order to establish a Section 1983 claim against a municipality, the official policy must be the cause and moving force of the constitutional

---

[197] *Id.* at 1433.

[198] 436 U.S. 658, 694 (1978).

[199] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986).

violation.[200] Finally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[201]

Plaintiff contends that OPSO Defendants have a pattern of overdetention.[202] In support of these general allegations, Plaintiff cites numerous cases where he contends the OPSO overdetained inmates.[203] To establish a claim for *Monell* liability, Plaintiff must demonstrate that a policy or custom was the cause of the constitutional violation.[204] In the Amended Complaint, Plaintiff alleges that "[t]he misconduct . . . was caused by the policies, practices, and customs of Defendants, in that their employees and agents regularly over-detain persons who are subject to release."[205] Plaintiff further alleges that "[t]he policies, practices, and customs . . . were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above."[206]

The United States Supreme Court has held that the complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[207] Plaintiff does not assert how the alleged misconduct in this case was caused by the policies, practices, and customs of OPSO Defendants in their official capacities. Plaintiff also fails to assert how the alleged policies, practices, and

---

[200] *Monell*, 436 U.S. at 694.

[201] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

[202] Rec. Doc. 16 at 9–13.

[203] *Id.* at 9–13.

[204] *Monell*, 436 U.S. at 694.

[205] Rec. Doc. 16 at 17.

[206] *Id.*

[207] *Iqbal*, 556 U.S. at 678.

customs were the driving force behind the numerous constitutional violations Plaintiff alleges. As it is not enough to offer formulaic recitations of the elements of a cause of action, Plaintiff has failed to state a *Monell* liability claim against Gusman upon which relief can be granted, to the extent that Plaintiff has not alleged facts sufficient to show that the alleged policy was the cause and moving force of the constitutional violation.

However, dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[208] Short of granting a motion to dismiss, a court may grant Plaintiff leave to amend the complaint.[209] Accordingly, the Court will grant Plaintiff leave to amend the *Monell* liability claim.

## C.     *State Law Claims*

Plaintiff brings state law claims against OPSO Defendants for violation of Plaintiff's state constitutional right to due process, false imprisonment, negligence, and failure to intervene. OPSO Defendants argue that each of these claims should be dismissed for failure to state a claim. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The Fifth Circuit has recognized that "[w]hen all federal claims are dismissed from the case or controversy before the district court, 28 U.S.C. § 1367(c)(3) permits the district court to exercise wide discretion in determining whether to retain jurisdiction over the remaining state law claims."[210] Where all federal claims have been dismissed on the basis of qualified immunity, the Fifth Circuit has instructed a federal district court to decline to exercise supplemental jurisdiction

---

[208] *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

[209] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[210] *Chavic v. Borden,* 621 F. App'x 283, 290 (5th Cir. 2015).

under 28 U.S.C. § 1367(c)(3) over supplemental state-law claims.[211] Therefore, because it is unclear at this time whether any federal claims will remain after Plaintiff files a Rule 7(a)(7) reply and amends the complaint, the Court will deny without prejudice OPSO Defendants' motion to the extent it seeks dismissal of the state law claims at this time.

## V. Conclusion

In light of Plaintiff's acknowledgment that there is no *respondeat superior* liability under Section 1983, the Court will dismiss this claim. Moreover, the Court finds that Plaintiff has not carried his burden of alleging facts that would overcome the OPSO Defendants' qualified immunity defense. However, pursuant to Fifth Circuit precedent, the Court will allow Plaintiff to file a Rule 7(a)(7) reply before dismissing Plaintiff's Section 1983 claims against OPSO Defendants in their individual capacities on the basis of qualified immunity. The Court further finds that Plaintiff has not alleged facts showing that OPSO Defendants engaged in a policy of unconstitutionally over-detaining persons and that policy was the driving force behind the alleged violation of Plaintiff's constitutional right. Therefore, Plaintiff has failed to state a *Monell* liability claim upon which relief can be granted. However, before dismissing this claim, the Court will grant Plaintiff leave to amend the complaint. Furthermore, because it is unclear at this time whether any federal claims will remain after Plaintiff files a Rule 7(a)(7) reply and amends the complaint, the Court will deny without prejudice OPSO Defendants' motion to the extent it seeks dismissal of the state law claims at this time.

Accordingly,

---

[211] *Humphrey v. La. State Pen.,* 31 F. App'x 833, 2002 WL 180429, *2 (5th Cir. 2002).

**IT IS HEREBY ORDERED** that Defendants Sheriff Marlin Gusman, Captain Sidney Holt, and Corey Amacker's Motion to Dismiss[212] is **GRANTED, in part**, to the extent that Plaintiff's Section 1983 claim based on *respondeat superior* liability are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss[213] is **DENIED** as to all other claims at this time.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file a Rule 7(a)(7) reply as to Plaintiff's Section 1983 claims against DOC Defendants in their individual capacities and to amend the complaint within fourteen days of this Order to cure the deficiencies noted, if possible.

**NEW ORLEANS, LOUISIANA**, this 29th day of March, 2018.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[212] Rec. Doc. 25.

[213] *Id.*