| | |
|---|---|
| **RODNEY GRANT** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-2797** |
| **MARLIN GUSMAN, et al.** | **SECTION: "G"(3)** |

## ORDER

Pending before this Court is the "Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted" filed by Defendants Secretary of the Louisiana Department of Public Safety and Corrections James LeBlanc ("Secretary LeBlanc") and Warden of Elayn Hunt Correctional Center Timothy Hooper ("Warden Hooper"), (collectively, "DOC Defendants").[1] In this litigation, Plaintiff Rodney Grant ("Plaintiff") alleges that he was unlawfully detained first at the Orleans Parish Prison by the Orleans Parish Sheriff's Office ("OPSO") and subsequently at the Madison Parish Correctional Center by the Department of Public Safety & Corrections (the "DOC") for a total of 27 days after being sentenced to time served.

The DOC Defendants previously filed a motion to dismiss Plaintiff's Amended Complaint. The Court granted the motion in part, dismissing Plaintiff's Section 1983 claim based on *respondeat superior* liability and Plaintiff's Section 1983 claims for monetary damages against DOC Defendants in their official capacity, and denied the motion as to all other claims, granting Plaintiff leave to file a second amended complaint to address the deficiencies identified in the Court's Order. In the instant motion, DOC Defendants argue that Plaintiff has failed to cure any

---

[1] Rec. Doc. 49.

of the deficiencies identified by the Court and that Plaintiff merely provided a new version of the same factual allegations. Having considered the motion, the memoranda in support and opposition, arguments made in oral arguments, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. Background

### A. Factual Background

In the Second Amended Complaint, Plaintiff alleges that on July 2, 2000, Plaintiff was arrested in New Orleans for simple burglary and spent 61 days in Orleans Parish Prison ("OPP").[2] Plaintiff avers that he was released from custody on September 3, 2000, because the district attorney did not file a Bill of Information within the statutory deadline.[3] Plaintiff further avers that the District Attorney filed a Bill of Information against him on October 30, 2000, and an arraignment was set for November 29, 2000.[4] According to Plaintiff, he did not appear for the arraignment because he did not receive a summons, and a warrant was issued for his arrest.[5] Plaintiff asserts that the Bill of Information eventually expired by operation of law, but his arrest warrant "stayed in the system."[6]

Plaintiff avers that between 2008 and 2015, he was incarcerated at the Dixon Correctional Institute for a different crime.[7]

---

[2] Rec. Doc. 48 at 2.

[3] *Id*.

[4] *Id*. at 2–3.

[5] *Id*. at 2.

[6] *Id*. at 3.

[7] *Id*.

On June 27, 2016, approximately one year after his release from Dixon Correctional Institute, Plaintiff avers that he was trying to obtain a driver's license when he was arrested based on the warrant issued in November 2000.[8] On June 30, 2016, Plaintiff avers, he pleaded guilty in Orleans Parish Criminal District Court before Judge Camille Buras to simple burglary.[9] Plaintiff avers that Judge Buras allowed Plaintiff to plead to "a one year sentence, with credit for time served for the seven years he had just served" at Dixon Correctional Institute.[10] According to Plaintiff, Judge Buras contacted Blake Arcuri ("Arcuri"), an attorney for OPSO, and "requested that the Sheriff expedite processing for [Plaintiff's] release."[11] Plaintiff alleges that the attorney notified OPSO of Judge Buras's request via email in which the attorney stated that Plaintiff "really shouldn't have to actually serve any time once DOC processes it" and that his sentence was "one year DOC credit for time served from 2008-present."[12]

In less than an hour and a half, Plaintiff avers, Sheriff Gusman responded to Arcuri's email, stating that once Plaintiff enters a plea and is sentenced, they could have DOC compute his time.[13] That same morning, Plaintiff avers, Captain Holt responded that he forwarded Arcuri's email to DOC Classifications Deputy for OPSO, Defendant Corey Amacker, and would "have him contact DOC and see what can be done."[14]

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 3, 8.

[12] *Id.* at 3.

[13] *Id.* at 8.

[14] *Id.*

According to Plaintiff, Corey Amacker responded that he would "work on getting [Plaintiff's] packet sent to the DOC tomorrow but with the holiday weekend he will not get calculated till Tuesday most likely."[15] On July 7, 2016, Plaintiff avers, the DOC sent OPSO an inmate transfer request for Plaintiff to be transferred on July 12, 2016, but OPSO did nothing to move the transfer date up.[16]

Plaintiff asserts that he remained detained at the OPP until July 12, 2016, when custody was transferred to the DOC, who processed Plaintiff through Elayn Hunt Correctional Center.[17] Plaintiff avers that he was then sent to the Madison Parish Correctional Center ("MPCC") in Tallulah, Louisiana, which is operated by the private prison corporation, LaSalle Corrections.[18]

At intake at LaSalle Corrections, Plaintiff avers, he attempted to explain that his time was served, and although the intake officer agreed, he was not released.[19] According to Plaintiff, on or about July 15, 2016, his friend, Alfred Marshall, spoke to Judge Buras, who then contacted Sheriff Gusman and Warden Chris Stinson of LaSalle Corrections to ask why Plaintiff had not been released.[20] On July 18, 2016, Plaintiff avers, Judge Buras held another hearing, at which she vacated Plaintiff's sentence and resentenced him to "CREDIT FOR TIME SERVED."[21] "Despite having no legal authority to hold [him]," Plaintiff contends, the DOC did not release him.[22] On

---

[15] *Id.* at 8–9.

[16] *Id.* at 9.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 3, 9.

[22] *Id.* at 3.

July 25, 2016, Plaintiff avers, Judge Buras contacted two DOC employees to inquire as to why Plaintiff had not been released.[23] Finally, according to Plaintiff, on July 27, 2016, Plaintiff was released.[24]

## B. *Procedural Background*

On April 2, 2017, Plaintiff filed the complaint against DOC Defendants, various officials at OPSO; Chris Stinson, the Warden of Madison Parish Correctional Center; and LaSalle Management Company, L.L.C.[25] On June 14, 2017, Plaintiff filed a First Amended Complaint (the "Amended Complaint").[26] On October 3, 2017, Plaintiff voluntarily dismissed his claims against Chris Stinson and LaSalle Management Company, L.L.C.[27]

On June 27, 2017, DOC Defendants filed a motion to dismiss Plaintiff's Amended Complaint.[28] On July 27, 2017, Plaintiff filed an opposition to DOC Defendants' motion to dismiss.[29] On October 31, 2017, with leave of Court, Plaintiff filed a supplemental memorandum in opposition to DOC Defendants' motion to dismiss.[30] On March 19, 2018, with leave of Court, Plaintiff filed a supplemental memorandum in opposition to DOC Defendants' motion to dismiss.[31] On March 27, 2018, the Court granted the motion in part, dismissing Plaintiff's Section 1983 claim

---

[23] *Id.*

[24] *Id.*

[25] Rec. Doc. 1 at 3–4.

[26] Rec. Doc. 16.

[27] Rec. Doc. 35.

[28] Rec. Doc. 25.

[29] Rec. Doc. 29.

[30] Rec. Doc. 39.

[31] Rec. Doc. 45.

based on *respondeat superior* liability and Plaintiff's Section 1983 claims for monetary damages against DOC Defendants in their official capacity, and denied the motion as to all other claims, granting Plaintiff leave to file a second amended complaint to address the deficiencies identified in the Court's Order.[32]

On April 10, 2018, Plaintiff filed a Second Amended Complaint.[33] On April 24, 2018, DOC Defendants filed the instant motion to dismiss, arguing that Plaintiff did not add any new facts to the Second Amended Complaint and failed to cure the deficiencies as identified by the Court in its prior Order.[34] On May 1, 2018, Plaintiff filed an opposition.[35]

## II. Parties' Arguments

### A.    *DOC Defendants' Arguments in Support of the Motion to Dismiss*[36]

DOC Defendants argue that Plaintiff's Second Amended Complaint does not assert any new factual allegations and that Plaintiff's Second Amended Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules for failure to state a claim and based on qualified immunity.[37]

After explaining the law of qualified immunity, DOC Defendants contend that Plaintiff's factual allegations are insufficient to overcome DOC Defendants' qualified immunity defense.[38]

---

[32] Rec. Doc. 46.

[33] Rec. Doc. 48.

[34] Rec. Doc. 49.

[35] Rec. Doc. 51.

[36] In the Motion to Dismiss, DOC Defendants only sought the dismissal of Plaintiff's federal claims, not his state-law claims. Rec. Doc. 49.

[37] Rec. Doc. 49-1 at 2.

[38] *Id.* at 6

DOC Defendants contend that Plaintiff made no factual allegations against Warden Hooper.[39] DOC Defendants also assert that rather than assert new facts against Secretary LeBlanc, Plaintiff reasserts his *Monell* claim.[40] DOC Defendants argue that Plaintiff's strategy of naming other inmates who were improperly detained fails because Plaintiff "does not suggest liability or advanced knowledge on [DOC Defendants'] part in any of these instances, explain how these situations mirrored Plaintiff's, or express how these instances are related to a policy of unlawful detention."[41] DOC Defendants contend that Plaintiff never alleges that any of these defendants were overdetained because of a failure to immediately calculate a sentence at the beginning of a defendant's incarceration.[42]

DOC Defendants attack Plaintiff's argument that Secretary LeBlanc failed to adopt a prison policy of immediately calculating a sentence, which is the basis for Plaintiff's *Monell* claim.[43] DOC Defendants acknowledge that a policymaker's failure to adopt a policy can be the basis for liability, but further argue that the law requires that the failure to adopt such a policy was "an intentional choice, not merely an unintentionally negligent oversight."[44] DOC Defendants contend that Plaintiff has not pointed to any controlling authority that there is a constitutional right to an immediate calculation of a sentence, such that reasonable officers would have a fair warning that their alleged conduct would violate that right.[45] DOC Defendants also contend that the fact that

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at 7.

[42] *Id.*

[43] *Id.* at 8–9.

[44] *Id.* at 8 (quoting *Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir. 1992)).

[45] *Id.* at 9.

Plaintiff was almost immediately released after Judge Buras's amended sentence does not mean that Defendants were deliberately indifferent, as Plaintiff alleges, but merely that Defendants cannot predict how a court will act in the future.[46]

Next, DOC Defendants assert that any statements regarding unrelated overdetentions does not prove a pattern of overdetention.[47] DOC Defendants argue that none of the statements of DOC Defendants regarding overdetention attribute overdetention to the existence of a supervisor's policy or the lack thereof nor show that those instances were related to Plaintiff's alleged overdetention.[48] Furthermore, DOC Defendants argue that the article Plaintiff cites, which was written by Attorney General Jeff Landry and Senator John Kennedy on the state of the DOC, does not mention DOC Defendants and is dated March 2018, after Plaintiff's alleged overdetention.[49] DOC Defendants further assert that incompetence or even negligence does not constitute deliberate indifference.[50]

Furthermore, DOC Defendants argue that Plaintiff's failure-to-train allegation as a means to assert vicarious liability must also fail as a matter of law.[51] DOC Defendants argue that Plaintiff's Second Amended Complaint does not meet any of the elements for a failure to train claim because, according to DOC Defendants, Plaintiff does not point to any DOC employees who

---

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 11.

[51] *Id.*

allegedly violated Plaintiff's rights, let alone allege that any violation was caused by a failure to train.[52]

Last, DOC Defendants argue that they did not act unreasonably, particularly in light of Judge Buras's original sentence, which ordered that Plaintiff's one-year sentence would run concurrent with his other counts.[53] DOC Defendants assert that only in her second order, did Judge Buras remove the concurrent language and sentence Plaintiff to only "credit for time-served."[54] DOC Defendants argue that this Court should take judicial notice of the contents of Plaintiff's original sentence and consider whether DOC Defendant's actions were unreasonable in light of that first order.[55]

### B.   *Plaintiff's Arguments in Opposition to DOC Defendants' Motion to Dismiss*

In the opposition, Plaintiff, relying on a district court decision from the Northern District of Georgia, contends that to defeat qualified immunity a plaintiff needs only to plausibly argue that the defendants knew the incarcerated person should be free and that defendants did not free him.[56] Under this standard, Plaintiff argues that the Second Amended Complaint meets these requirements and further argues that the DOC's "admitted, well-documented pattern" of overdetention bolsters the plausibility of Plaintiff's claims.[57]

---

[52] *Id.* at 12–13.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 13–14 (citing Fed. R. Civ. Pro. 201).

[56] Rec. Doc. 51 (citing *Powell v. Barrett*, 376 F. Supp. 2d 1340, 1351 (N. D. Ga. 2005)).

[57] *Id.* at 1–2.

Plaintiff argues that the constitutional right at issue here is that a jailor cannot detain a person after the legal authority to hold him no longer exists.[58] Plaintiff contends that DOC Defendants do not dispute this element, and that as such, the motion to dismiss on the basis of qualified immunity should be denied.[59]

Next, Plaintiff argues that the Second Amended Complaint sufficiently pleads pattern, policy, and training claims.[60] As to the *Monell* claim, Plaintiff argues that he has plead the elements of a pattern claim by citing the testimony of DOC employees on the rate of overdetention at their facilities, as well as specific overdetention examples, and records from the Louisiana Legislative Auditor and Department of Administration.[61] Plaintiff argues that the examples provided by Plaintiff do not need to prove a *Monell* pattern, but rather only needs to give plausibility to Plaintiff's claim that there was one.[62] Plaintiff contends that the U.S. Supreme Court struck down a heightened pleading standard for *Monell* claims.[63] Plaintiff further argues that there is a constitutional right to an immediate calculation of a sentence because Fifth Circuit precedent states that a jailor must "ensure that inmates are timely released from prison."[64] Plaintiff contends that

---

[58] *Id.* at 6.

[59] *Id.* (citing S*andin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)).

[60] *Id.* at 7.

[61] *Id.* at 8

[62] *Id.*

[63] *Id.* at 9 (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

[64] *Id.* at 10 (citing *Porter v. Epps*, 659 F. 3d 440, 445 (5th Cir. 2011)).

DOC Defendants knew that some defendants are sentenced to time-served and, therefore, a failure to adopt a policy addressing this issue is a violation of the right to a timely release from prison.[65]

Plaintiff further asserts that he does not allege that DOC Defendants miscalculated his sentence, but rather that DOC Defendants knew that the original sentence was time-served, but detained him anyhow.[66] Plaintiff also stresses that the Court dismissed Plaintiff's *respondeat superior* claims against DOC Defendants as to his Section 1983 claims, not to his state-law claims.[67] Next, Plaintiff asserts that even if the Court grants DOC Defendants' motion to dismiss the federal claims on the grounds of qualified immunity, Plaintiff's claims for injunctive and declaratory relief should remain.[68]

Last, Plaintiff consents to the dismissal of his federal law claims against Warden Hooper.[69] Plaintiff argues that Warden Hooper is still a proper party to this case, asserting that pendent party jurisdiction permits "the joinder of a defendants against whom only state law claims are asserted, as long as those claims are 'sufficiently intertwined' with federal claims against another party."[70]

### III. Law

#### A.    *Legal Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[71] A motion to dismiss for failure to state

---

[65] *Id.*

[66] *Id.*

[67] *Id.* at 11.

[68] *Id.* at 12.

[69] *Id.*

[70] *Id.* at 12–13 (citing *Rodriguez v. Pacifcare of Tex., Inc.*, 980 F. 2d 1014, 1018 (5th Cir. 1993)).

[71] Fed. R. Civ. P. 12(b)(6).

a claim is "viewed with disfavor and is rarely granted."[72] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[73] "Factual allegations must be enough to raise a right to relief above the speculative level."[74] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[75]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[76] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[77] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[78] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[79] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[80] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[81] From the face of the complaint, there must be enough factual

---

[72] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[74] *Twombly*, 550 U.S. at 556.

[75] *Id.* at 570.

[76] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[77] *Iqbal*, 556 U.S. at 677–78.

[78] *Id.* at 679.

[79] *Id.* at 678.

[80] *Id.*

[81] *Id.*

matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[82] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[83]

## B.     *Legal Standard on Qualified Immunity*

To plead a Section 1983 claim, Plaintiff is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[84]

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[85] An official sued in his official capacity cannot assert a qualified immunity defense.[86] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[87] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[88] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[89]

---

[82] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 227, 257 (5th Cir. 2009).

[83] *Carbe v. Lappin*, 492 F.3d 325, 327 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[84] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[85] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[86] *Mitchell v. Forsyth*, 472 U.S. 511, 556 n. 10 (1985).

[87] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[88] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[89] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[90] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[91] Part two inquires into whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[92] A court need not address these two questions sequentially; it can proceed with either inquiry first.[93]

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"[94] Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[95]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[96] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and

---

[90] 533 U.S. 194 (2001).

[91] *Id.* at 201.

[92] *Id.* at 202.

[93] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[94] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

[95] *Williams*, 180 F.3d at 703 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

[96] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

that defeat a qualified immunity defense with equal specificity."[97] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[98]

## IV. Analysis

DOC Defendants argue that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because (1) Plaintiff has not pleaded any additional or sufficient facts to show that DOC Defendants violated any federal or state laws and DOC Defendants are entitled to qualified immunity and (2) Plaintiff has not pleaded any new or sufficient facts to support a *Monell* claim.[99] As an initial matter, the Court notes that Plaintiff consents to the dismissal of his federal claims against Warden Hooper.[100] However, Plaintiff argues that all other claims should not be dismissed.

### A.    *Whether Secretary LeBlanc Is Entitled to Qualified Immunity*

DOC Defendants assert Secretary LeBlanc is entitled to qualified immunity as to Plaintiff's Section 1983 claims against him in his individual capacity because Plaintiff has failed to plead sufficient facts to show that Secretary LeBlanc violated a clearly established constitutional right, or that Secretary LeBlanc's conduct was objectively unreasonable in light of any clearly established law. Plaintiff, in turn, argues that Secretary LeBlanc is not entitled to qualified

---

[97] *Id.* at 645.

[98] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)).

[99] Rec. Doc. 51.

[100] *Id*. at 12.

immunity because Secretary LeBlanc violated Plaintiff's clearly established right to a timely release from prison.

Pursuant to *Saucier v. Katz*, the facts alleged must show the officer's conduct violated a constitutional right, and the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[101] In *Kinney v. Weaver*, the Fifth Circuit explained the standard requiring that the law be "clearly established" to defeat qualified immunity:

> [A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, for example, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful. The central concept is that of "fair warning": The law can be clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.[102]

Accordingly, a case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate."[103]

Plaintiff argues that the right to timely release from prison is clearly established. In support, Plaintiff cites *Whirl v. Kern*, a Fifth Circuit case.[104] In *Whirl*, the plaintiff was arrested on suspicion of felony theft, and indicted by a grand jury.[105] Approximately two months after the plaintiff's

---

[101] 533 U.S. at 202.

[102] 367 F.3d 337, 350 (5th Cir. 2004).

[103] *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).

[104] 407 F.2d 781 (5th Cir. 1968).

[105] *Id*. at 785.

arrest, the indictments pending against the plaintiff were dismissed.[106] Notice of the dismissal was sent to the sheriff's office, but the sheriff testified that "he was not apprised of these proceedings."[107] As a result, the plaintiff remained in jail for almost nine months after all charges against him were dismissed.[108] The plaintiff brought claims against the sheriff for false imprisonment under Texas law and for deprivation of civil rights under Section 1983.[109] Following a trial, a jury returned a verdict for the sheriff.[110] On appeal, the Fifth Circuit reversed the jury verdict reasoning that a jailer has "the duty to effect [the inmate's] timely release." [111] The Fifth Circuit further stated, "Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint."[112] However, the Fifth Circuit recognized that a jailer's "duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained."[113] Based on the facts of the case, the Fifth Circuit determined that the sheriff's ignorance for nine months after the termination of all proceedings against the plaintiff was an unreasonable time, and therefore held that the district court should have granted plaintiff's motion for directed verdict as to liability.[114]

---

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.* at 792.

[112] *Id.*

[113] *Id.*

[114] *Id.* at 792–93.

Approximately ten years after *Whirl*, in *Baker v. McCollan*, the Supreme Court addressed whether the plaintiff's erroneous detention violated his due process rights.[115] In *Baker*, the plaintiff was stopped for a routine traffic violation and arrested on a facially valid warrant.[116] It was later discovered that the warrant was intended for the plaintiff's brother, who had procured a duplicate of the plaintiff's driver's license and represented himself to be the plaintiff during a prior booking.[117] As a result, the plaintiff was wrongfully detained for three days.[118] The Supreme Court held that the sheriff had not violated the plaintiff's due process rights, reasoning that "a sheriff executing a valid arrest warrant is not required by the Constitution to investigate independently every claim of innocence . . . Nor is the official maintaining custody of the person named in the warrant required by the Constitution to perform an error-free investigation of such a claim."[119]

In *Porter v. Epps*, the Fifth Circuit reversed a jury verdict holding the commissioner of the Mississippi Department of Corrections liable under Section 1983 for violating the plaintiff's constitutional rights by unlawfully incarcerating him for fifteen months beyond the expiration of his sentence.[120] The Fifth Circuit recognized that there is a clearly established right to timely release from prison.[121] However, the Fifth Circuit determined that no reasonable jury could have found the commissioner's conduct objectively unreasonable.[122] The Fifth Circuit noted that "[a]

---

[115] 443 U.S. 137 (1979).

[116] *Id*. at 143.

[117] *Id*.

[118] *Id*.

[119] *Id*. at 145–46.

[120] 659 F.3d 440, 443 (5th Cir. 2011).

[121] *Id*. at 445–46.

[122] *Id*. at 446.

supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[123] The Fifth Circuit stated that "[l]iability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference."[124] The Fifth Circuit further explained that in assessing an assertion of qualified immunity in the context of a claim, the court "must consider whether [the defendant's] actions were objectively unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such an official may be liable for failure to promulgate policy or failure to train/supervise if he acted with deliberate indifference to constitutional rights."[125] In *Porter*, the Fifth Circuit found that there was insufficient evidence to show that the commissioner's failure to promulgate adequate policies in the records department or that the training/supervision of the employees was objectively unreasonable in light of clearly established law.[126] Accordingly, the Fifth Circuit concluded that the commissioner was entitled to qualified immunity.[127]

In *Douthit v. Jones*, the Fifth Circuit held that "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a

---

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] *Id.* at 447–48.

[127] *Id.* at 449.

deprivation of due process."[128] However, the Fifth Circuit noted that whether a jailer violates the Due Process Clause by unduly detaining an individual depends on "the context of this case."[129]

Recently, in *Jauch v. Choctaw County*, the Fifth Circuit considered whether detention of a person for 96 days after arrest, without ever being brought before a judge for a bail hearing, was an unconstitutional deprivation of due process.[130] In *Jauch*, the county had a policy of holding a person without an arraignment or bond hearing until the court that issued the warrant's next term convened.[131] The Fifth Circuit held that "indefinite pre-trial detention without an arraignment or other court appearance" violates the detainee's Fourteenth Amendment right to due process.[132] Furthermore, the Fifth Circuit determined that the sheriff was not entitled to qualified immunity because "[t]he right at issue [] was clearly established and its contours 'sufficiently clear' that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior to bringing them before a judge."[133]

In this case, Plaintiff alleges he was unconstitutionally detained for 27 days.[134] DOC Defendants assert Secretary LeBlanc is entitled to qualified immunity as to Plaintiff's Section 1983 claim against him in his individual capacity because Plaintiff has failed to plead sufficient facts to show that Secretary LeBlanc violated a clearly established constitutional right, or that Secretary

---

[128] *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980), *reh'g denied* 641 F.2d 345, 346 (5th Cir. 1981).

[129] *Id.*

[130] 874 F.3d 425, 427 (5th Cir. 2017).

[131] *Id.* at 430.

[132] *Id.* at 432, 436.

[133] *Id*. at 436.

[134] Although Plaintiff was physically in the custody of OPSO for 12 days and physically in the custody of the DOC for 15 days, Plaintiff alleges that he was unconstitutionally detained for the entire period of 27 days and neither party argues that DOC Defendants are not liable for the entire period of overdetention of 27 days.

LeBlanc's conduct was objectively unreasonable in light of any clearly established law.[135] In response, Plaintiff contends that the Second Amended Complaint alleges facts sufficient to establish that DOC Defendants violated his constitutional rights.[136] Specifically, Plaintiff points to the following allegations as listed in his Second Amended Complaint:

- That Plaintiff should have been freed the day of his sentencing or the day thereafter.[137]
- That DOC should have released Plaintiff as soon as they took custody of him, rather than sending him to Madison Parish Correctional Center, where he explained to an officer that his sentence was time-served.[138]
- That Judge Buras held a second hearing because Plaintiff was still incarcerated, vacated his prior sentence, and replaced his sentence with "CREDIT FOR TIME SERVED"; however, Plaintiff was not released. Judge Buras called Irma Ray at DOC and emailed and called Kanedra Burton at DOC.[139]
- That the Louisiana Attorney General released a public statement on the incompetence at the DOC and how the DOC does not even know when a prisoner should be released.[140]
- That during processing at Elayn Hunt Correctional Center, Plaintiff explained he was sentenced to time-served and should be released, but was instead transferred to Madison Parish Correctional Center.[141]
- That the DOC released Plaintiff on July 27, 2016.[142]

Plaintiff also contends that the plausibility of Plaintiff's overdetention claim is bolstered by allegations in Plaintiff's Second Amended Complaint regarding DOC's "pattern of holding inmates past their release date."[143] Plaintiff also argues that DOC Defendants do not dispute that

---

[135] Rec. Doc. 49-1 at 5.

[136] Rec. Doc. 51 at 5–6.

[137] *Id.* at 1–2 (citing Rec. Doc. 48 at ¶15).

[138] *Id.* (citing Rec. Doc. 48 at ¶¶ 19).

[139] *Id.* (citing Rec. Doc. 48 at ¶¶ 21-23, 52,54).

[140] *Id.* (citing Rec. Doc. 48 at ¶ 29).

[141] *Id.* (citing Rec. Doc. 48 at ¶ 51).

[142] *Id.* (citing Rec. Doc. 48 at ¶ 55).

[143] *Id.* at 2.

Plaintiff has met either element of the qualified immunity defense, and therefore, that the motion to dismiss should be denied.[144]

Like the defendant in *Porter v. Epps*, Secretary LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections.[145] Therefore, he can only be held liable if he (1) affirmatively participated in the acts that caused the constitutional deprivation or (2) implemented unconstitutional policies that causally resulted in the constitutional injury.[146] Plaintiff does not allege any new facts in the Second Amended Complaint that show that Secretary LeBlanc affirmatively participated in the acts that caused the alleged constitutional deprivation. Therefore, the court "must consider whether [ Secretary LeBlanc's] actions were objectively unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such [] official[s] may be liable for failure to promulgate policy or failure to train/supervise if [they] acted with deliberate indifference to constitutional rights."[147]

Both parties concede that the law is clearly established that a jailor must ensure an inmate's timely release from prison. Plaintiff has alleged a pattern of overdetention at the DOC by citing public sources, including testimony of DOC employees, statements from public officials, and reports from Louisiana state agencies. In the Second Amended Complaint, Plaintiff alleges that Secretary LeBlanc acted with deliberate indifference to Plaintiff's constitutional rights by failing to promulgate a policy for the DOC that requires the immediate calculation of inmate's sentences and by failing to train and/or supervise his employees on when an inmate should be released from

---

[144] *Id.* at 7.

[145] 659 F.3d at 446; Rec. Doc. 16 at 6–7.

[146] 659 F.3d at 446.

[147] *Id.*

DOC custody. Taking Plaintiff's factual allegations as true, as required when evaluating a motion to dismiss, Plaintiff has alleged that there was a pattern of overdetention at the DOC and that Secretary LeBlanc knew of this overdetention, but acted with deliberate indifference by failing to implement a policy whereby the DOC immediately calculates an inmate's sentence upon entry into the DOC system and by failing to train and supervise his employees on when inmates should be released from DOC custody. Therefore, Plaintiff has met his burden in demonstrating that Secretary LeBlanc is not entitled to qualified immunity in this case.

**B.     *Section 1983 Claim Pursuant to Monell Liability***

DOC Defendants argue that Plaintiff has not sufficiently alleged a policy or custom of overdetaining persons in violation of their constitutional rights to assert a claim for *Monell* liability. DOC Defendants argue that while Plaintiff has added references to additional criminal defendants who were allegedly overdetained by the DOC to his Second Amended Complaint in an attempt to establish a pattern of overdetention, Plaintiff has not added any value to his examples. Plaintiff, in turn, asserts that Plaintiff has pleaded the elements of a *Monell* claim and that the plausibility of the pattern of overdetention allegations is further supported by different factual sources, outlining a history of overdetention by the DOC.

With respect to a Section 1983 claim against an entity, the Supreme Court held in *Monell v. Department of Social Services of City of New York*, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983."[148] Moreover, "[a] § 1983 plaintiff . . . may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged

---

[148] 436 U.S. 658, 694 (1978).

action was pursuant to a state 'custom or usage.'"[149] In order to establish a Section 1983 claim against a municipality, the official policy must be the cause and moving force of the constitutional violation.[150] Finally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[151] A pattern can be considered tantamount to an official policy if the pattern is "so common and well-settled as to constitute a custom that fairly represents municipal policy."[152] The incidents relied upon must have occurred prior to the alleged misconduct and "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[153] Last, the prior incidents must point to the specific violation alleged in the case at bar.[154]

In the Second Amended Complaint, Plaintiff asserts a *Monell* liability claim against LeBlanc.[155] Plaintiff alleges that "[t]he misconduct [to which Plaintiff was subjected] was caused by the policies, practices, and customs of Defendants, in that their employees and agents regularly over-detain persons who are subject to release;" and those "widespread practices . . . were so well settled as to constitute the de facto policy of the Defendants."[156] Plaintiff argues that there is a

---

[149] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986).

[150] *Monell*, 436 U.S. at 694.

[151] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

[152] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[153] *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc).

[154] *Peterson*, 588 F.3d at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir.2005)).

[155] Rec. Doc. 48 at 23.

[156] *Id.*

significant pattern of overdetention at the DOC, such that the pattern is tantamount to official policy, and identifies statements in the Second Amended Complaint that Plaintiff contends bolsters his *Monell* claim against Secretary LeBlanc: (1) testimony from DOC employees regarding overdetention of inmates, (2) a statement from the Attorney General that the DOC does not show when a prisoner should be released from prison, (3) a report from the Louisiana Legislative Auditor regarding inmate management, (4) specific DOC overdetention examples, and (5) records of the Department of Administration showing examples of overdetention.[157]

The facts alleged by Plaintiff in the Second Amended Complaint, if taken as true, make a pattern of overdetention at the DOC plausible. Further, Plaintiff alleges that this pattern of overdetention is what caused Plaintiff's constitutional right to be released timely from jail to be violated. Therefore, Plaintiff has properly plead a *Monell* claim against the DOC.

## V. Conclusion

The Court hereby grants DOC Defendants' motion to dismiss Plaintiff's federal claims against Warden Hooper, as Plaintiff consents to the dismissal of these claims. Because Plaintiff has carried his burden in alleging facts that would overcome Secretary LeBlanc's qualified immunity defense, the Court hereby denies DOC Defendants' motion to dismiss Plaintiff's Section 1983 claims against Secretary LeBlanc in his individual capacity. Furthermore, because Plaintiff has alleged facts, which if taken as true, make it plausible that Secretary LeBlanc engaged in a policy of unconstitutionally over-detaining persons and that policy was the driving force behind the alleged violation of Plaintiff's constitutional right, the Court hereby denies DOC Defendants' motion to dismiss Plaintiff's *Monell* claim against Secretary LeBlanc.[158]

---

[157] Rec. Doc. 51 at 8 (citing Rec. Doc. 48 at ¶¶ 83-86, 109).

[158] In the Motion to Dismiss, DOC Defendants only sought the dismissal of Plaintiff's federal claims, not his state-law claims. Rec. Doc. 49.

Accordingly,

**IT IS HEREBY ORDERED** that DOC Defendants' Motion to Dismiss **IS GRANTED IN PART** to the extent that the Court dismisses Plaintiff's federal law claims against Warden Hooper.

**IT IS FURTHER ORDERED** that DOC Defendants' Motion to Dismiss **IS DENIED IN PART** as to Plaintiff's Section 1983 claim against Secretary LeBlanc and as to Plaintiff's *Monell* claim against Sheriff LeBlanc.

**NEW ORLEANS, LOUISIANA,** this  14th  day of August, 2018.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**