# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RODNEY GRANT

VERSUS

MARLIN GUSMAN, et al.

CIVIL ACTION

CASE NO. 17-2797

SECTION: "G"

## ORDER

Pending before this Court is the "Motion to Dismiss Second Amended Complaint for Failure to State a Claim" filed by Defendants Sheriff Marlin Gusman ("Gusman"), the Sheriff for the Orleans Parish Sheriff's Office (the "OPSO"); Sidney Holt ("Holt"), a Captain for the OPSO; and Corey Amacker ("Amacker"), the Classifications Deputy for the OPSO (collectively, "OPSO Defendants").[1] In this litigation, Plaintiff Rodney Grant ("Plaintiff") alleges that he was unlawfully detained first at the Orleans Parish Prison by OPSO Defendants and subsequently at the Madison Parish Correctional Center by the Department of Public Safety & Corrections (the "DOC") for a total of 27 days after being sentenced to time served.

The OPSO Defendants previously filed a motion to dismiss Plaintiff's Amended Complaint. The Court granted the motion in part, dismissing Plaintiff's Section 1983 claim based on *respondeat superior* liability, and denied the motion as to all other claims, granting Plaintiff leave to file an amended complaint to address the deficiencies identified in the Court's Order. Plaintiff subsequently filed a Second Amended Complaint. In the instant motion, OPSO Defendants argue that Plaintiff's Second Amended Complaint did not cure the deficiencies identified by the Court and that OPSO Defendants are entitled to the dismissal of all of Plaintiff's

---

[1] Rec. Doc. 50.

claims, with prejudice. Having considered the motion, the memoranda in support and opposition, arguments made in oral arguments, and the applicable law, the Court will grant the motion in part, dismissing Plaintiff's Section 1983 claims for monetary relief against OPSO Defendants on the basis of qualified immunity, and deny the motion to dismiss on all other claims.

## I. Background

### A.    Factual Background

In the Second Amended Complaint, Plaintiff alleges that on July 2, 2000, Plaintiff was arrested in New Orleans for simple burglary and spent 61 days in Orleans Parish Prison ("OPP").[2] Plaintiff avers that he was released from custody on September 3, 2000, because the district attorney did not file a Bill of Information within the statutory deadline.[3] Plaintiff further avers that the district attorney filed a Bill of Information against him on October 30, 2000, and an arraignment was set for November 29, 2000.[4] According to Plaintiff, he did not appear for the arraignment because he did not receive a summons, and a warrant was issued for his arrest.[5] Plaintiff asserts that the Bill of Information eventually expired by operation of law, but his arrest warrant "stayed in the system."[6]

Plaintiff avers that between 2008 and 2015, he was incarcerated at the Dixon Correctional Institute for a different crime.[7]

---

[2] Rec. Doc. 48 at 2.

[3] *Id.*

[4] *Id.* at 2–3.

[5] *Id.* at 2.

[6] *Id.* at 3.

[7] *Id.*

On June 27, 2016, approximately one year after his release from Dixon Correctional Institute, Plaintiff avers that he was trying to obtain a driver's license when he was arrested based on the warrant issued in November 2000.[8] On June 30, 2016, Plaintiff avers, he pleaded guilty in Orleans Parish Criminal District Court before Judge Camille Buras to simple burglary.[9] Plaintiff avers that Judge Buras allowed Plaintiff to plead to "a one year sentence, with credit for time served for the seven years he had just served" at Dixon Correctional Institute.[10] According to Plaintiff, Judge Buras contacted Blake Arcuri ("Arcuri"), an attorney for OPSO, and "requested that the Sheriff expedite processing for [Plaintiff's] release."[11] Plaintiff alleges that the attorney notified OPSO of Judge Buras' request via email in which the attorney stated that Plaintiff "really shouldn't have to actually serve any time once DOC processes it" and that his sentence was "one year DOC credit for time served from 2008-present."[12]

In less than an hour and a half, Plaintiff avers, Sheriff Gusman responded to Arcuri's email, stating that once Plaintiff enters a plea and is sentenced, they could have DOC compute his time.[13] That same morning, Plaintiff avers, Captain Holt responded that he forwarded Arcuri's email to DOC Classifications Deputy for OPSO, Defendant Corey Amacker, and would "have him contact DOC and see what can be done."[14]

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 3, 8.

[12] *Id.* at 3.

[13] *Id.* at 8.

[14] *Id.*

According to Plaintiff, Corey Amacker responded that he would "work on getting [Plaintiff's] packet sent to the DOC tomorrow but with the holiday weekend he will not get calculated till Tuesday most likely."[15] On July 7, 2016, Plaintiff avers, the DOC sent OPSO an inmate transfer request for Plaintiff to be transferred on July 12, 2016, but OPSO did nothing to move the transfer date up.[16]

Plaintiff asserts that he remained detained at the OPP until July 12, 2016, when custody was transferred to the DOC, which processed Plaintiff through Elayn Hunt Correctional Center.[17] Plaintiff avers that he was then sent to the Madison Parish Correctional Center ("MPCC") in Tallulah, Louisiana, which is operated by the private prison corporation, LaSalle Corrections.[18]

At intake at LaSalle Corrections, Plaintiff avers, he attempted to explain that his sentence was time served, and although the intake officer agreed, he was not released.[19] According to Plaintiff, on or about July 15, 2016, his friend, Alfred Marshall, spoke to Judge Buras, who then contacted Sheriff Gusman and Warden Chris Stinson of LaSalle Corrections to ask why Plaintiff had not been released.[20] On July 18, 2016, Plaintiff avers, Judge Buras held another hearing, at which she vacated Plaintiff's sentence and resentenced him to "CREDIT FOR TIME SERVED."[21] "Despite having no legal authority to hold [him]," Plaintiff contends, the DOC did not release

---

[15] *Id.* at 8–9.

[16] *Id.* at 9.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 3, 9.

him.[22] On July 25, 2016, Plaintiff avers, Judge Buras contacted two DOC employees to inquire as to why Plaintiff had not been released.[23] Finally, according to Plaintiff, on July 27, 2016, Plaintiff was released.[24]

## B.    *Procedural Background*

On April 2, 2017, Plaintiff filed the complaint against OPSO Defendants; Carmen DeSadier, the former Chief of Corrections for the OPSO; Djuana Bierria, a Sergeant for the Orleans Parish Sheriff's Office; James LeBlanc, the Secretary of the DOC; Timothy Hooper, the Warden of Elayn Hunt Correctional Center; Chris Stinson, the Warden of Madison Parish Correctional Center; and LaSalle Management Company, L.L.C.[25]

On June 14, 2017, Plaintiff filed the Amended Complaint.[26] In the Amended Complaint, Carmen Desadier and Djuana Bierria are not named as Defendants.[27] On October 3, 2017, Plaintiff voluntarily dismissed his claims against Chris Stinson and LaSalle Management Company, L.L.C.[28]

On July 13, 2017, OPSO Defendants filed a motion to dismiss Plaintiff's Amended Complaint,[29] which Plaintiff opposed.[30] On March 29, 2018, the Court granted the motion to

---

[22] *Id*. at 3.

[23] *Id*.

[24] *Id*.

[25] Rec. Doc. 1 at 4.

[26] Rec. Doc. 16.

[27] *Id*. Chief Carmen Desadier and Captain Djuana Bierria are included in a list of defendants on page 8 of the First Amended Complaint; however, as their names appear nowhere else in the document, it appears the inclusion was in error.

[28] Rec. Doc. 35.

[29] Rec. Doc. 25.

[30] Rec. Doc. 26.

dismiss as to Plaintiff's Section 1983 claim based on *respondeat superior* liability, denied the motion as to all other claims, and granted Plaintiff leave to file a Rule 7(a)(7) reply as to Plaintiff's Section 1983 claims against OPSO Defendants in their individual capacities and to amend the complaint.[31]

On April 10, 2018, Plaintiff filed the Second Amended Complaint.[32] On April 30, 2018, OPSO Defendants filed the instant motion to dismiss.[33] On May 15, 2018, Plaintiff filed an opposition.[34] On June 20, 2018, the Court heard oral arguments on the instant motion to dismiss and took the matter under advisement.[35]

## II. Parties' Arguments

### A.    *OPSO Defendants' Motion to Dismiss*

In the motion to dismiss, OPSO Defendants argue that Plaintiff has failed to cure any of the deficiencies identified by the Court in its prior Order, which granted Plaintiff leave to amend the complaint; therefore, the OPSO Defendants assert that they are entitled to dismissal of all of Plaintiff's claims with prejudice.[36]

First, OPSO Defendants argue that Plaintiff has still failed to plead sufficient facts to overcome the defense of qualified immunity because, Plaintiff has failed to plead any new facts that show OPSO Defendants violated a clearly established constitutional right, or that OPSO

---

[31] Rec. Doc. 47.

[32] Rec. Doc. 48

[33] Rec. Doc. 50.

[34] Rec. Doc. 54.

[35] Rec. Doc. 60.

[36] Rec. Doc. 50-1 at 2.

Defendants' conduct was objectively unreasonable in light of any clearly established law. [37] OPSO Defendants contend that Plaintiff improperly characterizes that commitment order in which Judge Buras sentenced Plaintiff to serve one year in the custody of the DOC as an order setting a "scheduled release date." Furthermore, Defendants note that Plaintiff has not alleged that he had a scheduled release date.[38] OPSO Defendants point to Judge Buras's second order, where Judge Buras vacated her original sentence and resentenced Plaintiff to "credit for time served."[39] OPSO asserts that the case law relied upon by Plaintiff is distinguishable from the instant case because those cases relate to overdetention of an inmate beyond a scheduled release date or where formal charging documents were dismissed.[40] OPSO Defendants also note that Plaintiff was sentenced to the custody of the DOC, not to the custody of the OPSO, and that Plaintiff stayed in physical custody of the OPSO for 15 days, which OPSO Defendants argue was less than Plaintiff's original sentence of one year in the custody of the DOC.[41]

Next, OPSO Defendants contend that Plaintiff has provided no new facts to support his *Monell* allegations against Defendant Sheriff Gusman.[42] OPSO Defendants assert that Plaintiff merely added names of other defendants who were allegedly overdetained to the Second Amended Complaint, but that all those defendants were sentenced or released after Plaintiff's alleged overdetention.[43] OPSO Defendants allege that the jurisprudence is clear that to allege a pattern

---

[37] *Id.* at 3–6.

[38] *Id.* at 3.

[39] *Id.* at 4.

[40] *Id.* at 5.

[41] *Id.*

[42] *Id.* at 6.

[43] *Id.*

tantamount to official policy or accepted practice, "the Plaintiff must establish 'sufficiently numerous prior incidents.'"[44] OPSO Defendants assert that Defendant Sheriff Gusman could not have been put on notice of the risk of overdetention by incidents that occurred after Plaintiff was released.[45] Furthermore, OPSO Defendants contend that none of the overdetention incidents relied upon by Plaintiff are factually similar to the one at bar, and specifically that none of them involved a defendant that "had a DOC sentence, the duration of which he had not served in OPSO custody, and which the OPSO was found to have overdetained any person."[46] OPSO Defendants also reassert that none of these cases involve a defendant who was given credit for time served on a prior case, which according to OPSO Defendants, would violate Louisiana law.[47] Accordingly, OPSO Defendants argue, the claims against Sheriff Gusman in his official capacity should be dismissed.[48]

## B.      *Plaintiff's Arguments in Opposition to OPSO Defendants' Motion to Dismiss*

In opposition, Plaintiff asserts that the motion to dismiss should be denied. Plaintiff first asserts that the U.S. Constitution forbids indefinite detention and that the Fifth Circuit recognizes that there is a clearly established right to a timely release from prison.[49] Plaintiff characterizes the OPSO Defendants as having a policy of holding criminal defendants indefinitely. Plaintiff asserts

---

[44] *Id.* (quoting in part *Peterson v. City of Forth Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009)).

[45] *Id.*

[46] *Id.* at 7.

[47] *Id.*

[48] *Id.* at 24.

[49] Rec. Doc. 54 at 1.

that OPSO indefinitely detains defendants sentenced in Orleans Parish in OPP until the DOC sends a transfer request, even if the defendant was sentenced to time-served.[50]

First, Plaintiff argues that a "scheduled release date" is not a necessary element of an overdetention case and asserts that the Fifth Circuit has been clear that overdetention relates to a court-ordered sentence and not a release date determined by the jailor.[51] Plaintiff admits that there is no federal constitutional right to time served, but instead asserts that a person has a constitutional right not to be held longer than the term of a court-ordered sentence.[52]

Next, Plaintiff contests OPSO Defendants' argument that Plaintiff incorrectly interpreted the sentence issued by Judge Buras and further argues that when assessing a motion to dismiss, a court must give the plaintiff the benefit of reasonable inferences from the pleaded facts.[53] Plaintiff also states that his interpretation of Judge Buras's first order is supported by the fact that Judge Buras allegedly reached out to OPSO counsel and asked him to expedite Plaintiff's release.[54] According to Plaintiff, OPSO counsel agreed that Plaintiff should not have to serve time beyond DOC processing.[55] Plaintiff contends that OPSO Defendants appear to be arguing that Judge Buras

---

[50] *Id.*

[51] *Id.* at 5 (citing *Douthit v. Jones,* 619 F.2d 527, 532 (5th Cir. 1980); *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010); *Whirl v. Kern,* 407 F.2d 781, 791 (5th Cir.1968)).

[52] *Id.* at 6 (citing *Terry v. Hubert,* 609 F.3d 757 (5th Cir. 2010 *Douthit,* 619 F.2d 527 (5th Cir. 1980) *Whirl v. Kern,* 407 F.2d 781 (5th Cir.1968)).*; Sandin v. Conner,* 515 U.S. 472 (1995) *Shorts v. Batholomew*, 255 Fed Appx 46, *52 (6th Cir. 2007); *Davis v. Hall*, 375 F. 3d 703 (8th Cir. 2004))

[53] *Id.* at 6 (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)).

[54] *Id.* at 7.

[55] *Id.*

was "wrong about her own order," which Plaintiff states is an argument foreclosed by the Louisiana First Circuit Case, *Boddye v. La. Dept. of Corrections*.[56]

Next, Plaintiff argues that OPSO Defendants conflate what is necessary to allege a *Monell* pattern claim with what is necessary to plead one.[57] Plaintiff alleges that all Plaintiff needs to do is provide allegations that make Plaintiff's claim that there was a pattern of overdetention plausible and that proof of such a pattern would come through discovery.[58] However, even if the Second Amended Complaint does not sufficiently allege a pattern, Plaintiff argues that there are still three other mechanisms to establish Defendant Sheriff Gusman's liability: (1) personal involvement because Sheriff Gusman was allegedly informed of Plaintiff's detention, (2) official policy because according to Plaintiff, Sheriff Gusman had a policy of holding inmates in custody until DOC processed them, and (3) *respondeat superior* liability for the state law claims.[59]

Plaintiff also contends that the Supreme Court's decision in *Baker v. McCollan,* where the Supreme Court determined that the plaintiff's being wrongfully detained for three days was not unconstitutional, should not be considered because is not an overdetention case, but rather a case about law enforcement's failure to institute identification procedures.[60] Therefore, Plaintiff argues that *Baker* does not disturb the pattern that a constitutional violation occurs after a reasonable

---

[56] *Id.* (citing 175 So. 3d 437, 441 (La. Ct. App. 1st 2015)).

[57] *Id.* at 8.

[58] *Id.* (citing *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) and *Colle v. Brazos County, Tex.*, 981 F. 2d 237, 245 (5th Cir. 1993)).

[59] *Id.* at 9–10.

[60] *Id.* at 10–11.

period of overdetention, which Plaintiff argues, citing district court decisions outside of the Fifth Circuit, should not exceed 48 hours.[61]

Last, Plaintiff argues that even if all of OPSO Defendants' arguments succeed, including their qualified immunity defense, Plaintiff's request for declaratory and injunctive relief would remain.[62] Furthermore, Plaintiff contends that because OPSO Defendants did not challenge Plaintiff's state law claims, those claims should not be dismissed and that OPSO Defendants waived their right to assert qualified immunity as to those state-law claims.[63]

### III.  Legal Standard

*A.      Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[64] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[65] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[66] "Factual allegations must be enough to raise a right to relief above the

---

[61] *Id.* at 11 (citing *Powell v. Barrett*, 376 F. Supp. 2d 1340, 1354 (N.D. Ga. 2005) and *Barnes v. District of Columbia*, 793 F. Supp. 2d 260 (D.D.C. 2011)).

[62] *Id.* at 11–12 (citing H*arlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 849 (5th Cir. 1991)).

[63] *Id.*

[64] Fed. R. Civ. P. 12(b)(6).

[65] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[66] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

speculative level."[67] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[68]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[69] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[70] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[71] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[72] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[73] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[74] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[75] If factual allegations are insufficient to raise a right to relief above the

---

[67] *Twombly*, 550 U.S. at 556.

[68] *Id.* at 570.

[69] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[70] *Iqbal*, 556 U.S. at 677–78.

[71] *Id.* at 679.

[72] *Id.* at 678.

[73] *Id.*

[74] *Id.*

[75] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[76]

## B.    *Legal Standard on Qualified Immunity*

To plead a Section 1983 claim, Plaintiff is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[77]

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[78] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[79] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[80] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[81]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[82] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

---

[76] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[77] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[78] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[79] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[80] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[81] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[82] 533 U.S. 194 (2001).

conduct violated a constitutional right?"[83] Part two inquires into whether the allegedly violated

right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted."[84] The Court does not have to address these two questions

sequentially; it can proceed with either inquiry first.[85]

"If the defendant's actions violated a clearly established constitutional right, the court then

asks whether qualified immunity is still appropriate because the defendant's actions were

'objectively reasonable' in light of 'law which was clearly established at the time of the disputed

action.'"[86] Officials "who reasonably but mistakenly commit a constitutional violation are entitled

to immunity."[87]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's

pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[88] "Thus,

a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the

court to draw the reasonable inference that the defendant is liable for the harm he has alleged and

that defeat a qualified immunity defense with equal specificity."[89] After the district court

determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule

on the immunity defense without further clarification of the fact,' it may issue a discovery order

---

[83] *Id.* at 201.

[84] *Id.* at 202.

[85] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[86] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

[87] *Williams*, 180 F.3d at 703 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

[88] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

[89] *Id.* at 645.

'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[90]

## IV. Analysis

### A.    *Whether OPSO Defendants Are Entitled to Qualified Immunity*

OPSO Defendants assert they are entitled to qualified immunity as to Plaintiff's Section 1983 claim against them in their individual capacities because Plaintiff has failed to plead any new facts that show OPSO Defendants violated a clearly established constitutional right, or that OPSO Defendants' conduct was objectively unreasonable in light of any clearly established law. Plaintiff, in turn, argues that OPSO Defendants are not entitled to qualified immunity because OPSO Defendants violated Plaintiff's clearly established right to a timely release from prison.

As the Court explained in its prior order on OPSO Defendants' first motion to dismiss, pursuant to *Saucier v. Katz*, the facts alleged must show the officer's conduct violated a constitutional right, and the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[91] In *Kinney v. Weaver*, the Fifth Circuit explained the standard requiring that the law be "clearly established" to defeat qualified immunity:

> [A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, for example, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful. The central concept is that of "fair warning": The law can be clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.[92]

---

[90] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)).

[91] 533 U.S. at 202.

[92] 367 F.3d 337, 350 (5th Cir. 2004).

Accordingly, a case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate."[93]

Plaintiff argues that the right to timely release from prison is clearly established. In support, Plaintiff cites *Whirl v. Kern*, a Fifth Circuit case.[94] In *Whirl*, the plaintiff was arrested on suspicion of felony theft and indicted by a grand jury.[95] Approximately two months after the plaintiff's arrest, the indictments pending against the plaintiff were dismissed.[96] Notice of the dismissal was sent to the sheriff's office, but the sheriff testified that "he was not apprised of these proceedings."[97] As a result, the plaintiff remained in jail for almost nine months after all charges against him were dismissed.[98] The plaintiff brought claims against the sheriff for false imprisonment under Texas law and for deprivation of civil rights under Section 1983.[99] Following a trial, a jury returned a verdict for the sheriff.[100] On appeal, the Fifth Circuit reversed the jury verdict reasoning that a jailer has "the duty to effect [the inmate's] timely release."[101] The Fifth Circuit further stated, "Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint."[102] However, the Fifth Circuit recognized that a jailer's "duty to his prisoner is not breached until the expiration of a

---

[93] *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).

[94] 407 F.2d 781 (5th Cir. 1968).

[95] *Id*. at 785.

[96] *Id*.

[97] *Id*.

[98] *Id*.

[99] *Id*.

[100] *Id*.

[101] *Id*. at 792.

[102] *Id*.

reasonable time for the proper ascertainment of the authority upon which his prisoner is detained."[103] Based on the facts of the case, the Fifth Circuit determined that the sheriff's ignorance for nine months after the termination of all proceedings against the plaintiff was an unreasonable time, and therefore held that the district court should have granted plaintiff's motion for directed verdict as to liability.[104]

Approximately ten years after *Whirl*, in *Baker v. McCollan*, the Supreme Court addressed whether the plaintiff's erroneous detention violated his due process rights.[105] In *Baker*, the plaintiff was stopped for a routine traffic violation and arrested on a facially valid warrant.[106] It was later discovered that the warrant was intended for the plaintiff's brother, who had procured a duplicate of the plaintiff's driver's license and represented himself to be the plaintiff during a prior booking.[107] As a result, the plaintiff was wrongfully detained for three days.[108] The Supreme Court held that the sheriff had not violated the plaintiff's due process rights, reasoning that "a sheriff executing a valid arrest warrant is not required by the Constitution to investigate independently every claim of innocence . . . Nor is the official maintaining custody of the person named in the warrant required by the Constitution to perform an error-free investigation of such a claim."[109]

In *Douthit v. Jones*, the Fifth Circuit held that "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a

---

[103] *Id.*

[104] *Id.* at 792–93.

[105] 443 U.S. 137 (1979).

[106] *Id.* at 143.

[107] *Id.*

[108] *Id.*

[109] *Id.* at 145–46.

deprivation of due process."[110] However, the Fifth Circuit noted that whether a jailer violates the Due Process Clause by unduly detaining an individual depends on "the context of this case."[111]

Recently, in *Jauch v. Choctaw County*, the Fifth Circuit considered whether detention of a person for 96 days after arrest, without ever being brought before a judge for a bail hearing, was an unconstitutional deprivation of due process.[112] In *Jauch*, the county had a policy of holding a person without an arraignment or bond hearing until the court that issued the warrant's next term convened.[113] The Fifth Circuit held that "indefinite pre-trial detention without an arraignment or other court appearance" violates the detainee's Fourteenth Amendment right to due process.[114] Furthermore, the Fifth Circuit determined that the sheriff was not entitled to qualified immunity because "[t]he right at issue [] was clearly established and its contours 'sufficiently clear' that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior to bringing them before a judge."[115]

In this case, Plaintiff alleges he was unconstitutionally detained by the OPSO for 13 days.[116] Plaintiff alleges that OPSO Defendants had a duty to release Plaintiff and violated that duty by detaining him and then transferring him to the DOC. As noted above, in *Whirl*, the Fifth Circuit recognized that a jailer's "duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is

---

[110] *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980), *reh'g denied* 641 F.2d 345, 346 (5th Cir. 1981).

[111] *Id.*

[112] 874 F.3d 425, 427 (5th Cir. 2017).

[113] *Id.* at 430.

[114] *Id.* at 432, 436.

[115] *Id*. at 436.

[116] Plaintiff alleges that he was physically in the custody of OPSO from June 30, 2016 until July 12, 2016. Rec. Doc. 48 at 3–4. Depending on how the days are counted this would be either 12 or 13 days.

detained."[117] Plaintiff alleges that jailers have up to 48 hours to process an inmate's release from custody, and any period exceeding 48 hours is unreasonable.[118] Plaintiff contends that *Baker*, where the Supreme Court determined that the plaintiff's being wrongfully detained for three days was not unconstitutional, is not an overdetention case and should not be considered.[119] Regardless of whether *Baker* is appropriately classified as an overdetention case, the Court must examine the specific facts of this case, as the Fifth Circuit has recognized that a determination of whether a jailer violates the Due Process Clause by unduly detaining an individual depends on "the context of this case."[120]

Looking at the facts of this case in context, Plaintiff has not raised any new facts in the Second Amended Complaint, but merely re-alleges those contained in the Amended Complaint.[121] Plaintiff has still failed to sufficiently allege that OPSO Defendants acted unreasonably in light of clearly established law. Plaintiff reasserts his allegation that on June 30, 2016, Arcuri, an attorney for OPSO, emailed OPSO Defendants to request "that the Sheriff expedite processing for [Plaintiff's] release."[122] Plaintiff continues to aver that Arcuri's email to OPSO Defendants stated that Plaintiff "really shouldn't have to actually serve any time once DOC processes it" and that Plaintiff's sentence was "one year DOC credit for time served from 2008-present."[123] Plaintiff further re-alleges that Sheriff Gusman responded to Arcuri's email within an hour and a half,

---

[117] 407 F.2d at 792.

[118] Rec. Doc. 54 at 11.

[119] Rec. Doc. 54 at 10–12.

[120] *Douthit*, 619 F.2d at 532.

[121] Rec. Doc. 48 at 3.

[122] *Id.*

[123] *Id.*

stating that once Plaintiff entered a plea and was sentenced, they could have DOC compute his time.[124] That same morning, Plaintiff avers, Captain Holt responded that he forwarded Arcuri's email to Amacker, the DOC Classifications Deputy for OPSO.[125] Plaintiff reasserts his prior allegation that Amacker responded that he would send Plaintiff's "packet" to the DOC the following day, which was July 1, 2016.[126] According to the Second Amended Complaint, the DOC sent an inmate transfer request to OPSO on July 7, 2016, setting a transfer date of July 12, 2016.[127]

Taking Plaintiff's allegations as true, it appears that on June 30, 2016, OPSO Defendants were aware that Plaintiff had been sentenced to one year in the custody of the DOC, but that Plaintiff would be given credit for time he previously served in DOC custody and would not have to serve any time once the DOC processed Plaintiff's release. To expedite Plaintiff's release, Plaintiff alleges that Amacker then sent Plaintiff's paperwork to DOC the following day. The DOC then waited until July 7, 2016, to send an inmate transfer request to OPSO. Therefore, considering these allegations against OPSO, it appears that any delay in Plaintiff's release was caused by the DOC, not the OPSO. As such, Plaintiff has not plead any facts in the Second Amended Complaint showing that OPSO Defendants acted unreasonably in light of any clearly established law. Plaintiff has not carried his burden of alleging facts that would overcome the OPSO Defendants' qualified immunity defense.

Accordingly, the Court will dismiss Plaintiff's Section 1983 claims for monetary relief against the OPSO Defendants in their individual capacities. However, as the Fifth Circuit has held,

---

[124] *Id.* at 3.

[125] *Id.* at 4.

[126] *Id.*

[127] *Id.* at 9.

neither qualified nor absolute immunity extends to claims for injunctive or declaratory relief;[128] therefore, Plaintiff's 1983 claims against OPSO Defendants for declaratory and injunctive relief remain.

### B. Section 1983 Claim Pursuant to Monell Liability

OPSO Defendants argue that Plaintiff has raised no new facts in the Second Amended Complaint, which, if taken as true, establish a pattern or practice sufficient to support a *Monell* claim against Sheriff Gusman. Furthermore, OPSO Defendants argue that Plaintiff points to incidents that are not factually similar to this case or impermissibly relies on incidents that occurred after the conduct giving rise to this case. Plaintiff, in turn, argues that he has sufficiently pleaded a pattern or practice to support a *Monell* claim insofar as OPSO Defendants acknowledge that Plaintiff attempted to allege a pattern of overdetention, which is sufficient to support a claim for *Monell* liability that is plausible on its face. Further, Plaintiff argues that OPSO does have an official policy in place, which serves to overdetain defendants.

With respect to a Section 1983 claim against an entity, the Supreme Court held in *Monell v. Department of Social Services of City of New York*, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983."[129] Moreover, "[a] § 1983 plaintiff . . . may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'"[130] In order to establish a Section 1983 claim

---

[128] *Sinclair v. Fontenot*, 216 F.3d 1080 (5th Cir. 2000) (citing *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991)).

[129] 436 U.S. 658, 694 (1978).

[130] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986).

against a municipality, the official policy must be the cause and moving force of the constitutional violation.[131] Finally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[132] A pattern can be considered tantamount to an official policy if the pattern is "so common and well-settled as to constitute a custom that fairly represents municipal policy."[133] The incidents relied upon must have occurred prior to the alleged misconduct and "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[134] Last, the prior incidents must point to the specific violation alleged in the case at bar.[135]

Plaintiff contends that under Sheriff Gusman the OPSO has a pattern of overdetaining inmates.[136] In support of these allegations, Plaintiff cites numerous cases where he contends the OPSO overdetained inmates.[137] In the motion to dismiss, OPSO Defendants contend that Plaintiff has not plead a pattern because the incidents relied upon by Plaintiff all occurred after Plaintiff's alleged overdetention and because they are factually dissimilar.[138]  In opposition, Plaintiff does not contests this, but rather argues that the incidents Plaintiff relies upon merely need to provide

---

[131] *Monell*, 436 U.S. at 694.

[132] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

[133] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[134] *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc).

[135] *Peterson*, 588 F.3d at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir.2005)).

[136] Rec. Doc. 48.

[137] *Id.* at 11–15.

[138] Rec. Doc. 50-1 at 6–7.

plausibility to Plaintiff's claims of overdetention and that OPSO Defendants are relying upon the higher standard to prove a *Monell* pattern, rather than the standard to merely plead a *Monell* pattern.[139]

In the Second Amended Complaint, Plaintiff also alleges that Sheriff Gusman had an official policy, which leads to overdetention of criminal defendants. As explained above, Plaintiff alleges that when a defendant in Orleans Parish is sentenced to the DOC, OPSO takes custody of the defendant and drives a packet of the defendant's paperwork to Elayn Hunt Correction Center outside Baton Rouge.[140] Then, according to Plaintiff, OPSO maintains custody over this defendant until the DOC sends a transfer request for the defendant and DOC calculates their sentences.[141] Plaintiff alleges that this policy does not deviate when a defendant is entitled to immediate release, as Plaintiff alleges that the OPSO waits indefinitely until the DOC informs OPSO that the defendant should be transferred.[142]

To establish a claim for *Monell* liability, Plaintiff must demonstrate that a policy or custom was the cause of the constitutional violation.[143] Plaintiff asserts that the misconduct in this case, here Plaintiff's alleged overdetention in OPSO, was caused by the policies, practices, and customs of OPSO , where Plaintiff alleges, OPSO retains custody of defendants sentenced in Orleans Parish until DOC requests the defendant's transfer. Plaintiff asserts that this policy is the driving force behind the constitutional violation as Plaintiff alleges he should have been immediately freed.

---

[139] Rec. Doc. 54 at 8.

[140] *Id.*

[141] *Id.*

[142] *Id.*

[143] *Monell*, 436 U.S. at 694.

Further, Plaintiff's identification of other inmates who were overdetained by OPSO, even though they occurred after Plaintiff's alleged overdetention, grant more plausibility to Plaintiff's claim of overdetention. Taking Plaintiff's factual allegation as true, Plaintiff has sufficiently alleged facts to show that an official policy of the OPSP caused Plaintiff's alleged overdetention. Accordingly, the Court will deny OPSO Defendants' motion to dismiss as to Plaintiff's *Monell* claim against Sheriff Gusman.

### C.  *State-Law Claims*

In the Second Amended Complaint, Plaintiff also brings state-law claims against the OPOS Defendants for alleged violations of his state constitutional right to due process and liberty, false imprisonment, negligence, and failure to intervene.[144] Plaintiff also brings a claim for indemnification against Sheriff Gusman under Louisiana law.[145] In the Court's prior Order on OPSO Defendants' motion to dismiss Plaintiff's Amended Complaint, the Court denied the motion to the extent it sought dismissal of Plaintiff's state-law claims, as it was unclear whether all federal claims would be dismissed on the basis of qualified immunity.[146] In the instant motion to dismiss, OPSO Defendants seek dismissal of all claims against OPSO Defendants,[147] but do not address Plaintiff's state-law claims. As such, the Court will deny without prejudice OPSO Defendants' motion to dismiss to the extent it seeks dismissal of the state law claims.

## V. Conclusion

Because Plaintiff has not carried his burden of alleging facts that would overcome the OPSO Defendants' qualified immunity defense, the Court hereby dismisses Plaintiff's Section

---

[144] Rec. Doc. 48 at 21–22.

[145] *Id.* at 24.

[146] Rec. Doc. 47 at 32–33.

[147] Rec. Doc.

1983 claims for monetary relief against OPSO Defendants in their individual capacities. However, Plaintiff's Section 1983 claims for declaratory and injunctive relief against OPSO Defendants in their individual capacities remain, as qualified immunity does not extend to claims for injunctive or declaratory relief. Furthermore, because Plaintiff has alleged facts, which if taken as true, make it plausible that OPSO Defendants engaged in a policy of unconstitutionally over-detaining persons and that policy was the driving force behind the alleged violation of Plaintiff's constitutional right, the Court hereby denies OPSO Defendants' motion to dismiss, as to Plaintiff's *Monell* claim. Last, the Court denies without prejudice OPSO Defendants' motion to the extent it seeks dismissal of the state-law claims.

Accordingly,

**IT IS HEREBY ORDERED** that OPSO Defendants' Motion to Dismiss **IS GRANTED IN PART** to the extent that the Court **DISMISSES** Plaintiff's Section 1983 claims for monetary relief against OPSO Defendants in their individual capacities.

**IT IS FURTHER ORDERED** that OPSO Defendants' Motion to Dismiss **IS DENIED IN PART** as to Plaintiff's claims for declaratory and injunctive relief against OPSO Defendants in their individual capacities and as to Plaintiff's *Monell* claim against Sheriff Gusman.

**IT IS FURTHER ORDERED** that OPSO Defendants' Motion to Dismiss **IS DENIED WITHOUT PREJUDICE IN PART** as to Plaintiff's state-law claims against OPSO Defendants.

**NEW ORLEANS, LOUISIANA,** this ___14th___ day of August, 2018.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**