**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| RODNEY GRANT, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 17-cv-2797-NJB-DMD |
| ) | |
| MARLIN GUSMAN, *et al*., ) | |
| ) | |
| Defendants. ) | |

**Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment**
**Against DOC Defendants**

| Fact Number | Fact | DOC Defendants' Response |
|---|---|---|
| 1 | In 2012, the DOC's Six Sigma investigation found an average of 2,252 cases of immediate release per year with an average of 71.7 overdue days per case. This is inmates being held past their legal release date.[1] | |
| 2 | The 2012 Six Sigma project found an average time from conviction to completion of time calculation of 110 days.[2] | |
| | In 2012, Secretary LeBlanc learned that thousands of people in the custody of the Department of Corrections were being held past their release date.[3] | |
| 3 | The DOC found that in 2017 it had an average of 200 inmates per month held an average of 49 days past the end of their sentence.[4] | |

---

[1] Ex. I (DOC 30b6 Deposition) at 20 ("Q. So in 2012, the DOC's Six Sigma investigation found an average of 2,252 cases of immediate release per year with an average of 71.7 overdue days per case; is that right? A. Yes. Q. This is inmates being held past their legal release date, correct? A. Yes.") *See also* Ex. P at RFA 69, 70; Ex. A at 18.

[2] Ex. I at 28 ("Q. So, in other words, the average length of the process from the time an inmate gets convicted and sentenced to the time that the DOC actually calculates their time is an average of 110 days, correct? A. At that time, correct."); Ex. A at 4; Ex. P at RFA 67 ("It is admitted that the 2012 Lean Six Sigma project found an average time in May of 2012 from conviction to completion of time calculation of 110 days").

[3] Ex. H (Dep. of Secretary LeBlanc) at 48 ("Q. But you learned that thousands of people in the custody of the Department of Corrections for whatever reason were being held past their release date, correct? A. I did.")

[4] Ex. I at 34, 38 ("Q. So it's a true statement that the DOC found that in 2017 it had an average of 200 inmates per month held an average of 49 days past the end of their sentence, correct? A. Yes."); Ex. P at RFA 73.

| | | |
|---|---|---|
| 4 | Prior to 2017, there was no formal training program for time computation.[5] | |
| 5 | Rodney Grant was incarcerated from 2008 to 2015.[6] | |
| 6 | On June 30, 2016, Judge Camille Buras sentenced Rodney Grant to one year at the Department of Corrections, with "credit for time served from 9-14-08 to 2015."[7] | |
| 7 | On July 7, 2016, the DOC received paperwork regarding Rodney Grant, including his sentence.[8] | |
| 8 | On July 8, 2016, the DOC was told by Probation & Parole that Rodney Grant's conviction was "not a violation of the subject's current term of supervision."[9] | |
| 9 | On July 12, 2016, the DOC took custody of Rodney Grant from OPSO.[10] | |
| 10 | On July 18, 2016, Judge Buras vacated Rodney Grant's previous sentence and resentenced him to "credit for time served."[11] | |
| 11 | On July 26, 2016, the DOC did Rodney Grant's time computation.[12] | |
| 12 | Rodney Grant was released from custody on July 27, 2016.[13] | |
| 13 | Rodney Grant's jail credit was thousands of days longer than his sentence.[14] | |

[5] Ex. J (Dep. of DOC 30b6 Representative) at 21 ("[P]rior to 2017, there was no formal training program for time computation. It was *ad hoc* people working with their supervisors and learning as they go.")
[6] Ex. O at RFA 1.
[7] Ex. O at RFA 3.
[8] Ex. O at RFA 8; Ex. N at 44.
[9] Ex. O at RFA 16.
[10] Ex. O at RFA 20.
[11] Ex. O at RFA 22; Ex. U at 2.
[12] Ex. N at 82-83 ("Q. And they do calculate his release date on the 26th, correct? A. Correct. Q. And they see that he is eligible for immediate release, correct? A. Correct.")
[13] Ex. O at RFA 34.
[14] Ex. N at 87 ("Q. That's why we get a negative must serve date, because his jail credit is thousands of days longer than his sentence, correct? A. Correct.")

Respectfully submitted,

/s/ William Most_____
WILLIAM MOST, La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com