UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RODNEY GRANT** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER: 17-02797** |
| | * | |
| **MARLIN GUSMAN** | * | **SECTION "G"** |
| **CARMEN DESADIER** | * | **JUDGE JOLIVETTE BROWN** |
| **SIDNEY HOLT** | * | |
| **DJUANA BIERRIA** | * | **MAGISTRATE "3"** |
| **JAMES LEBLANC** | * | **JUDGE DOUGLAS** |
| **TIMOTHY HOOPER** | * | |
| **CHRIS STINSON** | * | |
| **LASALLE MANAGEMENT COMPANY** | * | |
| **JOHN DOES 1-10** | * | |
| **ABC INSURANCE COMPANIES 1-10** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AGAINST OPSO DEFENDANTS**

**MAY IT PLEASE THE COURT:**

The Plaintiff misrepresents numerous facts to the Court and ignores the glaring impediment to all of his claims against the OPSO defendants: that the period of overdetention complained of is within the valid July 18, 2016 sentence which he agreed. Because his incarceration between June 30, 2016 and July 12, 2016 were all caused by his July 18, 2016 sentence, any incarceration-related claims are barred by law and must be dismissed. Additionally, ignoring the *Heck* issue for the sake of argument, there are numerous disputed issues of fact, most importantly, the OPSO defendants dispute whether the plaintiff served a year on the offense for which he pled guilty.

**I.    Plaintiff's claims against OPSO are all *Heck* barred.**

Because of the steps taken by the plaintiff and his counsel in this case, it is factually different than all of those overdetention matters referenced by the plaintiff in which *Heck*

1

preclusion was denied or deemed "unavailing." None of those cases involved a prisoner whose sentence was vacated and who subsequently accepted a sentence which encompassed the alleged period of overdetention. Locating even a district court case with such specifically similar circumstances is obviously difficult. However, the Ninth Circuit recently addressed an identical scenario in two separate opinions, and as discussed below, their holding is consistent with longstanding jurisprudence related to *Heck* and *Heck's* logic. Importantly, while the Court has considered whether Heck applies to DOC in response to its Motion to Dismiss[1], the OPSO defendants did not argue *Heck* at the Motion to Dismiss stage,[2] and thus this Court has never considered whether Heck applies to alleged overdetention by OPSO[3] between June 30 and July 12, 2016.

On July 18, 2016, while in the physical custody of DOC, Mr. Grant's matter went before Judge Buras. Judge Buras vacated her original, June 30, 2016 sentence and resentenced him to "credit for time served," a sentence which includes every day he spent incarcerated between June 27, 2016 and July 18, 2016.[4] Mr. Grant understood that at the time Judge Buras vacated his first sentence, the judge "took [the sentence] back or whatever, so that there is no sentence."[5] Mr. Grant's sentence under Case No. 417717 "H" remains the "credit for time served" agreed to and entered on July 18, 2016, six days after Mr. Grant left OPSO custody never to return on these charges.

The decision by Mr. Grant to accept a sentence spanning every day from June 27, 2016 through July 18, 2016 was one which caused his imprisonment on every one of those dates. As such, Mr. Grant is now precluded from making an incarceration-related attack of any of those

---

[1] *See* R. Doc. 49.
[2] *See* R. Doc. 25.
[3] *See* R. Doc. 47.
[4] *See* R. Doc. 136-10, Sentencing Transcript of Rodney Grant.
[5] R. Doc. 136-5, Deposition of Rodney Grant, p. 38:19-24.

dates as being those on which he was "falsely imprisoned" or "overdetained." Any such finding is an attack on Mr. Grant's July 18 sentence, and would be improper under the law.

Given plaintiff's enjoyment of graphical depictions in his memoranda, it is appropriate to use the only relevant graphic which applies to this case.



Mr. Grant's June 30, 2016 sentence is an absolute nullity. *U.S. v. Castrelllon*, 956 F.2d 1165 (7th Cir. 1982)(citing *United States v. Barnes*, 948 F.2d 325, 330 (7th Cir.1991). "A sentencing court, therefore, must begin the resentencing hearing with a 'clean slate. . .'" *Id*. Whether parties raised issues during the hearing on the original, now vacated, sentence is irrelevant. *Id*., citing *United States v. Shaw*, 883 F.2d 10, 12 (5th Cir.), *cert. denied, sub nom. Baker v. United States,* 493 U.S. 983 (1989).

Mr. Grant's July 18, 2016 sentence of "time served" includes <u>every single day served between June 27, 2016 and July 18, 2016</u>. Courts have addressed section 1983 claims involving defendants who bring incarceration-related claims surrounded a vacated sentence, but who have also subsequently received a different sentence for the same offense. The Ninth Circuit recently addressed this very issue in *Taylor v. County of Pima*, 913 F.3d 930 (9th Cir. 2019) *rehearing denied and rehearing en banc denied* 933 F.3d 931 (9th Cir. 2019) *docketed petition for cert. 12/12/19*. Following the court vacating a 1972 conviction for which Taylor served 42 years, he

sought incarceration-related damages in a section 1983 lawsuit. *Id*. at 935. However, following his 1972 sentence being vacated, Taylor pled no contest to resolve those same charges in 2013. *Id*. The Court found that *Heck* precluded Taylor from stating a section 1983 claim "if a judgment in his favor 'would necessarily imply the invalidity of his [2013] conviction or sentence.'" *Id.* (citing *Heck* at 487, 114 S.Ct. 2364). While Taylor alleged that the initial 1972 sentence was "plagued by constitutional violations and that those errors initially caused his incarceration," the Court noted "[c]ritically, however, all of the time that Taylor served in prison is supported by the valid 2013 state-court judgment." *Id.* "The state court accepted the plea agreement and sentenced Taylor to time served. For that reason, even if Taylor proves constitutional violations concerning the 1972 conviction, he cannot establish that the 1972 conviction caused any incarceration-related damages. <u>As a matter of law, the 2013 conviction caused the entire period of his incarceration</u>." *Id.* (emphasis added).  To illustrate what occurred in *Taylor*:



Mr. Grant's situation, involving a later sentence which encompasses the period of time during which incarcerated-related harm is alleged, is identical to that in *Taylor*.  In response to the critical dissent in *Taylor*, the Court again clarified its logic in *Roberts v. City of Fairbanks*, 2020 WL 356959 (9th Cir. 2020), noting that *Taylor* did not bar claims for *all* damages from his initial conviction, simply incarceration-related ones. "We expressly held there that Heck did not

4

bar Taylor from seeking damages related to the 1972 conviction—just that Taylor could not seek *incarceration-related* damages, because the valid 2013 conviction "[a]s a matter of law ... caused the entire period of his incarceration." *Id*. at 7 (emphasis theirs)( citing *Taylor*, 913 F.3d at 935 and *Cf. Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014)).  The Court stressed that last point, stating, "we called the fact that the 2013 conviction supported his entire period of incarceration 'critical[ ].'" *Id.*  It should be noted that *Heck* preclusion not only applies to plaintiff's federal claims, but also applies to all of the plaintiff's state law claims related to his alleged wrongful imprisonment.  See *Restrepo v. Fortunato*, 556 So. 2d 1362 (La. App. 5 Cir.), *writ denied*, 560 So. 2d 11 (1990).  *See also Thomas v. Pohlman*, 681 Fed.Appx. 401 (5th Cir. 2017)(any state law claim surviving *Heck* barring must have a separate factual basis which does not challenge the validity of conviction and sentence; allowing excessive force claim but precluding false arrest. Mr. Grant's July 18, 2016 sentence to "time served" (the exact sentence Taylor received in 2013) covered the entire period from the date of his June 27 arrest until his July 18 plea. Thus, "as a matter of law," his July 18, 2016 sentence "caused the entire period of his incarceration." *Taylor*, 933 F.3d at 935.

  II.  **The Plaintiff's Memorandum is littered with misstatements of fact and law.**

  a.  **The plaintiff did not spend a year in OPSO custody.**

In his Memorandum, the plaintiff goes to great lengths to argue that he has obtained some admission from the Sheriff that the plaintiff was "eligible for immediate release."  However, in response to a generic, non-plaintiff specific question, Sheriff Gusman clearly stated that "[i]f they spent a year <u>in our facility</u> and they got sentenced to a year, and they got credit for time served, it would seem that – that year is complete, yes." [6] (emphasis added).  It is undisputed that

---

[6] *See* Plaintiff's Memorandum in Support, p. 14, FN99 (citing Depo of Sheriff Gusman at 67:7-68:3).

the plaintiff did not serve a year in the Orleans Justice Center (or any Orleans Parish Jail).[7] Plaintiff admits he did not spend 350 days or more in Orleans Parish custody between 2008-2015, the dates on which he alleges he was provided with time served.[8]  Even if one adds the entirety of the period between his booking on June 27, 2016 and his release from OPSO on July 12, 2016,[9] he did not serve one year in Orleans Parish custody.   As the plaintiff cannot even establish that he served all of his time, and that he had at least 15 additional days to serve until he reached 365 days, he cannot succeed on any false imprisonment claim.   More importantly, as already discussed, the plaintiff is barred from raising any claims, as the plaintiff's imprisonment was caused by his July 18, 2016 sentence of "credit for time served," a period which covers all of the days on which he was allegedly overdetained.  As such, he is necessarily precluded from claiming false imprisonment.

When Judge Buras ordered credit for time served from 2008-2016, the Sheriff's Office was reasonably expected to award credit in accordance with Louisiana law.  La. C.Cr.P. art. 880(E) states: [a] defendant shall not receive overlapping jail credit, except in the case of concurrent sentences and then <u>only for time spent in jail on the instant felony</u>."  (emphasis added).  Louisiana courts have likewise been consistent in stating a "defendant is entitled to credit for time served against the sentence for the instant offense <u>if the time he served before the imposition of this sentence has not been credited against any other sentence</u>." (emphasis added) *State v. Denomes*, 95-1201 (La.App. 1. Cir. 5/10/96) 674 So.2d 465 at 472; *writ denied* 683 So.2d 266 (La. 1996), *citing State v. Goodjoint,* 26,246 (La.App. 2nd Cir. 8/17/94), 641 So.2d 730, 731; *see also State v. Norris*, 649 So. 2d 160, 162 (La. App. 2nd Cir. 1995); *State v.*

---

[7] *See* R. Doc. 136-7, p.3 ( Defendant in custody of LA-DOC INCARCERATION pursuant to an Iberia Parish Arrest from 2008-2015.)
[8] *See* R. Doc. 136-16, Plaintiff's Responses to Discovery, pp. 9-10, Request for Admission No. 4.
[9] *See* R. Doc. 136-16, Plaintiff's Responses to Discovery, p. 10, Req's for Admission Nos. 4-5.

6

*Williams*, 643 So. 2d 284, 286 (La. App. 2nd Cir. 1994); *State v. Green*, 546 So. 2d 348, 350 (La. App. 3rd Cir. 1989).

The plaintiff has stated that: 1) he has no evidence sufficient to admit or deny that he spent no time in Orleans Parish custody between 2008-2015[10]; 2) he did not spend 350 days or more in the custody of the Orleans Parish Sheriff's Office between 2008 and 2015[11]; 3) he was incarcerated between 2008-2015 in DOC for an offense committed in Iberia Parish[12]; 4) he was booked under Case No. 417717 "H" on June 27, 2016[13]; and, 5) he was released from OPSO on July 12, 2016.[14] No mathematical calculation can possibly result in a determination that Rodney Grant spent 1 year in custody on the instant felony (the Orleans Parish burglary) between the years of 2008 and present, which is the only time for which he could legally receive credit under La. C.Cr.P. 880(E). The plaintiff cannot reasonably argue that the Judge's sentence of credit for time served from 2008-2015, which contains no reference to applying credit to a different felony in violation of La. C.Cr.P. art. 880(E), was meant to apply to time which could not be legally credited to him.

In reality, the plaintiff's alleged overdetention is not based upon imprisonment beyond the end of a sentence, because he has no facts to prove when his sentence ended. The plaintiff repeatedly suggests that Judge Buras "issued a sentencing order that was to result in an immediate release." However, the evidence he cites to is a July 25, 2016 email from Judge Buras to the Department of Corrections – an email sent 13 days after he was released from OJC,

---

[10] See R. Doc. 136-16, Plaintiff's Responses to Discovery, pp. 9, Request for Admission No. 3.
[11] See R. Doc. 136-16, Plaintiff's Responses to Discovery, pp. 9-10, Request for Admission No. 4.
[12] See R. Doc. 136-7, p.3 ( Defendant in custody of LA-DOC INCARCERATION pursuant to an Iberia Parish Arrest from 2008-2015.)
[13] See R. Doc. 136-16, Plaintiff's Responses to Discovery, pp. 9-10, Request for Admission No. 4 (Second No. 4).
[14] See R. Doc. 136-16, Plaintiff's Responses to Discovery, pp. 10, Request for Admission No. 5.

7

and which was not sent to any OPSO staff.[15]   He can provide no evidence that Judge Buras told or ordered OPSO to release the plaintiff immediately.

Plaintiff has further provided no legal authority for his suggestion that he has a right to have his time immediately calculated.  He has provided no legal authority for his suggestion that a sentence or release date is calculated by an inmate, his attorney, or any authority other than the legal custodian.  He has provided no factual basis of his alleged "release date" or the "completion of his sentence."  He has provided no expert testimony opining that Mr. Grant's calculations were consistent with his own. Furthermore, as examined in *Cannady v. Clay County,* discussed in subsection II(b) of this memorandum, plaintiff can point to no legal authority by which the Sheriff can simply release a DOC inmate, or even to calculate his release date, and thus the Sheriff cannot be held liable.  He can also point to no legal authority by which the Sheriff has a duty to immediately calculate a sentence and transfer him to DOC, and as set forth in subsection II(c) of this memorandum, is actually set by Louisiana statute.

      b.      **The plaintiff's policy arguments all rest upon a necessary expansion of the law by this Court.**

The plaintiff alleges that OPSO "chose" not to release someone after the agency knows an individual has served more time than his sentence; "chose" to drive paperwork to DOC once per week, and "chose" to wait indefinitely to send that person to DOC.  The legal logic surrounding these claims is unsupported by any case, and requires this Court to expand the law in order for him to prevail.  While plaintiff cites numerous cases of "overdetention" leading to constitutional violations, every one of plaintiff's references to "expired sentences" are references to jurisprudence dealing with detention beyond <u>actual expired sentences</u> in other cases.  Likewise, any of the plaintiff's many references to his "release date" or "end of sentence" are

---

[15] *See.* R. Doc. 129-22.

unsupported by any evidence, as it is undisputed that the plaintiff was not given a release date by Judge Buras, nor she declare his sentence ended on any date.[16] Instead, plaintiff's references to his "release date" or his "end of sentence" are something the plaintiff is creating based on his own interpretation of facts and law, and they require a finding that the Sheriff and DOC should have violated La. C.Cr.P. art. 880(E) in order to be true. All the cases cited by the plaintiff are directly distinguishable from the facts at hand.

The plaintiff's reliance upon *Jauch v. Choctaw County*, 874 F.3d 425 (5th Cir. 2017) is unavailing, as that Court relied upon the violation of state law as the basis for a finding of deliberate indifference. On page 16 of his Memorandum, the plaintiff states: "The Fifth Circuit's response was unambiguous: 'This is simply wrong. Sheriff Halford is responsible for those incarcerated in his jail . . . and the capias did not require him to impose the unconstitutional detention policy.'" Those ellipses are not used to omit a word or series of words, but rather omission of a direct citation to the state law which the Fifth Circuit found imposed that responsibility. The actual quote is: "This is simply wrong. Sheriff Halford is responsible for those incarcerated in his jail, *Miss. Code Ann. § 19-25-69*, and the capias did not require him to impose the unconstitutional detention policy." (italicized content omitted from plaintiff's quote). The plaintiff's decision to omit the state law upon which the Fifth Circuit based its opinion in *Jauch*, in an effort to mislead the Court into believing that the Fifth Circuit cast a general decree upon Sheriffs at a federal or constitutional level is one which speaks volumes about the strength of his argument.

In its analysis in *Jauch*, the Fifth Circuit noted that <u>Mississippi law expressly mandated</u> that an arraignment was required within 30 days of arrest. *Id.* at 431, 436 ("the procedure challenged here does not represent the legislative judgment of the state and indeed conflicts with

---

[16] Exhibit C, Docket Master of Rodney Grant.

the Mississippi legislature's decree that all defendants be arraigned within 30 days.")(emphasis added). Other courts have recognized that "*Jauch* rested on Mississippi law and the jailers' authority to release detainees when they had been detained too long without an opportunity to post bail," citing the Fifth Circuit's reliance on a Mississippi Supreme Court case which "required sheriffs to prevent detention 'for an unreasonable length of time.'" *See Moya v. Garcia*, 895 F.3d 1229, 1235 (10th Cir. 2018); *cert. denied* 139 S.Ct. 1323 (2019). The Fifth Circuit itself has further distinguished *Jauch's* reliance upon state law as the basis for its opinion. In *Cannady v. Clay County*, 781 Fed.Appx. 350 (5th Cir. 2019), a plaintiff invoked *Jauch* in his civil rights suit for not being brought to scheduled court appearances. The Fifth Circuit indicated that there was no testimony that neither Mississippi statutory law nor the bench warrant's mandate required the Sheriff to physically present the plaintiff in Court, and that the plaintiff would not have been brought to court absent a request by the judge, the prosecutor, or the counsel. *Id*. at 352. The Fifth Circuit noted the <u>lack of authority of the Sheriff</u> to make such a determination, stating that "the record makes clear that Sheriff Scott did not control whether Cannady was called to court on January 23, 2013." *Id.*

Likewise in *Douthit v. Jones*, 519 F.2d 527 (5th Cir. 1980) and *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1969), the Fifth Circuit's rulings cited by the plaintiff, both of which involved qualified immunity and thus the analyses of objective reasonableness, hinged upon the existence of a Texas state statute imposing a nondelegable duty upon a sheriff to incarcerate only those persons whom he has lawful authority to imprison. *See Douthit*, 519 F.2d at 535, (*citing* Texas Civil Code Ann. Art. 5116); *see also Whirl*, 407 F.2d at 794 (*citing* Texas Civil Code Art. Ann. 5116)(stating that "the statutory obligations of a Texas sheriff are not amorphous ones," and questioning whether "a sheriff's statutory obligations to be effective only when he acts in willful

10

disobedience of his official responsibilities.") Furthermore, in *Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976), "the Fifth Circuit observed that subsequent decisions 'cast considerable doubt on the wisdom or continued vitality of [*Whirl*]." *Youmans v. Torres*, 2019 WL 289809 (M.D. La. 1/22/19). In *Bryan,* a case which involved an error in the records of the District Attorney, the Fifth Circuit found for the Sheriff and held that "if the errors take place outside his realm of responsibility, he cannot be found liable because he has acted in good faith." *Youmans,* 2019 WL 289809 at 5, quoting *Bryan*, 530 F.2d at 1215. The district court in *Youmans* found that the prisoner plaintiff "is a DOC inmate and cannot be released from DOC until they calculate [his] time." *Id*.

      **c.**      **The Sheriff lacks authority to execute a sentence at hard labor, as that authority is reserved for the Department of Corrections**.

In this matter, the plaintiff has referenced no Louisiana statute or jurisprudence which requires that an inmate's sentence be calculated within 48 hours. The plaintiff has referenced no Louisiana statute or jurisprudence which gives the Sheriff the authority to execute a Court's sentence at hard labor, or to release an inmate sentenced to hard labor.

Unlike La. R.S. 15:565, which authorizes the sheriff to immediately execute sentences without hard labor (misdemeanor sentences), La. R.S. 15:566 specifies that, "[t]he sheriff or his duly qualified deputy, <u>within thirty days of the date upon which sentence to imprisonment has been imposed</u>, shall deliver the prisoner to the state correctional institution designated by the Department of Corrections . . .". (emphasis added). Louisiana law further provides a few specific conditions by which a sheriff may request that an individual committed to DOC but housed in a parish jail be immediately transferred to DOC. *See* La.R.S. 15:824. Specifically, La. R.S. 15:824 requires that DOC accept, on a priority basis, "any such individual who has been determined by the sheriff who has custody of the individual to be dangerous, an escape risk, or

11

afflicted with a physical or mental disorder, upon request by the sheriff." No statute allows the Sheriff to execute a sentence at hard labor. The fact that the legislature specifically indicated the Sheriff's authority for sentencing execution relative to misdemeanors, and withheld such authority in the very next statute, provides solid authority for this fact.

Much like the Sheriff who did not control whether an inmate physically appeared in Court (despite him being the custodian and transport officer) in *Cannady County, supra*, Sheriff Gusman cannot be faulted for failing to force DOC to accept or release Grant immediately because he had no authority to take either action. Because R.S. 15:566 does not provide the Sheriff authority to execute a sentence at hard labor (unlike the authority granted to him for misdemeanors under La. R.S. 15:565), he clearly did not have the authority to take any action other than that given to him under state law. That is, he has up to thirty days of the date upon which a DOC sentence has been imposed to transfer the defendant to DOC custody. *See* La. R.S. 15:566. The plaintiff can provide no evidence that Mr. Grant was "dangerous, an escape risk, or afflicted with a physical or mental disorder" such as to prompt an expedited transfer request by the sheriff. Any suggestion that the Orleans Parish Sheriff's Office had a duty or even the authority to immediately deliver Mr. Grant to DOC, or force DOC to issue a release, is without merit.

Following both the law and the Judge's decision to place Mr. Grant's legal custody in the hands of the Department of Corrections for execution of sentence can certainly not be held against the Sheriff. In *Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976), a case which involved an error in the records of the District Attorney, the Fifth Circuit found for the Sheriff and held that "if the errors take place outside his realm of responsibility, he cannot be found liable because he has acted in good faith." *Youmans v. Torres*, 2019 WL 289809 at 5 (M.D. La. 1/22/19)(quoting

*Bryan*, 530 F.2d at 1215). The district court in *Youmans* further found that the prisoner plaintiff "is a DOC inmate and cannot be released from DOC until they calculate [his] time." *Id*. There is no case which supports the contention that any Sheriff can calculate DOC time or release a DOC inmate without DOC's authorization.

Most importantly, as previously discussed, the overdetention for which he faults OPSO is based upon a sentence which has been vacated and is an absolute nullity. The dates on which the plaintiff alleges he was overdetained are encompassed within Judge Buras' July 18, 2016 sentence. For those reasons alone, the plaintiff was indisputably not entitled to release on June 30, 2016, or any date prior to at least July 18, 2016. The plaintiff has clearly not even identified a violation of any of his rights.

      e.     **The Sheriff not only followed state law, but exceeded what was required thereunder.**

In his analysis of whether the Sheriff followed the law, the plaintiff ignored La. R.S. 15:565-566 as inconvenient to his argument to expand the law. The plaintiff's lone reference to state law was La C.Cr.P. art. 892(C), which requires that paperwork travel with the inmate to DOC, is an attempt to criticize the Sheriff for sending the paperwork to the Department of Corrections in advance of the inmate's transfer in order to expedite classification. Importantly, the plaintiff must allege that any deficient policy was the cause of a constitutional violation. The plaintiff has not plausibly alleged that sending paperwork to DOC in advance caused any overdetention of the plaintiff. Despite numerous depositions being conducted, he has not elicited any statement from any DOC representative, or anyone at all, that the Sheriff's transmission of paperwork in advance of the inmate's transfer to DOC impacted Rodney Grant's release date, which occurred 16 days after he was physically moved to DOC. The plaintiff has provided no proof of causation, and has instead provided this Court with no information other than the fact

that the plaintiff's paperwork arrived with the legal custodian earlier than it was required to, thus allowing the complained of calculation to begin.

Likewise, the plaintiff conveniently omits other portions of state law. When he claims that the OPSO did not complete the plaintiff's classification packet, he is attempting to burden the Sheriff with the obligation of another party not made defendant herein. Plaintiff's statement that the bill of information was not included in the classification packet is one which references La C.Cr.P. art. 892(B)(1), which states: "When a sheriff's statement is required pursuant to Paragraph A of this Article, the clerk of court shall also prepare the following documents: (a) A copy of the indictment under which the defendant was convicted . . ." (emphasis added). Judge Camille Buras also addressed this specifically in her Sentence of the Court, noting "PURSUANT TO ARTICLE 892 OF THE CODE OF CRIMINAL PROCEDURE, THE CRIMINAL CLERK SHOULD NOTIFY THE DEPARTMENT OF CORRECTIONS." [17] Article 892 does not require the Sheriff to seek out paperwork from the Clerk. Article 892 does not impose upon the sheriff to force the Clerk to do his job. Judge Buras did not place such an obligation upon the Sheriff in her express Sentence of the Court relative to Mr. Grant.[18]

Also important is that there was no bill of *indictment* relative to Mr. Grant, as he was instead charged by information. Louisiana law does not use those terms interchangeably or without purpose, and defendant notes that the phrase "information or indictment" is cited frequently in various forms of Louisiana law, including the Code of Criminal Procedure[19] and the Louisiana Constitution itself.[20] That language does not exist here. The starting point in the interpretation of any statute is the language of the statute itself, "[b]ecause what the legislature

---

[17] *See* 136-7, p. 23.
[18] *Id*.
[19] *See* La C.Cr.P. art. 701.
[20] *See* LSA-Const. Art. 1, § 15.

says in the text of a statute is considered the best evidence of legislative intent." *Watkins v. Exxon Mobil Corp.*, 2013-1545 (La. 5/7/14), 145 So.3d 237, 242, citing *State v. Williams,* 00-1725, p.13 (La. 11/28/01), 800 S.2d 790, 800. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." *Gulley v. Hope Youth Ranch*, 2016-1112 (La. 3/15/17), 221 So.3d 21, 26, *citing* La. Civ. Code art. 9; *Pumphrey v. City of New Orleans* 05-979, p. 10 (La. 4/4/06), 925 So.2d 1202, 1209. Plaintiff is unable to show that anyone, especially the Sheriff, had a duty to gather a bill of information per La. C.Cr.P. art. 892. Mr. Grant's allegations are without any merit.

   **f.**  **The plaintiff has not established deliberate indifference, and effectively seeks single incident *Monell* liability.**

  The Fifth Circuit has indicated that though a single-incident" exception exists to the requirement that a plaintiff show a pattern or practice in order to establish deliberate indifference by a municipality, "it is inherently a narrow one, and one that we have been reluctant to expand." *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003); *see also Estate of Davis ex rel. McCully*, 406 F.3d at 385. In the only apparent case in which the Fifth Circuit has found the "single-incident" exception, this Court took great care to establish the daunting burden faced by a plaintiff proceeding with such a theory: he must establish a defendant's "unmistakable culpability and clearly connected causation." *Brown v. Bryan County*, 219 F.3d 450, 461 (5th Cir. 2000). Plaintiff has not even established deliberate indifference, much less the gross and unmistakable type of culpability and clearly connected causation required. As stated ad nauseum, though it cannot be stressed enough, the plaintiff's period of alleged overdetention was caused by the July 18, 2016 sentence.

## V. CONCLUSION

The plaintiff is incorrect in suggesting that this Court has pre-determined the applicability of *Heck* to this case. The Sheriff neither argued, nor did the Court analyze, *Heck* with respect to OPSO in their Motion to Dismiss filed in this matter. The procedural history of plaintiff's matter is essentially identical to that in *Taylor*, and thus Grant's claims are likewise precluded under *Heck*. When Judge Buras sentenced the plaintiff to "time served" on July 18, 2016, her sentence included every single day Mr. Grant served between June 27, 2016 and July 18, 2016. Because it is undisputed that the July 18, 2016 sentence has not been overturned, and because this Court is precluded from attacking a valid sentence, all of plaintiff's federal and state law claims against the OPSO defendants must fail. Furthermore, plaintiff cannot even provide factual support for the date his sentence ended. There is no statutory or jurisprudential support for the plaintiff's alleged right to have his sentence immediately calculated. In seeking to stretch the law to fit his argument, the plaintiff has misrepresented case law to this Court through use of omission of critical citations tying these decisions to <u>state law obligations</u> which do not exist in Louisiana. As the Supreme Court has "forcefully underscored" that the contours of rights must be defined with a high degree of particularity, this Court should not expand the law as requested by plaintiff. Because he is unable to prove a violation of any right, he cannot show that any promulgated policy caused a violation of his rights. As such, and for the reasons detailed in defendants' Motion and Memorandum, summary judgment is appropriate and all claims against all OPSO defendants should be dismissed with prejudice at the sole cost of the Plaintiff.

Respectfully submitted,

**ORLEANS PARISH SHERIFF'S OFFICE**

*/s/Laura Cannizzaro Rodrigue*
Blake J. Arcuri (LSBN 32322)

        Freeman R. Matthews (LSBN 9050)
        2800 Perdido St.
        New Orleans, LA 70119
        Telephone: 504.202.9404; Fax: 504.202.9454
        rodriguela@opso.us ; arcurib@opso.us
        *Counsel for OPSO Defendants*

## **CERTIFICATE**

I hereby certify that on the 21st day of February, 2020 I have caused the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

        */s/Laura Cannizzaro Rodrigue*
        Laura C. Rodrigue