# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| RODNEY GRANT | : | CIVIL ACTION |
| | : | NO. 2:17-CV-2797 "G" (3) |
| VERSUS | | |
| | : | CHIEF JUDGE BROWN |
| MARLIN GUSMAN, ET AL. | : | MAG. JUDGE DOUGLAS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JAMES LEBLANC

**MAY IT PLEASE THE COURT:**

The *Motion for Summary Judgment against Defendant James LeBlanc* filed by the Plaintiff ["Plaintiff's MSJ"] should be denied.[1]  Plaintiff's MSJ relies on inadmissible evidence, and Plaintiff fails to meet his initial burden of proving he is entitled to a judgment in his favor.

## I.      OBJECTIONS TO PLAINTIFF'S EXHIBITS

Defendants object to the admissibility of Plaintiff's Exhibits "C", "D", "E", "G", "K", "L", and "M", which were attached by the Plaintiff in purported support of his Motion for Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56(c)(2), on a motion for summary judgment, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." [Fed. R. Civ. P. 56(c)(2)]. According to the comments following the revised rule:

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted to the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated... [*Id.*][2]

---

[1] Rec. Doc. 129.

[2] *Dantin v. Ochsner Clinic Found.*, No. CV 18-5575, 2019 WL 2089381, at \*10–11 (E.D. La. May 13, 2019) (footnoted citations added in the body above).

Prior to revisions to the Federal Rules of Civil Procedure in 2010, motions to strike were utilized to object to defective supporting materials.[3] Rule 56(c)(2), as amended effective December 1, 2010, calls for a simple "objection" to the admissibility of summary judgment evidence.[4] The Advisory Committee note to the 2010 amendments to Rule 56 states: "There is no need to make a separate motion to strike."[5] This Honorable Court should, therefore, disregard the inadmissible evidence offered by the Plaintiff, instead of striking it from the record.[6]

"[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."[7]  "Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence."[8] Rule 901 of the Federal Rules of Evidence requires the Plaintiff, as the proponent of the exhibit, to "produce evidence sufficient to support a finding that the item is what the proponent claims it is."[9]  Furthermore, Fed. R. Civ. P. 56(c)(2) requires the proponent of evidence to establish its admissibility on a Motion for Summary Judgment.

The Defendants object to the admissibility of seven (7) exhibits to Plaintiff's MSJ, which will each be discussed below.

---

[3] See *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) ("because Dr. Dreyer's affidavit is not merely supplemental but is actually inconsistent with his previous testimony, we cannot say that the district court abused its discretion in striking the affidavit."); *Saucier v. Coldwell Banker JME Realty*, 644 F. Supp. 2d 769, 777–778 (S.D. Miss. 2007) ("When an affidavit submitted in support of or opposition to summary judgment does not comply with Federal Rule of Civil Procedure 56 … , it is subject to a motion to strike.").
[4] Fed. R. Civ. P. 56(c)(2). See also, 11 Moore's Federal Practice - Civil § 56.91.
[5] Fed. R. Civ. P. 56, advisory committee note of 2010. See also, 11 Moore's Federal Practice - Civil § 56.91.
[6] See *Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp. 2d 1037, 1041–1042 (S.D. Ohio 2011) ("motions to strike are disfavored"). See *Nelson v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 924–925 (W.D. Wis. 2013) ("Unfortunately, plaintiff has not heeded the repeated admonishments by the Court of Appeals for the Seventh Circuit that motions to 'strike' are not the appropriate vehicle for challenging another party's submissions"). See *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 934 F. Supp. 2d 1026, 1042–1043 (N.D. Iowa 2013) (motions to strike are to be used to strike matter from pleadings, not to strike materials submitted in opposition to summary judgment).
[7] *Countryside Oil Co., Inc. v. Travelers Ins. Co.,* 928 F.Supp. 474, 482 (D.N.J.1995); see also *Pamintuan v. Nanticoke Mem. Hosp.,* 192 F.3d 378, 388 (3d Cir.1999).
[8] *King v. Caldwell ex rel. Louisiana*, 21 F. Supp. 3d 651, 654 (E.D. La. 2014) (citing *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir.1987); Fed.R.Civ.P. 56(c)(2)).
[9] Fed. R. Evid. 901(a).  See also *Dantin, supra* (citing Fed. R. Civ. P. 56(c)(2)).

A.  <u>Plaintiff's Exhibits "C", and "M" (Rec. Docs. 129-6, 129-16) are inadmissible.</u>

Plaintiff's Exhibit "C" is an uncertified series of emails, dated between March 31, 2015 and April 6, 2015, from former DPSC Medical Director Dr. Raman Singh to a number of recipients including Defendant LeBlanc. The entire exhibit, with the exception of a single line, is indisputably hearsay.  The single admissible line is in the middle of the first page of the document and states, "What is the cost? – I may have missed it??"  A statement from Defendant LeBlanc is a party admission.  However, the statement has no relevance to this case whatsoever; Secretary LeBlanc was inquiring into the cost of certain medical tests.  Along those lines, Exhibit "C" is <u>not</u> cited by the Plaintiff in the Memorandum in Support of Plaintiff's MSJ or in his Statement of Uncontested Facts.   Exhibit "C" should be excluded because it is mostly comprised of hearsay and is otherwise irrelevant.

Plaintiff's Exhibit "M" is an email chain in which a single sentence is not hearsay.  In the middle of the first page, Secretary LeBlanc wrote "A poorly written article – most are immediate releases because more are earning program good time at the local level and the remainder which is very few are those that we are struggle [sic] getting appropriate paper work from Judges, clerk of court and Sheriffs."[10]  The remainder of the exhibit, which contains unauthenticated statement of non-parties is inadmissible hearsay.   Plaintiff cites Exhibit "M" once, on page 14 of his Memorandum.  Specifically, Plaintiff states, "So the problem continued, and Secretary LeBlanc was periodically reminded of it by judges and state legislators. On January 20, 2015, Judge Doggett of the 9th JDC wrote an email that was forwarded to Secretary LeBlanc. Judge Doggett complained that an inmate had been held past his release date by nearly two months, "in spite of several phone calls from Judge Randow for his release."[11]  The Plaintiff relies exclusively on the inadmissible

---

[10] Rec. Doc. 129-16, p. 1.
[11] Citing Ex. M. pp. 3-4.

hearsay contained in Exhibit M.  In order for the Plaintiff to prove that Secretary LeBlanc was "reminded of" the alleged-problem via email, the Plaintiff must offer evidence of that fact and the uncertified and unresponded to emails are insufficient.[12]   This Honorable Court must note that page 1 of the document, which contains the statement of Secretary LeBlanc, is dated 2019, but the part of the document quoted by the Plaintiff is dated 2015.   The Plaintiff failed to lay a proper foundation for the admissibility of the uncertified emails and, therefore, they should be excluded.

B.  Exhibits K and L (Rec. Doc. 129-14, 129-15) are inadmissible newspaper articles.

Exhibits "K" and "L" are, respectively, an opinion-editorial written jointly by Attorney General Jeff Landry and U.S. Senator John Kennedy[13] and an article from NOLA.com. "Newspaper articles […] are hearsay and therefore do not constitute competent summary judgment evidence."[14] Those newspaper articles must be excluded; they are not evidence.

C.  Exhibit "D" (Doc. 129-7)is irrelevant.

Exhibit "D" is a report by the Louisiana Legislative Auditor regarding errors in time computation calculations.[15]   At no time in Plaintiff's Complaint has he alleged that there was a time calculation error in the Plaintiff's time calculation, nor has that issue been raised in Plaintiff's MSJ.  The Plaintiff does not allege the Legislative Auditor investigated any fact or procedure that affected the Plaintiff's sentence calculation, specifically, obtaining copies of Bills of Information. Therefore, the report is irrelevant and inadmissible.

---

[12] See e.g. *Shell Offshore, Inc. v. Tesla Offshore, L.L.C.,* No. CV 13-6278, 2016 WL 541445, at *2 (E.D. La. Feb. 11, 2016) (finding in order to lay a foundation for use of an email chain to prove receipt thereof, "the recipient of the email potentially may be able to testify based on his personal knowledge that he received the email").

[13] The Plaintiff, who does not acknowledge the Op-Ed was authored by *two people*, refers to the joint Op-Ed as a public statement from "Defendants' counsel."  This Honorable Court should take notice that, even though the Op-Ed is inadmissible hearsay that is not evidence of any kind, the Op-Ed is not a "statement of counsel" but, rather a joint Op-Ed by the Attorney General for the State of Louisiana and one of Louisiana's United States Senators.

[14] *Cano v. Bexar Cty., Texas*, 280 F. App'x 404, 406 (5th Cir. 2008) (*citing Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir.2005)).

[15] See Rec. Doc. 129-1, p. 9.

4

    D.  <u>Exhibit "E" (Rec. Doc. 129-8) is not authenticated and inadmissible hearsay.</u>

Exhibit "E" is an uncertified "Program Narrative."  Unlike the Legislative Auditor's report, Exhibit "E" contains no self-authentication.  Exhibit "E" is not on government letterhead, contains no seal, no signature, and no independent certification that it is what the Plaintiff purports it to be. The Plaintiff claims Exhibit "E" is "a grant application to the U.S. Department of Justice" prepared by the DOC in 2017.  Plaintiff cites no evidence whatsoever to support that statement.  Exhibit E is not a certified record, is not otherwise authenticated, and is therefore inadmissible.  Furthermore, absent proper authentication, the statements contained in Exhibit "E" are hearsay on multiple levels.

    E.  <u>Exhibit "G" (Rec. Doc. 129-10) is not authenticated.</u>

Exhibit "G", which is also not cited in Plaintiff's Memorandum or Statement of Uncontested Facts, what has come to be colloquially known in this suit as the "February 2019 Pull Document".  This Honorable Court should not consider that document as evidence in this case unless a foundation for its authenticity is first laid.  As explained in Defendants' Opposition to Plaintiff's Motion for Sanctions or, alternatively, to Compel Production of Documents, the "Pull Document" is not what the Plaintiff purports that it is – specifically, that it is a "list of inmates who have been overdetained."[16]  Therefore, the document should be excluded.

## II.    LEGAL STANDARDS

### A.  Standard of Review of a Motion for Summary Judgment.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence

---

[16] Rec. Doc. 129-1 at FN 62.

might affect the outcome of the lawsuit under the applicable governing law.[17] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[18]

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[19]  Plaintiff's burden is not satisfied by some metaphysical doubt as to alleged material facts, unsworn and unsubstantiated assertions, conclusory allegations, or a mere scintilla of evidence.[20]  "If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."[21]

Rule 56 mandates summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial.[22] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in the favor of the non-moving party.[23] Conversely, summary judgment cannot be entered in favor of a party, who bears the burden of proof at trial, and who fails to establish the essential elements of his case.

---

[17] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.,* 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).
[18] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton*, 232 F.3d at 477.
[19] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[20] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[21] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).
[22] *Celotex Corp. v. Catrett*, 47 U.S. 317, 322 (1986).
[23] *Little*, 37 F.3d at 1076.

If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[24] All facts and inferences are reviewed in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[25]

## B.  Legal standard - "Supervisory Liability" under §1983.

"In a § 1983 suit […]—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[26] To impose personal liability under §1983 against Secretary LeBlanc, a supervisory official, the Plaintiff must prove (1) Secretary LeBlanc's personal involvement in the constitutional deprivation and (2) a sufficient causal connection between the Secretary's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the Plaintiff's injuries.[27]  A showing of negligent conduct by a supervisory official is insufficient to establish liability under §1983.[28]

A supervisory official may be held personally liable where a failure to supervise or train amounts to deliberate indifference and is a proximate cause of a constitutional violation.[29] In order to hold a defendant liable under such a theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or

---

[24] *Washburn v. Harvey*, 504 F.3d at 508.

[25] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1994), *cert. denied*, 502 U.S. 1059 (1992).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

[27] *Porter*, 659 F.3d at 446 (citing *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

[28] *See Whitley v. Hanna,* 726 F.3d 631, 643 (5th Cir. 2013)("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity.").

[29] *Id.* (citing *Brown v. Callahan,* 623 F.3d at 254 n.1 (5th Cir. 2010).

supervise amounts to deliberate indifference.[30]  A supervisory official may also be held liable upon a showing of: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[31]

As to the first essential element of a "supervisory liability" claim, the Plaintiff must specifically identify and prove that there is a particular defect in the training program or challenged procedure.[32] "[T]he inadequacy of training must be obvious and obviously likely to result in a constitutional violation."[33] Then, to fulfill the second essential element, this Honorable Court must focus on the adequacy of the training program in relation to the tasks the particular subordinates perform.[34] A speculative allegation that the injury could have been prevented if the subordinate had received better or additional training cannot, without more, support liability.[35]

The third essential element of Plaintiff's claim, deliberate indifference, "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[36] The Plaintiff must prove actual or constructive notice that a particular shortcoming in the training or policy causes employees to violate citizens' constitutional rights.[37] Anything less would result in *de facto respondeat superior liability* under § 1983.[38]

---

[30] *Porter,* 658 F.3d at 446 (citing *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009)); *Brauner,* 793 F.3d. at 501 (citing *Smith v. Brenoettsy,* 158 F.3d 908, 911-12 (5th Cir. 1998)); *Estate of Davis,* 406 F.3d at 381.

[31] *Pena v. City of Rio Grande City,* 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Hicks–Fields v. Harris Cty*., 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted), cert. denied, —— U.S. ——, 138 S.Ct. 510, —— L.Ed.3d ——, 2017 WL 4339261, 2017 U.S. LEXIS 7214 (U.S. Dec. 4, 2017)).

[32] *Id.*

[33] *Thompson v. Upshur County,* 245 F.3d 447 (5th Cir.2001) (emphasis added). See also *Snyder v. Trepagnier,* 142 F.3d 791, 798–99 (5th Cir.1998).

[34] *See Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005).

[35] *Id.*

[36] *Bohannan v. Doe,* 527 Fed.Appx. 283 (5th Cir.2013). citing *Connick v. Thompson,* U.S., 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011).

[37] *Id.*

[38] *Id.; see also Walker v. Upshaw,* 515 Fed.Appx. 334, 338–40 (5th Cir.2013) (per curiam) (unpublished) ("Supervisory officials may not be held liable under § 1983 for the actions of their subordinates under any theory of vicarious liability.").

The Plaintiff must show "a pattern of similar constitutional violations" to demonstrate deliberate indifference.[39]  "Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claims that such a lack of training or supervision caused a violation of [his] constitutional rights."[40] A pattern requires "similarity, specificity, and sufficiently numerous prior incidents."[41]  "'Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'"[42] Whether the Plaintiff has sufficiently proven a "pattern of similar constitutional violations" is a <u>legal question</u>.[43]

"[T]he Supreme Court in *Connick* required that only very similar violations could jointly form a pattern."[44] In *Connick,* an innocent man sued the Orleans Parish District Attorney's Office under § 1983 claiming the Orleans Parish D.A. failed to train the Assistant District Attorneys in their obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In support of the "failure to train" claim, the Plaintiff proved that his conviction was reversed and he was fully exonerated of wrongdoing based on evidence that had been withheld by the DA's office, in violation of *Brady*.

> The Supreme Court held that to "prove deliberate indifference, Thompson needed to show that Connick was on notice that, absent additional specified training, it was 'highly predictable' that the prosecutors in his office would be confounded by those gray areas and make incorrect *Brady* decisions as a result. In fact, Thompson had to show that it was *so* predictable that failing to train the prosecutors amounted to *conscious disregard* for defendants' *Brady* rights." In other words, there needed to be a pattern of previous violations. [45]

---

[39] *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 409, 117 S. Ct. 1382, 1390, 137 L. Ed. 2d 626 (1997)).

[40] *Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 286 (5th Cir. 2002)(internal citations omitted).

[41] *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009)).

[42] *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir.2005).

[43] *Id.* ("The legal question thus presented is whether the 27 complaints on which Peterson relies are sufficient to establish a pattern of excessive force that can be said to represent official policy."

[44] *Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019) (citing *Connick*, 563 U.S. at 62, 131 S.Ct. 1350.)

[45] *Jason v. Tanner*, 938 F.3d 191, 197 (5th Cir. 2019) (citing *Connick v. Thompson,* 563 U.S. 51, (2011)).

The Supreme Court underscored that "during the ten years preceding his [Thompson's] armed robbery trial, Louisiana courts had overturned four convictions because of *Brady* violations by prosecutors in Connick's office." The Supreme Court nonetheless found that those cases were not similar enough to constitute a "pattern" sufficient to give notice to the District Attorney. The Fifth Circuit adheres to the Supreme Court's decision in *Connick*.

In *Jason v. Tanner,* the Fifth Circuit applied the holding of *Connick* to a prisoner suit against a state prison warden for his alleged failure to train subordinate officers and failure to correct an allegedly-deficient prison policy regarding issuance of work tools to offenders.  In support of his claim, Mr. Jason showed he was attacked with a tool issued to another offender and presented evidence that other offenders had been attacked with tools in the past.

The Fifth Circuit held the evidence was insufficient to show there was a pattern of *similar* violations and reversed the denial of qualified immunity to the Warden.  The Court pointed out the previous attacks with tools had been with different tools than the sling-blade used in *Jason* and the circumstances of each of those attacks was substantively different than the circumstances leading to the attack on Mr. Jason.  The Fifth Circuit echoed the Supreme Court's ruling in *Connick* clarifying that broad claims, such as "a pattern of prison violence with tools" or a "pattern of *Brady* violations" were not specific enough to show a pattern of *similar constitutional violations* for purposes of showing deliberate indifference.

The *Jason* case is particularly relevant to the claims in the instant case.  Prior to analyzing the purported "failure to train" claim against the Warden, the Fifth Circuit found, "it wasn't the lack of *training* that *caused* the risk to Jason. Rather, it was the sufficiency of the overall protocol—having only two guards making rounds and relying on other guards peering out of

10

windows. But that situation might have been a mere reality of the prison's budget."[46]  Such is the

case here. The Plaintiff focuses his arguments and evidence on the alleged policies and practices

of the time computation staff, not on their training.

## III.    NO "FAILURE TO TRAIN" CLAIM IS PLEADED OR PROVEN IN THIS CASE.

The Plaintiff does not include an argument that Secretary LeBlanc is liable for "failure to

train" in the Memorandum in Support of his Motion for Summary Judgment.[47] Plaintiff is clearly

not entitled to entry of summary judgment on such a claim.  The Plaintiff alleges, "if Secretary

LeBlanc had implemented… a training program for time computation staff that required them to

reach out and obtain any documents they think they need, Rodney Grant would not have been

overdetained."[48]  The Fifth Circuit has expressly held, "mere proof that the injury could have been

prevented if the officer had received better or additional training cannot, without more, support

liability."[49] The conclusory allegations of "failure to train" scattered throughout Plaintiff's Motion

for Summary Judgment are insufficient to meet his burden of proving liability.  Plaintiff's Motion

for Summary Judgment on "failure to train" must be denied.

Furthermore, the Plaintiff purports to support the "failure to train claim" with the

contention that the Department had no training protocol.  Plaintiff asserts that the absence of

training is an undisputed fact (Rec. Doc. 129-2, ¶4) but the fact is most certainly disputed.  DPSC

provided practical training to new time computation employees.[50] DPSC provided training

booklets to new employees.[51] All time computation employees, including new employees in

---

[46] *Jason*, 938 F.3d at 197.
[47] See Rec. Doc. 129-1, pp. 25-30.
[48] Rec. Doc. 129-1, p. 29 (citation omitted).
[49] *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (citation omitted).
[50] Rec. Doc. 129-13, Plaintiff's Exhibit J at p. 21 lines 5-9. DPSC explained the training program for new time computation employees was: "We worked with them as we hired them and worked with them and just kept them and verified paperwork until they learned one process and moved them to the next process to learn."
[51] *Id.* at p.21 lines 18-25 and p. 22 at lines 1-2.

training, utilized standardized paperwork.[52]   DPSC personnel are trained to perform time computations.[53]   Clearly, there is a dispute of fact about the training which is sufficient to defeat Plaintiff's Motion for Summary Judgment.   However, the dispute of fact is immaterial because training is not at issue in this lawsuit at all.   The Plaintiff is challenging the policies and practices of the Department, not the training of Department employees.

## IV.   PLAINTIFF FAILED TO MEET HIS BURDEN OF PROVING THE EXISTENCE OF A PATTERN OF SIMILAR CONSTITUTIONAL VIOLATIONS.

The Plaintiff alleges there is a "problem of overdetention."   However, the Plaintiff does not provide the "context of the case[s]" of overdetention.   "Whether a jailer violates the Due Process Clause by unduly detaining an individual depends on 'the context of this case.'"[54] Absent evidence of the context and similarities between the prior incidents and the Plaintiff's claim, the Plaintiff has not met his burden of proving there is no genuine issue of material fact for trial on the question of the existence of "a pattern of similar constitutional violations."   The Plaintiff may have pleaded a plausible claim of a pattern but, he has not met his burden of proving his entitlement to summary judgment.

As explained above, the Plaintiff must prove "a pattern of similar violations."

Justice Scalia's concurrence [in *Connick*] elaborated on deliberate indifference. He explained that a "theory of deliberate indifference" which allowed liability despite "no pattern or practice of prior violations" would effectively "repeal the law of *Monell* in favor of the Law of Large Numbers." [55]

---

[52] *Id.*
[53] *Id.* at line 6-19.
[54] Rec. Doc. 67, p. 18 (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980), reh'g denied 641 F.2d 345, 346 (5th Cir. 1981)).
[55] *Jason v. Tanner*, 938 F.3d 191, 197 (5th Cir. 2019) citing *Connick v. Thompson,* 563 U.S. 51, (2011).

The Plaintiff may have satisfied the numerosity element of a "pattern" but he wholly failed to prove the prior alleged incidents were similar.  Absent proof of the context of those cases, the Plaintiff failed to even show any constituted actual violations of the Fourteenth Amendment.

A virtually identical "pattern and practice" claim lodged against Secretary LeBlanc by another offender who was allegedly detained beyond his release date was dismissed upon a finding that Secretary LeBlanc was entitled to qualified immunity and the Plaintiff had failed to prove the existence of a pattern of similar constitutional violations.[56]   In *Thomas v. Gryder*, the Court found

> Even taking all the assertions set out by Plaintiff regarding backlogs, miscalculations, and incompetence as true, Plaintiff's over-detention does not involve such concerns. While Plaintiff correctly notes that the Lean Six Sigma report reflected a backlog of 1446 cases to have time computed as of January 2012, it is undisputed that Plaintiff's sentence was recalculated four times prior to the June 5, 2015 release date. Likewise, while Plaintiff correctly notes that the October 2017 audit found that the DOC's process for calculating offender release dates was inconsistent, the parties agree that June 5, 2015 was Plaintiff's correct release date had his sentence been subject to time-served, good time credits, and CTRP credits; and that February 28, 2017 was the correct release date had Plaintiff's sentence not be subject to those time reductions. Accordingly, this is not a case involving a delay in Plaintiff's sentence calculation, or an error in that calculation. Instead, Plaintiff complains that in calculating his release date, Ms. Gryder improperly relied on information that was wrong. Because Plaintiff has presented no evidence to support a finding that Warden Goodwin or Secretary LeBlanc were deliberately indifferent based on a pattern of sufficiently similar incidents, Defendants are entitled to summary judgment dismissing "Count Seven – Pattern and Practice Liability."[57]

In this case, the facts are undisputed.  The delay in releasing the Plaintiff was not due to an incorrect time calculation, delay in processing paperwork, or even to reliance on improper information.  The delay in releasing the Plaintiff was due to the delay in receipt of the Bill of Information[58] which, according to state law, is a mandatory document that must be transmitted to the Department,[59]  and

---

[56] *Thomas v. Gryder*, No. CV 17-1595-EWD, 2019 WL 5790351, at *10 (M.D. La. Nov. 6, 2019).
[57] *Thomas v. Gryder*, No. CV 17-1595-EWD, 2019 WL 5790351, at *10 (M.D. La. Nov. 6, 2019) (footnotes omitted).
[58] Exhibit B(4) p. 45 lines 9-15.
[59] La. C.C.Pr. 892 & La. R.S. 15:566 & Exhibit A(1) – Affidavit of Angela Griffin.

which is the official court record reflecting the date of the offense at issue.[60]   The Plaintiff alleges

the Defendants should have relied on the hearsay statement of an employee of the Office of

Probation and Parole.[61]   Even assuming Plaintiff's assertion to be correct, despite being

unsubstantiated by law or evidence, the Plaintiff fails to identify a single other prior instance of a

person being overdetained because a particular document was not transmitted to the Department

or because the Department required official court documentation, rather than a hearsay statement.

The Plaintiff's failure to present evidence of a pattern of *similar* violations must, as in the *Thomas*

case, result in the denial of the Plaintiff's Motion for Summary Judgment and the granting of the

Motion for Summary Judgment filed by Secretary LeBlanc.

## V.     PLAINTIFF FAILS TO MEET HIS BURDEN OF PROVING ENTITLEMENT TO RELIEF UNDER LOUISIANA LAW.

The Plaintiff alleges detention "without legal authority" is enough to impose strict liability

against Secretary LeBlanc under Louisiana law. Relying on *Whirl v. Kern*, 407 F. 2d 781, 791 (5th

Cir. 1968), the Plaintiff alleges this Honorable Court "should issue 'a directed verdict as to liability,

and [leave] for the jury only the issue of damages.'"[62]   The Fifth Circuit in *Whirl* applied Texas

state law. Louisiana law governs Plaintiff's state law claims in this case.

The legal standards governing the qualified immunity analysis apply equally to both the

federal and state due process claims.

> The Louisiana Supreme Court has answered this question
> affirmatively, declaring that "the same factors that compelled the
> United States Supreme Court to recognize a qualified good faith
> immunity for state officers under § 1983 require us to recognize a

---

[60] Exhibit A(1) – Affidavit of Angela Griffin. & Exhibit B(4) lines 9-12.
[61] Rec. Doc. 129-1, p. 16-17.
[62] Rec. Doc. 129-1, p. 23.

similar immunity for them under any action arising from the state constitution."[63]

Thus, despite Plaintiff's interpretation of *Whirl*, there is no strict liability in Louisiana for false imprisonment. Jailers are entitled to raise qualified immunity.

The Department had statutory authority to detain the Plaintiff. The Plaintiff was held pursuant to state law to ensure he had not violated his parole.[64] The Fifth Circuit has long held that detention of a parolee without a revocation hearing does not run afoul of the Fourteenth Amendment when the Parole Board has no discretion to determine that parole must be revoked.[65] "Louisiana clearly requires automatic parole revocation when a parolee is convicted of a felony *in Louisiana.*"[66] The Plaintiff in this case was indisputably on parole at the time he was arrested and convicted for a felony committed in Louisiana.[67] The Plaintiff's parole would have been revoked had he been convicted of a felony committed in Louisiana *while he was on parole*.[68]

Article 892 of the Louisiana Code of Criminal Procedure provides that the *Sheriff* who has custody of a detainee pre-trial is mandated to prepare Documents that must be transmitted to DPSC. The first mandatory document that must be transmitted to DPSC is the indictment under which the defendant was convicted.[69] Article 892 further mandates that all required documentation accompany the prisoner when he is transferred from parish to State custody. Pursuant to La. R.S. 15:566(C), "If said Documents are not tendered with the prisoner, the Department of Corrections shall refuse delivery of said prisoner." DPSC needs the indictment or Bill of Information to properly process the offender's time computation and to determine if he violated his parole. It is

---

[63] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999) (quoting *Moresi v. Department of Wildlife and Fisheries,* 567 So.2d 1081, 1093 (La.1990)).
[64] See Exhibit A(1), Affidavit of Angela Griffin, at ¶32-¶34.
[65] *Pickens v. Butler*, 814 F.2d 237, 240 (5th Cir. 1987).
[66] *Id.* See also La. R.S. 15:574.10.
[67] Exhibit A(1), Affidavit of Angela Griffin
[68] §15.574.10.
[69] La. C.Cr.P. 892(B)(1)(a).

indisputable that, if the Plaintiff had been convicted in 2016 for a felony committed while he was on parole, the Plaintiff would not have been "overdetained."

Considering the Fifth Circuit has already recognized the legality of detaining a parolee in light of a new felony conviction, and the fact that the Plaintiff was held for the purpose of determining whether he was subject to incarceration under La. R.S. 15:574.10, it is clear that, unlike the circumstances in *Douthit*, the Plaintiff in this case was not held after expiration of his sentence absent legal authority, he was held because of an incomplete *fifteen year* sentence, for which he had been released on parole, and which parole may have been required to be revoked. DPSC had legal authority to detain the Plaintiff and his Constitutional rights were not violated.

Furthermore, if DPSC officials misapplied La. C.C.P. art. 892, the law is not clearly established that such a misapplication constitutes false imprisonment.[70] In order to hold DPSC officials liable for a misinterpretation of state law, a state court must declare the Department's interpretation to be wrong, *then*, the Department must repeat the mistake.

Here, it is indisputable that article 892 mandates the Sheriff transmit the Bill of Information to the Department, if the Department erred in concluding that receipt of the Bill of Information was necessary to process his release, that is a decision a Louisiana State Court must make *before* personal liability can be imposed on the Secretary of the Department for false imprisonment.   No Court of the State of Louisiana has held that DPSC must disregard the mandates of Article 892 or that DPSC "falsely imprisons" a person because it is awaiting paperwork pursuant to Article 892 or that DPSC must obtain "information" from sources other than those mandated by the Article.

---

[70] See *Nelson v. Stalder*, 31 Fed. Appx. 836 (5th Cir. 2002) (holding the Plaintiff did not have a clearly established right to good time credits "until the state court declared it".)  See also *Owens v. Stalder*, 638 Fed. Appx. 277 (citing *Cox v. Whitley*, 612 So. 2d 158 (La. App. 1st Cir. 1992)).

In sum, the Plaintiff was held pursuant to La. R.S. 15:574.10 and La. C. Cr. P. 892. That is not false imprisonment.

## VI.     CONCLUSION

The Plaintiff offers a bevy of evidence, much of which is unauthenticated or hearsay, in an effort to prove that Defendant LeBlanc personally knew that "hundreds" of inmates were being unconstitutionally overdetained. The Plaintiff fails, however, to show that the circumstances of those hundreds of cases were violations of the Constitution, and that those Constitutional violations were similar to that of the Plaintiff. The "Law of Large Numbers" is not the law that governs Plaintiff's claims or sets the Plaintiff's burden of proof.[71]

The Plaintiff failed to meet his burden of proving all essential elements of his claim against Secretary LeBlanc. Therefore, Plaintiff's Motion for Summary Judgment must be denied.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:     _/s/ Jeffery A. "Beau" Wheeler, II_
Jeffery A. "Beau" Wheeler, II (Bar Roll #37546)
Assistant Attorney General
Louisiana Department of Justice
Litigation Division, Civil Rights Section
1450 Poydras Street, Suite 900
New Orleans, Louisiana  70112
Telephone:     (504) 599-1200
Facsimile:     (504) 599-1212
E-mail:          WheelerJ@ag.louisiana.gov

---

[71] _Connick, supra._

17