| | |
|---|---|
| **RODNEY GRANT** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-2797** |
| **MARLIN GUSMAN, et al.** | **SECTION: "G"(3)** |

## ORDER

In this litigation, Plaintiff Rodney Grant ("Plaintiff") alleges that the Orleans Parish Sheriff's Office ("OPSO") and the Department of Public Safety and Corrections (the "DOC") detained him 27 days past his release date.[1] Before the Court is Plaintiff's "Motion for Sanctions, or in the Alternative, to Compel Preservation and Production of Documents."[2] In the instant motion, Plaintiff urges this Court to issue an adverse-inference sanction against both Defendant James Leblanc (Secretary of the DOC) and Timothy Hooper (Warden of Elayn Hunt Correctional Center) (collectively, "DOC Defendants") as a sanction for alleged spoliation of electronic data.[3] Considering the motion, the memoranda in support and opposition, and the applicable law, the Court denies the motion.

## I. Background

### A.    *Factual Background*

On July 2, 2000, Plaintiff was allegedly arrested for simple burglary in New Orleans and

---

[1] Rec. Doc. 48 at 5.

[2] Rec. Doc. 123.

[3] Rec. Doc. 123-1 at 1–2.

placed in Orleans Parish Prison ("OPP").[4] On September 3, 2000, OPP allegedly released Plaintiff from custody because the district attorney did not file a Bill of Information within the statutory deadline.[5] Yet, on October 30, 2000, the district attorney allegedly filed a Bill of Information against Plaintiff, and an arraignment was set for November 29, 2000.[6] Plaintiff asserts that he did not appear for the arraignment on November 29, 2000 because he did not receive a summons.[7] Consequently, Plaintiff contends the state issued a warrant for his arrest.[8] Although the district attorney's Bill of Information eventually expired by operation of law, Plaintiff alleges that his arrest warrant for the simple burglary charge from November 2000 "stayed in the system."[9]

Thereafter, from 2008 to 2015, Plaintiff asserts that he remained incarcerated at the Dixon Correctional Institute for a different crime.[10] On June 27, 2016, approximately one year after his release from the Dixon Correctional Institute, Plaintiff was arrested because of the fifteen-year old outstanding warrant concerning the simple burglary charge from November 2000.[11] On June 30, 2016, Plaintiff allegedly pleaded guilty to the simple burglary charge from November 2000 in Orleans Parish Criminal District Court before Judge Camille Buras.[12] Plaintiff asserts that Judge Buras allowed him to plead to "a one year sentence, with credit for time served for the

---

[4] Rec. Doc. 48 at 2.

[5] *Id.*

[6] *Id.* at 2–3.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

seven years he had just served at Dixon."[13] Judge Buras allegedly contacted Blake Arcuri ("Arcuri"), the sheriff's attorney, and "requested that the Sheriff expedite processing for [Plaintiff's] release."[14]

On June 30, 2016, Arcuri allegedly notified OPSO that Judge Buras requested expedited processing for Plaintiff.[15] Arcuri's email to OPSO purportedly stated: "[Plaintiff] really shouldn't have to actually serve any time once DOC processes it."[16] Furthermore, the Captain of OPSO, Sidney Holt ("Captain Holt"), allegedly responded to Arcuri's email by stating that he would tell Corey Amacker ("Amacker"), the Classifications Deputy for OPSO, to "contact DOC and see what can be done."[17] Amacker apparently told Captain Holt that he would "work on getting [Plaintiff's] packet sent to the DOC tomorrow but with the holiday weekend he will not get calculated till Tuesday most likely."[18]

On July 7, 2016, the DOC allegedly sent OPSO an inmate transfer request so that Plaintiff could be transferred to the DOC on July 12, 2016.[19] Plaintiff contends that he remained detained at the OPP until OPSO relinquished custody of him to the DOC on July 12, 2016.[20] Plaintiff alleges that the DOC processed him through the Elayn Hunt Correctional Center.[21] Plaintiff, while

---

[13] *Id.*

[14] *Id.* at 3, 8.

[15] *Id.* at 3.

[16] *Id.* at 3, 8.

[17] *Id.*

[18] *Id.* at 8–9.

[19] *Id.* at 9.

[20] *Id.*

[21] *Id.*

at Elayn Hunt, allegedly explained that his sentence was "time served."[22] Although the intake officer supposedly agreed with Plaintiff, the intake officer still did not release him.[23] Instead, Plaintiff was allegedly sent to the Madison Parish Correctional Center ("MPCC") in Tallulah, Louisiana.[24]

On July 15, 2016, Plaintiff's friend, Alfred Marshall, purportedly told Judge Buras that Plaintiff had still not yet been released. On July 18, 2016, Judge Buras allegedly held another hearing to vacate Plaintiff's one-year sentence for the simple burglary charge from November 2000 and resentence him to "CREDIT FOR TIME SERVED."[25] Yet, according to Plaintiff, "despite having no legal authority to hold [Plaintiff]," the DOC still did not release him after he was resentenced by Judge Buras.[26] On July 25, 2016, Judge Buras allegedly contacted the DOC again to determine why Plaintiff had not been released.[27] Plaintiff alleges that he finally was released from custody on July 27, 2016—27 days past his release date.[28]

## B.   *Procedural Background*

On April 2, 2017, Plaintiff filed a complaint against DOC Defendants and several other officials.[29] On June 14, 2017, Plaintiff filed the First Amended Complaint.[30] On June 28, 2017,

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 3, 9.

[26] *Id.* at 9.

[27] *Id.*

[28] *Id.*

[29] Rec. Doc. 1.

[30] Rec. Doc. 16.

DOC Defendants filed a motion to dismiss Plaintiff's First Amended Complaint.[31] On March 27, 2018, the Court granted the motion in part, dismissing Plaintiff's Section 1983 claim based on *respondeat superior* liability and Plaintiff's Section 1983 claims for monetary damages against DOC Defendants in their official capacity, and denied the motion as to all other claims.[32] The Court also granted Plaintiff leave to file a second amended complaint to address the deficiencies identified in the Court's Order.[33]

On April 10, 2018, Plaintiff filed the Second Amended Complaint.[34] On April 24, 2018, DOC Defendants filed a motion to dismiss the Second Amended Complaint.[35] On August 14, 2018, the Court granted DOC Defendants' motion to dismiss in part to "the extent that the Court dismisse[d] Plaintiff's federal law claims against Warden Hooper."[36] The Court denied DOC Defendants' motion to dismiss "as to Plaintiff's Section 1983 claim against Secretary Leblanc and as to Plaintiff's *Monell* claim against [Secretary] Leblanc."[37]

On January 7, 2019, DOC Defendants filed a "Motion for Stay of Proceedings" because their counsel's military duties affected his ability to represent DOC Defendants.[38] On January 7, 2019, the Court granted the DOC Defendants' "Motion for Stay of Proceedings."[39] On June 4,

---

[31] Rec. Doc. 17.

[32] Rec. Doc. 46.

[33] *Id.*

[34] Rec. Doc. 48.

[35] Rec. Doc. 49.

[36] Rec. Doc. 66 at 26.

[37] *Id.*

[38] Rec. Doc. 87.

[39] Rec. Doc. 89.

2019, the Court issued an order lifting the stay and reopening the case.[40]

On February 9, 2020, Plaintiff filed the instant motion requesting that the Court sanction DOC Defendants for alleged spoliation of evidence.[41] On February 18, 2020, DOC Defendants filed an opposition to the instant motion.[42] On February 28, 2020, with leave of Court, Plaintiff filed a reply memorandum in further support of the instant motion.[43]

## II. Parties' Arguments

### A.    *Plaintiff's Arguments in Support of the Motion for Sanctions*

In the instant motion, Plaintiff provides a substantial amount of background information concerning discovery, and that background information is necessary to understand Plaintiff's request for sanctions.[44] During discovery, Plaintiff made the following request for production of documents: "All documents regarding or related to DOC prisoners overdetained, held past their legal release date, and/or who had their sentences calculated incorrectly and as a result served longer than their sentence, from 2010 to the present."[45] On October 25, 2018, DOC objected to Plaintiff's production request as vague, overbroad, and unduly burdensome.[46]

Yet Plaintiff contends that the DOC had documents demonstrating a pattern of overdetention.[47] Plaintiff points out the DOC filed a financial grant application with the U.S.

---

[40] Rec. Doc. 90.

[41] Rec. Doc. 123.

[42] Rec. Doc. 148.

[43] Rec. Doc. 178.

[44] Rec. Doc. 123-1.

[45] *Id.* at 2.

[46] Rec. Doc. 123-12 at 8.

[47] Rec. Doc. 123-1 at 2.

Department of Justice, in which the DOC requested money from the federal government to address a pattern of overdetention in Louisiana.[48] Plaintiff requested production of the DOC's grant application through a public records request.[49] Plaintiff presents a copy of the DOC's financial grant application, which states:

> In 2017, [the DOC] had an average of 200 cases per month considered an "immediate release" due to these deficiencies. This includes those cases which become immediately eligible for release as a result of jail credit or the application of diminution of sentence laws. A review of these releases indicate[s] the offenders were held in custody an average of 49 days past the date that they would have been eligible for a diminution of sentence release.[50]

Plaintiff allegedly then submitted additional public records requests and, in doing so, found additional documents in which the DOC supposedly admits to an overdetention problem in Louisiana.[51]

The parties refer to one document Plaintiff found as the "February 2019 pull document."[52] Plaintiff claims that the February 2019 pull document lists "two hundred and thirty-one DOC inmates held past their release date in one month, with an average of 44.69 'days over.'"[53] The underlying data used to create the February 2019 pull document is found in CAJUN—the DOC's electronic record management system.[54]

On July 31, 2019, the DOC's counsel allegedly confirmed that the February 2019 pull

---

[48] *Id.* at 3.

[49] *Id.*

[50] *Id.* (quoting Rec. Doc. 123-4).

[51] *Id.*

[52] *Id.*

[53] *Id.* at 3–4.

[54] *Id.* at 3.

document's "days over" data point may "give some insight into how many days [a person] was incarcerated past his legal release date."[55] According to Plaintiff, due to the purported relevancy of data in the February 2019 pull document, he "propounded discovery requests for additional pull documents for months other than February 2019."[56] Specifically, Plaintiff's request for production demanded: "A 'pull' document like the one attached here as Exhibit D, but for each of the six months preceding [Plaintiff's] sentencing, and for each of the months from March 2019 to August 2019."[57]

On December 13, 2019, the DOC's counsel emailed Plaintiff's counsel and stated:

> Replication or reproduction of past inmate data (such as that contained in the [February 2019] "pull document") cannot be achieved due to the very nature of DOC's electronic record keeping system. Specifically, DOC's preclass record, master record, description record, and time computation records continuously update with new data and do not catalog past information. If you will, the information is constantly "overwritten" with new information as it is inputted into DOC's wider database. The previous information that has been overwritten is not stored in any sort of archive, and no changes to these fields are tracked. As such, all past information is no longer available.[58]

Plaintiff's counsel allegedly identified the overwritten CAJUN data as a "spoliation" issue and requested that the DOC "start preserving and producing that [CAJUN] data each month into a Pull Document."[59] The DOC's counsel responded: "[I]t is my understanding that this is not something my client is obligated to do" because "capturing and compiling this [CAJUN] data

---

[55] *Id.* at 4.

[56] *Id.*

[57] *Id*; Rec. Doc. 123-8 at 2.

[58] Rec. Doc. 123-1 at 4; Rec. Doc. 123-9.

[59] Rec. Doc. 123-1 at 5; Rec. Doc. 123-10.

essentially amounts to a request that we create documents that do not exist."[60]

On December 23, 2019, Plaintiff allegedly submitted a production request asking for "[a]ll [CAJUN] data for all DOC inmates who meet the criteria for inclusion in the February 2019 Pull Documents, but for all other months from January 2012 to the present."[61] Plaintiff asserts that the parties conducted a "telephone meet and confer" on January 3, 2020, and the DOC declined to agree to any of the following three options to preserve the CAJUN data: (1) provide the CAJUN data underlying the pull document, (2) provide Plaintiff's counsel with access to the CAJUN database, or (3) create pull documents once per month similar to the February 2019 pull document.[62] Plaintiff cites his own counsel's email to demonstrate that on January 16, 2020, the DOC confirmed that "some of the [CAJUN] data in the [February 2019] pull document is being deleted on an ongoing basis without any backup" and "the rest of the [CAJUN] data is only backed up on paper, in a form that renders it prohibitively difficult to recreate."[63]

For these reasons, Plaintiff urges this Court to impose an adverse-inference sanction against DOC Defendants for spoliation of the CAJUN data.[64] In the alternative, Plaintiff requests that this Court "compel Defendants to produce the data in question and, if necessary, extend the discovery deadline for the limited purpose of allowing Defendants time to produce the data."[65]

---

[60] Rec. Doc. 123-1 at 5; Rec. Doc. 123-17.

[61] Rec. Doc. 123-1 at 6; Rec. Doc. 123-15 at 8.

[62] Rec. Doc. 123-1 at 6.

[63] *Id.* (quoting Rec. Doc. 123-19).

[64] *Id.* at 2.

[65] *Id.*

### 1. Sanctions are appropriate pursuant to Federal Rule of Civil Procedure 37(e).

Plaintiff argues that sanctions are appropriate pursuant to Federal Rule of Civil Procedure 37(e), which permits a federal court to sanction a party for failing to preserve electronic information.[66] Plaintiff contends that an adverse-inference sanction is appropriate due to the DOC's spoliation of evidence.[67]

To demonstrate spoliation under Rule 37, Plaintiff claims that he must demonstrate the DOC (i) had a duty to preserve the information, (ii) culpably breached that duty, and (iii) the breach resulted in prejudice to Plaintiff.[68] First, Plaintiff argues that the DOC had a duty to preserve the CAJUN data for pull documents because such data is "relevant to this litigation."[69] Plaintiff allegedly notified the DOC "on multiple occasions and in multiple forms that the evidence in the [CAJUN] data [relating to the pull documents] is relevant in this litigation."[70] Indeed, Plaintiff's counsel notes that he "described the [CAJUN] data as 'crucial' and specifically requested that it be preserved going forward in emails dated December 13 and 18, 2019."[71]

Second, Plaintiff argues that the DOC culpably breached its duty to preserve the pull-document information because the DOC is continually deleting CAJUN data without preserving it in another accessible form.[72] Plaintiff concedes that some CAJUN data is backed up in a paper format, but Plaintiff contends the paper documents are "in a form that renders it prohibitively

---

[66] *Id.* at 9.

[67] *Id.* at 10.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.* at 11.

difficult to recreate" and therefore are inaccessible.[73] Third, Plaintiff argues that the DOC's breach prejudices Plaintiff because the deleted CAJUN data is "crucial in proving a pattern of overdetention in Louisiana, a central claim in Plaintiff's second amended complaint."[74]

Finally, to demonstrate the DOC's spoliation is intentional, Plaintiff contends that the DOC continues to delete CAJUN data despite Plaintiff's notice that such data is relevant and must be preserved.[75] Further, Plaintiff contends that DOC Defendants "have engaged in bad faith in their objections."[76] Plaintiff notes that one objection to disclosing the CAJUN data is the "defense of [q]ualified [i]mmunity."[77] Yet Plaintiff notes that this Court denied Secretary Leblanc's qualified immunity defense at the motion to dismiss stage.[78] Plaintiffs contends that DOC Defendants provide "no authority suggesting that the invocation of qualified immunity is a bar to discovery even after it is denied."[79]

For these reasons, Plaintiff urges this Court to impose sanctions against DOC Defendants "in the form of an adverse inference in Plaintiff's favor on the issue of the pattern of overdetention, as well as monetary compensation for the fees and costs of discovery and the legal costs of [the instant] motion."[80]

---

[73] *Id.*

[74] *Id.* at 12.

[75] *Id.* at 11, 13.

[76] *Id.* at 13.

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at 14.

## 2. This Court should compel the DOC to preserve and produce the documents requested by Plaintiff

If the Court does not impose an adverse-inference sanction against DOC Defendants, Plaintiff alternatively requests that the Court compel DOC Defendants to preserve and produce "[CAJUN] data for all DOC inmates who meet the criteria for inclusion in the February 2019 Pull Document, but for all months from January 2012 to the present."[81] That discovery request is allegedly relevant and proportional because (1) Plaintiff has alleged a pattern of overdetention in Louisiana over the past decade and (2) DOC Defendants have denied that allegation.[82] Plaintiff claims that his counsel met with DOC Defendants' counsel and asked: "(1) whether the DOC would provide the data underlying the pull document, (2) whether the DOC would provide access to the database so that Plaintiff's counsel could pull the data himself, or (3) whether the DOC would create pull documents once a month moving forward."[83] Plaintiff contends that the DOC refused each option.[84]

Finally, Plaintiff contends that "[c]reating the pull documents going forward would not be outrageously burdensome to the DOC" because "[t]he DOC's 30(b)(6) representative testified at [her] deposition that, depending on which [CAJUN] data was requested, creating a overdetention pull document for the most recent month would take her a few hours or perhaps one work day."[85]

---

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.* at 15.

## B.    *DOC Defendants' Arguments in Opposition to the Motion for Sanctions*

DOC Defendants make two principal arguments in opposition to the instant motion.[86] First, DOC Defendants argue that Plaintiff's motion to compel is untimely.[87] Second, DOC Defendants argue that Plaintiff failed to meet his burden of proving spoliation pursuant to Federal Rule of Civil Procedure 37(e).[88]

### 1.    **Plaintiff's motion to compel is untimely**

DOC Defendants argue that Plaintiff's motion to compel is untimely because the motion is set for submission on February 26, 2020, which is after the February 20, 2020 discovery deadline in this case.[89] DOC Defendants note that Plaintiff does not (1) explain his delay in filing the motion to compel, (2) request expedited consideration, (3) move for an extension of the discovery deadline, or (4) attempt to show good cause to amend the Court's scheduling order.[90]

### 2.    **Plaintiff failed to meet his burden of proving spoliation**

DOC Defendants make three central arguments to demonstrate that Plaintiff has not met his burden to prove spoliation. First, DOC Defendants argue that Plaintiff does not "identify what data was allegedly destroyed or what data was preserved but is allegedly inaccessible in paper form."[91] Although Plaintiff's production request mentions the February 2019 pull document's data point for "days over," DOC Defendants contend that Plaintiff does not allege the "days over"

---

[86] Rec. Doc. 148.

[87] *Id.* at 1.

[88] *Id.* at 3.

[89] *Id.* at 1.

[90] *Id.* at 1–2.

[91] *Id.* at 3.

data was destroyed or is inaccessible in paper form.[92] DOC Defendants claim that the February 2019 pull document is a spreadsheet with labeled headings and, as a result, "Plaintiff should be able to specifically articulate what elements of the data have been deleted and why they are relevant."[93] Yet DOC Defendants contend that Plaintiff has made no effort to do so.[94]

Second, DOC Defendants argue that they did not act in bad faith when objecting to Plaintiff's discovery requests.[95] DOC Defendants admit that they objected to Plaintiff's production request on qualified immunity grounds—despite this Court holding in 2018 that Plaintiff alleged sufficient facts at the motion to dismiss stage to overcome DOC Defendants' qualified immunity defense.[96] DOC Defendants argue that they "can still raise qualified immunity *again* at the motion for summary judgment stage."[97] Indeed, DOC Defendants note that the qualified immunity defense "has been presented again in a motion for summary judgment," and this Court "must resolve [DOC] Defendants' Motion for Summary Judgment in accordance with *Backe* prior to ordering additional discovery from the Defendants."[98] DOC Defendants contend that "[q]ualified immunity protects against such extremely overbroad and intrusive [discovery]

---

[92] *Id.* at 5.

[93] *Id.*

[94] *Id.* DOC Defendants also argue that Plaintiff cites language in an email in which the DOC's counsel stated that the pull document data may "give some insight into how many data [an inmate] was incarcerated past his legal release date." *Id.* Yet, according to DOC Defendants, that email was from a different counsel for different litigation—not the instant litigation. *Id.* DOC Defendants contend that email, at most, demonstrates "some" data requested by Plaintiff may be relevant to the broad issues in different litigation—not the instant litigation. *Id.* at 7.

[95] *Id.* at 11.

[96] *Id.* at 12–13.

[97] *Id.* at 13.

[98] *Id.* at 13–14.

requests."[99]

In any event, DOC Defendants note that they also objected to Plaintiff's production request on the additional grounds of vagueness, overbreadth, and undue burden.[100] DOC Defendants point out that Plaintiff's production request demanded: "All data for all DOC inmates who meet the criteria for inclusion in the February 2019 Pull Document, but for all other months from January 2012 to [December 2019]."[101] DOC Defendants objected to that production request because Plaintiff used vague terms such as "data" and "criteria."[102] Plaintiff subsequently attempted to clarify his production request by asking for "the data necessary to fill out the columns of the February 2019 Pull Document" and "whatever criteria [the DOC] used for that [February 2019 Pull Document]."[103] Nevertheless, DOC Defendants contend that "[n]either of these purported clarifications did anything to substantively clarify the specific data or criteria Plaintiff was requesting."[104]

Third, DOC Defendants argue that Plaintiff has not accurately described the CAJUN data contained within the February 2019 pull document.[105] Plaintiff contends that the February 2019 pull document "lists data about the release dates of two hundred and thirty-one DOC inmates held past their release date in one month, with an average of 44.69 'days over,'" but DOC Defendants

---

[99] *Id.* at 13.

[100] *Id.* at 12.

[101] *Id.* at 7–8.

[102] *Id.* at 8.

[103] *Id.*

[104] *Id.*

[105] *Id.*

15

argue that the February 2019 pull document is not a list of offenders held past their release date.[106] Instead, according to DOC Defendants, the February 2019 pull document's data point for "days over" entails a "deeper and more technically specific meaning within the exact context for which the document was prepared."[107] DOC Defendants contend the DOC's director of data and research created the February 2019 pull document by pulling data from CAJUN—a DOC database containing information such as an offender's height, weight, hair color, and eye color.[108] DOC Defendants further contend the DOC's director of data and research used CAJUN data to create the February 2019 pull document—a one-time creation—to apply for a federal grant.[109] DOC Defendants claim that the February 2019 pull document contains some inmates who were *not* overdetained.[110] For these reasons, DOC Defendants contend that the February 2019 pull document is not simply "a list of offenders overdetained."[111]

### C.    *Plaintiff's Reply Brief in Further Support of the Motion for Sanctions*

Plaintiff makes two principal arguments in further support of the instant motion.[112] First, Plaintiff argues that the instant motion is timely filed.[113] Second, Plaintiff argues that the DOC is destroying relevant evidence in bad faith.[114]

---

[106] *Id.* at 9.

[107] *Id.* at 10.

[108] *Id.* at 8, 10.

[109] *Id.* at 10.

[110] *See id.*

[111] *Id.*

[112] Rec. Doc. 178.

[113] *Id.* at 1.

[114] *Id.* at 2.

### 1.     The motion to compel is timely

Plaintiff contends this Court's scheduling order does not require all discovery motions to be "filed and served in sufficient time to permit hearing" by February 20, 2020.[115] Instead, Plaintiff notes that the Court's scheduling order provides: "Depositions for trial use shall be taken and all discovery shall be completed no later than February 20, 2020."[116] Therefore, Plaintiff contends that the relevant deadline is the close of discovery: February 20, 2020.[117] Accordingly, Plaintiff concludes that the instant discovery motion, filed on February 9, 2020, was timely filed.[118]

### 2.     The DOC is destroying relevant evidence in bad faith

Plaintiff argues that he has proven the elements of spoliation because: (1) the information in the February 2019 pull document is relevant to Plaintiff's claim that a pattern of overdetention exists in Louisiana; (2) the DOC admitted that the CAJUN data necessary to create a pull document is being overwritten; (3) the DOC admitted that paper records of the overwritten CAJUN data are inaccessible; and (4) the DOC is acting in bad faith in allowing the CAJUN data to be lost.[119]

First, Plaintiff argues that the DOC's creation of monthly pull documents—akin to the February 2019 pull document—would preserve evidence relevant to Plaintiff's claim regarding

---

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.*

overdetention in Louisiana.[120] Plaintiff claims that monthly pull documents would demonstrate "the number of individuals detained past their release dates in a given month, the number of days each person was held past their release date, and the geographic diversity of these overdetentions—all evidence relevant to Plaintiff's claim that the DOC is perpetuating a pattern of overdetention."[121]

Second, Plaintiff argues that the DOC admitted CAJUN data is constantly overwritten with new CAJUN data.[122] Specifically, in the DOC representative's deposition, she supposedly admitted "old data is no longer in CAJUN and has been replaced by new data in some circumstances."[123] Plaintiff contends the "old data" consists of "names, release dates, and other corresponding information that would have populated a pull document."[124]

Third, Plaintiff argues that any paper records backing up the overwritten CAJUN data are inaccessible.[125] On one hand, the DOC supposedly indicated "some of the overwritten data in CAJUN may be preserved in paper format into a non-searchable database."[126] On the other hand, the DOC supposedly admitted that the paper records are inaccessible.[127] Plaintiff concludes that the "DOC isn't sure that the backing-up [in paper] is comprehensive."[128] Nevertheless, even if

---

[120] *Id.*

[121] *Id.* at 3.

[122] *Id.* at 4.

[123] *Id.*

[124] *Id.*

[125] *Id.* at 5.

[126] *Id.*

[127] *Id.*

[128] *Id.*

the CAJUN data is completely backed up in a paper format, Plaintiff notes that the DOC would "have to go back and get all of the paper records in order to fill in the correct data"—an "enormously laborious" process that allegedly would require "a whole team of people."[129] Plaintiff claims that evidence "rendered inaccessible for any reason . . . constitutes spoliated evidence" even when not entirely lost or destroyed.[130]

Fourth, Plaintiff argues that DOC Defendants are acting in bad faith when objecting to his discovery requests.[131] Specifically, Plaintiff argues that DOC Defendants' qualified immunity objection to Plaintiff's production request is in bad faith.[132] Plaintiff concedes that DOC Defendants can raise qualified immunity at both the motion to dismiss stage and the motion for summary judgment stage.[133] Yet Plaintiff contends this Court "has already ruled that Secretary LeBlanc is not entitled to qualified immunity based on the pleadings[,] and Plaintiff's requests are tailored to the evidentiary basis for those allegations."[134] Plaintiff also contends that his discovery request is not overbroad, vague, costly, time-consuming, or intrusive.[135]

### III. Legal Standard

*A.*     ***Legal Standard for Sanctions under Federal Rule of Civil Procedure 37(e)***

Federal Rule of Civil Procedure 37(e) provides that a party may be sanctioned for not preserving relevant electronically stored information ("ESI"). Rule 37(e) was substantially

---

[129] *Id.*

[130] *Id.* at 5–6.

[131] *Id.* at 7.

[132] *Id.*

[133] *Id.*

[134] *Id.*

[135] *Id.* at 8–10.

amended in 2015, and the amended version governs all civil cases commenced after December 1, 2015.[136] Rule 37(e) reads as follows:

[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment

Rule 37(e)'s plain language dictates that four predicate elements must exist before a federal district court may sanction a party for lost ESI. The four predicate elements are: (1) the ESI should have been preserved; (2) the loss of that ESI; (3) the lost ESI resulted from a party's failure to take reasonable steps to preserve it; and (4) the lost ESI cannot be restored or replaced through additional discovery.[137] The party alleging spoliation bears the burden of proof.[138]

If Rule 37(e)'s four predicate elements are satisfied, Rule 37(e)(2) permits certain sanctions only if the Court determines that the party who lost the ESI "acted with the intent to

---

[136] *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 490 (N.D. Tex. 2016).

[137] *Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at *4 (W.D. Tex. Nov. 8, 2018).

[138] *Richard v. Inland Dredging Co., LLC*, No. 6:15-0654, 2016 WL 5477750, at *4 (W.D. La. Sept. 29, 2016) ("By this Motion, plaintiff seeks sanctions under sub-section (e)(2), an adverse presumption or adverse instruction to the jury. The party alleging spoliation bears the burden of proof."); *Terral v. Ducote*, No. CV 15-2366, 2016 WL 5017328, at *3 (W.D. La. Sept. 19, 2016) ("The party alleging spoliation bears the burden of proof, which includes establishing the respondents' duty to preserve.").

deprive another party of the information." Pursuant to Rule 37(e)(2), if a party acted with intent to deprive another party of the information, potential sanctions include: a presumption that the lost information was unfavorable to the party, an instruction to the jury that it may or must presume the information, or dismissal of the action or entry of a default judgment.[139]

The 2015 Advisory Committee Notes to Rule 37(e)(2) instruct federal courts to "exercise caution . . . in using the measures specified in [Rule 37](e)(2)."[140] Indeed, even if the Court finds "an intent to deprive another party of the lost information's use in the litigation," the Court may nevertheless choose not to "adopt any of the [specific] measures listed in subsection (e)(2)."[141] Instead, the Court many use "lesser measures such as those specified in [subsection] (e)(1) [if those measures] would be sufficient to redress the loss."[142] Rule 37(e)(1) states that "upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice."

### B.     Legal Standard for a Motion to Compel under Federal Rule of Civil Procedure 37(a)

Federal Rule of Civil Procedure 37(a) governs a party's motion to compel discovery responses. "Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production . . . against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34."[143] Further, in response to a production request under Rule 34, "[f]or each item or category, the response must either state that inspection

---

[139] Fed. R. Civ. P. 37(e)(2).

[140] Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015.

[141] *Id.*

[142] *Id.*

[143] *Matthews v. J & J Serv. Sols.*, LLC, No. CV 16-621-BAJ-EWD, 2017 WL 2256963, at *3 (M.D. La. May 23, 2017) (Wilder-Doomes, J.) (internal citations and quotation marks omitted).

and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."[144] Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

### IV. Law and Analysis

Plaintiff urges this Court to "sanction DOC Defendants pursuant to Rule 37(e)(2) and provide "an adverse inference in favor of Plaintiff on the issue of a pattern of overdetention."[145] Plaintiff requests this sanction because DOC Defendants allegedly destroyed CAJUN data "regarding their overdetention of people incarcerated in Louisiana."[146] The Court must first decide whether Plaintiff meets the four predicate elements under Rule 37(e). Second, if the four predicate elements are met, the Court may impose an adverse-inference sanction under Rule 37(e)(2) only if DOC Defendants "acted with intent to deprive another party of the information's use in the litigation."

### A.    *Whether Plaintiff Satisfied Rule 37(e)'s Four Predicate Elements*

Rule 37(e)'s plain language dictates that four predicate elements must exist before a federal district court may sanction a party for lost ESI. The party alleging spoliation has the burden to prove each of the following four predicate elements: (1) the existence of ESI that should have been preserved; (2) the loss of that ESI; (3) the lost ESI resulted from a party's failure to take reasonable steps to preserve it; and (4) the lost ESI cannot be restored or replaced through additional discovery.[147]

---

[144] Fed. R. Civ. P. 34(b)(2)(B).

[145] Rec. Doc. 123-1 at 1–2.

[146] *Id.* at 1.

[147] *Flores*, 2018 WL 6588586, at *4; *Richard*, 2016 WL 5477750 at *4 ("By this Motion, plaintiff seeks

### 1.     Whether DOC Defendants possessed ESI that should have been preserved

Plaintiff argues that DOC Defendants had a duty "to preserve the [CAJUN] data in question because Plaintiff provided them with notice on multiple occasions and in multiple forms that the evidence in the data is relevant to this litigation."[148] Generally, a party has a duty to preserve evidence "when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."[149] Rule 37(e) specifically focuses on *relevant* ESI that should have been preserved "in the anticipation or conduct of litigation."[150] Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Here, the CAJUN data—which at minimum may show that *some* individuals were detained past their release date in Louisiana—is clearly relevant to Plaintiff's claim that a pattern of overdetention exists in Louisiana. Throughout this litigation, Plaintiff alleged a widespread practice of overdetention by the DOC in Louisiana.[151] Further, during discovery, Plaintiff specifically requested production of "all documents regarding or related to DOC prisoners *overdetained*."[152] Thereafter, on December 23, 2019, Plaintiff requested "[a]ll data for all DOC inmates who meet the criteria for inclusion in the February 2019 Pull Document, but for all other

---

sanctions under sub-section (e)(2), an adverse presumption or adverse instruction to the jury. The party alleging spoliation bears the burden of proof."); *Terral*, 2016 WL 5017328 at *3 ("The party alleging spoliation bears the burden of proof, which includes establishing the respondents' duty to preserve.").

[148] Rec. Doc. 123-1 at 10.

[149] *Flores*, 2018 WL 6588586, at *4 (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)).

[150] Fed. R. Civ. P. 37(e).

[151] Rec. Doc. 1 at 8–9; Rec. Doc. 48 at 23.

[152] Rec. Doc. 123-12 at 8 (emphasis added).

months from January 2012 to the present."[153] Finally, Plaintiff's counsel even notified DOC

Defendants that he believed the CAJUN data was relevant to this litigation on several occasions.

For these reasons, DOC Defendants had notice that the CAJUN data was relevant and had a duty

to preserve such data in the course of this litigation.[154]

### 2. Whether DOC Defendants lost the CAJUN Data

Plaintiff contends that the data was lost or destroyed because the DOC's representative

admitted in a deposition that "old data is no longer in CAJUN and has been replaced by new data

in some circumstances."[155] Nevertheless, even if the CAJUN data is completely backed up in

paper format, Plaintiff contends that the DOC would "have to go back and get all of the paper

records in order to fill in the correct data"—an "enormously laborious" process that would

allegedly require "a whole team of people."[156] In opposition, DOC Defendants contend that "no

data contained in the [February 2019 pull document] is being lost or destroyed."[157]

To impose sanctions under Rule 37(e), the electronic data at issue must be deemed

"lost."[158] Here, the DOC's representative admitted during her deposition that "the old data is no

longer in CAJUN and has been replaced by new data in some circumstances within CAJUN."[159]

Yet the DOC representative confirmed that the CAJUN data in the February 2019 pull document

---

[153] Rec. Doc. 123-15 at 8.

[154] Furthermore, DOC Defendants' argument that Plaintiff's production request was too vague is unavailing. Plaintiff attached the February 2019 pull document—a spreadsheet with labeled columns—and asked for data to fill out the same labeled columns for different months. *Id.*

[155] Rec. Doc. 178 at 4.

[156] *Id*. at 5.

[157] Rec. Doc. 148 at 5.

[158] Fed. R. Civ. P. 37(e).

[159] Rec. Doc. 178-1 at 71.

is "not lost or destroyed" but instead "more difficult to compile due to the necessity of having to retrieve that data from the physical file of the individual offenders."[160] The DOC representative subsequently qualified her statement about the physical file and confirmed that she believed in some cases the old CAJUN data is backed up with a paper copy, but that she was not certain.[161] Plaintiff admits that the DOC representative was not certain whether all CAJUN data is in fact backed up in a paper format.[162] That uncertain testimony is insufficient for Plaintiff to meet his burden of proving the CAJUN data is "lost."

Further, even if the CAJUN data is backed up in a paper format, Plaintiff contends that gathering the paper copies of the CAJUN data would be "enormously laborious" and require "a whole team of people."[163] As a result, Plaintiff contends that the paper copies are inaccessible, and evidence rendered "inaccessible for any reason . . . constitutes spoliated evidence."[164] To support this assertion, Plaintiff cites one case from the Western District of Louisiana, *In re Actos (Pioglitazone) Products Liability Litigation*, which states evidence rendered "inaccessible for any reason . . . constitutes spoliated evidence."[165]

This Court notes that *In re Actos* was decided before the 2015 amendment to Rule 37(e). Nevertheless, even assuming "inaccessible" evidence constitutes "lost" evidence under Rule 37(e), Plaintiff has not shown that the CAJUN data is "inaccessible" and consequently "lost"

---

[160] *Id.* at 70.

[161] *Id.* at 71.

[162] Rec. Doc. 123-1 at 7.

[163] Rec. Doc. 178 at 5 (quoting Rec. Doc. 178-1 at 38).

[164] *Id.* at 5–6.

[165] *Id.* at 6 (citing *In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. MDL No. 6:11-md-2299, 2014 U.S. Dist. LEXIS 13307, at *94-95 (W.D. La. Jan. 27, 2014).

under Rule 37(e). Plaintiff quotes the DOC representative's testimony confirming that gathering backed-up paper copies of the CAJUN data would be "enormously laborious" and require "a whole team of people."[166] Yet when Plaintiff specifically asked the DOC representative to estimate how long the paper-gathering process would take to complete, the DOC representative responded: "I wouldn't work with the paper documents. I would have to provide a list of those people that have now come back into custody to [another department], and they would have to do that work."[167] Plaintiff's counsel pushed the issue and asked the DOC representative whether the paper-gathering process would take "dozens or hundreds or hours of work."[168] The DOC representative responded: "I wouldn't know. I can't guesstimate how many times, but, yes, it would take awhile."[169]

Considering that deposition testimony, Plaintiff has not met his burden to show that the paper copies are "inaccessible." Indeed, the DOC representative had no concrete idea of how many hours it would take to compile the paper documents.[170] Accordingly, Plaintiff fails to prove predicate element two, that is, Plaintiff has not shown that DOC Defendants "lost" the CAJUN data.[171]

---

[166] Rec. Doc. 178 at 5 (quoting Rec. Doc. 178-1 at 38).

[167] Rec. Doc. 178-1 at 39.

[168] *Id.*

[169] *Id.*

[170] Further, even if the DOC representative would have provided a rough estimate, Plaintiff points to no authority indicating that ESI is "lost" simply because compiling the discovery would be laborious.

[171] Accordingly, the Court need not analyze whether Plaintiff satisfied predicate elements (3) the lost CAJUN data resulted from DOC Defendants' failure to take reasonable steps to preserve the data and (4) the lost CAJUN data cannot be restored or replaced through additional discovery.

## B. Whether Plaintiff Demonstrates that DOC Defendants Intentionally Destroyed the CAJUN Data

Even assuming that Plaintiff could prove the four predicate elements under Rule 37(e), to invoke Rule 37(e)(2)'s sanctions, Plaintiff must prove that DOC Defendants "acted with the intent to deprive another party of the information."[172] If the Court finds that DOC Defendants "acted with the intent to deprive another party of the information, the Court *may* decide to:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment[173]

The 2015 Advisory Committee Notes to Rule 37(e)(2) instruct federal courts to "exercise caution . . . in using the measures specified in [Rule 37](e)(2)."[174] To impose the sanctions authorized by Rule 37(e)(2), the 2015 amendment requires a court to find that the party who lost ESI acted with "intent to deprive another party of the information."[175] The 2015 advisory committee notes to Rule 37(e) explicitly reject prior caselaw that permitted an adverse-inference instruction "on a

---

[172] Fed. R. Civ. P. 37(e).

[173] *Id.*

[174] Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015. *Id.* Indeed, even if the Court finds "an intent to deprive another party of the lost information's use in the litigation," the Court may still choose not to "adopt any of the [specific] measures listed in subsection (e)(2)." *Id.* Instead, the Court many use "lesser measures such as those specified in [subsection] (e)(1) [if those measures] would be sufficient to redress the loss." *Id.*

[175] The parties here mostly focus on "bad faith" instead of "intent to deprive another party of the information." Before the 2015 amendment to Rule 37(e), the Fifth Circuit generally "permit[ted] an adverse inference against the destroyer of evidence only upon a showing of bad faith or 'bad conduct.'" *Guzman*, 804 F.3d at 713. Yet the 2015 version of Rule 37(e) does not mention "bad faith" and instead requires the party at fault to act with "intent to deprive another party of the information." Recently, in 2016, the Southern District of Mississippi noted that the "Fifth Circuit has not clarified whether its prior spoliation jurisprudence has been abrogated or otherwise amended pursuant to the [2015] amendment of Rule 37(e)." *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP, 2016 WL 4544052, at *2 (S.D. Miss. Aug. 31, 2016). Nevertheless, Plaintiff can neither meet the "intent" requirement under Rule 37(e) nor the general bad faith requirement under Rule 37(e).

finding of negligence or gross negligence."[176] Instead, a party must prove "actual intent."[177]

For instance, in *Flores v. AT&T Corporation*, a district judge in the Western District of Texas analyzed whether sanctions in the form of "the most extreme measures, as set forth in Rule 37(e)(2)" were appropriate.[178] There, AT&T had possession of relevant ESI, but such ESI "was routinely deleted after one year as part of AT&T's routine policy."[179] The plaintiff in *Flores* asserted that AT&T's failure to preserve the ESI constituted an "intent to deprive" under Rule 37(e)(2) because AT&T knew the ESI may be relevant to future litigation *after* the plaintiff filed his claim—but AT&T nevertheless continued its routine policy of deleting ESI.[180] The court in *Flores* reasoned that "[e]vidence of destruction as part of a regular course of conduct is insufficient to support a finding of intent to deprive, as required by Rule 37(e)(2)."[181] Accordingly, because "Plaintiff failed to provide any hint of evidence that AT&T's failure to preserve the relevant ESI was anything more than a negligent continuation of its routine policy," the court declined to sanction AT&T under Rule 37(e)(2).[182]

Here, Plaintiff presents two unpersuasive arguments to prove DOC Defendants intentionally deleted CAJUN data with an intent to deprive Plaintiff of such information. First,

---

[176] Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015. Indeed, "[n]egligent or even grossly negligent behavior does not logically support" the inference "that the evidence was unfavorable to the party responsible for loss or destruction of the evidence." *Id.* That is because "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have." *Id.*

[177] *Itron, Inc. v. Johnston*, No. 3:15CV330TSL-RHW, 2017 WL 11372353, at *2 (S.D. Miss. Oct. 26, 2017).

[178] *Flores*, 2018 WL 6588586, at *8.

[179] *Id.* at *9.

[180] *Id.*

[181] *Id.*

[182] *Id.*

Plaintiff argues that DOC Defendants continue to lose CAJUN data despite being notified by Plaintiff that the CAJUN data is relevant to this litigation.[183] Yet, similar to the facts in *Flores*, DOC Defendants have a routine policy of updating old CAJUN data with new CAJUN data.[184] "[E]vidence of destruction as part of a regular course of conduct is insufficient to support a finding of intent to deprive, as required by Rule 37(e)(2)."[185] Accordingly, because Plaintiff failed to present any evidence that DOC Defendants did "anything more than a negligent continuation of its routine policy," the "most severe measures" under Rule 37(e)(2), including adverse-inference sanctions, are not permissible.

Second, Plaintiff argues that DOC Defendants' qualified immunity objection to Plaintiff's production request was made in bad faith.[186] Plaintiff notes that this Court "has already ruled that Secretary LeBlanc is not entitled to qualified immunity based on the pleadings" at the motion to dismiss stage.[187] Yet Plaintiff concedes that DOC Defendants can raise a qualified immunity defense again at the motion for summary judgment stage.[188] In fact, DOC Defendants recently filed a motion for summary judgment based on qualified immunity.[189] Finally, in addition to a qualified immunity defense, DOC Defendants objected to Plaintiff's production request on the grounds of vagueness, overbreadth, and undue burden.[190] Plaintiff fails to demonstrate such

---

[183] Rec. Doc. 123-1 at 11, 13.

[184] *See* Rec. Doc. 178-1 at 70–71.

[185] *Flores*, 2018 WL 6588586, at *9.

[186] Rec. Doc. 178 at 7.

[187] *Id.*

[188] *Id.*

[189] Rec. Doc. 143.

[190] *See, e.g.,* Rec. Doc. 123-22.

objections were made in bad faith.

### C. Whether the Court should Alternatively Compel DOC Defendants to Produce Documents

If the Court does not impose an adverse-sanction inference against DOC Defendants, Plaintiff alternatively requests that the Court compel DOC Defendants to preserve and produce:

> [CAJUN] data for all DOC inmates who meet the criteria for inclusion in the February 2019 Pull Document, but for all months from January 2012 to the present.[191]

There are two issues concerning Plaintiff's motion to compel.[192] The first issue is whether the Court should grant Plaintiff's motion to compel pursuant to Federal Rule of Civil Procedure 37(a). Plaintiff contends that his "discovery request is relevant and proportional, as Plaintiff has alleged a pattern of overdetention in Louisiana over the past decade, and Defendants have denied that allegation."[193] Plaintiff also contends that his counsel recently "met and conferred with [DOC] Defendants' counsel and asked (1) whether the DOC would provide the data underlying the pull document, (2) whether the DOC would provide access to the database so that Plaintiff's counsel could pull the data himself, or (3) whether the DOC would create pull documents once a month moving forward."[194] Plaintiff notes that the "DOC refused all three options."[195]

On the other hand, DOC Defendants argue that the data requested by Plaintiff is "not

---

[191] Rec. Doc. 123-1 at 14.

[192] The Court also notes that DOC Defendants argue the motion to compel is untimely. DOC Defendants are wrong because the relevant deadline is February 20, 2020. The Court's scheduling order states: "Depositions for trial use shall be taken and all discovery shall be completed no later than February 20, 2020." Therefore, the Plaintiff's motion—filed on February 9, 2020—was timely because the motion was filed eleven days before the discovery deadline.

[193] Rec. Doc. 123-1 at 14.

[194] Id.

[195] Id.

clearly identified and so overbroad as to be likely costly, time-consuming, and intrusive."[196] DOC Defendants contend that "[q]ualified immunity protects against such extremely overbroad and intrusive [discovery] requests."[197] DOC Defendants note they have raised a qualified immunity defense "again in a motion for summary judgment" and, therefore, this Court "must resolve [DOC] Defendants' Motion for Summary Judgment in accordance with *Backe* prior to ordering additional discovery from the Defendants."[198]

The Fifth Circuit, in *Backe v. Leblanc*, stated that even if a district court finds that a plaintiff "pled facts overcoming qualified immunity," the district court can "authorize only discovery *narrowly tailored* to rule on [a defendant's] immunity claims."[199] Here, Plaintiff requests the "[CAJUN] data for all DOC inmates who meet the criteria for inclusion in the February 2019 Pull Document, but for all months from January 2012 to the present."[200] Plaintiff is requesting CAJUN data from several years before—and several years after—his alleged overdetention.[201] Plaintiff's request is not "narrowly tailored" to rule on the qualified immunity defense presented in this case. For this reason, the Court will deny the motion to compel.

Alternatively, the Court finds that Plaintiff's request for production imposes an undue burden on DOC Defendants. Federal Rule of Civil Procedure 26(b)(2)(B) states that "a party need not provide discovery of electronically stored information from sources that the party identifies

---

[196] Rec. Doc. 148 at 13.

[197] *Id.*

[198] *Id.* at 13–14.

[199] 691 F.3d 645, 649 (5th Cir. 2012).

[200] Rec. Doc. 123-1 at 14 (quoting Rec. Doc. 123-15).

[201] *Id.*

as not reasonably accessible because of undue burden or cost." Plaintiff requests that DOC Defendants produce "[a]ll data for all DOC inmates who meet the criteria for inclusion in the February 2019 Pull Document, but for all other months from January 2012 to the present."[202] DOC Defendants objected to this request pursuant to Rule 26(b)(2)(B) because Plaintiff's demand encompasses "a vast amount of highly specific data that is difficult to easily retrieve and store for a large selection of the entire inmate population of the Louisiana Department of Corrections."[203] Accordingly, the motion to compel is also unduly burdensome.

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Rodney Grant's "Motion for Sanctions, or in the Alternative, to Compel Preservation and Production of Documents"[204] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this ___13th___ day of April, 2020.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[202] Rec. Doc. 123-15.

[203] Rec. Doc. 123-22 at 2.

[204] Rec. Doc. 123.