# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODNEY GRANT** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-2797** |
| **MARLIN GUSMAN, et al.** | **SECTION: "G"(3)** |

## ORDER AND REASONS

In this litigation, Plaintiff Rodney Grant ("Plaintiff") alleges that the Orleans Parish Sheriff's Office ("OPSO") and the Louisiana Department of Public Safety and Corrections (the "DOC") unlawfully detained him for 27 days following his legal release date.[1] Pending before the Court are cross motions for summary judgment filed by Plaintiff and OPSO Defendants.[2] Considering the cross motions, the memoranda in support and opposition, the record, and the applicable law, the Court denies Plaintiff's motion for summary judgment. The Court grants OPSO Defendants' motion for summary judgment in part and denies the motion in part.

## I. Background

On July 2, 2000, Plaintiff was arrested for simple burglary in New Orleans, Louisiana.[3] Plaintiff allegedly spent 61 days in Orleans Parish Prison ("OPP") following his arrest before being released from OPP custody on September 3, 2000 after the District Attorney failed to file

---

[1] Rec. Doc. 48.

[2] Rec. Docs. 133 and 136. The Court uses the phrase OPSO Defendants to refer collectively to OPSO Sheriff Marlin Gusman ("Sheriff Gusman"), OPSO Captain Sidney Holt ("Captain Holt"), and OPSO Classifications Deputy Corey Amacker ("Deputy Amacker").

[3] Rec. Doc. 48 at 2.

a Bill of Information before the statutory deadline.[4] On October 30, 2000, the District Attorney purportedly filed a Bill of Information against Plaintiff.[5] Plaintiff asserts that his arraignment was rescheduled because of a court closure, and Plaintiff did not appear for arraignment on November 29, 2000 because he did not receive a summons.[6] Plaintiff alleges that the Bill of Information eventually expired by operation of law but his arrest warrant for the simple burglary charge from November 2000 "stayed in the system."[7]

Thereafter, between 2008 and 2015, Plaintiff was incarcerated in DOC custody at the Dixon Correctional Institute for a different crime.[8] On June 27, 2016, approximately one year after his release from the Dixon Correctional Institute, Plaintiff was trying to obtain a driver's license when he was arrested for simple burglary based on the November 2000 warrant issued nearly sixteen years earlier.[9] On June 30, 2016, while in custody, Plaintiff pleaded guilty to the simple burglary charge in Orleans Parish Criminal District Court before Judge Camille Buras ("Judge Buras").[10] Judge Buras sentenced Plaintiff to "1 year, at the Department of Corrections . . . [with] credit for time served from 9-14-08 thru 2015" (the time Plaintiff had served at Dixon Correctional Institute on the earlier crime).[11]

On June 30, 2016, the day of sentencing, Judge Buras contacted Blake Arcuri, an attorney

---

[4] Id.

[5] Id. at 2–3.

[6] Id. at 3.

[7] Id.

[8] Id. Rec. Doc. 136-1 at 3.

[9] Rec. Doc. 48 at 3; Rec. Doc. 136-12.

[10] Rec. Doc. 48 at 3; Rec. Doc. 136-1 at 3–4.

[11] Rec. Doc. 133-5 at 1–2.

for OPSO, to request expedited processing for Plaintiff.[12] Arcuri then sent an email to OPSO Defendants stating: "[Plaintiff] really shouldn't have to actually serve any time once DOC processes it."[13] Sheriff Marlin Gusman responded to Arcuri's email on the same day, stating that "once [Plaintiff] enters a plea and is sentenced, we can get the DOC to compute his time."[14] Captain Sidney Holt also responded to Arcuri's email, stating that he had forwarded Arcuri's email to Deputy Amacker to have him "contact DOC and see what can be done."[15] Deputy Amacker then emailed Arcuri stating that he would "work on getting [Plaintiff's] packet sent to the DOC tomorrow but with the holiday weekend he will not get calculated till Tuesday [July 5, 2016] most likely."[16]

On July 7, 2016, seven days after Plaintiff was sentenced by Judge Buras, the DOC sent OPSO an inmate transfer request with July 12, 2016 as the transfer date.[17] Plaintiff remained in OPSO custody until July 12, 2016, when OPSO transported Plaintiff to the DOC facility, Elayn Hunt Correctional Center, in St. Gabriel, Louisiana ("Elayn Hunt").[18] While at Elayn Hunt, Plaintiff allegedly explained that his sentence was "time served" and he "should be released."[19] According to Plaintiff, an official at Elayn Hunt confirmed that Plaintiff's "sheet indicated 'no

---

[12] *Id.* at 2.

[13] Rec. Doc. 164-1 at 2.

[14] Rec. Doc. 133-16.

[15] Rec. Doc. 136-12.

[16] Rec. Doc. 133-15.

[17] Rec. Doc. 136-2 at 2.

[18] *Id.*

[19] Rec. Doc. 48 at 9.

sentence.'"[20] Nevertheless, Plaintiff remained in custody and was transferred to the Madison Parish Correctional Center ("MPCC") in Tallulah, Louisiana.[21]

Approximately 15 days after Plaintiff appeared before Judge Buras, Plaintiff's friend Alfred Marshall purportedly became concerned and told Judge Buras that Plaintiff had not yet been released.[22] Judge Buras allegedly called Sheriff Gusman and MPCC warden Chris Stinson to determine why Plaintiff had not been released from custody.[23] Three days later (or 18 days after being sentenced), on July 18, 2016, Judge Buras held a hearing at which she vacated Plaintiff's one-year sentence for the simple burglary charge from November 2000 and resentenced him to "CREDIT FOR TIME SERVED."[24] Yet, according to Plaintiff, "despite having no legal authority to hold [Plaintiff]," the DOC still did not release him.[25] On July 25, 2016, Judge Buras contacted the DOC and told a DOC employee that the "clear intention of all parties when [Plaintiff] pled guilty was to have this credit for time served sentence result in a release."[26] Finally, 27 days after Judge Buras sentenced Plaintiff to time served and instructed OPSO to expedite his release, Plaintiff was released from custody on July 27, 2016.[27]

---

[20] *Id*.

[21] *Id*.

[22] *Id*.

[23] *Id*.

[24] *Id*. at 3, 9; Rec. Doc. 158-1 at 1.

[25] Rec. Doc. 48 at 9.

[26] Rec. Doc. 129-18 at 7.

[27] Rec. Doc. 158-1 at 2.

## II. Law and Analysis

Cross motions for summary judgment are pending before the Court.[28] Plaintiff seeks summary judgment on two claims.[29] First, Plaintiff argues that there are no genuine issues of material fact in dispute and he is entitled to judgment as a matter of law on a false imprisonment tort claim pending against all OPSO Defendants.[30] Second, Plaintiff argues that there are no genuine issues of material fact in dispute and he is entitled to judgment as a matter of law on a federal due process claim pending against Sheriff Gusman in his official capacity.[31]

OPSO Defendants seek summary judgment on all claims pending against OPSO Defendants.[32] These claims are federal law claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the United States Constitution against Sheriff Gusman, a due process claim under the Louisiana Constitution against OPSO Defendants, a state law false imprisonment claim against OPSO Defendants, and a state law negligence claim against OPSO Defendants.[33] OPSO Defendants raise four issues in support of their motion.[34] First, OPSO Defendants argue that all of Plaintiff's claims are barred by *Heck v. Humphrey*.[35] Second, OPSO Defendants assert that there are no genuine issues of material fact in dispute and OPSO Defendants are entitled to judgment as a matter of law on Plaintiff's false imprisonment tort claim pending against them

---

[28] Rec. Doc. 133; Rec. Doc. 136.

[29] Rec. Doc. 133-1.

[30] *Id.* at 13–16.

[31] *Id.* at 16–24.

[32] Rec. Doc. 136-1.

[33] Rec. Doc. 48.

[34] Rec. Doc. 136-1.

[35] *Id.* at 9–12.

because: (1) Plaintiff's June 30, 2016 sentence to one year in prison with credit for time served on an earlier conviction was illegal under Louisiana law and Plaintiff had not spent a year in OPSO custody on the current sentence; and (2) when Judge Buras vacated the June 30, 2016 sentence and imposed a sentence of "credit for time served" on July 18, 2016, her first sentence was nullified and "credit for time served" included any alleged overdetention.[36] Third, OPSO Defendants contend there are no genuine issues of material fact in dispute and Sheriff Gusman is entitled to judgment as a matter of law on Plaintiff's federal due process claim pending against Sheriff Gusman in his official capacity because: (1) Plaintiff provides no legal authority in support of the right to have his time immediately calculated; (2) Sheriff Gusman lacks authority under state law to release Plaintiff because only the DOC could release someone convicted of a felony; (3) Sheriff Gusman sent Plaintiff's paperwork to the DOC in advance of his physical transfer in an effort to expedite Plaintiff's classification; (4) the clerk of court, not the sheriff, is obliged to prepare a person's classification packet which is needed for the DOC to calculate a prisoner's sentence; and (5) Plaintiff has not established deliberate indifference and effectively seeks single incident *Monell* liability, which is a rare and high bar that Plaintiff must overcome to recover against Sheriff Gusman.[37] Fourth, OPSO Defendants assert that Plaintiff does not have standing to obtain declaratory or injunctive relief under federal law.[38] The Court addresses each of these arguments in turn.

---

[36] *Id.* at 24–25.

[37] Rec. Doc. 164; Rec. Doc. 136-1 at 12–21.

[38] Rec. Doc. 136-1 at 21–24.

**A.      *Whether Plaintiff's State and Federal Law Claims are Barred by* Heck v. Humphrey**

OPSO Defendants rely heavily on *Heck v. Humphrey*[39] to argue that all pending state and federal law claims in this actions should be dismissed.[40]  In *Heck*, the Supreme Court held:

> [I]n order to recover damages from [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .[41]

The Fifth Circuit has explained that "[t]he policy undergirding the [*Heck*] favorable termination rule is based on 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.'"[42] Accordingly, the Fifth Circuit has held that "[u]nder *Heck v. Humphrey*, a convicted criminal may not bring a claim under 42 U.S.C. § 1983, if success on that claim would necessarily imply the invalidity of a prior criminal conviction. That is because we do not allow the use of § 1983 to collaterally attack a prior criminal proceeding, out of concern for finality and consistency."[43]

To support their argument that *Heck* bars all of Plaintiff's claims against them, OPSO Defendants contend that "an overdetention judgment on the vacated sentence would necessarily imply the validity of the July 18, 2016 'time served' sentence" and is therefore barred by *Heck.*[44]

---

[39] 512 U.S. 477, 487 (1994).

[40] Rec. Doc. 164 at 1–5; Rec. Doc. 136-1 at 9–12.

[41] 512 U.S. at 486–87.

[42] *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) (quoting *Heck*, 512 U.S. at 486).

[43] *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir.), *cert. denied,* 141 S. Ct. 567, 208 L. Ed. 2d 183 (2020).

[44] Rec. Doc. 136-1 at 10.

OPSO Defendants then argue that when Judge Buras vacated the June 30, 2016 sentence and resentenced Plaintiff to "credit for time served" on July 18, 2016, the July 18, 2016 sentence of "credit for time served" "included every single day served between June 27, 2016 and July 18, 2016."[45] In response, Plaintiff argues that the *Heck* defense is not applicable here and that this Court has already found *Heck* inapplicable to the instant action.[46]

Plaintiff is correct. Although OPSO Defendants did not raise *Heck* at the motion to dismiss stage, DOC Defendants James LeBlanc and Timothy Hooper raised the *Heck* defense in their motion to dismiss the First Amended Complaint.[47] In this Court's March 27, 2018 Order denying DOC Defendants James LeBlanc and Timothy Hooper's motion to dismiss, this Court found *Heck* inapplicable to the instant lawsuit.[48] In finding *Heck* inapplicable, this Court reasoned that "Plaintiff does not argue that his conviction or sentence were invalid [as is required under the *Heck* defense]. Instead, he contends that [DOC Defendants James LeBlanc and Timothy Hooper] violated his constitutional rights by failing to release him from prison. Therefore, *Heck* is not applicable to this case."[49]

The Court's reasoning applies with equal force to OPSO Defendants' claim that *Heck* bars Plaintiff's federal and state law claims against OPSO Defendants. First, as discussed below, the Court is not persuaded by OPSO Defendants' argument that the July 18, 2016 sentence to "credit for time served," which was intended to clarify the June 30, 2016 sentence, sanctioned the alleged

---

[45] *Id.*

[46] Rec. Doc. 180 at 2–3; Rec. Doc. 158 at 2.

[47] Rec. Doc. 17 at 2.

[48] Rec. Doc. 46 at 32.

[49] *Id.*

8

overdetention of Plaintiff between June 30, 2016 and July 18, 2016 because regardless of whether the July 18, 2016 sentence "nullified" the June 30, 2016 sentence, OPSO Defendants as custodians were bound to honor the June 30, 2016 sentence as of June 30, 2016.[50]

Moreover, *Heck* does not bar Plaintiff's claims against OPSO Defendants because even if OPSO Defendants are correct that the July 18, 2016 sentence "caused the entire period of [Plaintiff's] incarceration," Plaintiff does not collaterally attack the *validity* of the state court's June 30, 2016 conviction, his June 30, 2016 sentence, or his July 18, 2016 sentence.[51] Rather, Plaintiff challenges the *execution* of his June 30, 2016 sentence. The fact that Plaintiff's June 30, 2016 sentence was subsequently vacated by the July 18, 2016 sentence does not alter the nature of Plaintiff's claim to imply the invalidity of any "outstanding criminal judgment against [him]" so as to trigger a *Heck* procedural bar to Plaintiff's claims.[52]

For these reasons, the Court finds OPSO Defendants' reliance on the Ninth Circuit's decision in *Taylor v. County of Pima* misplaced.[53] In *Taylor*, the plaintiff filed a state post-conviction petition arguing that he was wrongfully convicted in 1972.[54] The plaintiff then entered into an agreement with the government in 2013 under which the original 1972 conviction was vacated and the plaintiff pleaded no contest to the same counts, was resentenced to time served,

---

[50] *See* discussion *infra* Part II.B.1.

[51] Rec. Doc. 158 at 3.

[52] *See Heck*, 512 U.S. at 487 ("[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.").

[53] 913 F.3d 930 (9th Cir. 2019), *cert. denied sub nom. Taylor v. Pima Cty., Arizona*, 140 S. Ct. 2508 (2020). Notably, OPSO Defendants do not cite any binding federal precedent to support their argument that *Heck* bars Plaintiff's claims against OPSO Defendants.

[54] *Id.* at 932.

and was released from prison.[55] The plaintiff subsequently raised a Section 1983 claim based on alleged constitutional violations resulting in his 1972 conviction.[56] The Ninth Circuit, relying on *Heck*, held that the plaintiff was precluded from bringing a Section 1983 claim for wrongful incarceration related to his 1972 conviction because a judgment in his favor would "necessarily imply the invalidity of his [2013] conviction or sentence."[57] Here, by contrast, Plaintiff's success on the merits would not imply the invalidity of his June 30, 2016 conviction or his July 18, 2016 sentence. In this case, Plaintiff does not attack his conviction or his sentence; rather, Plaintiff alleges that between June 30, 2016 and July 27, 2016, he was overdetained by OPSO Defendants who were charged with executing the sentence imposed by Judge Buras on June 30, 2016.

In sum, OPSO Defendants' argument that *Heck* precludes Plaintiff's claims against OPSO Defendants emphasizes form over substance and ignores that Plaintiff argues only that OPSO Defendants violated federal and state law by failing to timely release him from custody. For these reasons, the Court finds that *Heck* is not applicable to this case.[58]

**B.    *Whether There are any Genuine Issues of Material Fact in Dispute Regarding Plaintiff's State Law False Imprisonment Claim Precluding Summary Judgment for Either Party***

Both parties seek summary judgment on Plaintiff's false imprisonment claim pending against all OPSO Defendants. Under Louisiana law, two elements comprise the civil cause of

---

[55] *Id.*

[56] *Id.*

[57] *Id.* (*citing Heck*, 512 U.S. at 487).

[58] The Court notes that several other federal district courts in the Fifth Circuit have recently rejected the *Heck* defense in similar overdetention scenarios. *See, e.g.*, *Frederick v. LeBlanc*, No. 18-682-SDD-RLB, 2020 WL 2121109, at *3 (M.D. La. May 4, 2020); *Thomas v. Gryder*, No. 17-1595-EWD, 2019 WL 5790351, at *5 (M.D. La. Nov. 6, 2019); *Traweek v. Gusman*, 414 F. Supp. 3d 847, 859 (E.D. La. 2019) (Feldman, J.).

action for false imprisonment: (1) lack of legal authority (2) proof of restraint.[59] A civil action for false imprisonment under Louisiana law does not require the confinement to be intentional.[60]

In his motion for summary judgment, Plaintiff argues that the elements of false imprisonment under Louisiana law are satisfied because Plaintiff was imprisoned by OPSO Defendants without legal authority from June 30, 2016 to July 12, 2016.[61] In opposition, OPSO Defendants argue that considering Judge Buras originally sentenced Plaintiff to one year in prison with credit for time served on an earlier conviction, which was illegal under Louisiana law, and Plaintiff had not spent a year in OPSO custody on the current sentence, Plaintiff is precluded from bringing a false imprisonment claim against OPSO Defendants.[62] OPSO Defendants also argue that Plaintiff's June 30, 2016 sentence was an "absolute nullity" because when Judge Buras vacated that sentence and re-sentenced Plaintiff on July 18, 2016 to "credit for time served," the time served included the time Plaintiff claims he was overdetained thereby eliminating his claim for false imprisonment.[63]

To prevail on the false imprisonment claim Plaintiff must show: (1) OPSO Defendants did not have legal authority to detain Plaintiff and (2) OPSO Defendants restrained Plaintiff from June 30, 2016 through July 12, 2016. Each issue is addressed in turn.

---

[59] *Prisk v. Palazzo*, 95-1475 (La. App. 4 Cir. 1/19/96), 668 So. 2d 415, 417; *see also Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La.1977) ("False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority.").

[60] The civil action for false imprisonment—unlike the crime of false imprisonment—does not require the confinement to be intentional. *Prisk*, 668 So. 2d at 417. Thus, "to the extent [a party] relies on the theory that [the party's] claim of false imprisonment is an intentional tort . . . that argument lacks merit." *Id.*

[61] Rec. Doc. 133-1 at 13–14.

[62] Rec. Doc. 164 at 4–8.

[63] *Id.* at 13.

### 1.    Whether OPSO Defendants had legal authority to detain Plaintiff

Beginning with the lack of legal authority prong, the parties do not dispute that Plaintiff was sentenced by Judge Buras on June 30, 2016 to a term of one year in prison with "credit for time served from 9-14-08 thru 2015."[64] The parties also do not dispute that Plaintiff had spent more than one year in DOC custody between 2008 and 2015.[65] Moreover, OPSO Defendants admit that "[o]n June 30, 2016, Judge Buras asked the Sheriff's attorney, Blake Arcuri, to expedite DOC processing relative to [Plaintiff]."[66] An email Arcuri sent to OPSO Defendants on June 30, 2016 states:

> Judge Buras has asked that we expedite this DOC processing. This is an inmate who had a capias out of criminal court a decade ago, but it was not entered into NCIC. He went to Lafayette, got convicted, served his sentence, and was released without ever coming to Orleans. He was picked up when getting a driver's license and is now pleading on the Orleans charge to a consecutive sentence. Thus, he really shouldn't have to actually serve any time once DOC processes it.[67]

Therefore, OPSO Defendants were aware that the judge did not intend for Plaintiff to serve any more time in jail and expected him to be released on or about June 30, 2016.

OPSO Defendants argue that they had legal authority to detain Plaintiff because Judge

---

[64] Rec. Doc. 133-22 at 1 (Docket master report).

[65] Rec. Doc. 133-19 at 29–30 (DOC 30(b)(6) representative deposition):

> Q.    So Rodney Grant was sentenced to one year with credit for time served between '08 and 2015, right?
>
> A.    Correct.
>
> Q.    He had served more than one year between '08 and 2015, correct?
>
> A.    Correct.

[66] Rec. Doc. 133-5 at 2.

[67] *See* Rec. Doc. 133-15 at 1 (June 30, 2016 email from Arcuri to OPSO Defendants).

Buras sentenced Plaintiff to a term of one year in prison, Plaintiff did not spend a year in OPSO's custody, and Judge Buras was not legally allowed to give Plaintiff credit for the time he served on the earlier sentence.[68] OPSO Defendants argue that the June 30, 2016 sentence imposed by Judge Buras violated Louisiana Code of Criminal Procedure article 880(E)'s requirement that a defendant can only receive credit for time served on the instant felony.[69] According to OPSO Defendants, since Plaintiff did not spend a year in OPSO custody on the instant felony and he could not legally receive credit for time served in DOC custody between 2008 and 2015, OPSO had legal authority to detain Plaintiff for the time he alleges he was falsely imprisoned.[70]

The Court is not persuaded by OPSO Defendants' argument. Whether or not the sentence imposed by Judge Buras complied with Louisiana law, OPSO Defendants as custodians had an "obligation [] to see that the sentence imposed is the sentence served" and also are "charged with complying with any conditions placed on a sentence by the trial judge."[71] In *Boddye v. Louisiana Department of Corrections*, the Louisiana First Circuit Court of Appeal explained that "[i]t is well settled that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant's custodian."[72] Accordingly, the *Boddye* court held that even where a sentence is illegal the custodian "lacks authority to unilaterally correct the error committed by the sentencing court in

---

[68] *See* Rec. Doc. 164 at 5–8.

[69] *Id.*

[70] *Id.*

[71] 2014-1836 (La. App. 1 Cir. 6/26/15), 175 So. 3d 437, 441, *writ denied sub nom. Boddye v. LeBlanc*, 2015-1688 (La. 10/30/15), 180 So. 3d 303.

[72] 2014-1836 (La. App. 1 Cir. 6/26/15), 175 So. 3d 437, 441, *writ denied sub nom. Boddye v. LeBlanc*, 2015-1688 (La. 10/30/15), 180 So. 3d 303.

this matter. Instead, such error may only be corrected by the sentencing court itself or on direct appellate review."[73] Therefore, even assuming that the sentence imposed by Judge Buras was illegal, that would not confer legal authority on OPSO Defendants to detain Plaintiff.

OPSO Defendants also contend that they had legal authority to detain Plaintiff because Judge Buras vacated the June 30, 2016 sentence and re-sentenced him to "credit for time served" on July 18, 2016.[74] As discussed above, regardless of whether the July 18, 2016 sentence "nullified" the June 30, 2016 sentence, OPSO Defendants were bound to honor the June 30, 2016 sentence as of June 30, 2016.

OPSO Defendants point to two cases from the Seventh and Ninth Circuits to support their theory, both of which are distinguishable here.[75] OPSO Defendants first cite the Seventh Circuit's unpublished decision in *United States v. Castrellon*.[76] In *Castrellon*, a criminal defendant appealed after he was resentenced, arguing that he was not provided with an opportunity to object to his presentence report at the resentencing hearing.[77] The government argued that the defendant waived objections to the presentence report by failing to raise them at the first sentencing hearing.[78] The Seventh Circuit disagreed, finding that when a sentence is vacated, a defendant must be afforded the same rights at the resentencing hearing which he had at the first sentencing

---

[73] *Id.* ("[D]espite the illegality of the sentences, we find that the [custodian] lacks authority to unilaterally correct the error committed by the sentencing court in this matter. Instead, such error may only be corrected by the sentencing court itself or on direct appellate review.").

[74] *See* Rec. Doc. 164 at 2–8.

[75] *Id.*

[76] 956 F.2d 1165 (7th Cir. 1992).

[77] *Id.*

[78] *Id.*

hearing.[79] Crucially, *Castrellon* is distinguishable here because *Castrellon* deals with the *determination* of a sentence and not the *execution* of a sentence. This is a distinction with a difference here because the sentencing court is tasked with the determination of a sentence while the jailer is tasked with the execution of a sentence.

Here, the sentencing court determined that Plaintiff should receive credit for time he previously served in prison. Judge Buras made that determination first by sentencing Plaintiff to one year in prison with credit for time served on a prior sentence. Then, in an attempt to get the jailers to execute her original sentence and stop Plaintiff's overdetention, Judge Buras clarified her original sentence by stating simply he is to get "credit for time served." Yet OPSO Defendants argue that by resentencing Plaintiff to "credit for time served," Judge Buras inadvertently validated his overdetention by including the time he spent incarcerated between June 30, 2016 and July 18, 2016 in the "credit for time served" he was to receive. OPSO Defendants' argument that by resentencing Plaintiff to "credit for time served," Judge Buras retroactively cured Plaintiff's alleged false imprisonment is not supported by the Seventh Circuit's unpublished decision in *Castrellon*. In addition, for the reasons set forth above, the Court finds that OPSO Defendants' reliance on the Ninth Circuit's decision in *Taylor v. County of Pima* is similarly misplaced because *Taylor* involved a constitutional challenge to an allegedly wrongful conviction and again, here the issue is the execution of a sentence by the custodian.[80]

Moreover, Plaintiff points to evidence in this case to demonstrate that the sentence imposed by Judge Buras on July 18, 2016 was intended to clarify the June 30, 2016 sentence, not to authorize the thirteen days Plaintiff was allegedly overdetained in OPSO custody. On June 30,

---

[79] *Id.*

[80] 913 F.3d 930 (9th Cir. 2019), *cert. denied sub nom. Taylor v. Pima Cty., Arizona*, 140 S. Ct. 2508 (2020).

2016, Judge Buras asked Arcuri to expedite DOC processing of Plaintiff.[81] This was not unexpected—at Plaintiff's sentencing hearing on June 30, 2016, Judge Buras told Plaintiff that Arcuri was "going to try to expedite [Plaintiff's] paperwork so that it [didn't] take the normal couple of weeks for classification."[82] Additionally, OPSO's 30(b)(6) representative testified that at times relevant to this case, a Sheriff's deputy was in each courtroom of the Orleans Parish Criminal District Court collecting sentencing paperwork and carrying it back to the Sheriff's Office.[83] Therefore, there were several instances where OPSO Defendants were made aware of the exact sentence Judge Buras had imposed.

For these reasons, the Court finds that Plaintiff has pointed to facts to show that OPSO Defendants did not have legal authority to detain Plaintiff and OPSO Defendants have failed to point to evidence in the record which would place these facts in dispute. It appears Plaintiff has pointed to undisputed evidence that OPSO Defendants did not have legal authority to detain Plaintiff beyond a clearly "reasonable" time after June 30, 2016.[84]

### 2. Whether OPSO Defendants restrained Plaintiff from June 30, 2016 through July 12, 2016

Turning to the second prong, proof of restraint, the Court finds that a genuine factual dispute exists regarding whether it was DOC Defendants or OPSO Defendants that restrained Plaintiff from June 30, 2016 through July 12, 2016. On the one hand, the parties do not dispute that Plaintiff was in OPSO physical custody from June 30, 2016 to July 12, 2016.[85] In addition,

---

[81] Rec. Doc. 133-5 at 2.

[82] Rec. Doc. 133-13 at 10 (sentencing transcript).

[83] Rec. Doc. 133-6 at 38 (OPSO 30(b)(6) representative deposition).

[84] *See* discussion *infra* Part II.C.3 addressing what is a "reasonable" time for an individual to be detained following the expiration of legal authority to detain the individual.

[85] Rec. Doc. 133-2. OPSO Defendants did not respond to this fact. Per EDLA Local Rule 56.2, "[a]ll material

Sheriff Gusman stated in an email to Arcuri that "once [Plaintiff] enters a plea and is sentenced, we can get DOC to compute his time," suggesting that OPSO Defendants exercised some agency in restraining Plaintiff after June 30, 2016.[86] On the other hand, the parties also do not dispute that Plaintiff was sentenced to DOC legal custody on June 30, 2016.[87] Additionally, at his deposition, DOC Secretary James LeBlanc testified that he is responsible for inmates sentenced to the custody of the DOC whether they are in a state-run facility, a parish-run facility, or a private facility.[88]

It appears that Plaintiff was detained by the DOC, OPSO, or some combination thereof. However, the ambiguity surrounding who actually restrained Plaintiff or what share of responsibility each owed—and who is therefore liable for Plaintiff's false imprisonment— presents a triable issue of fact in this case. Accordingly, the Court finds that a genuine issue of material fact is in dispute as to the proof of restraint element. Therefore, the Court denies both parties' motions for summary judgment to the extent the parties seek summary judgment on the false imprisonment claim.

---

facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement."

[86] Rec. Doc. 133-16 at 1.

[87] Rec. Doc. 133-22 at 1.

[88] Rec. Doc. 129-11 at 13 (Deposition of DOC Secretary James LeBlanc)

    Q.    Okay. As Secretary, you're responsible for the inmates sentenced to the custody of the DOC, correct?

    A.    Correct.

    Q.    Whether or not they're in a state-run facility, a parish-run facility, or private-facility. Is that correct?

    A.    Correct. That's correct.

C.   **Whether There is a Genuine Dispute as to Any Material Fact Regarding Plaintiff's Section 1983 Claim Against Sheriff Gusman in his Official Capacity Precluding Summary Judgment for Either Party**

Plaintiff seeks summary judgment on his Section 1983 claim against Sheriff Gusman in his official capacity,[89] arguing that OPSO Defendants deprived Plaintiff of his established constitutional right to timely release from prison and OPSO Defendants acted with deliberate indifference by establishing policies and procedures that would necessarily result in overdetention.[90] OPSO Defendants also seek summary judgment in their favor on Plaintiff's Section 1983 claim, arguing: (1) Plaintiff provides no legal authority in support of the right to have his time immediately calculated even if it means remaining in custody beyond what is reasonable considering the specific sentence imposed by a judge; (2) Sheriff Gusman lacks authority under state law to execute a sentence at hard labor and therefore did not have the authority to release Plaintiff even if he was being overdetained; (3) Sheriff Gusman sent Plaintiff's paperwork to the DOC in advance of his physical transfer in an effort to expedite Plaintiff's classification; (4) the clerk of court, not the sheriff, is obliged to prepare a person's classification packet, which is needed for the DOC to calculate a prisoner's sentence; and (5) Plaintiff has not established deliberate indifference and effectively seeks single incident *Monell* liability, which is a rare and high bar that Plaintiff must overcome to recover against Sheriff Gusman.[91]

---

[89] The Court previously dismissed Plaintiff's individual capacity claims against OPSO Defendants on the basis of qualified immunity. Rec. Doc. 67.

[90] Rec. Doc. 133-1 at 17.

[91] Rec. Doc. 164; Rec. Doc. 136-1 at 12–21. OPSO Defendants also argue that because Louisiana Code of Criminal Procedure article 892 uses the term "indictment" and Plaintiff was charged by Bill of Information, the sheriff did not have a duty to gather the Bill of Information. Rec. Doc. 164 at 14–15. OPSO Defendants' argument lacks merit under Louisiana law. *See* La. Code Cr. P. art. 461 ("'Indictment' includes affidavit and information, unless it is the clear intent to restrict that word to the finding of a grand jury."); *Davis v. James LeBlanc, Sec'y Dep't of Corr.*, 2013-0654 (La. App. 1 Cir. 12/27/13), *writ denied sub nom. State ex*

18

Plaintiff brings claims against Sheriff Gusman in his official capacity as the sheriff of Orleans Parish.[92] "Claims against the Sheriff in his official capacity are treated as claims against the municipal entity he represents."[93] Municipal liability under Section 1983 requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[94] This is considered a *Monell* claim, named after the Supreme Court case *Monell v. Department of Social Services of the City of New York*.[95]

Plaintiff's *Monell* claim against Sheriff Gusman rests on an alleged OPSO policy or custom. In *Monell*, the Supreme Court explained that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[96] Under Fifth Circuit precedent, an official policy for *Monell* purposes is either:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-

---

*rel. Davis v. State*, 2014-0047 (La. 9/19/14), 148 So. 3d 946.

[92] Rec. Doc. 133-1 at 11.

[93] *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012).

[94] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[95] 436 U.S. 658, 690 (1978).

[96] *Id.* OPSO Defendants also argue that Plaintiff has not established deliberate indifference and effectively seeks single-incident *Monell* liability. Rec. Doc. 164 at 15. In subsequent briefing, Plaintiff clarifies that he is not relying on a "single-incident argument [] to establish his *Monell* claim." Rec. Doc. 180 at 8.

making authority.[97]

Therefore, to succeed on a *Monell* claim against Sheriff Gusman, Plaintiff must show that each of these three elements are met. Accordingly, each element is addressed in turn.

### 1. Whether Plaintiff has shown an official policy or custom that results in overdetention

In support of his motion for summary judgment, Plaintiff points to written OPSO Policy # 501.13 which states that "[a]n ISB deputy picks up the completed [pre-classification] packets every Thursday for delivery to the Department of Corrections Headquarters in Baton Rouge, Louisiana."[98] Plaintiff also points to OPSO's 30(b)(6) representative's deposition testimony, in which the representative testified that OPSO does not have "any policies or practices to identify" individuals who are eligible for immediate release upon sentencing, but rather "wait[s] for DOC to let [OPSO] know."[99]

In their motion requesting summary judgment in favor of Sheriff Gusman on Plaintiff's Section 1983 claim, OPSO Defendants argue that Plaintiff has failed to identify any promulgated policy which resulted in a violation of Plaintiff's constitutional rights.[100] OPSO Defendants also argue that Plaintiff has failed to prove a pattern of prior similar incidents sufficient to establish a *Monell* claim.[101]

---

[97] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

[98] Rec. Doc. 133-10 at 6; *see also* Rec. Doc. 133-6 at 82 (OPSO 30(b)(6) deposition):

    Q.    That's a policy created by the sheriff?

    A.    501.13, yes.

[99] Rec. Doc. 133-6 at 74–76.

[100] Rec. Doc. 136-1 at 16.

[101] *Id.* at 17–21.

The Court finds that Plaintiff has identified a promulgated policy that necessarily results in some individuals being detained beyond their legal release date. Specifically, OPSO's written policy of driving pre-classification packets to the DOC headquarters in Baton Rouge once a week necessarily results in the overdetention of inmates who are eligible for immediate release upon sentencing.[102]

---

[102] In addition to the written policy, Plaintiff also contends OPSO has a "persistent, widespread practice" of "indefinitely" holding inmates sentenced to DOC custody, including those eligible for immediate release, until OPSO receives a transfer document from the DOC. The record reflects that there are genuine issues of material fact in dispute as to this issue. On the one hand, OPSO 30(b)(6) representative testified:

> Q.   OPSO just holds that person until they get the document from the DOC regardless of how long that takes, correct?
>
> A.   Correct.
>
> Q.   Could be a day, could be a week, could be a couple of weeks?
>
> A.   Yes. There is no time frame, basically.
>
> Q.   It's an indefinite period of time, correct?
>
> A.   Correct.

Rec. Doc. 133-6 at 49. *See also* Rec. Doc. 133-14 at 1 (email from OPSO employee regarding inmate's release) ("He can't get released until DOC sends him a release. The whole process takes about 2 weeks. He has to wait!!!!"). On the other hand, Sheriff Gusman denied such a practice:

> Q.   Sure. So you send -- you've got a person sentenced to the custody of DOC in your jail, right, immediately post sentencing. You send off a packet to the DOC, and then you wait indefinitely to hear back from the DOC to move them out of your jail, correct?
>
> . . .
>
> A.   No.
>
> Q.   Why not? Why is that not true?
>
> A.   Because we have -- we have someone who works specifically in that area, and it's their responsibility. If they're doing what they're supposed to, then they're not waiting indefinitely. They're in communication with DOC.

Rec. Doc. 133-9 at 73. Therefore, there are genuine issues of material fact in dispute regarding whether such a practice existed.

2.      **Whether Sheriff Gusman had actual or constructive knowledge of the policy**

The parties do not dispute that Sheriff Gusman is the final policymaker for OPSO.[103] The parties also do not dispute that Sheriff Gusman had actual knowledge of written OPSO Policy # 501.13, which was signed by Sheriff Gusman.[104] Therefore, it is undisputed that Sheriff Gusman, the final policymaker for OPSO, had actual knowledge of written OPSO Policy # 501.13.

3.      **Whether Plaintiff has shown that OPSO official policy was the moving force of a constitutional violation**

The Fourteenth Amendment to the United States Constitution forbids states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"[105] The Supreme Court has held that "loss of personal liberty through imprisonment" triggers constitutional due process protections.[106] In *Porter v. Epps*, the Fifth Circuit held that the Fourteenth Amendment provides a clearly established right to be timely released from prison.[107] Despite OPSO Defendants' attempts to characterize the right at issue as the "right to have one's

---

[103] Rec. Doc. 133-5 at 7–8. *See also Causey v. Par. of Tangipahoa*, 167 F. Supp. 2d 898, 907 (E.D. La. 2001) (Duval, J.) (quoting *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 614 (E.D. La. 1998) (Mentz, J.) ("[T]he Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office.")).

[104] Rec. Doc. 133-10 at 6.

[105] U.S. Const. amend. XIV.

[106] *See Jauch v. Choctaw Cty.*, 874 F.3d 425, 430 (5th Cir. 2017) (citing *Turner v. Rogers*, 564 U.S. 431, 445 (2011)).

[107] 659 F.3d at 445 ("Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison."); *see also* Rec. Doc. 143-1 at 12 (DOC Defendants' Motion for Summary Judgment) ("The right at issue in this case is the Fourteenth Amendment right of a convicted felon to be timely released from prison in accordance with the sentence imposed. The existence of the right, as a general proposition, is undisputed.").

sentence immediately calculated," Plaintiff alleges only that "[a]s jailors, OPSO Defendants have a legal duty to timely release those from their custody."[108]

Fifth Circuit precedent illuminates the contours of the constitutional right to timely release from prison. In *Whirl v. Kern*, for example, the plaintiff was arrested on suspicion of felony theft and indicted by a grand jury.[109] Approximately two months after the plaintiff's arrest, the indictments pending against the plaintiff were dismissed.[110] Notice of the dismissal was sent to the sheriff's office, but the sheriff testified that "he was not apprised of these proceedings."[111] As a result, the plaintiff remained in jail for nearly nine months after all charges against him were dismissed.[112] Reasoning that a "jailer's duty to his prisoner is not breached until the expiration of a *reasonable time* for the proper ascertainment of the authority upon which his prisoner is detained," the Fifth Circuit determined that the sheriff's nine-month delay was an unreasonable amount of time.[113]

Thereafter, in *Douthit v. Jones*, the Fifth Circuit held that "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."[114] However, the Fifth Circuit noted that whether a

---

[108] Rec. Doc. 48 at 11.

[109] 407 F.2d at 785.

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *Id.* at 785, 792–93.

[114] 619 F.2d 527, 532 (5th Cir. 1980), *reh'g denied* 641 F.2d 345, 346 (5th Cir. 1981); *see also Porter,* 659 F.3d at 556 ("Detention of a prisoner for over thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." (internal quotation omitted)).

jailer violates the Due Process Clause by unduly detaining an individual depends on "the context of th[e] case."[115]

Recently, in *Jauch v. Choctaw County*, the Fifth Circuit considered whether detention of a plaintiff for 96 days after arrest, without the plaintiff ever being brought before a judge for a bail hearing, constituted an unconstitutional deprivation of due process.[116] In *Jauch*, the county had a policy of holding a person without an arraignment or bond hearing until the court that issued the warrant convened its next term.[117] The Fifth Circuit held that "indefinite pre-trial detention without an arraignment or other court appearance" violates a detainee's Fourteenth Amendment right to due process.[118] Furthermore, the Fifth Circuit determined that the sheriff was not entitled to qualified immunity because "[t]he right at issue [] was clearly established and its contours 'sufficiently clear' that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior to bringing them before a judge."[119]

On June 30, 2016, Judge Buras sentenced Plaintiff to one year of hard labor with "credit for time served from 9-14-08 thru 2015."[120] It is undisputed that Plaintiff was not released from

---

[115] *Douthit*, 619 F.2d at 532.

[116] *Jauch*, 874 F.3d at 427.

[117] *Id.* at 430.

[118] *Id.* at 432, 436.

[119] *Id.* at 436. In addition, although not binding on this Court, several federal circuit courts outside of the Fifth Circuit have found that overdetention for far shorter time periods may be unreasonable. *See, e.g.*, *Davis v. Hall*, 375 F.3d 703, 713 (8th Cir. 2004) ("[E]ven a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment."); *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988) ("It is for a jury to determine whether the 11 hours it took the sheriff to discharge [the plaintiff] was reasonable."). *See also Barnes v. D.C.*, 793 F. Supp. 2d 260, 276 (D.D.C. 2011) (finding that "courts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48-hour horizon.").

[120] Rec. Doc. 133-22 at 1 (Docket Master Report); Rec. Doc. 133-21 at 27 (explaining that "HL" stands for

custody until July 27, 2016.[121] Therefore, if holding Plaintiff for 27 days beyond the day he was sentenced to time served is considered "unreasonable," Plaintiff's constitutional right to timely release was violated when he was detained for 27 days beyond the expiration of his sentence.

In opposition to Plaintiff's claim that he was overdetained, OPSO Defendants point to Louisiana Revised Statute § 15:566 ("La. R. S. § 15:566"), which provides that the "[t]he sheriff or his duly qualified deputy, within thirty days of the date upon which sentence to imprisonment has been imposed, shall deliver the prisoner to the state correctional institution designated by the Department of Corrections . . . ."[122] Therefore, OPSO Defendants argue that they had thirty days to execute Judge Buras's sentence. If OPSO Defendants are correct that La. R. S. § 15:566 allowed them to legally detain prisoners for up to thirty days before transporting them to a DOC facility, regardless of the particular sentence, then La. R. S. § 15:566 runs afoul of the clearly established due process right to be timely released from prison. It appears, however, that the time delay allowed in the statute was intended to be a ceiling and not a floor in marking time allowed to transport prisoners from local custody to state custody.

However, the Court need not address the constitutionality of La. R. S. § 15:566 at this juncture because the Court finds that genuine issues of material fact exist with respect to whether written OPSO Policy # 501.13 was a "moving force" of the constitutional violation. In response to Plaintiff's requests for admission, OPSO Defendants stated that "Plaintiff Rodney Grant's pre-classification paperwork was driven from OPSO to DOC on Friday, 7/1/2016."[123] Additionally,

---

hard labor and indicates DOC time).

[121] Rec. Doc. 133-5.

[122] Rec. Doc. 164 at 11; La. Rev. Stat. § 15:566.

[123] Rec. Doc. 133-5 at 7.

OPSO's 30(b)(6) representative stated at her deposition that Amacker physically drove Plaintiff's pre-classification packet to DOC headquarters on [Friday] July 1, 2016 or [Saturday] July 2, 2016.[124] However, in their statement of uncontested facts, OPSO Defendants do not contest that "OPSO drove [Plaintiff's] paperwork to the DOC on [Thursday] July 7, 2016."[125] In addition, the pre-classification packet was stamped as "received" by the DOC on Thursday July 7, 2016.[126]

In light of the conflicting evidence in the record, a triable issue exists with respect to whether or not OPSO's policy of driving paperwork to the DOC once a week was a "moving force" of Plaintiff's overdetention. Therefore, the Court denies both motions for summary judgment on the Section 1983 claim.

**D.    *Whether Plaintiff has Established Standing to Seek Declaratory or Injunctive Relief under Federal Law***

OPSO Defendants move for summary judgment on Plaintiff's requests for declaratory and injunctive relief under federal law, arguing that Plaintiff has not established Article III standing to seek declaratory or injunctive relief because "[i]t is undisputed that [P]laintiff has been released from Orleans Parish Sheriff's Office."[127] In opposition, Plaintiff contends that he has standing to seek declaratory and injunctive relief because he is "is currently detained . . . [in] the Orleans Parish jail awaiting trial" on another charge and could be overdetained again.[128] In the alternative, Plaintiff argues that he has standing under the doctrine of "capable of repetition but evading

---

[124] Rec. Doc. 133-6 at 108.

[125] Rec. Doc. 164-1 at 2.

[126] Rec. Doc. 133-18 at 2.

[127] Rec. Doc. 136-1 at 21–24.

[128] Rec. Doc. 158 at 9–10.

review."[129]

Plaintiff seeks "[d]eclaratory relief" and "[i]njunctive relief against [OPSO] Defendants to end their practice of overdetention."[130] The Court finds that Plaintiff does not have standing to seek injunctive relief requiring OPSO Defendants to end their practice of overdetention. To sufficiently allege a case or controversy under Article III, the "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"[131] In *Plumley v. Landmark Chevrolet, Inc.*, the Fifth Circuit explained that "a plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again."[132] The *Plumley* court held that the plaintiff lacked standing to seek injunctive relief where it was "unlikely that [the defendant] will wrong [the plaintiff] again."[133]

Here, although Plaintiff was indeed detained at the time Plaintiff filed the opposition to OPSO Defendants' motion for summary judgment,[134] Plaintiff does not present any evidence to show that he was detained at the time the instant lawsuit was filed in 2017.[135] "Standing is

---

[129] *Id.* at 10–11.

[130] Rec. Doc. 48 at 24.

[131] *Damian v. Park*, 137 F. App'x 619, 620 (5th Cir. 2005) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02 (1983)).

[132] 122 F.3d 308, 312 (5th Cir. 1997) (citing *City of Los Angeles*, 461 U.S. at 111).

[133] *Id.*

[134] Rec. Doc. 158 at 10; Rec. Doc. 158-3 at 1.

[135] *See* Rec. Doc. 1; Rec. Doc. 48; Rec. Doc. 158.

determined as of the time that suit is filed."[136] Therefore, Plaintiff's subsequent detention in Orleans Parish jail for an arrest in 2019 is irrelevant to the standing inquiry.[137] In addition, neither the original Complaint nor the operative Second Amended Complaint contain allegations demonstrating any likelihood that Plaintiff will suffer the same injury in the future, and Plaintiff has failed to provide any evidence showing such likelihood.[138]

Alternatively, Plaintiff argues that he has standing under the doctrine of "capable of repetition, but evading review."[139] A dispute is capable of repetition yet evading review if: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."[140] With respect to the first prong, Plaintiff argues that his 27 days of overdetention were too short to fully litigate this action.[141] With respect to the second prong, Plaintiff argues that the fact that he has been arrested twice since the 2016 arrest at issue in this case indicates that the challenged conduct is "reasonably likely to reoccur" or has a "credible threat of recurrence."[142]

---

[136] *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000).

[137] In addition, several federal district courts in the Fifth Circuit have found that a plaintiff lacks standing to bring a claim for prospective injunctive relief against an agency if the plaintiff is no longer in the custody of the agency he or she is seeking to enjoin. *See, e.g.*, *McNeal v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV 18-736-JWD-EWD, 2020 WL 7059581, at *10 (M.D. La. Dec. 2, 2020); *Carter v. Cain*, No. 17-201-SDD-RLB, 2019 WL 846053, at *5 (M.D. La. Feb. 21, 2019); *Smith v. Stephens*, No. 9:14CV64, 2016 WL 11212419 (E.D. Tex. Sept. 29, 2016), *report and recommendation adopted*, No. 9:14CV64, 2017 WL 3404797 (E.D. Tex. Aug. 8, 2017).

[138] *See* Rec. Doc. 1; Rec. Doc. 48.

[139] Rec. Doc. 158 at 10.

[140] *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

[141] Rec. Doc. 158 at 10.

[142] *Id.* at 11.

The "capable of repetition yet evading review" doctrine applies to mootness, not standing.[143] The Supreme Court has distinguished mootness and standing as two separate justiciability doctrines: mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."[144] With respect to the "capable of repetition yet evading review" exception, Supreme Court precedent holds that "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."[145] Since Plaintiff did not have standing at the time the instant action was commenced, mootness doctrine and the "capable of repetition yet evading review" exception to mootness are inapplicable here. For these reasons, the Court finds that Plaintiff does not have standing to seek injunctive relief requiring OPSO Defendants to "end their practice of overdetention."

The Court also finds that Plaintiff does not have standing to seek declaratory relief. Fifth Circuit precedent holds that "[i]n order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive *or declaratory relief*, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."[146] Therefore, the same analysis applies to Plaintiff's request for declaratory relief and the Court finds that Plaintiff does not have standing to seek declaratory relief. Accordingly, there are no genuine issues of material fact in dispute and Plaintiff's requests for

---

[143] *See Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010).

[144] *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

[145] *Id.*

[146] *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (emphasis added).

declaratory and injunctive relief must be dismissed as a matter of law.

### III. Conclusion

For the foregoing reasons, Plaintiff's claims against OPSO Defendants are not barred by *Heck v. Humphrey*. There are genuine issues of material fact in dispute precluding summary judgment on Plaintiff's false imprisonment claim pending against all OPSO Defendants and Plaintiff's federal due process claim pending against Sheriff Gusman in his official capacity.

Regarding Plaintiff's requests for declaratory and injunctive relief under federal law, there are no genuine issues of material fact in dispute and those requests must be dismissed as a matter of law. Plaintiff's request for damages under federal law remains pending.

With the exception of the state law false imprisonment tort claim, Plaintiff does not request summary judgment on the remaining pending state law claims against OPSO Defendants.[147] Although OPSO Defendants seek summary judgment on these claims, OPSO Defendants' argument hinges on the *Heck* defense rejected by this Court.[148] OPSO Defendants do not set forth any other arguments for why summary judgment in their favor is appropriate on these remaining state law claims pending against them.[149] Therefore, all of Plaintiff's state law claims remains pending. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment[150] is **DENIED.**

**IT IS FURTHER ORDERED** that OPSO Defendants' Motion for Summary

---

[147] Rec. Doc. 133.

[148] Rec. Doc. 136-1 at 24–25.

[149] *See generally id.*

[150] Rec. Doc. 133.

Judgment[151] is **GRANTED IN PART** and **DENIED IN PART.** OPSO Defendants' Motion for

Summary Judgment is granted to the extent that OPSO Defendants request dismissal of Plaintiff's

requests for injunctive and declaratory relief under federal law. OPSO Defendants' Motion for

Summary Judgment is denied in all other respects.

      **IT IS FURTHER ORDERED** that Plaintiff's requests for injunctive and declaratory

relief under federal law are **DISMISSED WITHOUT PREJUDICE.**[152]

      **NEW ORLEANS, LOUISIANA**, this __30th__ day of March, 2021.

                                *Nannette Jolivette Brown*
                                **NANNETTE JOLIVETTE BROWN**
                                **CHIEF JUDGE**
                                **UNITED STATES DISTRICT COURT**

---

[151] Rec. Doc. 136.

[152] *See Sepulvado v. Louisiana Bd. of Pardons & Parole*, 114 F. App'x 620, 622 (5th Cir. 2004) ("The dismissal was for lack of subject-matter jurisdiction (standing); therefore, it is without prejudice.").