**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RODNEY GRANT**                                                      **CIVIL ACTION**

**VERSUS**                                                                  **CASE NO. 17-2797**

**MARLIN GUSMAN, et al.**                                     **SECTION: "G"(3)**

## ORDER AND REASONS

In this litigation, Plaintiff Rodney Grant ("Plaintiff") alleges that the Orleans Parish Sheriff's Office ("OPSO") and the Louisiana Department of Public Safety and Corrections (the "DOC") unlawfully detained him for 27 days following his legal release date.[1] Pending before the Court are cross motions for summary judgment filed by Plaintiff and Defendants DOC Secretary James LeBlanc ("Secretary LeBlanc") and DOC Warden Timothy Hooper ("Warden Hooper") (collectively, "DOC Defendants").[2] Considering the cross motions, the memoranda in support and opposition, the arguments made at oral argument, the record, and the applicable law, the Court denies Plaintiff's motion for summary judgment against Secretary LeBlanc. The Court grants DOC Defendants' motion for summary judgment against Plaintiff in part and denies the motion in part.

## I. Background

On July 2, 2000, Plaintiff was arrested for simple burglary in New Orleans, Louisiana.[3]

---

[1] Rec. Doc. 48.

[2] Rec. Doc. 129; Rec. Doc. 143.

[3] Rec. Doc. 48 at 2.

Plaintiff allegedly spent 61 days in Orleans Parish Prison ("OPP") following his arrest before being released from OPP custody on September 3, 2000 after the District Attorney failed to file a Bill of Information before the statutory deadline.[4] Plaintiff avers that on October 30, 2000, the District Attorney filed a Bill of Information against Plaintiff.[5] Plaintiff asserts that his arraignment was rescheduled because of a court closure and Plaintiff did not appear for arraignment on November 29, 2000 because he did not receive a summons.[6] Plaintiff alleges that the Bill of Information eventually expired by operation of law but his arrest warrant for the simple burglary charge from November 2000 "stayed in the system."[7]

Thereafter, between 2008 and 2015, Plaintiff was incarcerated in DOC custody at the Dixon Correctional Institute for a different crime.[8] On June 27, 2016, approximately one year after his release from the Dixon Correctional Institute, Plaintiff was trying to obtain a driver's license when was arrested for simple burglary based on the November 2000 warrant issued nearly sixteen years earlier.[9] On June 30, 2016, Plaintiff pleaded guilty to the simple burglary charge in Orleans Parish Criminal District Court before Judge Camille Buras ("Judge Buras").[10] Judge Buras sentenced Plaintiff to one year at the Department of Corrections, with "credit for time served from 9-14-08 to 2015" (the time Plaintiff had served at Dixon Correctional Institute on the

---

[4] *Id.*

[5] *Id*. at 2–3.

[6] *Id*. at 3.

[7] *Id*.

[8] *Id*. Rec. Doc. 129-18 at 1.

[9] Rec. Doc. 48 at 3; Rec. Doc. 136-12.

[10] Rec. Doc. 165-1 at 2.

earlier crime).[11]

On June 30, 2016, the day of sentencing, Judge Buras contacted Blake Arcuri ("Arcuri"), an attorney for OPSO, to request expedited processing for Plaintiff.[12] Arcuri then sent an email to OPSO employees stating: "[Plaintiff] really shouldn't have to actually serve any time once DOC processes it."[13] OPSO Sheriff Marlin Gusman ("Sheriff Gusman") responded to Arcuri's email on the same day, stating that "once [Plaintiff] enters a plea and is sentenced, we can get the DOC to compute his time."[14] OPSO Captain Sidney Holt also responded to Arcuri's email, stating that he had forwarded Arcuri's email to OPSO Deputy Corey Amacker ("Deputy Amarcker") to have him "contact DOC and see what can be done."[15] Deputy Amacker then emailed Arcuri stating that he would "work on getting [Plaintiff's] packet sent to the DOC tomorrow but with the holiday weekend he will not get calculated till Tuesday [July 5, 2016] most likely."[16]

On July 7, 2016, seven days after Plaintiff was sentenced by Judge Buras, the DOC sent OPSO an inmate transfer request with July 12, 2016 as the transfer date.[17] Plaintiff remained in OPSO custody until July 12, 2016, when OPSO transported Plaintiff to the DOC facility Elayn Hunt Correctional Center in St. Gabriel, Louisiana ("Elayn Hunt").[18] While at Elayn Hunt,

---

[11] *Id.*

[12] Rec. Doc. 133-5 at 2.

[13] Rec. Doc. 164-1 at 2.

[14] Rec. Doc. 133-16.

[15] Rec. Doc. 136-12.

[16] Rec. Doc. 133-15.

[17] Rec. Doc. 136-2 at 2.

[18] *Id*.

Plaintiff allegedly explained that his sentence was "time served" and he "should be released."[19] According to Plaintiff, an official at Elayn Hunt confirmed that Plaintiff's "sheet indicated 'no sentence.'"[20] Nevertheless, Plaintiff remained in custody and was transferred to the Madison Parish Correctional Center ("MPCC") in Tallulah, Louisiana.[21]

Approximately 15 days after Plaintiff appeared before Judge Buras, Plaintiff's friend Alfred Marshall purportedly became concerned and told Judge Buras that Plaintiff had not yet been released.[22] Judge Buras allegedly called Sheriff Gusman and MPCC warden Chris Stinson to determine why Plaintiff had not been released from custody.[23] Three days later (or 18 days after being sentenced), on July 18, 2016, Judge Buras held a hearing at which she vacated Plaintiff's one-year sentence for the simple burglary charge from November 2000 and resentenced him to "CREDIT FOR TIME SERVED."[24] Yet, according to Plaintiff, "despite having no legal authority to hold [Plaintiff]," the DOC still did not release him.[25] On July 25, 2016, Judge Buras contacted two DOC employees three separate times (one email and allegedly two phone calls) to determine why Plaintiff had not been released.[26] In her July 25, 2016 email to a DOC employee, Judge Buras stated:

> I originally sentenced [Plaintiff] on June 30, 2016 to 1 year DOC with [credit for time served] from 2008 as [Plaintiff] had already served a sentence in DOC and

---

[19] Rec. Doc. 48 at 9.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 3, 9; Rec. Doc. 158-1 at 1.

[25] Rec. Doc. 48 at 9.

[26] *Id.*; Rec. Doc. 129-18 at 7; Rec. Doc. 129-22

my 2000 case did not pop up until he was ready to be discharged.  The court was informed that [Plaintiff] was still incarcerated and so I amended his sentence [on] July 18 2016 to CREDIT FOR TIME SERVED so that he could be immediately released. This morning I was informed by [a DOC captain] that their records show [Plaintiff's] discharge date on NOV 24 2023. Please advise as to what might be the issue with this case as the clear intention of all parties when [Plaintiff] pled guilty was to have this credit for time served sentence result in a release.[27]

Finally, 27 days after Judge Buras sentenced Plaintiff to time served and instructed OPSO to expedite his release, Plaintiff was released from custody on July 27, 2016.[28]

## II. Law and Analysis

Cross motions for summary judgment are pending before the Court.[29] Plaintiff requests summary judgment on two claims.[30] First, Plaintiff argues that there are no genuine issues of material fact in dispute and he is entitled to judgment as a matter of law on a false imprisonment state law tort claim pending against Secretary LeBlanc.[31] Second, Plaintiff argues that there are no genuine issues of material fact in dispute and he is entitled to judgment as a matter of law on a federal due process claim pending against Secretary LeBlanc in his individual and official capacities.[32]

DOC Defendants request summary judgment on all state and federal law claims pending against them.[33] These claims are federal law claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the United States Constitution against Secretary LeBlanc, a due process

---

[27] Rec. Doc. 143-16 at 2.

[28] Rec. Doc. 158-1 at 2.

[29] Rec. Doc. 129; Rec. Doc. 143.

[30] Rec. Doc. 129.

[31] Rec. Doc. 129-1 at 22–25.

[32] *Id.* at 25–30.

[33] Rec. Doc. 143-1.

claim under the Louisiana constitution against DOC Defendants, a state law false imprisonment claim against DOC Defendants, and a state law negligence claim against DOC Defendants.[34]

DOC Defendants raise three arguments in opposition to Plaintiff's motion for summary judgment and in support of their motion for summary judgment.[35] First, DOC Defendants argue that Secretary LeBlanc is entitled to qualified immunity from Plaintiff's federal due process claim against Secretary LeBlanc in his individual capacity because: (1) Secretary LeBlanc did not violate Plaintiff's constitutional rights because Plaintiff was held for 27 days following his sentencing pursuant to state law to ensure he had not violated his parole; (2) Secretary LeBlanc's actions were not objectively unreasonable in light of clearly established law because the DOC did not receive the requisite Bill of Information from the Orleans Parish Clerk of Court until July 26, 2016, although OPSO provided an initial pre-class packet to the DOC on July 7, 2016; and (3) Secretary LeBlanc did not act with deliberate indifference because Plaintiff fails to demonstrate a pattern of similar constitutional violations.[36]

Second, DOC Defendants contend that there are no genuine issues of material fact in dispute and DOC Defendants are entitled to judgment as a matter of law on Plaintiff's false imprisonment state law tort claim against Secretary LeBlanc because: (1) Secretary LeBlanc is entitled to qualified immunity from Plaintiff's false imprisonment claim because the DOC had statutory authority under Louisiana law to detain Plaintiff from June 30, 2016 to July 27, 2016;[37] and (2) Secretary LeBlanc cannot be held vicariously liable for any alleged tortious conduct by a

---

[34] Rec. Doc. 48.

[35] Rec. Doc. 143-1; Rec. Doc. 165.

[36] Rec. Doc. 143-1 at 12–26.

[37] Rec. Doc. 165 at 14–17.

DOC employee because Secretary LeBlanc is not an "employer."[38]

Third, DOC Defendants assert that Plaintiff does not have standing to obtain injunctive relief regarding his federal due process claim against Secretary LeBlanc in his official capacity.[39] The Court addresses each argument in turn.

### A. Whether Secretary LeBlanc is Entitled to Qualified Immunity from Plaintiff's Federal Due Process Claim Against Secretary LeBlanc in his Individual Capacity

Both parties move for summary judgment on Plaintiff's federal due process claim against Secretary LeBlanc in his individual capacity.[40] Plaintiff argues that Secretary LeBlanc, in a supervisory role as Secretary of the DOC, violated Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution when he acted with deliberate indifference by failing to implement policies to correct the overdetention problem in Louisiana.[41] In their motion for summary judgment, DOC Defendants invoke the defense of qualified immunity to argue that Plaintiff's Section 1983 claim against Secretary LeBlanc in his individual capacity should be dismissed.[42] In opposition to DOC Defendants' motion for summary judgment, Plaintiff argues that this Court already denied qualified immunity to Secretary LeBlanc and "need not re-analyze the issue."[43]

As a preliminary matter, this Court's denial of qualified immunity to Secretary LeBlanc at the motion to dismiss stage does not preclude DOC Defendants from raising the qualified

---

[38] Rec. Doc. 143-1 at 5–6.

[39] *Id.* at 2–5.

[40] Rec. Doc. 129-1; Rec. Doc. 143-1.

[41] Rec. Doc. 129-1 at 25–30.

[42] Rec. Doc. 143-1 at 9.

[43] Rec. Doc. 160 at 6.

immunity defense at the summary judgment stage.[44] Unlike at the motion to dismiss stage where the Court reviewed only the pleadings, the Court now looks to the entire record before it to determine whether Secretary LeBlanc is entitled to qualified immunity.[45] Therefore, Plaintiff's argument that this Court already denied qualified immunity to Secretary LeBlanc and "need not re-analyze the issue" is misplaced. The Court will now address whether Secretary LeBlanc is entitled to qualified immunity from Plaintiff's federal due process claim against Secretary LeBlanc in his individual capacity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[46] Pursuant to the Supreme Court's decision in *Saucier v. Katz*, to overcome the qualified immunity defense raised by DOC Defendants, Plaintiff must show: (1) a violation of his constitutional rights and (2) the allegedly violated right is "clearly established" in that "it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted."[47]

A qualified immunity defense alters the usual summary judgment burden of proof.[48] Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense "by establishing a genuine fact issue as to whether the [officers'] allegedly wrongful conduct

---

[44] *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

[45] *Id.*

[46] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[47] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[48] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005)).

violated clearly established law."[49] All inferences are drawn in the plaintiff's favor.[50] The Fifth Circuit has instructed that if the applicability of qualified immunity "depend[s] on the outcome of genuine issues of material fact . . . summary judgment on this issue is not proper."[51]

Here, DOC Defendants concede that Plaintiff's right to be "timely release[d]" from prison is clearly established.[52] The Fourteenth Amendment to the United States Constitution forbids states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"[53] The Supreme Court has held that "loss of personal liberty through imprisonment" triggers constitutional due process protections.[54] In *Porter v. Epps*, the Fifth Circuit held that the Fourteenth Amendment provides a clearly established right to be timely released from prison.[55]

Fifth Circuit precedent illuminates the contours of the constitutional right to timely release from prison. In *Whirl v. Kern*, the plaintiff was arrested on suspicion of felony theft and indicted by a grand jury.[56] Approximately two months after the plaintiff's arrest, the indictments pending against the plaintiff were dismissed.[57] Notice of the dismissal was sent to the sheriff's office, but

---

[49] *Id.*

[50] *Id.*

[51] *San Jacinto Savings & Loan v. Kacal,* 928 F.2d 697, 704 (5th Cir. 1991).

[52] Rec. Doc. 143-1 at 12.

[53] U.S. Const. amend. XIV.

[54] *See Jauch v. Choctaw Cty.*, 874 F.3d 425, 430 (5th Cir. 2017) (citing *Turner v. Rogers*, 564 U.S. 431, 445 (2011)).

[55] 659 F.3d 440, 445 (5th Cir. 2011) ("Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison."); *see also* Rec. Doc. 143-1 at 12 (DOC Defendants' Motion for Summary Judgment) ("The right at issue in this case is the Fourteenth Amendment right of a convicted felon to be timely released from prison in accordance with the sentence imposed. The existence of the right, as a general proposition, is undisputed.").

[56] *Whirl v. Kern*, 407 F.2d 781, 785 (5th Cir. 1968).

[57] *Id.*

the sheriff testified that "he was not apprised of these proceedings."[58] As a result, the plaintiff remained in jail for nearly nine months after all charges against him were dismissed.[59] Reasoning that a "jailer's duty to his prisoner is not breached until the expiration of a *reasonable time* for the proper ascertainment of the authority upon which his prisoner is detained," the Fifth Circuit determined that the sheriff's nine-month delay was an unreasonable amount of time.[60]

Thereafter, in *Douthit v. Jones*, the Fifth Circuit held that "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."[61]   However, the Fifth Circuit noted that whether a jailer violates the Due Process Clause by unduly detaining an individual depends on "the context of th[e] case."[62]

In *Porter v. Epps*—the case recognizing that there is a clearly established right to timely release from prison—the Fifth Circuit explained that "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[63] The Fifth Circuit stated that "[l]iability for failure to promulgate policy and failure to train or supervise

---

[58] *Id*.

[59] *Id*.

[60] *Id*. at 785, 792–93.

[61] *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980), *reh'g denied* 641 F.2d 345, 346 (5th Cir. 1981); *see also Porter,* 659 F.3d at 556 ("Detention of a prisoner for over thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.") (internal quotation omitted).

[62] *Douthit*, 619 F.2d at 532.

[63] 659 F.3d at 446.

both require that the defendant have acted with deliberate indifference."[64] The Fifth Circuit further explained that in assessing an assertion of qualified immunity in the context of a claim against a supervisory official, the court "must consider whether [the defendant's] actions were objectively unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such an official may be liable for failure to promulgate policy or failure to train/supervise if he acted with deliberate indifference to constitutional rights."[65]

Recently, in *Jauch v. Choctaw County*, the Fifth Circuit considered whether detention of a person for 96 days after arrest, without the person ever being brought before a judge for a bail hearing, constitutes an unconstitutional deprivation of due process.[66] In *Jauch*, the county had a policy of holding a person without an arraignment or bond hearing until the court that issued the warrant convened its next term.[67] The Fifth Circuit held that "indefinite pre-trial detention without an arraignment or other court appearance" violates a detainee's Fourteenth Amendment right to due process.[68] Furthermore, the Fifth Circuit determined that the sheriff was not entitled to qualified immunity because "[t]he right at issue [] was clearly established and its contours 'sufficiently clear' that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior to bringing them before a judge."[69]

---

[64] *Id.*

[65] *Id.*

[66] *Jauch*, 874 F.3d at 427.

[67] *Id.* at 430.

[68] *Id.* at 432, 436.

[69] *Id.* at 436. In addition, although not binding on this Court, several federal circuit courts outside of the

1.        **Whether a Constitutional Violation Occurred**

Although DOC Defendants concede that Plaintiff had a constitutional right to timely release, they argue that Plaintiff's constitutional right to timely release was not violated here because Plaintiff was held until July 27, 2016 to ensure he had not violated his parole, as required by Louisiana law.[70] DOC Defendants claim that Plaintiff was "indisputably on parole at the time he was arrested and convicted for a felony committed in Louisiana."[71] DOC Defendants argue that the DOC could not clear Plaintiff for release until it determined whether he committed the simple burglary felony while on parole because if Plaintiff had committed a felony in Louisiana while on parole, his parole would have been revoked.[72] DOC Defendants claim that pursuant to Louisiana Code of Criminal Procedure article 892, the DOC needed the Bill of Information for Plaintiff's simple burglary charge to determine the date of the offense.[73] DOC Defendants assert that the DOC did not receive Plaintiff's Bill of Information until July 26, 2016 and Plaintiff was subsequently released on July 27, 2016.[74]

Plaintiff's dispute DOC Defendants' argument that the DOC could detain Plaintiff indefinitely while they determined whether his conviction was a violation of his parole. Although

---

Fifth Circuit have found that overdetention for far shorter time periods may be unreasonable. *See, e.g.*, *Davis v. Hall*, 375 F.3d 703, 713 (8th Cir. 2004) ("[E]ven a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment."); *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988) ("It is for a jury to determine whether the 11 hours it took the sheriff to discharge [the plaintiff] was reasonable."). *See also Barnes v. D.C.*, 793 F. Supp. 2d 260, 276 (D.D.C. 2011) (finding that "courts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48–hour horizon.").

[70] Rec. Doc. 143-1 at 13.

[71] *Id.*

[72] *Id.*

[73] *Id.* at 14.

[74] *Id.* at 20–21.

Louisiana Code of Criminal Procedure article 892 requires that a defendant's pre-class packet[75] "physically accompany any defendant when said defendant is transferred to a penal institution," Louisiana Revised Statute § 15:566(C) ("R.S. 15:566(C)") requires the DOC to "refuse delivery of said prisoner" if the Bill of Information does not accompany the inmate during transfer.[76] Therefore, accepting delivery of Plaintiff without his accompanying Bill of Information appears to be a violation of R.S. 15:566(C). Under Louisiana law relied on by Secretary LeBlanc, the DOC should not have accepted Plaintiff's transfer in the first place without the Bill of Information.[77] Indeed, in an affidavit offered by Secretary LeBlanc, the DOC's Administrative Program Director attested that "[the DOC] does not assume custody of an offender unless and until the Pre-Class Packet is completed, delivered to [the DOC], and processed."[78] Yet Plaintiff was processed by the DOC at Elayn Hunt, detained at Elayn Hunt, transferred by the DOC to MPCC, and detained at MPCC—all without the documentation that Secretary LeBlanc asserts is "necessary" to "properly process the offender's time computation."[79]

Furthermore, the Fifth Circuit has stated that "[a jailer] is *most certainly* under an obligation, often statutory, to carry out the functions of his office. Those functions include not

---

[75] Pursuant to article 892, the pre-class packet is to contain a statement prepared by the Sheriff of the parish of conviction "indicating the amount of time a defendant has spent in custody prior to conviction," along with a copy of the indictment and a copy of the Uniform Sentencing Order. La. Code Crim. Proc. art 892. Under Louisiana law, "indictment" includes Bill of Information. *See* La.C.Cr.P. art. 461; *see Davis v. LeBlanc,* 2013–0654 (La.App. 1 Cir. 12/27/13) (La.Ct.App. Dec. 27, 2013) *writ denied sub nom. State ex rel. Davis v. State,* 2014–0047 (**La**.9/19/14), 148 So.3d 946.

[76] Rec. Doc. 165 at 15.

[77] La. Rev. Stat. § 15:566(C) ("The sheriff of the parish in which the prisoner has been convicted, or his duly qualified and regularly employed deputy, shall deliver with the prisoner all documents and statements required by Article 892 of Chapter 1 of Title 30 of the Louisiana Code of Criminal Procedure. If said documents are not tendered with the prisoner, the Department of Corrections shall refuse delivery of said prisoner.").

[78] Rec. Doc. 165-2 at 3.

[79] Rec. Doc. 165 at 15–16; *see also* Rec. Doc. 48 at 9.

only the duty to protect a prisoner, but also the duty to effect his timely release."[80] In light of the clearly established right to timely release from prison, state law requirements pertaining to possible parole violations should not be construed to authorize the DOC to detain persons indefinitely. Stated differently, a jailer's "duty to ensure that inmates are timely released from prison" does not yield for a jailer who is unable to properly ascertain the authority upon which a person is detained within a "reasonable time."[81] As the Fifth Circuit cautioned in *Whirl*, "[w]ere the law otherwise, [the plaintiff's] nine months could easily be nine years, and those nine years, ninety-nine years, and still as a matter of law no redress would follow. The law does not hold the value of a man's freedom in such low regard."[82]

Moreover, Plaintiff points to evidence that the DOC was aware on July 8, 2016—four days before Plaintiff was processed at Elayn Hunt—that Plaintiff had not violated his parole.[83] Specifically, Plaintiff points to an email from the DOC's probation and parole division to the DOC's time computation department stating that Plaintiff's conviction was "not a violation of [Plaintiff's] current term of supervision" and that "[t]he date of offense is from 2000 which predates [Plaintiff's] date of release."[84] Oddly, Secretary LeBlanc responds that the DOC cannot rely on an email from the DOC probation and parole division when determining whether a DOC inmate has violated their parole.[85] Instead, Secretary LeBlanc contends that the DOC must rely

---

[80] *Porter*, 659 F.3d at 445 (internal citations omitted).

[81] *Id.* at 445; *Whirl*, 407 F.2d at 792.

[82] *Id.*

[83] Rec. Doc. 160 at 8.

[84] *Id.* at 8; Rec. Doc. 129-23 (July 8, 2016 Email from Probation & Parole Supervisor to DOC time computation employees) ("This conviction is not a violation of the subject's current term of supervision. The date of offense is form 2000 which predates his date of release.").

[85] Rec. Doc. 165 at 14.

on "official court documentation" to determine whether any parolee's new felony conviction violates parole conditions.[86] Notably, a DOC employee told Judge Buras in response to her July 25, 2016 email to the DOC asking why Plaintiff had not yet been released that "we only get the Bill [of Information] *several months later* from the Clerk of Court."[87] DOC Defendants do not cite any Louisiana law requiring that the DOC rely only on the Bill of Information to determine an individual's parole status.[88] In light of the clearly established right to timely release from prison, technicalities in the DOC's procedures for determining an individual's parole status should not be construed to authorize the DOC to detain persons indefinitely. Therefore, Plaintiff points to evidence that puts into dispute Secretary LeBlanc's claim that Plaintiff's right to timely release was not violated while the DOC confirmed whether Plaintiff was on parole when the crime was committed.

### 2.    Whether Secretary LeBlanc's Actions were Objectively Unreasonable in Light of Clearly Established Law

In *Porter*, the Fifth Circuit explained that in assessing an assertion of qualified immunity for a claim against a supervisory official like Secretary LeBlanc, a court "must consider whether [Secretary LeBlanc's] actions were objectively unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such an official may be liable for failure to promulgate policy or failure to train/supervise if he acted with

---

[86] *Id.* at 15; Rec. Doc. 165-2 at 5. Notably, DOC Defendants suggest that the DOC could rely on a photograph of the Bill of Information taken by Judge Buras on her cell phone and sent directly to a DOC official on July 25, 2016. Rec. Doc. 143-1 at 20. *See also* Rec. Doc. 143-16 (July 25, 2016 email from DOC employee to Judge Buras asking "[i]s there any possible way that someone in your office could scan and email me a copy of the Bill of Information for [Plaintiff's case]?").

[87] Rec. Doc. 143-16 at 1 (emphasis added).

[88] Rec. Doc. 165 at 15; Rec. Doc. 165-2 at 5.

deliberate indifference to constitutional rights."[89] The stringent standard of deliberate indifference requires a state actor to disregard "a known or obvious consequence of his actions."[90] "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."[91] In addition, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[92]

A pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference.[93] The incidents relied upon to demonstrate a pattern of similar constitutional violations must have occurred prior to the alleged misconduct and "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected [and] accepted practice of [DOC] employees."[94]

In this case, Plaintiff claims that Secretary LeBlanc's failure to adopt policies and failure to train or supervise his subordinates resulted in a deprivation of Plaintiff's due process rights.[95] Plaintiff points to a significant amount of evidence showing that Secretary LeBlanc had actual

---

[89] *Porter*, 659 F.3d at 446.

[90] *Id*. at 446–47.

[91] *Whitley v. Hanna*, 726 F.3d 631, 643 (5th Cir. 2013).

[92] *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992).

[93] *Connick*, 563 U.S. at 62; *see also Jason v. Tanner*, 938 F.3d 191, 198–99 (5th Cir. 2019) (discussing the "similarity" requirement to hold that physical assault with a mop or broom was distinguishable from physical assault with a sling blade for purposes of the deliberate indifference analysis).

[94] *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (en banc); *see also Davidson v. City of Stafford, Texas*, 396 (5th Cir. 2017) ("A pattern requires similarity, specificity, and sufficiently numerous prior incidents.").

[95] Rec. Doc. 129 at 19–20.

knowledge of the pervasive overdetention problem at the DOC and failed to adopt policies to prevent the ongoing deprivation of constitutional rights. DOC responds that Secretary LeBlanc's actions were objectively reasonable.

First, Plaintiff points to Secretary LeBlanc's deposition testimony in which he "learned there was a problem in the system" following a 2012 internal DOC "Six Sigma investigation" revealing that "thousands" of people in DOC custody "were being held past their legal release date."[96] Secretary LeBlanc testified as follows with respect to the results of the Six Sigma investigation as it relates to the problem of overdetention within the DOC:

> Q. Okay. So looking at the second column, it says, "Baseline May." So it looks like this investigation found a baseline of 2,252 immediate releases per year, right?
> A. Correct.
> Q. With an average of overdue days, 71.7 each, right?
> A. Correct.[97]
> . . .
> Q. Okay. So this study figured out that the average from when a person got sentenced or convicted to when their time was calculated by the Department of Corrections was an average of 110 days, right?
> A. Yes.[98]

Indeed, the DOC's 30(b)(6) representative also testified as follows:

> Q. So in 2012, the DOC's Six Sigma investigation found an average of 2,252 cases of immediate release per year with an average of 71.7 overdue days per case; is that right?
> A. Yes.
> Q. This is inmates being held past their legal release date, correct?
> A. Yes.[99]

Plaintiff then points to evidence showing that after the 2012 Six Sigma investigation, the

---

[96] Rec. Doc. 129 at 28; Rec. Doc. 129-11 at 46–48.

[97] Rec. Doc. 120-11 at 39.

[98] *Id.* at 50; *see also* 129-4 at 4 (summarizing results of 2012 Six Sigma investigation).

[99] Rec. Doc. 129-12 at 20.

DOC centralized their pre-classification department and attempted to implement an electronic records management system, which never went into full production.[100]

Plaintiff also points to a 2019 grant application submitted by the DOC to the federal government (the "2019 Louisiana DSN Grant Application") stating that: "the functional processes around [the relationship between the DOC and the sheriffs] remain as antiquated as they were in 1996."[101] The DOC's 30(b)(6) representative testified that "[f]or the process of receiving paperwork for the purpose of time calculation and making an inmate under the custody of the Department of Corrections . . . I can't tell you nothing has changed since 1996, but the primary understanding is it is the same."[102] In addition, Secretary LeBlanc testified that the DOC is still using the same Criminal and Justice Unified Network (CAJUN) computer system that "is obviously antiquated" and that "some documents are driven by van from the sheriffs to the Department of Corrections."[103]

With respect to training DOC time computation employees, Plaintiff points to the following deposition testimony from DOC's 30(b)(6) representative:

Q. So prior to 2017, there was no formal training program for time computation. It was ad hoc people working with their supervisors and learning as they go; is that right?
A. Pretty much. We worked with them as we hired them and worked with them and just kept them and verified paperwork until they learned one process and moved them to the next process to learn.[104]

---

[100] Rec. Doc. 129-1; Rec. Doc. 129-12 at 21–22; *see also* Rec. Doc. 129-7 at 6 (Louisiana Legislative Auditor report) ("In June 2015, DOC launched a new $3.6 million offender management system but ceased using the system the following month because it did not function properly. Consequently, DOC returned to using CAJUN to manage offender data.").

[101] Rec. Doc. 129-12 at 29.

[102] *Id.* at 31.

[103] Rec. Doc. 129-11 at 75.

[104] Rec. Doc. 129-13 at 21.

Finally, Plaintiff points to evidence that the overdetention problem continued to plague the DOC at the time Plaintiff was detained in 2016. In a report released by the Louisiana Legislative Auditor in 2017,[105] the Legislative Auditor reported that the "DOC's processes for calculating offender release dates is inconsistent, which can result in errors," and "DOC does not have any policies, procedures, manuals, or agency-wide guidance that details the correct ways to calculate release dates."[106] Furthermore, in the 2019 Louisiana DSN Grant Application,[107] the DOC reported that:

> In 2017, DPS&C had an average of 200 cases per month considered an "immediate release due to these deficiencies. This includes those cases which become immediately eligible for release as a result of jail credit or the application of diminution of sentence laws. **A review of these releases indicate the offenders were held in custody an average of 49 days past the date that they would have been eligible for a diminution of sentence release**. Calculated at the rate paid to our local law enforcement partners for housing state offenders, $24.39/day, immediate releases are costing the state $239,022 per month, or $2.8M per year in housing costs alone.[108]

Moreover, Plaintiff points to evidence that the DOC posted a statement on its website that "[i]f a person has recently been sentenced to DOC custody, it can take up to 12 weeks to calculate a date as the Department has to receive official paperwork from the sentencing court in order to calculate the offender's release date."[109] Additionally, in 2018, DOC Defendants' counsel Jeff

---

[105] In opposition to Plaintiff's motion for summary judgment, Secretary LeBlanc objects to the admissibility of the Legislative Auditor report, arguing that it is irrelevant. Rec. Doc. 165 at 4. The Legislative Auditor report is relevant to illustrate the pattern of overdetention in Louisiana, as well as demonstrating the absence of policies implemented by the DOC to mitigate the problem of overdetention.

[106] Rec. Doc. 129-7 at 7.

[107] In opposition to Plaintiff's motion for summary judgment, Secretary LeBlanc objects to the admissibility of the 2019 Louisiana DSN Grant Application, arguing that it is not authenticated. Rec. Doc. 165 at 5. However, the DOC's 30(b)(6) representative authenticated the document at her deposition. Rec. Doc. 182-4 at 24.

[108] Rec. Doc. 129-9 at 4 (emphasis added).

[109] *Id.* at 3.

Landry co-wrote an op-ed stating that there is "a layer of incompetence so deep that the Corrections Department doesn't know . . . when [a prisoner] should actually be released from prison."[110]

DOC Defendants do not point to any evidence to dispute Plaintiff's factual assertions. Rather, DOC Defendants argue that Plaintiff has failed to show a pattern of "similar constitutional violations" because Plaintiff "cannot show that [DOC] policy or practice (or lack thereof) caused the ultimate 'objectionable conduct' in question – the failure of OPSO Officials to provide [the DOC] with the necessary pre-classification paperwork for release."[111] DOC Defendants thus contend that Plaintiff "cannot demonstrate that any policy and/or practice within the [DOC] led to delayed processing of pre-classification paperwork, causing a constitutional violation."[112]

Plaintiff counters that DOC Defendants "misstate the 'objectionable conduct' at issue in this case."[113] Specifically, Plaintiff argues that the objectionable conduct in this case is the continuation of a practice that necessarily overdetains individuals without "any mitigation or remedy by, for instance, updating technology or hiring more individuals for PreClass department."[114]

In a recent unpublished decision in *Hicks v. LeBlanc,*[115] the Fifth Circuit suggested that Secretary LeBlanc could be found deliberately indifferent based on his failure to implement

---

[110] Rec. Doc. 129-18 at 14–15.

[111] Rec. Doc. 143-1 at 23.

[112] *Id.* at 21–25.

[113] Rec. Doc. 160 at 6.

[114] *Id.* at 7–8.

[115] 832 F. App'x 836 (5th Cir. 2020). This case is unpublished and cannot be cited as precedent.

policies and procedures to effectuate the timely release of inmates. In *Hicks,* the plaintiff alleged that he was incarcerated approximately 60 days beyond his legal release date because a DOC employee recalculated the plaintiff's sentence to "essentially remov[e] the credit for time served."[116] The plaintiff alleged that the DOC employee "purposely delayed the release date in retaliation to [the plaintiff's] active pursuit of his timely release."[117] The plaintiff brought suit under Section 1983 against the DOC employee and also against Secretary LeBlanc in his individual capacity based on the theory of supervisory liability.[118] At the motion to dismiss stage, the district court denied qualified immunity to both defendants.[119] The Fifth Circuit reversed the district court's denial of qualified immunity to Secretary LeBlanc.[120] The Fifth Circuit noted that "[w]hether LeBlanc acted with deliberate indifference is a close call" but found that Plaintiff had not alleged facts that suggest "a pattern of over-detention stemming from the blatant refusal to credit offenders with time served contrary to sentencing orders."[121]

However, of import in this case, the Fifth Circuit noted that "the alleged facts suggest a pattern of over-detention caused by quality control deficiencies and the lack of training and supervision."[122] Citing the instant case by name, the Fifth Circuit observed that "[b]ased on these allegations, **LeBlanc could be held liable for *incompetent* over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being**

---

[116] *Id.* at 838.

[117] *Id.*

[118] *Id.* at 837–838.

[119] *Id.* at 839.

[120] *Id.* at 842.

[121] *Id.*

[122] *Id.*

**sentenced to time served** . . . [b]ut it cannot be said that LeBlanc had notice that his employees were purposely disregarding sentencing orders out of retaliatory intent."[123]

Plaintiff also offers several pieces of factual evidence to rebut DOC Defendants' assertion that Plaintiff has failed to show a pattern of similar constitutional violations. Plaintiff first points to a power point presentation regarding the DOC's 2012 Six Sigma investigation into overdetention in Louisiana.[124] The first slide is titled "process map & cycle time."[125] This slide shows that it took approximately 31 days for documents to be transmitted from the Clerk of Court to the jail to the DOC's PreClass facility and an additional 7.27 days for an individual's time to be computed.[126]

Plaintiff also offers evidence that in October of 2016, approximately five months after Plaintiff's alleged overdetention, Secretary LeBlanc sent a letter to Debbie Hudnall, Executive Director of the Louisiana Clerks of Court Association, in which he wrote:

> We have worked hard to identify the causes of these types of releases and have noted that **in many instances, it boils down to DPS&C not having court or jail paperwork to process changes in an offender's sentence or pending charges.** Additionally, delayed paperwork in instances where an offender is given credit for time served or jail credit, results in immediate releases of offenders who may have been eligible for an earlier release date, increasing incarceration costs. **We have found in these cases, an offender may serve an average of 40 additional days incarcerated.**[127]

In the same letter, Secretary LeBlanc stated:

---

[123] *Id.* (emphasis added).

[124] Rec. Doc. 182 at 5; Rec. Doc. 129-4 at 8.

[125] *Id.*

[126] *Id.*

[127] Rec. Doc. 229-3 at 1 (emphasis added). Troublingly, Plaintiff notes that this letter was directly responsive to Plaintiff's discovery requests but was never provided during discovery in this case. Rec. Doc. 229 at 4–5.

> Similar to the conversations we had with you and some of our Clerks of Court around this same issue during our Pre-class Lean Six Sigma project, we have been unable from our perspective to clearly identify where the paperwork process may be failing in getting us the information needed to ensure offender time is modified when there is a disposition in court or when a detainer is placed on an offender.[128]

In addition, Plaintiff points to Ms. Hudnall's deposition testimony in which she testified that she met with Secretary LeBlanc in 2016 when the "DOC came to [her] and said that the process of getting documents to the DOC is slow, and so people are being over-detained."[129] Finally, Plaintiff points to a November 2016 email from Secretary LeBlanc to the Clerk's Association and DOC employees stating that he would "develop an action plan" to improve upon the average amount of time elapsed between sentencing date and time computation and would "look into the feasibility of receiving the . . . Bill of Information documents electronically from the Clerks."[130] When asked to produce documents responsive to the "action plan" and "feasibility" investigation in October of 2020, the DOC responded that "there are no responsive documents."[131]

Considering the evidence put forth by Plaintiff, it appears that delays in receiving paperwork resulting in widespread overdetention at the DOC were ongoing at the time of Plaintiff's alleged overdetention in July 2016 and were known to Secretary LeBlanc as early as 2012. Yet DOC Defendants appear to argue that to meet his burden on deliberate indifference, Plaintiff must show a pattern of instances in which persons are overdetained specifically due to a

---

[128] Rec. Doc. 229-3 at 1.

[129] Rec. Doc. 229-2 at 19, 22.

[130] Rec. Doc. 229-4 at 1–2 (emphasis added).

[131] Rec. Doc. 229-5 at 1.

delay in receipt of the Bill of Information.[132] In doing so, DOC Defendants construe the constitutional violation extremely narrowly and overlook a significant amount of evidence showing overdetention attributable to the failure to process paperwork in general.

Ample evidence set forth by Plaintiff demonstrates that administrative bottlenecks between the DOC, the sheriffs, and the state courts have resulted in a pattern of delays in procuring and processing paperwork for inmates who should be released on the day they are sentenced to time served, resulting in prolonged and unjustified physical imprisonment. Despite having actual knowledge of this pattern of delays since 2012, and despite being aware of the archaic processes that contribute to them, Secretary LeBlanc failed to implement policies that would allow the DOC to obtain and process paperwork in a timely way to effectuate the timely release of individuals in DOC custody. The Bill of Information is simply one such piece of paperwork—and one that could take "several months" for the DOC to obtain.[133] The 27-day overdetention alleged by Plaintiff falls squarely within the pattern of similar constitutional violations shown here.

Considering the foregoing, the Court finds that there are genuine issues of material fact in dispute and Secretary LeBlanc is not entitled to judgment as a matter of law on the issue of qualified immunity. Accordingly, the Court denies DOC Defendants' motion for summary judgment as to Plaintiff's Section 1983 claim against Secretary LeBlanc in his individual capacity.

Moreover, the Court also denies Plaintiff's motion for summary judgment on his Section

---

[132] Rec. Doc. 165 at 13.

[133] Rec. Doc. 143-16. *See also* La. Code Crim. P. art. 892. Secretary LeBlanc was clearly aware in 2016 of delays in receiving the Bill of Information because he planned to "look into the feasibility of receiving the . . . Bill of Information documents electronically from the Clerks." Rec. Doc. 229-4 at 1–2.

1983 claim against Secretary LeBlanc in his individual capacity because the Court finds that genuine issues of material fact are in dispute regarding the underlying cause of Plaintiff's allegedly unconstitutional overdetention. Specifically, DOC Defendants point to evidence that the delay in Plaintiff's release was partially due to OPSO's failure to include the Bill of Information in the pre-classification packet stamped as received by the DOC on July 7, 2016.[134] While it appears that Plaintiff's detention resulted from the actions (or inaction) of DOC, OPSO, or some combination thereof, the ambiguity surrounding who allegedly overdetained Plaintiff or what share of responsibility each held—and who is therefore liable for Plaintiff's overdetention— presents a triable issue of fact in this case. Accordingly, the Court denies both Plaintiff's and DOC Defendants' motions for summary judgment as to Plaintiff's Section 1983 claim against Secretary LeBlanc in his individual capacity.

**B.    *Whether There are any Genuine Issues of Material Fact in Dispute Regarding Plaintiff's State Law Claims Precluding Summary Judgment for Either Party***

Plaintiff argues that there are no genuine issues of material fact in dispute and he is entitled to judgment as a matter of law on a false imprisonment state law tort claim pending against Secretary LeBlanc.[135] DOC Defendants contend that there are no genuine issues of material fact in dispute and DOC Defendants are entitled to judgment as a matter of law on Plaintiff's state tort law claims because: (1) Secretary LeBlanc is entitled to qualified immunity from Plaintiff's false imprisonment claim because the DOC had statutory authority under Louisiana law to detain Plaintiff from June 30, 2016 to July 27, 2016;[136] and (2) Secretary LeBlanc and Warden Hopper cannot be held vicariously liable for any alleged tortious conduct by a DOC employee because

---

[134] Rec. Doc. 143-1 at 18.

[135] Rec. Doc. 129-1 at 22–25.

[136] Rec. Doc. 165 at 14–17.

they are not "employers."[137]

Under Louisiana law, two elements comprise the civil cause of action for false imprisonment: (1) proof of restraint (2) lack of legal authority.[138] A civil action for false imprisonment under Louisiana law does not require the confinement to be intentional.[139] A party brings a false imprisonment claim pursuant to Louisiana Civil Code article 2315 ("Article 2315").[140] Article 2315 is the fountainhead provision for Louisiana's "basic tort law."[141]

To the extent Secretary LeBlanc argues he is entitled to qualified immunity on the false imprisonment tort claim, this argument is unavailing. Plaintiff brings a state tort law false imprisonment claim under Article 2315—not under the Louisiana Constitution.[142] The Louisiana Supreme Court has recognized that "the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution."[143] Plaintiff's false imprisonment claim is a tort claim, not a claim brought under the Louisiana

---

[137] Rec. Doc. 143-1 at 5–6.

[138] *Prisk v. Palazzo*, 95-1475 (La. App. 4 Cir. 1/19/96), 668 So. 2d 415, 417; *see also Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La.1977) ("False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority.").

[139] The civil action for false imprisonment—unlike the crime of false imprisonment—does not require the confinement to be intentional. *Prisk*, 668 So. 2d at 417. Thus, "to the extent [a party] relies on the theory that [the party's] claim of false imprisonment is an intentional tort . . . that argument lacks merit." *Id.*

[140] *Fontenot v. Lavergne*, 365 So. 2d 1168, 1170 (La. Ct. App. 1978) (False imprisonment is a "type of tort to be decided according to Louisiana's basic tort law found in C.C. art. 2315."); *see also Jinks v. LA Dep't of Pub. Safety & Corr.*, No. CIV.A. 08-432, 2009 WL 3483784, at *4 (W.D. La. Oct. 26, 2009).

[141] *Fontenot*, 365 So. 2d at 1170 (False imprisonment is a "type of tort to be decided according to Louisiana's basic tort law found in C.C. art. 2315.").

[142] Rec. Doc. 48 at 21; Rec. Doc. 129-1 at 22; Rec. Doc. 182 at 7.

[143] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999) (quoting *Moresi v. Dept. of Wildlife and Fisheries*, 567 So. 2d 1081, 1093 (La. 1990)).

Constitution. Further, the Louisiana Constitution provides: "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."[144] Accordingly, the qualified immunity defense does not apply to the Louisiana tort of false imprisonment.[145]

Plaintiff alleges that Secretary LeBlanc is liable under Louisiana law for the false imprisonment state law tort committed by DOC employees under the theory of *respondeat superior*.[146] DOC Defendants argue that the State of Louisiana, not Secretary LeBlanc, is the employer of the DOC employees who allegedly committed the tortious conduct and so Plaintiff's claims against Secretary LeBlanc should be dismissed.

Under Louisiana law, *respondeat superior* is a form of vicarious liability.[147] The legal theory of *respondeat superior* is set forth in Louisiana Civil Code article 2320, which provides "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." To find liability of an employer under the doctrine of *respondeat superior*, there must exist: 1) an employer/employee relationship; 2) a negligent or tortious act on the part of an employee; and 3) the act complained of must be committed in the course and scope of employment.[148]

Here, the parties dispute the existence of an employer/employee relationship between

---

[144] LA. CONST. art. XII, § 10(A).

[145] *Doss v. Morris*, 86 F. App'x 25, 28–29 (5th Cir. 2004) (holding that the qualified immunity laid out by the Louisiana Supreme Court in *Moresi* does not shield the defendants from the Louisiana tort claims asserted by the plaintiff).

[146] Rec. Doc. 48 at 23.

[147] *Griffin v. Kmart Corp.*, 00-1334 (La. App. 5 Cir. 11/28/00), 776 So. 2d 1226, 1232.

[148] *Buras v. Lirette*, 97-1255 (La. App. 4 Cir. 12/23/97), 704 So. 2d 980, 983.

Secretary LeBlanc and the DOC employees responsible for Plaintiff's alleged false imprisonment. In their motion for summary judgment, DOC Defendants argue that the State of Louisiana, not Secretary LeBlanc, is the employer of DOC employees.[149] In opposition, Plaintiff contends that DOC Defendants' "bare assertion that Secretary LeBlanc – the head of the DOC – is not an employer in his individual capacity is without merit."[150] Neither party points to evidence in the record to support a finding of the existence (or lack thereof) of an employer/employee relationship between Secretary LeBlanc and the DOC employees responsible for Plaintiff's alleged false imprisonment.

To support his argument that public officials sued in their individual capacities are the employers of employees of their department, Plaintiff points to the Fifth Circuit decision in *Modica v. Taylor*.[151] In *Modica*, the Fifth Circuit held that "for purposes of the [Family and Medical Leave Act]," the executive director of the Texas Cosmetology Commission, a public agency, could be held liable as an employer in her individual capacity.[152] In reaching this holding, the Fifth Circuit looked to the text of the Family and Medical Leave Act ("FMLA") for its definition of "employer."[153] The Fifth Circuit found that "[t]he [FMLA] statute plainly includes in the definition of employer 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer' [and] includes public agencies as

---

[149] Rec. Doc. 143-1 at 6.

[150] Rec. Doc. 160 at 5.

[151] 465 F.3d 174 (5th Cir. 2006).

[152] *Id.* at 183–87.

[153] *Id.* at 184.

employers."[154] Applying federal law and principles of statutory interpretation, the Fifth Circuit

relied on this statutory language to find that  "if a public employee 'acts, directly or indirectly, in

the interest of an employer,' he satisfies the definition of employer under the FMLA, and

therefore, may be subject to liability in his individual capacity."[155] The Fifth Circuit made clear

that its holding was limited to the FMLA context and therefore is of limited relevance to the

question of Louisiana law presented here.[156]

In *Sparks v. Progressive American Insurance Company*, the Louisiana Third Circuit Court

of Appeal explained:

> An employer is responsible for the torts of employees committed during the course
> and scope of employment. However, Article 2320 is applicable only if a plaintiff
> first proves the existence of an employer-employee relationship. Our
> jurisprudence holds that in determining whether such a relationship exists the most
> important factor is the right of the alleged employer to control the work of the
> individual. Factors to assess the right to control include: 1) the selection and
> engagement of the worker; 2) the payment of wages; and 3) the power of control
> and dismissal. Nevertheless, the jurisprudence is well settled that whether the
> employer actually exercises control or supervision over the worker is not as
> significant as whether, from the nature of the relationship, the employer had the
> right to do so.[157]

Neither party points to evidence that is relevant to this inquiry, nor does either party point

to factual evidence that Secretary LeBlanc is or is not a "master" or "employer" of DOC

employees. However, the following deposition testimony of Secretary LeBlanc indicates that

---

[154] *Id.*

[155] *Id.*

[156] Plaintiff also cites in a footnote to the Fifth Circuit's decision in *Lee v. Coahoma County.* 937 F.2d 220 (5th Cir. 1991). In *Lee*, the Fifth Circuit found that the county sheriff was an "employer" within the meaning of the Fair Labor Standards Act ("FLSA"). Like in *Modica*, the Fifth Circuit looked to the statutory text of the FLSA to reach its decision. *Id.* at 226. The Fifth Circuit also relied on Mississippi law allowing a county sheriff operation control of the sheriff's department. *Id.* For these reasons, the Court is not persuaded that *Lee* applies to the question presented here.

[157] *Sparks v. Progressive Am. Ins. Co.*, 517 So. 2d 1036, 1038 (La. Ct. App.), *writ denied*, 519 So. 2d 106 (La. 1987).

there is some factual support in the record for the proposition that Secretary LeBlanc is the

"master" or "employer" of the DOC employees responsible for Plaintiff's overdetention:

> Q. And if the Department of Corrections has a legal duty to do something with regards to an inmate, it's your job as Secretary to make sure that happens, correct?
> A. Correct.
> . . .
> Q. And if the right policies and procedures aren't in place and inmates don't get food, that's your responsibility, correct?
> A. Correct. I mean, yeah, I mean, ultimately, it's -- everything in the department is my responsibility.
> Q. Right.
> A. But I do delegate, okay.
> Q. And one of the primary jobs of the department is to hold inmates for the length of their sentence, correct?
> A. Correct.
> Q. That falls within the responsibilities of you as Secretary?
> A. It – yeah, it does, and but there are other parties involved in that responsibility.[158]

Viewing this testimonial evidence in the light most favorable to Plaintiff, the Court finds

that there is evidence in the record indicating that Secretary LeBlanc could be a "master" or

"employer" of DOC employees and therefore vicariously liable for their actions. The Louisiana

First Circuit Court of Appeal has also recognized that "[t]he Secretary shall serve as the executive

head and chief administrative officer of the Department [of Public Safety and Corrections] and

shall have the responsibility for the policies of the Department, as well as administration, control,

and operation of the functions, programs, and affairs of the Department."[159]

Furthermore, the Louisiana Supreme Court has found that an "individual may

simultaneously be the employee of more than one employer for the purposes of vicarious liability

under La. Civ. Code art. 2320."[160] Therefore, it is possible that DOC employees are

---

[158] Rec. Doc. 120-14 at 13–15.

[159] *Lane v. Dep't of Pub. Safety & Corr.*, 2000-2010 (La. App. 1 Cir. 2/15/02); 808 So. 2d 811, 814 (citing La. Rev. Stat. § 36:403).

[160]  *Doe v. Parauka,* 97–2434, p. 5, n. 4 (La.7/8/98), 714 So. 2d 701, 704. Although under the Louisiana

simultaneously employees of both the State of Louisiana and Secretary LeBlanc for purposes of vicarious liability. Vicarious liability under Louisiana law is a mixed question of fact and law.[161] Here, there are genuine issues of material fact in dispute regarding whether or not Secretary LeBlanc can be held vicariously liable for DOC employees' alleged tortious conduct under state law. Accordingly, the Court denies the cross motions for summary judgment to the extent that they seek summary judgment on Plaintiff's state law claims against Secretary LeBlanc. Because the Court finds that there are genuine issues of material fact in dispute regarding whether Secretary LeBlanc can be held vicariously liable for DOC employees' alleged tortious conduct under state law, the Court does not reach Plaintiff's argument that there are no genuine issues of material fact in dispute regarding the elements of false imprisonment.

With respect to the state law claims pending against Warden Hooper, neither party presents any evidence to show whether he exercised any control over DOC employees such that he could be held vicariously liable for their actions under Louisiana law. Furthermore, Plaintiff does not address the issue of Warden Hooper's liability at all in opposition to DOC Defendants' motion.[162] Therefore, there are no genuine issues of material fact in dispute and Warden Hooper is entitled to judgment as a matter of law dismissing the state law tort claims pending against him

---

state constitution the State is not immune from suit in tort, the Eleventh Amendment bars suits in federal court by private citizens against nonconsenting states. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In this case, DOC Defendants assert the affirmative defense of sovereign immunity in the answer to Plaintiff's amended complaint. Rec. Doc. 69 at 3. Thus, any claim that the State of Louisiana is vicariously liable for the actions of DOC employees would be precluded by the Eleventh Amendment's grant of sovereign immunity.

[161] *See Doe v. Morris*, No. CIV.A. 11-1532, 2013 WL 3933928, at *3 (E.D. La. July 30, 2013) (Vance, J.) (citing *Russell v. Noullet*, 721 So.2d 868, 871 (La.1998); *Bates v. Caruso*, 881 So.2d 758, 761 (La. App. 4th Cir. 2004)).

[162] DOC Defendants request summary judgment on the state law claims pending against Warden Hooper. Rec. Doc. 143-1. Plaintiff does not discuss the state law claims pending against Warden Hooper in his opposition to DOC Defendants' motion for summary judgment. Rec. Doc. 160.

in his individual capacity brought under the theory of *respondeat superior*.

**C.      Whether Plaintiff has Established Standing to Seek Injunctive Relief under Federal Law**

Both parties move for summary judgment on Plaintiff's claim that Secretary LeBlanc is liable in his official capacity pursuant to *Monell* for the alleged federal due process violation.[163] DOC Defendants argue that Plaintiff does not have Article III standing to seek injunctive relief under federal law because Plaintiff was not incarcerated at the time this action was filed.[164] In opposition, Plaintiff contends that he has standing to seek injunctive relief because he is "currently incarcerated and facing potential sentencing" on another charge and could be overdetained again.[165] In the alternative, Plaintiff argues that he has standing under the doctrine of "capable of repetition but evading review."[166]

Plaintiff's *Monell* claim against Secretary LeBlanc remains pending to the extent that Plaintiff seeks "[i]njunctive relief against [DOC] Defendants to end their practice of overdetention" because under the Eleventh Amendment to the United States Constitution, Plaintiff may sue Secretary LeBlanc in his official capacity only for injunctive and declaratory relief.[167] Because Plaintiff could not recover damages for past conduct against Secretary LeBlanc

---

[163] Rec. Doc. 149; Rec. Doc. 143. "A *Monell* claim may not be asserted against an official in his or her individual capacity; it may be asserted only against a municipal entity or municipal policymaker in his or her official capacity." § 6.05 INDIVIDUAL-CAPACITY AND OFFICIAL-CAPACITY CLAIMS, SNETLCD § 6.05, 6-79; *see also Harasz v. Katz*, 239 F. Supp. 3d 461, 504–05 (D. Conn. 2017).

[164] Rec. Doc. 143-1 at 3–5; Rec. Doc. 189-2 at 2. DOC Defendants note that "Plaintiff does not specify whether he seeks injunctive relief under state law, in addition to the claim under federal law." Rec. Doc. 143-1 at 3. To the extent that Plaintiff seeks injunctive relief under state law, Plaintiff's claims are barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

[165] Rec. Doc. 160 at 3.

[166] *Id.*

[167] Rec. Doc. 48 at 24. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("[I]mplementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective

in his official capacity, this Court previously dismissed Plaintiff's claims for monetary damages against DOC Defendants in their official capacities.[168]

The Court finds that Plaintiff does not have standing to seek injunctive relief requiring DOC Defendants to end their practice of overdetention. To sufficiently allege a case or controversy under Article III, the "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"[169] "In the context of prospective injunctive and declaratory relief, past exposure to illegal conduct, by itself, does not evince a present case or controversy and thus cannot establish standing."[170] In *Plumley v. Landmark Chevrolet, Inc.*, the Fifth Circuit explained that "a plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again."[171] The *Plumley* court held that the plaintiff lacked standing to seek injunctive relief where it was "unlikely that [the defendant] will wrong [the plaintiff] again."[172]

Here, although Plaintiff was detained at the time Plaintiff filed the opposition to DOC Defendants' motion for summary judgment,[173] Plaintiff does not present any evidence to show

---

relief are not treated as actions against the State.") (citing *Ex parte Young*, 209 U.S. 123 (1908)).

[168] Rec. Doc. 46.

[169] *Damian v. Park*, 137 F. App'x 619, 620 (5th Cir. 2005) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)).

[170] *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015).

[171] 122 F.3d 308, 312 (5th Cir. 1997) (citing *City of Los Angeles*, 461 U.S. at 111).

[172] *Id.*

[173] Rec. Doc. 160 at 2; Rec. Doc. 160-2; Rec. Doc. 189-2 at 1.

33

that he was detained at the time the instant lawsuit was filed in 2017.[174] "Standing is determined as of the time that suit is filed."[175] Therefore, Plaintiff's subsequent detention at Orleans Parish jail for an arrest in 2019 is irrelevant to the standing inquiry. In addition, neither the original Complaint nor the operative Second Amended Complaint contain allegations demonstrating any likelihood that Plaintiff will suffer the same injury in the future.[176]

Alternatively, Plaintiff argues that he has standing under the doctrine of "capable of repetition, but evading review."[177] A dispute is capable of repetition yet evading review if: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."[178] With respect to the first prong, Plaintiff argues that his 27 days of overdetention were too short to fully litigate this action.[179] With respect to the second prong, Plaintiff argues that the fact that he has been arrested twice since the 2016 arrest at issue in this case indicates that the challenged conduct is "reasonably likely to reoccur" or have a "credible threat of recurrence."[180]

The "capable of repetition yet evading review" doctrine applies to mootness, not standing.[181] The Supreme Court has distinguished mootness and standing as two separate

---

[174] *See* Rec. Doc. 1; Rec. Doc. 48; Rec. Doc. 160.

[175] *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000).

[176] *See* Rec. Doc. 1; Rec. Doc. 48.

[177] Rec. Doc. 160 at 3.

[178] *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

[179] Rec. Doc. 160 at 3.

[180] *Id.* at 4.

[181] *See Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010).

justiciability doctrines: mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."[182] With respect to the "capable of repetition yet evading review" exception, Supreme Court precedent holds that "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."[183] Since Plaintiff did not have standing at the time the instant action was commenced, mootness doctrine and the "capable of repetition yet evading review" exception to mootness are inapplicable here.

For these reasons, the Court finds that Plaintiff does not have standing to seek injunctive relief requiring DOC Defendants to "end their practice of overdetention." Accordingly, there are no genuine issues of material fact in dispute and Plaintiff's claim for injunctive relief must be dismissed as a matter of law.[184]

### III. Conclusion

For the foregoing reasons, the Court finds that there are genuine issues of material fact in dispute and Secretary LeBlanc is not entitled to judgment as a matter of law on the issue of qualified immunity. Accordingly, the Court denies DOC Defendants' motion for summary judgment as to Plaintiff's state and federal due process claims against Secretary LeBlanc in his individual capacity.[185] Similarly, the Court also denies Plaintiff's motion for summary judgment

---

[182] *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

[183] *Id.*

[184] Plaintiff also seeks declaratory relief on his Section 1983 claim against Secretary LeBlanc in his official capacity. Rec. Doc. 48. In their motion for summary judgment, DOC Defendants do not argue that Plaintiff's request for declaratory relief should be dismissed. *See* Rec. Doc. 143-1.

[185] *See Burge v. Par. of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999) (noting that the Louisiana Supreme

on his due process claims against Secretary LeBlanc in his individual capacity because the Court finds that genuine issues of material fact are in dispute regarding the underlying cause of Plaintiff's allegedly unconstitutional overdetention.

There are genuine issues of material fact in dispute regarding whether or not Secretary LeBlanc can be held vicariously liable for DOC employees' alleged tortious conduct under state law. Accordingly, the Court denies the cross motions for summary judgment to the extent that they seek  summary judgment on Plaintiff's state law claims against Secretary LeBlanc. With respect to the state law claims pending against Warden Hooper, there are no genuine issues of material fact in dispute and Warden Hopper is entitled to judgment as a matter of law dismissing the state law tort claims pending against him in his individual capacity brought under the theory of *respondeat superior*. Finally, Plaintiff does not have standing to seek injunctive relief against Secretary LeBlanc in his official capacity. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment[186] is **DENIED**.

**IT IS FURTHER ORDERED** that DOC Defendants' Motion for Summary Judgment[187] is **GRANTED IN PART** and **DENIED IN PART.** DOC Defendants' Motion for Summary Judgment is granted to the extent that DOC Defendants request dismissal of Plaintiff's state law tort claims against Warden Hopper in his individual capacity. DOC Defendants' Motion for Summary Judgment is also granted to the extent that DOC Defendants request dismissal of Plaintiff's request for injunctive relief regarding Plaintiff's 1983 claim against Secretary LeBlanc

---

Court has held that the state's qualified immunity doctrine is coextensive with the federal qualified immunity doctrine).

[186] Rec. Doc. 129.

[187] Rec. Doc. 143.

in his official capacity. DOC Defendants' Motion for Summary Judgment is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff's state law tort claims against Warden Hooper in his individual capacity brought under the theory of *respondeat superior* are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's request for injunctive relief against Secretary LeBlanc in his official capacity is **DISMISSED WITHOUT PREJUDICE.**[188]

**NEW ORLEANS, LOUISIANA**, this __31st__ day of March, 2021.

*Nannette Jolivette Brown*
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[188] *See Sepulvado v. Louisiana Bd. of Pardons & Parole*, 114 F. App'x 620, 622 (5th Cir. 2004) ("The dismissal was for lack of subject-matter jurisdiction (standing); therefore, it is without prejudice.").

37