## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RODNEY GRANT** | : | **CIVIL ACTION** |
| | : | **NO. 2:17-CV-2797 "G" (3)** |
| **VERSUS** | | |
| | : | **CHIEF JUDGE BROWN** |
| **MARLIN GUSMAN, ET AL.** | : | **MAG. JUDGE DOUGLAS** |

*********************************************************************************

### MOTION FOR ATTORNEYS FEES AND COSTS

The parties have agreed that Plaintiff Rodney Grant was the prevailing party in this case. Mr. Grant now seeks his attorneys fees and costs pursuant to 42 U.S.C. § 1988.

This case was about how Mr. Grant was imprisoned for twenty-seven days past his legal release date. Twelve of those days were in the custody of the Orleans Parish Sheriff's Office ("OPSO"). Mr. Grant sued for the violation of his constitutional and state law rights.

Over five and a half years of litigation, Mr. Grant prevailed against OPSO. At the summary judgment phase, this Court held that OPSO jailed him without legal authority.[1] The Court also held that Mr. Grant had "identified a promulgated policy that necessarily results in some individuals being detained beyond their legal release date."[2] Specifically, the Court held that OPSO Defendants' policy of driving paperwork to the Department of Corrections once a week "necessarily results in the overdetention of inmates who are eligible for immediate release upon sentencing."[3]

On interlocutory appeal, the Fifth Circuit Court of Appeals emphasized OPSO's responsibility, holding that "Louisiana law places the onus on sheriff's and clerk's offices to timely transmit bills of information to DPSC."[4] After that ruling, Plaintiff and OPSO reached a settlement. They agreed that Plaintiff is the prevailing party for the purpose of fees and costs. Plaintiff now seeks those fees and costs from the OPSO Defendants.

---

[1] Rec. Doc. 230 at 16 ("[T]he Court finds that Plaintiff has pointed to facts to show that OPSO Defendants did not have legal authority to detain Plaintiff and OPSO Defendants have failed to point to evidence in the record which would place these facts in dispute.")
[2] Rec. Doc. 230 at 21.
[3] *Id.*
[4] *Grant v. Gusman*, 21-30230 (5th Cir. 2022) (unpublished) at *12.

## I.    Procedural Background and Nature of Mr. Grant's Claims

On June 30, 2016, Judge Buras gave Rodney Grant a one-year sentence, with credit for time served for several years he had previously served.[5] Because the intent of the sentence was to immediately release Mr. Grant, the judge asked OPSO's counsel to request expedited processing for Mr. Grant.[6] That counsel wrote to then-Sheriff Gusman and others that Mr. Grant "really shouldn't have to actually serve any time once DOC processes it."[7] Gusman personally responded to the email, confirming that once Mr. Grant "enters a plea and is sentenced, we can get the DOC to compute his time."[8]

But despite the judge's clear direction and OPSO's subjective awareness of the need for immediate release, Mr. Grant was not immediately released. That was because OPSO had a policy of physically driving inmates' paperwork to the DOC, and only doing so once per week.[9] Per that policy, OPSO waited a full week after Mr. Grant's sentencing to drive his paperwork to the DOC.[10] After that, OPSO waited passively to receive word as to what to do with Mr. Grant – even though they knew his sentence was complete. OPSO did not release Mr. Grant to the DOC's custody until July 12, 2016.[11] Mr. Grant was not fully released by the DOC until July 27, 2016.[12]

On April 2, 2017, Mr. Grant brought suit against OPSO Defendants Marlin Gusman, Carmen DeSadier, Sidney Holt, and Djuana Bierria, as well as defendants from other entities.[13]

Over the next five years, the parties engaged in protracted and high-intensity litigation. A total of sixty-one motions were filed, including six motions to dismiss,[14] and six motions for

---

[5] Rec. Doc. 230 at 2.
[6] *Id*. at 3.
[7] *Id*.
[8] *Id*. at 21.
[9] *Id*. at 21.
[10] Rec. Doc. 164-1 at *2 ("OPSO drove Rodney Grant's paperwork to the DOC on July 7, 2016 . . . Uncontested factually . . . .").
[11] Rec. Doc. 230 at 3.
[12] *Id*. at 4.
[13] Rec. Doc. 1.
[14] Rec. Docs. 14, 17, 24, 25, 49, and 50.

summary judgment.[15] The docket sheet for the case extends for 31 pages, and goes up to Rec. Doc. 260.[16]

At the summary judgment stage, this Court held that OPSO Defendants had in fact incarcerated Mr. Grant without legal authority:

> [T]he Court finds that Plaintiff has pointed to facts to show that OPSO Defendants did not have legal authority to detain Plaintiff and OPSO Defendants have failed to point to evidence in the record which would place these facts in dispute.[17]

The Court also specifically found that OPSO's written policy "necessarily results" in overdetention:

> The Court finds that Plaintiff has identified a promulgated policy that necessarily results in some individuals being detained beyond their legal release date.

> Specifically, OPSO's written policy of driving pre-classification packets to the DOC headquarters in Baton Rouge once a week **necessarily results in the overdetention** of inmates who are eligible for immediate release upon sentencing.[18]

OPSO did not appeal the denial of its summary judgment motion. But the DOC did, and obtained judgment from the Fifth Circuit Court of Appeals.[19] Significant to this motion, the Fifth Circuit's opinion supported OPSO's liability in three ways. First, the Fifth Circuit confirmed that OPSO waited a week before sending Mr. Grant's paperwork to the DOC.[20] Second, the Fifth Circuit held that "Louisiana law places the onus on sheriff's and clerk's offices to timely transmit bills of information to DPSC."[21] And third, the Fifth Circuit undermined OPSO's defense that it was just following DOC directives, by holding that the DOC "has no authority over entities—including local sheriff's and clerk's offices—other than [the DOC]."[22]

---

[15] Rec. Docs. 80, 129, 133, 136, 143, and 252.

[16] Ex. A (Docket Sheet).

[17] Rec. Doc. 230 at 16.

[18] Rec. Doc. 230 at 21. Emphasis added.

[19] *Grant v. Gusman*, 21-30230 (5th Cir. 2022) (unpublished).

[20] *Id.* at *3 ("On 7 July, seven days after Grant's sentencing, DPSC received Grant's pre-class packet, described below, from OPSO . . .")

[21] *Id.* at *13.

[22] *Id.* at *12.

Based on the Fifth Circuit's ruling, Plaintiff filed a Motion for Renewed Summary Judgment against Marlin Gusman in his individual capacity.[23] Mr. Gusman did not file any opposition to that Motion for Renewed Summary Judgment.[24]

Shortly thereafter, the OPSO Defendants and Plaintiff reached a settlement. They "agreed on an amount of damages to be paid by Defendants to Plaintiff, and agreed that Plaintiff is the prevailing party for the purpose of attorneys fees and costs."[25]

Over the next month and a half, the parties endeavored to resolve the quantum of fees and costs without court intervention. Plaintiff provided a detailed accounting of total hours worked broken down by attorney, reasonable hourly rates with comparable case citations, and affidavits from Eastern District attorneys.[26] The parties exchanged twenty-one pieces of correspondence in the effort to reach agreement, but were unable to do so.[27]

## II.   OPSO Defendants' Litigation Strategy Substantially Increased the Amount of Plaintiff's Attorney Fees.

This case was fiercely litigated for five and a half years. For the first five years of litigation – the time before Sheriff Hutson took office – OPSO Defendants took an unusually vicious and retaliatory approach to litigating.[28]

For example, in 2018 OPSO Defendants' counsel threatened to send Mr. Grant back to prison, for the explicit reason that it would go to their "defenses" of this civil suit.[29] Plaintiff's counsel pointed out to them that it was an obvious violation of the Rule 8.4(g) of the Rules of Professional Conduct.[30] Defendants never withdrew the threat.[31]

---

[23] Rec. Doc. 252.
[24] Rec. Doc. 253 (Notice of Lack of Opposition to Motion for Summary Judgment).
[25] Rec. Doc. 257 at 3 (Joint Status Update).
[26] Ex. P (Declaration of William Most) at ¶ 10.
[27] *Id.*
[28] *Id.* at ¶ 12 ("In eleven years as an attorney, I have not had any defense counsel before or since act in such an aggressive manner.")
[29]  See Ex. C (Correspondence of Counsel).
[30] See Ex. D (Correspondence of Counsel).
[31] Ex. P at ¶ 13.

4

In 2020, OPSO Defendants threatened Mr. Grant again. Through counsel, they indicated that they intended to seek tens of thousands of dollars in compensation or sanctions against Mr. Grant, and indicated that they would "subsequently enforce against his inmate commissary, telephone, and earnings accounts for all current and future incarcerations, should we obtain a favorable verdict."[32]

At no point prior to 2022 did OPSO Defendants ever offer a single dollar to Mr. Grant to settle his case.[33] In fact, the only settlement offer OPSO Defendants made during the first five years of litigation was an offer that Mr. Grant could *pay $15,000 to OPSO Defendants* and also dismiss his case, in exchange for nothing.[34] Even after the summary judgment ruling holding that OPSO's policy necessarily results in overdetention, OPSO Defendants did not change their settlement posture.[35]

Further increasing the cost of litigation, OPSO Defendants chose not to engage in discovery as required by the Federal Rules of Civil Procedure. For example:

- OPSO Defendants ignored Requests for Admissions, and then provided untimely and inadequate responses.[36]

- OPSO Defendants failed to respond to discovery requests until after Plaintiff had filed a Motion to Compel.[37]

- OPSO Defendants listed twelve witnesses on their pre-trial witness list that they had not identified in initial disclosures.[38]

- OPSO Defendants' counsel provided interrogatory responses that the actual parties had no involvement in producing.[39]

---

[32] Ex. E.
[33] Ex. P at ¶ 14.
[34] *Id*.
[35] *Id*.
[36] Rec. Doc. 77 (court ordering OPSO to "re-serve new responses to plaintiff's requests for admission after carefully considering their earlier responses to the requests.")
[37] Rec. Doc. 104 ("defendants had responded only after he had already filed the motion to compel")
[38] *Compare* Rec. Doc. 115 (OPSO Witness and Exhibit List), *with* Ex. B (OPSO Initial Disclosures).
[39] Federal Rule of Civil Procedure 33(b) is clear: "The interrogatories must be answered…by the party to whom they are directed." F.R.C.P. 33(b). However, during deposition, Sheriff Gusman stated he did not participate in preparing the answers. Rec. Doc. 133-9 at 20:2 -23:8 ("A: These

At the deposition phase, OPSO Defendants also made depositions longer and more costly by engaging in inappropriate deposition conduct. For example, OPSO Defendants' counsel:

- Engaged in lengthy speaking objections;[40]

- Interjected inappropriate clarifications;[41]

- Gave the deponent direct coaching instructions;[42]

- Had two lawyers offering objections, in violation of Local Rule 34.2;[43] and

- Proffered a 30(b)(6) witness who was not prepared to testify on several topics.[44]

Defense counsel even admitted they were indeed making speaking objections during the deposition:

---

are the responses prepared by my lawyer…Q:…Did you participate in preparing these answers? A: No, I did not."). The result was that Sheriff Gusman struggled to attest to the truthfulness of "his" answers. *Id.*

[40] *See, e.g.*, Rec. Doc. 133-9 at 9:6-20, 15:4-14, 28:20-29:20, and 89:9-22

[41] It is not a proper objection when counsel interjects that he or she does not understand a question, and "if a witness needs clarification of a question, the witness may ask for the clarification." *Hunter*, No. 17-05070, at *15 n.8 (*quoting Cincinnati Ins. Co.,* 2012 WL 28071 at *5). OPSO Defendants' Counsel nevertheless made repeated such interjections. See e.g., Ex. A at 6:15-17, 25:13-14; 26:6-9, 27:16-18, 28:20-29:4, 38:10-12, 41:8-9, 48:22-25, 52:9-10, 54:11-13; 59:11-12, 59:20-23, 62:24-63:1, 73:11-13, 83:7-8, 84:20-22, 91:14-17, 99:18-21.

[42] For example, Magistrate Judge North of the Eastern District of Louisiana has flagged "the dreaded – always improper – 'you can answer if you know' instruction." *Hunter*, No. 17-05070, at *15. OPSO Defendants'' counsel, repeatedly engaged in this "always improper" behavior. Rec. Doc. 133-9 at 29:25-30:2 ("Mr. Arcuri: If you can't answer it, you can't answer it. Witness: I can't answer it"); *id.* at 29:2-4 and 29:17-19 ("Ms. Rodrigue: I don't think anyone can answer that question."); *id.* at 95:2-4 ("Mr. Arcuri: Sheriff, if you can answer the question."). Another type of improper coaching instructions are statements that the witness has already answered the question. *Hunter*, No. 17-05070, at *15 n.8 ("[S]peaking objections such as… 'you've answered the question'…are designed to coach the witness and are improper.") (quoting *Cincinnati Ins. Co*., 2012 WL 28071 at *5). Mr. Arcuri insisted the deponent answered a question at least 24 times. *See e.g., Rec. Doc. 133-9* at 8:3-7, 21:19-20, and 94:22-23.

[43] *See, e.g., id.* at 28:15-30:4

[44] See Rec Doc. 147-5. Captain Bierria was designated as a 30(b)(6) witness, but was unprepared to discuss the topics. *See id.* at 83:15-84:18 ("Q: But the question is, you're not prepared to provide an average length of time today, correct? A: Correct."); 88:21-90:15 ("I can't talk about what someone else gets.") Captain Bierria did not know how often Orleans Parish Sheriff's Office receives complaints, where the complaints are located, or whether any of the complaints received by Orleans Parish Sheriff's Office were accurate.

```
                    MR. MOST:
                    Blake, that's -- that's a whole
            paragraph of text that you said there.
            That's a speaking objection.
                    MR. ARCURI:
                    Yes.
                    MR. MOST:
                    It is?  You agree it's a speaking
            objection?
                    MR. ARCURI:
                    Yes.                              45
```

OPSO Defendants also complicated matters by designating their trial counsel Blake Arcuri as their 30(b)(6) witness for several topics.[46]

Since the election of Sheriff Susan Hutson, OPSO Defendants' counsel has been courteous and professional. That does not, however, undo the litigation choices OPSO Defendants made in the first five years of litigation.

### III.   Plaintiff's Lawsuit Resulted in a Substantial Benefit to the Public by Causing OPSO to Change its Policy.

As this Court noted, prior to Mr. Grant filing his lawsuit OPSO Defendants had a "written policy of driving pre-classification packets to the DOC headquarters in Baton Rouge once a week."[47] Specifically, the policy directed a deputy to pick up the "completed packets every Thursday for delivery to the Department of Corrections Headquarters in Baton Rouge, Louisiana."[48] This Court held that the OPSO policy necessarily resulted "in the overdetention of inmates who are eligible for immediate release upon sentencing."[49]

However, after Mr. Grant filed his case, OPSO Defendants changed the policy. A few weeks after the Court set this matter for a jury trial,[50] revisions were proposed to the policy.[51] Then-Sheriff

---

[45] Rec. Doc. 133-9 at 15:16-25.
[46] Rec. Doc. 133-6 at 17:5-6 ("Mr. Arcuri is going to testify for [topics] 18 and 19").
[47] Rec. Doc. 230 at 21.
[48] Ex. M (OPSO Policy No. 501.13, 2016 Version) at 6.
[49] Rec. Doc. 230 at 21.
[50] Rec. Doc. 93 (June 20, 2019 order setting jury trial).

Gusman approved the changed policy a few weeks after that.[52] The revised version omitted the "every Thursday" language.[53] Thereafter, OPSO Defendants' practice was to electronically transmit records to the DOC, rather than driving them once per week.[54]

This policy revision resulted in substantial benefits to the public. The changed policy reduced the number of overdetained people sentenced in Orleans Parish, which reduced the financial burden on Louisiana taxpayers, as the state reimburses OPSO for the detention of those persons.[55] Thus, in prompting OPSO to amend its policy, this lawsuit reduced the unconstitutional detention of Louisiana citizens, while at the same time saving the public money.

## IV.    Analysis

### A.    Legal Standard

A prevailing party in a civil rights case is entitled to attorneys fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b). The purpose of 42 U.S.C. § 1988 is "to ensure effective access to the judicial process for persons with civil rights grievances."[56] Fee recovery is of particular import in civil rights cases, where the plaintiffs are not acting for themselves alone, "but also as a 'private attorney general' vindicating a policy that Congress considered of the highest importance."[57] The Supreme Court has recognized the significance of the fee award to ensure that violators of civil rights, not the victims of civil rights violations, are forced to bear the expense of the violations and their attendant harms.[58] It is within the context of this purpose that the amount of the fees and costs awarded is to be set at the discretion of the district court, based upon the facts and circumstances of each case.[59]

---

[51] Ex. N at 1 (recommended revisions on July 11, 2019).
[52] *Id*. (signed by Gusman on August 19, 2019).
[53] *Id.*
[54] See Ex. O at 2 (noting that OPSO's Pre-Classification section is responsible for "[e]lectronically transmitting pre-classification packets to DOC").
[55] *See* Rec. Doc. 71-4 at 137 ("The state reimburses these entities for housing offenders.")
[56] *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations omitted).
[57] *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (internal quotations omitted).
[58] *See, e.g., Martin v. Franklin Capital Corp*., 546 U.S. 132, 137 (2005).
[59] *Hensley*, 461 U.S. at 429.

In the Fifth Circuit, courts apply a two-step process for determining reasonable attorney fees, beginning with calculating the "lodestar."[60] This Court must determine the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.[61] Plaintiff has the burden of documenting and demonstrating the reasonableness of both counsel's hourly rates and the time submitted for the fee award.[62]

"After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended `by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections.'"[63] There is a strong presumption that the lodestar is reasonable, but once the lodestar is determined, the Court should then consider the various factors identified in *Johnson*, 488 F.2d at 717-19, if either party seeks to adjust the lodestar upward or downward.[64] As the fee applicants, Plaintiffs "bear[] the burden of showing that `such an adjustment is necessary to the determination of a reasonable fee.'"[65]

**B.     By Agreement of the Parties, Plaintiff Has Prevailed and is Entitled to Fees and Costs.**

A prevailing party in a civil rights action is entitled to reasonable attorneys fees.[66] "A plaintiff 'prevails' . . . 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly

---

[60] *Combs v. City of Huntington*, 829 F.3d 388, 391- 92 (5th Cir. 2016).

[61] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

[62] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[63] *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (*quoting Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

[64] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (*citing Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010), and *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). *See also Watkins v. Forcide*, 7 F.3d 453, 457 (5th Cir. 1993).

[65] *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (*quoting City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (emphasis in original).

[66] 42 U.S.C. § 1988.

benefits the plaintiff.'"[67] The fact that a party "prevailed through a settlement rather than through litigation does not weaken [their] claim to fees."[68]

Here, Plaintiff and OPSO Defendants "agreed on an amount of damages to be paid by Defendants to Plaintiff, and agreed that Plaintiff is the prevailing party for the purpose of attorneys fees and costs."[69] For that reason, Plaintiff is entitled to fees and costs per 42 U.S.C. § 1988.

**C.    Plaintiff's Counsel's Hourly Rates are Reasonable, as Evidenced by District-Specific Caselaw and Affidavits of Attorneys in the District.**

The first step of analyzing a fee petition is determining the raw lodestar amount – the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.[70] Reasonable hourly rates are to be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation."[71] If the hourly rate is the attorney's customary rate and within the range of prevailing market rates, then the rate is prima facie reasonable if uncontested.[72] The process for establishing those rates is described as follows:

> Typically, parties seeking to recover reasonable attorney fees submit the affidavit(s) of the attorneys who represented the prevailing party, describing the experience of the involved attorneys, verifying the submitted billing entries, and producing satisfactory evidence of prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and, if available, actual rates paid in similar lawsuits.

---

[67] *Lefemine*, 568 U.S. at 4 (*quoting Farrar*, 506 U.S. at 111–12); *see also Bailey v. State of Mississippi*, 407 F. 3d 684, 687 (5th Cir. 2005).

[68] *Maher v. Gagne*, 448 U.S. 122, 129, 100 S. Ct. 2570, 2575, 65 L. Ed. 2d 653 (1980) (citing S. Rep. No. 94–1011, p. 5 (1976), U.S. Code Cong. & Admin. News 1976, pp. 5908, 5912.); *Grisham v. City of Fort Worth, Tex.*, 837 F.3d 564, 569–70 (5th Cir. 2016) (holding plaintiff was a prevailing party because consent decree was a legal change in relationship even without admission of liability).

[69] Rec. Doc. 257 at 3 (Joint Status Update).

[70] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

[71] *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[72] *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990) (*quoting Islamic Ctr. of Mississippi v. City of Starkville*, 876 F.2d 468, 469 (5th Cir. 1989)). *See also La. Power & Light*, 50 F.3d at 328.

The "relevant community" for the purpose of awarding attorney fees is the judicial district in which the litigation occurred. . . . .[73]

Here, Plaintiff submits the declaration of lead counsel, verifying the submitted billing entries and verifying that the rates reflect the attorneys' actual billing rates.[74]

Because "the rates charged in private representations may afford relevant comparisons,"[75] Plaintiff has also submitted the declarations of a range of attorneys working in the Eastern District opining that the hourly rates charged by counsel here are reasonable and within the range of prevailing market. Those attorneys are Mary Howell, Bill Quigley, Casey Denson, John Adcock, Kerry Murphy, Luz Molina, and Tarak Anada.[76] Each of those attorneys opined that "the hourly rates sought by the attorneys in this case are within the range of what would be considered to be reasonable market rates for attorneys practicing in New Orleans, with comparable experience, skill and ability."[77]

Tarak Anada, a partner in the Litigation Practice Group of Jones Walker, LLP, added that the rates proposed by Plaintiff "are less than what I am used to seeing in private practice in New Orleans."[78]

A summary of the team members who worked on the case, their years of practice, their number of hours, their hourly rate, and supporting evidence, is as follows:

---

[73] *Latiolais v. Griffith*, Civil Action No. 09-18, 2015 U.S. Dist. LEXIS 91397 (W.D. La. June 23, 2015).
[74] Ex. P at ¶¶ 3-6, 15.
[75] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).
[76] Exhibits F to L.
[77] Ex. F (Quigley) at ¶ 10; Ex. G (Howell) at 9; Ex. H (Denson) at ¶ 15; Ex. I (Adcock) at ¶ 10; Ex. J (Murphy) at ¶ 19; Ex. K (Molina) at ¶ 8; Ex. L (Anada) at ¶ 9.
[78] Ex. L at ¶ 10.

| Team Member | Years of Practice | Hourly Rate |
|---|---|---|
| William Most | 11 | $350 |
| David Lanser | 5 | $275 |
| Caroline Gabriel | 4 | $250 |
| Meghsha Barner | 3 | $235 |
| Amanda Hass | 2 | $225 |
| Allison Sickle | N/A | $125 |
| | | **Total** |

The following are comparable cases that provide support for the reasonableness of Plaintiff's requested hourly rates. Inflation-adjusted rates have been provided in brackets, indicating how much historical rates would be in 2022 dollars.[79]

- **William Most:** Mr. Most is an attorney with eleven years' experience, including eight particularly in the field of civil rights litigation. His full hourly rate is **$350** per hour. This hourly rate is well within the range that Courts in the district have found reasonable for an attorney with his experience.[80] Mr. Most's rate has been adjudicated within this range.[81]

---

[79] Inflation-adjusted numbers were determined using the calculator available at https://www.usinflationcalculator.com/ , which uses the latest United States government CPI data (published on October 13, 2022), to adjust for inflation and calculate the cumulative inflation rate through September 2022.

[80] *See Bd. of Supervisors of La. State Univ. v. Smack Apparel Co*., 2009 U.S. Dist. LEXIS 27652 (E.D. La. April 2, 2009) (finding that $325 [$422 in 2022 dollars] was a reasonable hourly rate for an attorney with 10 years' relevant experience); *Cajun Services Unlimited LLC v. Benton Energy Service Company*, 17-cv-00491, Rec. Doc. 309 (E.D. La., Jan. 23, 2020) ($350 per hour [$400 in 2022 dollars] reasonable for attorney with 11 years of experience); *EnVen Energy Ventures, LLC v. Black Elk Energy Offshore Operations, LLC*, No. 14-424, 2015 WL 3505099, at *2 (E.D. La. June 2, 2015) (awarding $300 [$353 in 2022 dollars] for an attorney with 10 years of experience); *Jones v. New Orleans Regional Physician Hospital Organization*, Civil Action No. 17-8817, 2019 WL 6770029 at *2 (E.D. La., Dec. 12, 2019) ($300 per hour [$348 in 2022 dollars] for a 10-year lawyer); *Cox v. Precision Surveillance Org*., Civ. A. No. 13-6600, 2014 U.S. Dist. LEXIS 61956, 2014 WL 1785350, at *1 (E.D. La. May 5, 2014) (awarding fees for an hourly rate of $275 [$324 in 2022 dollars] for an attorney with ten years of experience); *Matherne v. Ruba Management*, No. 12- 2461, 2014 U.S. Dist. LEXIS 151900 (E.D. La. October 24, 2014) ($265 per hour [$332 in 2022 dollars] reasonable for attorney with 11 years' experience); *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.* , Civ. A. No. 10-4151, 2014 U.S. Dist. LEXIS 135253, 2014 WL 5039670 (E.D. La. Sept. 25, 2014) (awarding $275.00/hour [$324 in 2022 dollars] to attorney with seven years' experience); *Foley v. SAFG Retirement Servs., Inc*. , Civ. A. No. 10-2827, 2012 U.S. Dist. LEXIS 37246, 2012 WL 956499 (E.D. La. Mar. 20, 2012) (approving $275/hour [$334 in 2022 dollars] for attorney with

- **Caroline Gabriel**: Ms. Gabriel is an attorney with four years' experience. Accordingly, **$250** per hour is a reasonable hourly rate for her work.[82]

- **David Lanser:** Mr. Lanser is an attorney with five years' experience. Accordingly, **$275** per hour is a reasonable hourly rate for his work.[83]

- **Meghsha Barner:** Attorney Barner was an attorney with three years of experience when they stopped working on this case. Accordingly, **$235** is a reasonable hourly rate for their work.[84]

---

eight years' experience).

[81] *See Scola v. Facebook Inc.,* 18-cv-05135 (San Mateo Sup. Ct., June 21, 2021) (applying $850 per hour Lodestar rate to William Most in approving class settlement); *Ivy v. Tran,* 20-cv-1475, Rec. Doc. 44 (E.D. La., April 15, 2021) (awarding William Most attorneys fees at $275 per hour [$314 in 2022 dollars]).

[82] *See Wagner v. Boh Bros. Const. Co., LLC*, No. 11-2030-JCW, 2012 WL 3637392 at *16 (E.D. La. Aug. 22, 2012) (in employment discrimination case, awarding $235 [$299 in 2012 dollars] for attorney with 4 years' experience); *Offshore, supra,* 2014 WL 5039670 (awarding $225.00/hour [$281 in 2022 dollars] to attorney with four years of experience); *Constr. S., Inc. v. Jenkins,* 11-1201, 2011 WL 3892225 (E.D. La. Sept. 2, 2011) (awarding $200/hour [$264 in 2022 dollars] for an associate with four years of experience ); *Ivy, supra,* 20-cv-1475, Rec. Doc. 44 (awarding fourth-year attorney fees at $235 per hour [$257 in 2022 dollars]); *Alexander v. Ace Am. Ins. Co.*, No. 14-310, 2014 WL 4163756, at *2 (E.D. La. Aug. 20, 2014) (awarding $200 per hour [$250 in  2022 dollars] for attorney with four years of experience); *Cameron v. Greater New Orleans Fed. Credit Union*, No. 16-8514, 2017 WL 1426970, (E.D. La. Apr. 21, 2017) (approving $190 [$227 in 2022 dollars] for associate with roughly four years of experience).

[83] *See Wagner, supra,* 2012 WL 3637392 at *16 (in employment discrimination case, awarding $235 [$299 in 2012 dollars] for attorney with 4 years' experience); *Cavaretta v. Entergy Corp. Companies' Benefits Plus Long Term Disability Plan,* 03-cv-1830, 2005 WL 1038532 at *1, (E.D. La. April 29, 2005) (awarding an attorney with five years' litigation experience an hourly rate of $225 [$342 in 2022 dollars]); *Offshore, supra,* 2014 WL 5039670 (awarding $225.00/hour [$281 in 2022 dollars] to attorney with four years of experience); *Ivy, supra,* 20-cv-1475, Rec. Doc. 44 (awarding fourth-year attorney fees at $235 per hour [$257 in 2022 dollars]); *Calix v. Ashton Marine LLC*, No. 14-2430, 2016 WL 4194119, at *5 (E.D. La. July 14, 2016), report & recommendation adopted, 2016 WL 4180977 (E.D. La. Aug. 8, 2016) (awarding $200 per hour [$246 in 2022 dollars] for attorneys who had practiced for 5 years); *Creecy v. Metro. Prop. & Cas. Ins. Co.*, Civ. A. 06-9307, 2008 WL 553178, at *3 (E.D. La. Feb. 28, 2008) (Roby, J.) (awarding $175.00 an hour [$241 in 2022 dollars] to a lawyer who had practiced law for five years).

[84] *See Perkins v. Pel Hughes Printing*, LLC, 17-cv-06689, Rec. Doc. 48 (Roby, J.) (E.D. La. August 6th, 2018) ($225 [$265 in 2022 dollars] reasonable for second year attorney); *Construction South, Inc. v. Jenkins*, No. 11–1201, 2011 U.S. Dist. LEXIS 99254, 2011 WL 3882271 (E.D.La. July 29, 2011) (Knowles, M.J.) (awarding $180/hour [$237 in 2022 dollars for an associate with two years of experience); *Atel Mar. Investors, LP v. Sea Mar Mgmt., LLC*, No: 08–1700, 2011 U.S. Dist. LEXIS 68436, 2011 WL 2550505 (E.D. La. June 27, 2011) (Roby,

- **Amanda Hass:** Ms. Hass was an attorney with two years' experience when she stopped working on this case. Accordingly, $225 is a reasonable hourly rate for her work.[85]

- **Allison Sickle:** Ms. Sickle was a law student intern from the Loyola University New Orleans College of Law. She had a GPA of 3.45, and was in the top 12% of her class. Accordingly, $125 is a reasonable hourly rate for her work.[86]

**D.    The Hours Submitted in this Fee Application are Reasonable and Have Been Subjected to Counsel's Billing Judgment.**

Counsel for prevailing plaintiffs should be paid as is traditional with attorneys compensated by a fee-paying client for all time reasonably expended on a matter.[87]

---

M.J.) (awarding $175 [$230 in 2022 dollars] for an associate with two (2) years of experience); *Castellanos v. Saints & Santos Construction*, LLC, 16-cv-02501, Rec. Doc. 197 (Lemelle, J.) (E.D. La. March 25th, 2019) ("Based on a review of the case law in this area, the Court finds that the prevailing rate in this market for an attorney with Ms. Westermeir's level of experience (3 years) is typically between $150 to $200 per hour. [$174 to $232 in 2022 dollars]"); *Canon USA Inc v. S.A.M., Inc.*, 07-cv-01201-MVL-KWR (Roby, J.) (E.D. La. Jan. 6, 2009) ("the Court concludes that a rate of $150.00 [$207 in 2022 dollars] is appropriate and reasonable" for attorney with three years' experience).

[85] *See Perkins, supra,* 17-cv-06689, Rec. Doc. 48 (Roby, J.) ($225 [$265 in 2022 dollars] reasonable for second year attorney); *Construction South, supra,* 2011 WL 3882271 (awarding $180/hour [$237 in 2022 dollars for an associate with two years of experience]; *Hernandez v. U.S. Customs and Border Prot. Agency*, 10-cv-04602, 2012 WL 398328 at *16 (E.D. La., Feb. 7, 2012) (awarding $180 per hour [$233 in 2022 dollars] for attorney with two years of experience in the area of litigation); *Atel Mar. Investors, supra,* 2011 WL 2550505 (awarding $175 [$230 in 2022 dollars] for an associate with two (2) years of experience); *Calix, supra,* 2016 WL 4194119, at *6 (noting that $180 [$222 in 2022 dollars] was a reasonable hourly rate for a first-year associate); *Hubert v. Curren*, 18-cv-07669, Rec. Doc. 23 at 9 (E.D. La., October 15th, 2018) ("$175 [$206 in 2022 dollars] is within the range of prevailing market rates for an associate.")

[86] Law student time is compensable. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (holding that time of "law clerks (generally law students working part time)" is compensable under § 1988). *See Blanchard v. Forrest*, No. CIV.A. 93-3780, 1996 WL 125955, at *3 (E.D. La. Mar. 19, 1996) (noting that Louisiana's Office of the Attorney General charged opponents an hourly rate for law student clerk work); *Dunigan v. Mississippi Valley State Univ.*, No. 4:19-CV-33-DMB-JMV, 2021 WL 4392132, at *6 (N.D. Miss. Sept. 24, 2021) (allowing recovery for law student time when the law students performed tasks typically performed by an attorney). For rates, see *Falls v. Bd. of Commissioners of New Orleans Reg'l Transit Auth.*, No. CV 16-2499, 2017 WL 2730781, at *10 (E.D. La. June 26, 2017) ("$100 per hour [$122 in 2022 dollars] for the paralegal and law clerk work is also reasonable."); *Loiacano v. DISA Global Sols.*, Civ. A. No. 14-1750, 2016 WL2926679, at *2 (E.D. La. May 19, 2016) (awarding $150.00/hour [$186 in 2022 dollars] for a pa1ralegal); *Russel Grillot, Grillot Constr., L.L.C.*, Civ. A. No. 14-2539, 2015 WL 9672688, at *5 (E.D. La. Dec. 14, 2015) (awarding $125.00/hour [$157 in 2022 dollars] for a paralegal); *Offshore, supra,* 2015 WL 5306229, at *3 (awarding $100.00/hour [$125 in 2022 dollars] for a paralegal).

Pursuant to Local Rule 54.2, Plaintiff's counsel has attached a verified copy of the contemporaneous billing records for this case which include the dates, amount of time billed, and a description of the services performed.[88]

Before submitting time records in support of an attorney fees award, "[t]he [fee] applicant should exercise `billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."[89] "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[90]

Here, Plaintiff's counsel has reviewed the time entries for the litigation team and deducted an amount totaling $12,653.25.[91] These deductions include entries that would not be billed to the client (*e.g.*, duplicate entries and entries for leaving voicemail) and the exercise of billing discretion (*e.g.*, writing down some time when less time for a project might be more appropriate). Counsel has ensured that the time entries reflect the general subject matter of the work performed.[92] Throughout the case, Plaintiff's counsel sought opportunities to work efficiently: for example, by employing a law student clerk with a lower billable rate than attorneys, and by noting work that was jointly of benefit to several overdetention cases.[93]

---

[87] *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989).

[88] Exhibit R (Timesheets); verified at Ex. P at ¶ 3-6.

[89] *Hensley*, 461 U.S. at 437 (citation omitted).

[90] *Saizan*, 448 F.3d at 799 (citations omitted). *See also Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (*citing Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)) ("party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting 'adequate documentation of the hours reasonably expended' and demonstrating the use of billing judgement.")

[91] *See* Exhibit P, Most Decl. at ¶ 16.

[92] *Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.").

[93] Ex. P at ¶ 17.

Work done on this fee petition is included in Plaintiff's fee petition, as "it is well settled that fees-on-fees are recoverable under § 1988."[94]

**E.      The Raw Hours Have Been Adjusted to Reflect Successful Claims in this Case.**

The Supreme Court has long recognized the difficulty of disaggregating civil rights claims and has provided guidelines for such circumstances:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.
>
> Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.[95]

Here, there are two aggregation issues to address: work done by Mr. Most that was joint to a range of overdetention cases, and work done in this matter that was or was not joint to the claims against OPSO and DOC Defendants.

1.   <u>Hours Spent on Overdetention Cases Jointly Have Been Divided by Six.</u>

Regarding the first issue: Mr. Most has been involved in a range of overdetention cases, including others against the Orleans Parish Sheriff's Office.[96] Some of the work he did was specific to each overdetention case. Other parts of the work, however, applied to the overdetention cases generally. For example, the parties engaged in joint depositions across the cases of *Grant, Hicks, McNeal*, and *Thomas*, and some of the legal research undersigned counsel did was helpful to each of the individual overdetention cases.[97] Plaintiff proposes dividing these

---

[94] *Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001) (*citing Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985)). *See also Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir.1980); *Johnson v. State of Mississippi*, 606 F.2d 635, 637–38 (5th Cir.1979).
[95] *Hensley*, 461 U.S. at 435; *see also Williams v. Kaufman Cty.*, CIV.A. 397CV0875L, 2003 WL 21755913, at *3 (N.D. Tex. July 30, 2003) (finding a party is not entitled to attorneys fees for the prosecution of an unsuccessful claim unless it involves common facts or derives from related legal theories of another claim that is successfully prosecuted).
[96] *E.g., Traweek v. Gusman*, 19-cv-1384 (E.D. La.).
[97] See Ex. Q (Joint Dep. of Secretary LeBlanc).

hours by six, for the six individual Louisiana overdetention cases brought by undersigned counsel: *Grant, Hicks, McNeal, Thomas, Traweek*, and *Buchicchio*.[98]

    2.  <u>Total Hours Have Been Discounted 25% To Reflect Success of Claims Against Some Defendants but not Others</u>.

Generally, where counsel is not able to divide work for successful claims from unsuccessful claims, all time entries remain in the invoice.[99]

In this case, Mr. Grant prevailed against the OPSO Defendants but not against the DOC Defendants. It is not possible, however, to divide work done into "OPSO hours" and "DOC hours." That is due to the nature of OPSO and the DOC's defenses: each of them blamed the other for Mr. Grant's overdetention.[100] As a result, Plaintiff had to do discovery and research about the DOC to defeat OPSO's defenses, and vice versa. Even the appeal – which was brought by the DOC – was crucial to prevailing against OPSO. That is because the appellate ruling eliminated OPSO's blame-the-DOC defense, holding that "Louisiana law places the onus on sheriff's and clerk's offices to timely transmit bills of information to DPSC."[101] However, it is appropriate to discount some of the hours to account for the fact that Plaintiff prevailed against some defendants but not others. Plaintiff proposes discounting hours by half of half (i.e., 25%) to account for the idea that perhaps half of the DOC's half of the case was DOC-only and not of value to prevailing against OPSO.

---

[98] *Grant v. Gusman*, 17-cv-2797 (E.D. La.); *Hicks v. La. DPS&C*, 19-cv-108 (M.D. La.), *Thomas v. Gryder*, 17-cv-1595 (M.D. La.); *McNeal v. DPS&C*, 18-cv-736 (M.D. La.); *Traweek v. Gusman*, 19-cv-1384 (E.D. La.); *Buchicchio v. LeBlanc* (M.D. La.).

[99] *Abell v. Potomac Ins. Co*., 946 F.2d 1160, 1169 (5th Cir. 1991) ("[W]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."), cert. denied, 504 U.S. 911 (1992).

[100] *See, e.g.,* Rec. Doc. 25-1 (OPSO Motion to Dismiss) at pg. 6 ("The Plaintiff was sentenced to the custody of the Department of Corrections, not the Sheriff of the Parish of Orleans."); *id.* at pg. 24 ("At no time was any OPSO Defendant given a release order by Judge Buras, nor did the Department of Corrections issue a release from custody."); Rec. Doc. 136-1 (OPSO Motion for Summary Judgment) at pg. 7 ("It is undisputed that the Orleans Parish Sheriff's Office never received a DOC release relative to Mr. Grant at any time before, during, or after his sentencing."); *id* at pg. 16 ("Sheriff Gusman cannot be faulted for failing to force DOC to accept or release Grant immediately").

[101] *Id*. at *13.

**F.     OPSO Defendants' Litigation Tactics Resulted in The Quantum of Fees and Costs.**

The U.S. Supreme Court has held that the "government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."[102] A court of appeal noted that a defendant's choice of an aggressive litigation strategy will undermine any complaint that Plaintiff's fees are excessive: defendant "mounted a Stalingrad defense . . . battling from rock to rock and tree to tree. After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the Commonwealth to castigate the plaintiffs for putting too many troops into the field."[103]

Here, OPSO Defendants made a choice to employ an aggressive defense strategy. They filed repeated dispositive motions.[104] They resisted discovery, and engaged in lengthy and inappropriate tactics during deposition.[105] They named their own defense counsel as a 30(b)(6) witness to testify for OPSO. For five years, they refused to offer a single penny as a settlement.[106] And worst of all, they repeatedly threatened Plaintiff – including a threat to put Plaintiff back in prison for the explicit purpose of obtaining advantage in the civil suit.[107]

OPSO Defendants made a choice as to the manner in which they would litigate this case. Now they pay for the consequences of that choice.

**G.     This Court Should Apply Upwards Multiplier Pursuant to *Johnson*.**

After determining the lodestar amount, a court next considers the factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d. 714 (5th Cir. 1974), and may adjust the lodestar upward or downward depending on the weight it allots to those factors. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the

---

[102] *Riverside v. Rivera*, 477 US 561, fn. 11 (1986).
[103] *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001).
[104] Rec. Doc. 14 (OPSO First Motion to Dismiss); Rec. Doc. 25 (OPSO Second Motion to Dismiss); Rec. Doc. 50 (OPSO Third Motion to Dismiss); Rec. Doc. 136 (OPSO Motion for Summary Judgment).
[105] *See* Section II, *supra*.
[106] Ex. P at ¶ 14.
[107] Ex. C and Ex. D.

skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Supreme Court and Fifth Circuit have not set any "precise rule or formula" for determining an attorney fee award based on the plaintiff's degree of success, providing that the district court "necessarily has discretion in making this equitable judgment." Hensley, 461 U.S. at 436–37. However, the factors all weigh in favor of an upwards adjustment:

(1) Time and Labor Required: This case required nearly eight hundred hours over five and a half years.[108] At the outset of this case, undersigned counsel was a solo practitioner with one contract attorney for assistance.[109] That is a very significant investment of time and resources for such a small firm. At times, this litigation strained the resources of the firm.[110]

(2) Novelty and Difficulty: In *Johnson,* the Fifth Circuit noted that cases "of first impression generally require more time and effort on the attorney's part," and plaintiff's counsel "should not be penalized for undertaking a case which may 'make new law.' Instead, he should be appropriately compensated for accepting the challenge."[111] Here, this case presented questions of first impression regarding OPSO's policy of overdetention and the interplay of responsibility between Louisiana's DOC and sheriffs in the days after sentencing.

---

[108] Ex. R.
[109] Ex. P at ¶ 18.

[110] *Id.*

[111] *Johnson*, *supra*, 488 F.2d. at 718.

Furthermore, Mary Howell's affidavit notes that civil rights cases like this one are often "difficult, protracted, and risky."[112] That is in part because civil rights defendants in Louisiana – like here – are typically unwilling to discuss settlement for years.[113]

(3) <u>Skill Required</u>: Civil rights cases involve difficult concepts like qualified immunity.[114] As a result, they require skill, diligence, and perseverance. This case in particular involved dealing with unethical threats by opposing counsel, repeated dispositive motions, an interlocutory appeal, and a large set of documents. Plaintiff's counsel took on the combined opposition of the Orleans Parish Sheriff and Louisiana Attorney General's Offices, and prevailed for their client.

(4) <u>Preclusion of Other Employment Due to Acceptance of the Case</u>: In *Johnson,* the Fifth Circuit recognized that "once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes."[115] Plaintiff's counsel is a small firm. The investment of nearly eight hundred hours of attorney time necessarily meant turning down other work that would have been lower risk and would have resulted in a more immediate return on investment.

(5) <u>Customary Fee</u>: In *Johnson*, the Fifth Circuit advised courts to look to the "customary fee for similar work in the community."[116] Here, Plaintiff has provided affidavits of seven Eastern District attorneys who opine that the hourly rates sought are "within the range of what would be considered to be reasonable market rates for attorneys practicing in New Orleans, with

---

[112] Ex. G at ¶ 7.
[113] Ex. P at ¶ 19.
[114] *See Stephenson v. Doe*, 332 F.3d 68, 80 n. 15 (2d Cir. 2003) ("Qualified immunity is a difficult concept; it looks to the reasonableness of an officer's belief that he acted lawfully after the officer is found to have been unreasonable in his conduct.")
[115] *Johnson*, *supra*, 488 F.2d. at 718.
[116] *Id.*

comparable experience, skill and ability."[117] A Jones Walker, LLP partner noted that the rates proposed by Plaintiff "are less than what I am used to seeing in private practice in New Orleans."[118]

(6) <u>Whether the Fee is Fixed or Contingent</u>: The fee here was entirely contingent, meaning that Plaintiff's counsel assumed the risk of loss – both of lost opportunity, but also salaries of attorneys, and substantial out-of-pocket costs.

(7) <u>Time Limitations Imposed by Client or Circumstances</u>: The circumstances of this case outside of Plaintiff's control caused a prolonged period of litigation. For example, the case was stayed while one defense counsel conducted military service.[119] The case was further stayed pending interlocutory appeal. As a result, there was more than a half decade between the outset of this case and resolution. That represents half of the entirety of undersigned counsel's eleven years as a lawyer.

Only part of the delay was attributable to OPSO's choices. But OPSO certainly reaps the benefit of the length of this case. Assuming 5% interest and accounting inflation, OPSO has saved approximately $561 for every $1,000 of attorneys fees as a result of the five-year length of litigation. (And OPSO will continue to accrue savings, as they are unlikely to actually pay the fee bill until 2023.)

(8) <u>Amount Involved and the Results Obtained</u>: In *Johnson*, the Fifth Circuit directed courts to consider both the results obtained for the plaintiff and also the impact on the law and other persons.[120] Here, the amount of money Plaintiff's counsel obtained for Plaintiff is a life-changing sum, given Plaintiff's indigent status.[121] At the outset of this case, Plaintiff had no money to his name.[122] The settlement obtained thus dramatically changes Plaintiff's finances and

---

[117] Ex. F (Quigley) at ¶ 10; Ex. G (Howell) at 9; Ex. H (Denson) at ¶ 15; Ex. I (Adcock) at ¶ 10; Ex. J (Murphy) at ¶ 19; Ex. K (Molina) at ¶ 8; Ex. L (Anada) at ¶ 9.
[118] Ex. L at ¶ 10.
[119] Rec. Doc. 85 (seeking "a five-month stay of proceedings" for military service).
[120] *Johnson*, *supra*, 488 F.2d. at 718.
[121] Rec. Doc. 13 (Order Granting Motion to Proceed In Forma Pauperis).
[122] Rec Doc. 3 at 2 (reflecting zero dollars as the "money that I have in cash or in a checking or savings account").

access to needed services. And as described in Section III, *supra*, the lawsuit also prompted OPSO to change its "drive the paperwork once per week policy." That change resulted in the increased liberty of a range of persons eligible for immediate release, and also saved considerable taxpayer dollars.

(9) <u>Experience, Reputation, and Ability of Attorneys</u>: In *Johnson*, the court noted that an "attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience" and that if "a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar."[123] Here, Plaintiff's counsel are attorneys that specialize in civil rights cases.[124] And their ability corresponds. In his affidavit, Bill Quigley testified that "Mr. Most is a highly accomplished, highly respected attorney."[125] Mary Howell testified that "in my discussions with [Mr. Most] regarding civil rights cases, I have found him to be very knowledgeable, hard-working, creative and dedicated."[126]

(10) "<u>Undesirability</u>" of the Case: In Johnson, the court noted that "[c]ivil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant."[127]

Mary Howell's affidavit notes that "many established law firms still, to this day, tend to shy away from these cases."[128] The private bar for civil rights lawyers in Louisiana is limited, perhaps in large part because private lawyers do not see civil rights cases as likely to be profitable. As the Supreme Court noted, "the predominant reason that a contingent-fee claimant has difficulty finding counsel in any legal market where the winner's attorney's fees will be paid by the loser is that attorneys view his case as too risky (*i.e.,* too unlikely to succeed)."[129]

---

[123] *Johnson, supra*, 488 F.2d. at 719.
[124] Ex. P at ¶ 4 ("Our firm specializes in civil rights cases, and has successfully brought a number of civil rights cases in Louisiana. More than half of our work is litigating civil rights cases under Section 1983.")
[125] Ex. F at ¶ 10.
[126] Ex. G at ¶ 6.
[127] *Johnson, supra*, 488 F.2d. at 719.
[128] Ex. G at ¶ 7.
[129] *City of Burlington v. Dague*, 505 U.S. 557, 564 (1992).

(11) <u>Nature and Length of the Professional Relationship with the Client</u>: In this case, counsel and client worked together patiently towards an outcome that took more than a half-decade to obtain. The client's goals included compensation and also ensuring that what happened to him would be less likely to happen to others. His counsel worked towards and achieved those goals, through substantial compensation to the client and a change in OPSO policy. The information uncovered in this case also prompted the U.S. Department of Justice to open a pattern-and-practice investigation into overdetention in Louisiana.[130] This enduring professional relationship required patience and mutual trust, and yielded significant benefits.

(12) <u>Awards in Similar Cases</u>. The hourly rates awarded for attorneys fees in the Eastern District of Louisiana are detailed in Section IV(c), above.

Thus, all the *Johnson* factors weigh in favor of an upwards adjustment. As Attorney Mary Howell summed it up in her affidavit:

> These cases are often difficult, protracted, and risky. I believe that it is essential, in order to protect our most fundamental constitutional and civil rights, that we have local attorneys who are willing, able and competent to undertake these cases.
>
> In order for a plaintiffs' civil rights private law firm to succeed, it is essential that attorneys who are willing to take these cases are compensated at reasonable rates which are comparable, (and, in appropriate situations, enhanced), to those of attorneys in other practice areas which are traditionally more remunerative and less fraught.[131]

Because all of the *Johnson* factors weigh in favor of an upwards adjustment, Plaintiff proposes a 1.5 times multiplier be applied to the attorneys fees.

### H.    The Court Should Award Plaintiff his Out-of-Pocket Costs.

Federal Rule of Civil Procedure 54(d)(1) provides that the prevailing party may be awarded costs other than attorneys fees. Fifth Circuit and district court jurisprudence has consistently held that a party does not need to prevail on every issue in order to be awarded

---

[130] *See* <u>Justice Department Announces Civil Investigation into Louisiana's Prisoner Release Practices</u> (Dec. 3, 2020), available online at https://www.justice.gov/opa/pr/justice-department-announces-civil-investigation-louisianas-prisoner-release-practices

[131] Ex. G at ¶ 7.

costs.[132] Pursuant to 42 U.S.C. § 1988(b), prevailing plaintiffs may recover an attorney's "out-of-pocket expenses which would ordinarily be charged to fee paying clients," along with costs normally taxed pursuant to 28 U.S.C. § 1920.[133]

Plaintiff's out-of-pocket costs are summarized in the attached Exhibit P, and broken down by costs unique to *Grant v. Gusman* and costs that were joint to the individual overdetention cases.[134] The joint costs are divided by six in the summation below.

## I.      Summation of Fees and Costs Calculation

| Attorney | Number of Hours | Hourly Rate | Fees |
|---|---|---|---|
| William Most | 411.5 | $350 | $144,025.00 |
| William Most (Joint Overdetention) | 109.5 | $350 (divided by 6) | $6,387.50 |
| David Lanser | 71.1 | $275 | $19,552.50 |
| Caroline Gabriel | 28.2 | $250 | $7,050.00 |
| Meghsha Barner | 19.5 | $235 | $4,582.50 |
| Amanda Hass | 15.6 | $225 | $3,510.00 |
| Allison Sickle | 127.85 | $125 | $15,981.25 |
| *Grant*-Specific Costs | | | $4,577.89 |
| Overdetention Costs (divided by 6) | | | $274.36 |
| **Subtotal:** | | | $201,088.75 |
| Reduction for Billing Judgment (-$12,653.25) | | | $188,435.50 |
| Reduction for Success of Claims (-25%): | | | $141,326.63 |
| Proposed Johnson Multiplier (1.5x): | | | $211,989.94 |
| **Total:** | | | **$211,989.94** |

---

[132] *MCI Commc'ns Servs., Inc. v. Hagan*, CV 07-0415, 2010 WL 11549409, at *2 (E.D. La. Feb. 12, 2010) (collecting cases); *Studiengesellschaft Kohle mbH v. Eastman Kodak Co*., 713 F.2d 128, 131 (5th Cir. 1983) ("[a] party need not prevail on all issues to justify an award of costs").

[133] *Lalla v. City of New Orleans*, 161 F. Supp.2d 686, 712–13 (E.D. La. 2001) (citing LeBlanc–Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); *Katz v. State Farm Fire & Cas. Co*., CIV.A. 06-4155, 2009 WL 3712588, at *1 (E.D. La. Nov. 4, 2009).

[134] Ex. P at ¶ 20.

## V.     Conclusion

For the reasons detailed above, Plaintiff asks that this Court direct OPSO Defendants to pay

**$211,989.94** in attorneys fees and costs.

Respectfully submitted,

**Most & Associates**

*/s/ William Most*_____
WILLIAM MOST (La. Bar No. 36914)
CAROLINE GABRIEL (La. Bar. No. 38224)
DAVID LANSER (La. Bar No. 37764)
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com

*Attorneys for Plaintiff Rodney Grant*