UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODNEY GRANT

*     CIVIL ACTION
*
*
VERSUS                   *     NUMBER: 17-02797
*
*     SECTION "G"
*     JUDGE JOLIVETTE BROWN
MARLIN GUSMAN, ET AL.        *
*     MAGISTRATE "3"
*     JUDGE DOUGLAS
*

* * * * * * * * * * * * * * * * * * * * *

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

**MAY IT PLEASE THE COURT:**

Defendants, former Sheriff Marlin N. Gusman, Corey Amacker, and Sidney Holt, by and through undersigned counsel, respectfully submit this response in opposition to Plaintiff's Motion for Attorney's Fees (Rec. Doc. 261). For the reasons that follow, Defendants object to the excessive and patently unreasonable fees quoted by Plaintiff's counsel, and respectfully request that this Honorable Court reduce those excessive and unreasonable attorney's fees.

## I.     INTRODUCTION

This opposition seeks to address the exorbitant attorney's fees requested by Plaintiff in this matter. Defendants will not re-present to the Court all of the facts in this case; rather, Defendants will note that once Orleans Parish Sheriff Susan Hutson took office in May of 2022, Plaintiff and Defendants herein reached a settlement in this matter soon thereafter in an effort to avoid the

expenses associated with ongoing and costly litigation.[1] Defendant's offered to settle this case for $35,000 if Plaintiff's counsel would agree to attorney's fees as part of the settlement. Plaintiff's counsel instead agreed to settle his client's case for $25,000 on the condition that he be allowed to litigate his attorney's fees to this Honorable Court.

Prior to the filing of the Motion for Attorney fees, both parties entered into settlement negotiations relative to the Plaintiff's requested attorney fees without reaching an amicable resolution.[2] Plaintiff's attorney thereafter, in a case that settled with a $25,000 payment for Plaintiff ($10,000 less than what plaintiff would have received if Plaintiff's counsel agreed to reasonable attorney's fees as part of the settlement), filed a formal Motion for Attorney Fees requesting fees totaling **$211,989.94**, or almost **9 times** what his client received in the instant case.

Defendants agree that the Plaintiff is entitled to reasonable attorney fees, but for the reasons set forth below suggest to this Court that the hours billed, the rates sought, and the total figure sought, are all unreasonably excessive. In fact, the amount requested by Plaintiff's attorney is simply outrageous and so obviously exceeds the bounds of recoverable attorney fees that this Honorable Court must significantly reduce the request for the reasons detailed herein.

## II.     LAW AND ARGUMENT

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees.[3] The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[4] The lodestar is

---

[1] It should be noted for the purposes of Plaintiff's Motion for Attorney's Fees, Defendants do not contest that Plaintiff should be deemed "the prevailing party" for purposes of requesting attorney's fees and cost pursuant to 42 U.S.C. 1988.
[2] Plaintiff's initial attorney fee settlement proposal to undersigned counsel was $101,796.78- which was ultimately rejected. Undersigned counsel counter-offered with $35,000 in settlement of Plaintiff's request for Attorney's fees.
[3] *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct 1933, 76 L.Ed.2d 40 (1983).
[4] *Id.*

2

presumed to yield a reasonable fee.[5] After determining the lodestar, the Court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*[6] The Court can make an upward or downward adjustment to the lodestar figure if the *Johnson* factors warrant such modifications.[7]

After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections.[8] Charges for excessive, duplicative, or inadequately documented work must be excluded.[9]

Here, counsel's excessive approach is reflected in Plaintiff's inflated billing records that evidence a lack of billing judgment, including duplicative and unnecessary work, block billing, vague entries, charges for administrative tasks, charges for work done on unsuccessful claims, an objectively unreasonable attorney fee schedule, and charges at a premium rate of $350 an hour for simple, entry-level attorney tasks, such as document review and basic drafting of pleadings and legal research.

### A. The Hours Expended

### a. The Hours Claimed by Plaintiff's Counsel Are Not Reasonable.

Plaintiff's Counsel claims he, along with 4 associate attorneys and one law student spent a total of 783.25 hours litigating this matter (Rec. Doc 261). The time entries submitted by Plaintiff's counsel reveal that the hours expended by their counsel are grossly excessive under the governing legal standard. As discussed *supra*, the lodestar method consists of the reasonable number of hours

---

[5] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).
[6] 488 F.2d 714, 717-19 (5th Cir. 1974)
[7] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).
[8] *Rode v. Dellarciprete*, 892 F2d. 1177, 1183 (3d Cir. 1990).
[9] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).

expended on litigation multiplied by a reasonable hourly rate. "[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment."[10] "Billing judgment requires the documentation of the hours charged and the hours written off as unproductive, excessive, or redundant."[11] When a party fails to exercise billing judgment, "[t]he remedy… is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended."[12]

**b. Plaintiff's Counsel Failed to Prove He Exercised Billing Judgment.**

Plaintiff's counsel has failed to exercise billing judgment in several ways. First, Plaintiff's counsel failed to adequately describe his billing with sufficient detail to determine whether the entries are reasonable (i.e. submission of vague entries). Second, the fee petition contains block billing, which is inappropriate when evaluating attorney fee awards. Third, Plaintiff's counsel and associates claim amounts for administrative tasks that are inappropriate for recovery. Fourth, Plaintiff's counsel performed responsibilities that are more appropriate for an associate level attorney, such as document review, drafting of simple pleadings and basic legal research in which counsel seeks full recovery for such tasks at his premium rate. All of the above constitute a failure to exercise billing judgment and requires a remedy of a significant reduction in the requested attorney's fees. As such, Defendants site the relevant objections as discussed in more detail below.

**i.    Counsel's timesheets contain vague time entries.**

The Court has broad discretion to eliminate billing entries that are unduly vague or if the

---

[10] *Walker v. City of Mesquite*, 313 F.3d 246 (5th Cir. 2002)

[11] *Id.*

[12] *Hernandez v. E.M.S.P., L.L.C.*, No. 19-30216, 2019 WL 4447211 (5th Cir. June 17, 2019)

documentation is "too vague to permit meaningful review.[13]  It is well established that supporting documentation for attorney's fees must be of sufficient detail and probative value to enable the court to "determine with a high degree of certainty that the billing is reasonable."[14] "Bare descriptions, without any reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable."[15] Litigants who submit vague fee applications "take their chances" that those entries will be disallowed. [16]

A court should disallow vague entries only if they were so vague or unilluminating that the court could not meaningfully review whether the particular hours were reasonably expended.[17] Courts have found that descriptions such as "legal issues," "conference re: all aspects," and "call re: status" are vague descriptions.[18] Other vague court sanctioned entries include "telephone conference," "research", "review of cases' and "researching cases."[19] Likewise vague emails have been found to be problematic as well. In *Williams v. Taylor et. al,* the jurisprudence is clearly established that email entries that do not reference the recipient or sender of the email are vague.[20] "To merit compensation for time spent on an email, a professional must "identify the participants, describe the substance of the communication, explain its outcome and justify its necessity."[21]

---

[13] *Walker v. City of Mesquite, Tx.*, 313 F.3d 246, 252 (5th Cir. 2002). See also, *La. Power and Light Co*., 50 F.3d at 326. (describing courts that reduced or eliminated hours for entries that were "vague as to precisely what was done," for records that were..lacking in explanatory detail, and for entries such a "legal research" and trial preperation").
[14] *Funez et. al v. EBM, et al*, 2018 WL 5004806.
[15] *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754 at *10.
[16] *La. Power and Light Co*., 50 F.3d at 327.
[17] *League of United Latin Am. Citizens No. 4552 v. Roscoe Indep Sch District*, 119 F3d 1228, 1233 (5th Cir. 1997).
[18] *Funez et. al v. EBM, et al*, 2018 WL 5004806.
[19] *In Re: ANLOC, LLC et. al v. ACSI Holdings, LLC, et al*., 2021 WL 5441076
[20] *Williams v. Taylor et al*., 2014 W 12719098, at *5
[21] *In Re: Digerati Technologies, Inc*., 537 B.R. 317 (2015) Court also finding vague entries relating to "review emails without any reference to the recipient or the sender of the emails or what issues the emails concern.

In the case at bar, upon review of the fee application, there are a number of entries that are indeed vague and such fees should be reduced accordingly. Some examples of obvious vague entries include[22]

| 7/12/2016 | William Most | Legal research and analysis regarding overdetention | 0.3 | 350 | 105 | | 105 | |
| 7/22/2016 | William Most | Correspondence with OPD staff members | 0.3 | 350 | 105 | | 105 | |
| 8/4/2016 | William Most | Phone call and email to Alfred Marshall | 0.1 | 350 | 35 | | 35 | |
| 9/21/2016 | William Most | Correspondence with Aaron Zagory re: R. Grant | 0.2 | 350 | 70 | | 70 | |
| 9/21/2016 | William Most | Meeting with Rodney Grant; discuss case | 2.4 | 350 | 840 | | 840 | |
| 10/6/2016 | William Most | Phone call to Rodney about case status | 0.1 | 350 | 35 | | 35 | |
| 10/24/2016 | William Most | Email to Craig Frosch re: email search | 0.1 | 350 | 35 | | 35 | |
| 10/24/2016 | William Most | Email to J. Vining re: packet from OPSO to DOC | 0.1 | 350 | 35 | | 35 | |
| 11/18/2016 | William Most | Meeting with A. Sickle | 1 | 350 | 350 | | 350 | |
| 11/21/2016 | William Most | Correspondence with R. Grant | 0.1 | 350 | 35 | | 35 | |
| 11/21/2016 | William Most | Legal research; Kingsley et al. | 0.2 | 350 | 70 | | 70 | |
| 12/19/2016 | William Most | Phone calls to tallulah re PRA | 0.1 | 350 | 35 | | 35 | |
| 12/19/2016 | William Most | Phone calls to tallulah re PRA | 0.3 | 350 | 105 | | 105 | |
| 12/22/2016 | William Most | Phone calls to tallulah re PRA | 0.1 | 350 | 35 | | 35 | |
| 2/23/2017 | William Most | Meeting with A. Sickle | 1 | 350 | 350 | | 350 | |
| 3/15/2017 | William Most | Phone call with Rodney Gratn | 0.1 | 350 | 35 | | 35 | |
| 3/20/2017 | William Most | Conference with MSB | 0.2 | 350 | 70 | | 70 | |
| 3/27/2017 | Allison Sickle | Phone calls to get copies of Rodney's files from DA and OPD | 0.3 | 125 | 37.5 | | 37.5 | |

The following dates include other vague entries: 4/3/2017, 4/28/2017, 5/8/2017, 5/8/2017, 6/8/2017, 6/12/2017, 6/12/2017, 6/12/2017, 6/5/2017, 6/15/2017, 6/25/2017, 7/19/2017, 9/8/2017, 9/8/2017, 9/12/2017, 10/2/2017, 10/19/2017, 10/25/2017, 11/20/17, 12/7/2017. Here, the above entries are not sufficiently clear to know the purpose of the work performed. Clearly, this Honorable Court can't judge the reasonableness of the time expended with descriptions as scant as "correspondence," "meeting," and "phone call." These entries preclude the Defense and this

---

[22] See exhibit 1 for a complete list of vague objections of Plaintiff's fee bill.

Honorable court from determining whether the work pertained to a claim on which Plaintiff prevailed in settlement, was necessary for the eventual settlement of the case, or even relevant and necessary for litigation and not simply "fluff" billing. Such vague entries should be reduced and disallowed.

Vague email communications entail the following entries: 10/24/16, 9/12/2017, 1/2/2018, 9/11/2018, 9/23/2018, 10/31/19, 5/20/20, 5/21/20. These email entries fail to provide the required information to establish that the services rendered were reasonable or necessary to merit compensation.  Therefore, all vague entries must be reduced.

**ii.      The fee application submitted by Plaintiff's Counsel contains block billing.**

The fee application submitted by counsel contains numerous entries that are characterized as "block billing."  Block-billed time entries describe multiple activities in one time entry or record time by the day instead of the specific tasks.[23] Block-billed entries may not offer sufficient evidence of the reasonableness and necessity of the time expended.[24] The method most often used to compensate for block billing is a flat reduction of a specific percentage from the award.[25]  The reduction for a fee request that is supported by block billed time entries should be commensurate with the egregiousness of the inadequacy in documentation.[26]

In the *sub judice*, a large number of entries by Attorney Most as well as other associate attorneys listed include multiple tasks within the same entry, rather than itemized entries explaining the amount of time spent on each task. The following is a small sample of entries in which are block-billed[27]:

---

[23] *C and D Prod. Serv. V Dir. Office of Workers Comp*, 376 F. App'x 392, 394 (5th Cir. 2010).
[24] *Gurule v. Land Guardian, Inc*, 2017 WL 6761821.
[25] *Canon U.S.A., Inc. v. S.A.M., Inc*., 2009 WL 35334.
[26] *Symetra v. Rapid Settlement, Ltd*, 2015 WL 6739022.
[27] See Exh. 2 for a comprehensive list of block billed entries.

| Date | Team Member | Description | HR | Rate | Sum | Discount | Total |
|---|---|---|---|---|---|---|---|
| 1/31/2020 | William Most | Review discovery and pleadings; prepare exhibit list and witness list; prepare pdfs of exhibits in order to match exhibit list | 2.5 | 350 | 875 | | 875 |
| 2/2/2020 | William Most | Legal research and review depostion transcripts; review documents; prepare DOC MSJ and undisputed facts | 3.1 | 350 | 1085 | | 1085 |
| 2/2/2020 | William Most | Meeting with brief-reviewer; incorporate feedback; rearrange "standards" sections to be part of analysis; prepare timeline graphics | 3.2 | 350 | 1120 | | 1120 |
| 2/4/2020 | William Most | Prepare motion for summary judgment; review deposition transcripts; corr. with team; legal research | 3.2 | 350 | 1120 | | 1120 |
| 2/5/2020 | William Most | Legal research and review depostion transcripts; review documents; prepare OPSO MSJand undisputed factO | 0.5 | 350 | 175 | | 175 |
| 2/5/2020 | David Lanser | Reviewing, editing DOC Motion for Summary Judgment, including reviewing some referenced documents and authorities | 2.3 | 275 | 632.5 | 200 | 432.5 |
| 2/5/2020 | David Lanser | Reviewing, editing OPSO Motion for Summary Judgment and Amanda Hass edits, including reviewing some referenced documents and authorities | 1.4 | 275 | 385 | 50 | 335 |
| 2/6/2020 | William Most | Legal research and review deposition transcripts; review documents; prepare OPSO MSJand undisputed factO; prepare diagrams | 0.9 | 350 | 315 | | 315 |
| 2/7/2020 | David Lanser | Finalizing discovery responses; compiling documents for production; sending to William Most for review | 0.7 | 275 | 192.5 | | 192.5 |
| 2/9/2020 | William Most | Prepare and file motion, MIS, notice of submission, dec, and exhibits in support of motion for spoliation sanctions | 2.8 | 350 | 980 | | 980 |
| | | Prepare and file motion, MIS, notice of submission, dec, and exhibits in support of motion for summary judgment | | | | | |

| 2/10/2020 | William Most | | 0.4 | 350 | 140 | | 140 |
|---|---|---|---|---|---|---|---|
| 2/10/2020 | David Lanser | Editing Motion for Summary Judgment against OPSO, including reviewing all cited documents and case law | 5.4 | 275 | 1485 | 500 | 985 |
| 2/16/2020 | William Most | Prepare opposition to Motion for Summary Judgment; prepare response to undisputed facts; legal research re: custody | 3.1 | 350 | 1085 | | 1085 |

As illustrated in the above sampling, there are several tasks grouped under one-time entry which is impermissible and is further evidence of a lack of billing judgment. The billing practice here, similarly to Attorney Most's vague billing practices, is insufficient, making it difficult for the Defense and for this Honorable Court to determine if the hours billed actually pertained to a claim on which Plaintiff prevailed in settlement, were necessary for the eventual settlement of the case, or even relevant and necessary for litigation and not simply "fluff" billing. Accordingly, this Honorable Court should find it appropriate to reduce the fee bill for block-billing.

### iii.    The fee application contains charges for Administrative tasks.

Several entries of Plaintiff's counsel (and associates) were for administrative tasks. "Normally, clerical or secretarial costs are part of an attorney's office overhead and are reflected in the billing rate.[28] Furthermore, "It is well established that 'when an attorney performs a task that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate.'"[29] "Clerical work includes copying, typing, labeling, faxing, mailing, filing and/or delivering pleadings/documents."[30]

---

[28] *Hagan v. MRS Assocs., Inc.*, 2001 WL 531119, at *9 (E.D. La May 15, 2001)
[29] *Kuperman v. IFC Int'l*, No. CV 08-656, 2009 WL 10737138, at *9 (E.D. La. Oct 2009).
[30] *Id*.

In reviewing the submitted entries by Plaintiff's attorneys, there are several entries that could have been performed by administrative staff.  For example,[31]:

| 2/22/2017 | William Most | Phone call with R. Grant; prepare documents for transmittal | 0.4 | 350 | 140 | | 140 | |
|---|---|---|---|---|---|---|---|---|
| 4/2/2017 | William Most | Prepare complaint; prepare civil cover sheet; prepare summons; file case; correspondence with co-counsel | 1.8 | 350 | 630 | | 630 | |
| 6/8/2017 | William Most | Prepare service package | 0.3 | 350 | 105 | | 105 | |
| 6/9/2017 | William Most | Serve T. Hooper & J. LeBlanc on R. Weldon | 1.2 | 350 | 420 | | 420 | |
| 6/14/2017 | William Most | Prepare and file First Amended Complaint; prepare waiver forms | 0.5 | 350 | 175 | | 175 | |
| 12/26/2019 | William Most | Prepare and serve subpoena and notice of deposition for Amacker & Holt; prepare email to that effect | 0.2 | 350 | 70 | | 70 | |
| 5/15/2020 | David Lanser | Emailed copy of joint status report to opposing counsel | 0.1 | 275 | 27.5 | | 27.5 | |
| 4/1/21 | Caroline Gabriel | Prepared mail to send to detention center. | 0.2 | 250 | 50 | | 50 | |

Indeed, the tasks mentioned above do not require any specific legal skill and are deemed more administrative. Tasks contained in the fee petition that require no special legal skill and are clearly clerical in nature include: preparing pleadings such as deposition notices, preparing mailings and service package/summons and requesting.[32] These entries should be disallowed, thereby reducing Plaintiff's fee petition.

### iv.    Associate Level Work

Defendants last objection as it relates to billing judgment is that Mr. Most's hourly rate should be reduced as he performed tasks that could have been performed by less experienced attorneys. "Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner."[33] Likewise, the court in *In re*

---

[31] See Exh. 3 for a comprehensive list of administrative tasks that should be disallowed.
[32] *Id.*
[33] *Union Cent. Life Ins. Co. v. Berger,* NO 10 CIV. 8408 PGG, WL 6571079, at *1 (S.D.N.Y. Dec. 13, 2013)(collecting cases where courts  reduced a senior attorney's rate otherwise found to be reasonable, in instances where that senior performed associate and junior level tasks).

*Educ. Testing Serv. Litig*[34] explained that "not all of the work involved should have been performed by the highest level attorneys" and that "given the stage of the proceeding, most of the legal work before settlement involved tasks such as researching, drafting, and document review, which reasonably should have been performed by associate-level attorneys".

In the present case, the fee petition is replete with lead counsel (Most) charging excessive time at premium amounts for associate level tasks such as basic legal research, document review and drafting.[35] An illustrative example is listed below[36]:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/20/2017 | William Most | Legal research and analysis; prepare opposition to OPSO MTD | 5.1 | 350 | 1785 | | 1785 |
| 7/21/2017 | William Most | Legal research and analysis; prepare opposition to OPSO MTD | 4.3 | 350 | 1505 | | 1505 |
| 7/22/2017 | William Most | Legal research and analysis; prepare opposition to OPSO MTD | 9.1 | 350 | 3185 | | 3185 |
| 7/23/2017 | William Most | Legal research and analysis; prepare opposition to OPSO MTD | 5.6 | 350 | 1960 | | 1960 |
| 7/26/2017 | William Most | Legal research and analysis; prepare opposition to DOC MTD | 4.5 | 350 | 1575 | | 1575 |
| 7/27/2017 | William Most | Legal research and analysis; prepare opposition to DOC MTD | 6.1 | 350 | 2135 | | 2135 |
| 7/28/2017 | William Most | Legal research and analysis; prepare opposition to DOC MTD; file opposition | 0.5 | 350 | 175 | | 175 |
| 10/8/2018 | William Most | Prepare discovery requests; document review | 3.4 | 350 | 1190 | | 1190 |
| 10/9/2018 | William Most | Prepare discovery requests; document review; send requests | 0.4 | 350 | 140 | | 140 |
| 10/9/2018 | William Most | Prepare discovery requests; document review; send requests | 3.1 | 350 | 1085 | | 1085 |
| 11/5/2019 | William Most | Prepare and file reply; review LAED local rules and FRCP 37 for standard | 0.2 | 350 | 70 | | 70 |
| 2/19/2020 | William Most | Prepare and file motion to continue trial date | 0.3 | 350 | 105 | | 105 |

A review of the fee petition evidences some of the work performed was unnecessary or at best should have been passed on to one of the associates on the case wherein an associate rate would have been utilized instead of Most's premium rate charged in this case. Indeed, it would be unreasonable for an opposing party to pay premium hourly rates in a fee petition for rates that

---

[34] 447 F. Supp 2d 612(E.D. La. 2006)

[35] Legal research is a task normally assigned to a junior lawyer. *League of United Latin Am. Citizens No. 4552 v. Roscoe Indep Sch District*, 119 F3d 1228, 1233, n.3 (5th Cir. 1997).

[36] See Exh. 4 for a comprehensive listing of Associate Level work

could have ben performed by junior level associates with a reduced hourly rate. Hence, the fee bill should be reduced to reflect a reasonable hourly rate applicable to associate level tasks.

**B. Reasonable Hourly Rates**

**a. Applicable Law**

The next step using the lodestar method is to compute the reasonable hourly rate according to the prevailing market rates in the community.  Plaintiff's Counsel seeks hourly rates of $350 for himself as lead counsel, $275 for associate attorney David Lanser, $250 for associate attorney Caroline Gabriel, $235 for Meghsha Barner, $225 for associate attorney Amanda Hass and $125 for law clerk Allison Sickle.[37] These hourly rates must be reduced in any calculation of the lodestar as they are patently excessive under federal law.

Reasonable hourly rates are determined on the basis of prevailing rates for attorneys of similar skill and experience in the relevant legal market.[38]  The reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing in the relevant locality, rather that the fee-seeker's attorney.[39] However, "the applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates…mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate"…" Satisfactory evidence of the reasonableness of the rate necessarily includes information of rates actually billed and paid in similar lawsuits."[40] Under this jurisprudence the hourly rates sought by Plaintiff's counsel are unreasonable and the affidavits submitted in support of reasonable fees are deficient.

---

[37] See Rec. 261.
[38] *McClain v. Lufkin Indus. Inc.,* 649 F.3d 374, 381 (Fifth Cir. 2011). The relevant legal market is where the district sits. *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002).
[39] *Id* at 368
[40] *Funez,* 2018 WL 5004806, at *3.

### b. Counsels Billing Rates Are Not Reasonable.

In determining the "reasonable hourly rates for attorneys of similar skill and experience in the relevant legal market" the State of Louisiana, in 2001, established an "Attorney Fee Review Board" to "review and set the hourly rates for legal fees for which the state may be liable."[41] Pursuant to that authority, the Louisiana Attorney General promulgates a "General Maximum Hourly Fee Schedule.[42] Specifically, the schedule provides that the maximum fee for practicing attorneys having ten years of more experience is $225/h. Based on Plaintiff's fee petition, he indicates he has had 11 years of experience. Accordingly, the Attorney Fee Review Board has determined that a reasonable hourly rate in Louisiana for a lawyer with the skills and experience of Plaintiff's lead counsel, William Most, is $225 per hour, rather than the $350 per hour requested.

Relative to Associate Attorneys Gabriel, Lanser and Barner; their requested rates should be reduced accordingly to align with the proscribed maximum fee schedule referenced above. Each of the above referenced attorneys possess three to five years of experience.[43] As such, the appropriate reasonable rate for these associates, as per the reasonable hourly rates promulgated by the Louisiana Attorney General, should be $150 per hour rather than $250, $275 and $235 as requested by Plaintiff's counsel. Similarly, Attorney Hass' hourly rate should be reduced to $125 per hour pursuant to the AG's fee schedule as she was an attorney with two years experience during the time she worked on the instant case.[44]

Lastly, Allison Sickle served as a law student intern working on the case from Loyola University. Plaintiff's attorney Most requests $125 for her services which is unreasonable given the AG maximum fee schedule. The reasonable rate per the fee schedule for law clerk services is

---

[41] *See* La. R.S. 13:5108.4
[42] https://www.ag.state.la.us/Files/Article/5/Documents/MaximumHourlyFeeSchedule.pdf
[43] See Rec. Doc. 261-1.
[44] *Id.*

13

$40.00 per hour. As such, her requested rate should be reduced accordingly. Defendants request this Honorable Court to take the Attorney General rates into consideration in evaluating whether the requested rates should be adjusted.

### c. Plaintiff's Counsel Affidavits are Deficient.

In addition to adopting the Louisiana Attorney Fee Review Board rates promulgated by the Louisiana Attorney General, this court should also give no weight to the affidavits of Quigley, Howell, Denson, Adcock, Murphy, Molina, and Anada submitted by Plaintiff's counsel.[45]  These declarations were provided in support of evidence regarding the prevailing market rate for civil rights litigation in New Orleans.[46] And while the above practitioners are undoubtably highly skilled and experienced attorneys, their affidavits are substantially deficient as they do not assist the court in evaluating the reasonableness of the requested rate and should be discounted.

In this case, all of the declarations are general in nature and do not contain relevant and essential information to support counsel's contention that his hourly rate of $350 is reasonable in the instant case. As discussed *supra*, attorney's fees must be calculated at the prevailing market rate. The prevailing market rate is the rate charged "for *similar services* by lawyers of reasonably comparable skill, experience, and reputation."[47] Here, the declarations state overall that Plaintiff's counsel's hourly rate is reasonable for civil rights litigation work.  They fail to specify whether the rate is reasonable for this particular case: **an over-detention case**. Simply put, none of the attorneys routinely provide similar services to those of Mr. Most, i.e. over detention representation. The affidavits simply don't purport to focus their practice on this area of law.

---

[45] Rec Doc. 261-9 through 261-15.
[46] *Id*.
[47] *Blum v. Stevenson*, 465 U.S. 886, 895 at n.11(1984) (emphasis added).

Moreover, it should be noted that every affidavit provided by Most is from a plaintiff's attorney who practice in the Eastern District of Louisiana, all of whom have a vested interest in establishing precedent for higher hourly rates. Such collaborative and self-serving support should have little at all weight on this Honorable Court's conclusion of what hourly rate is reasonable in this jurisdiction.

Consequently, the declarations are clearly insufficient as a matter of law.[48] They contain conclusory legal judgments that they believe the rates to be reasonable, which is an ultimate decision of this Honorable Court. In reviewing the affidavits submitted in this case, this Honorable Court should not find persuasive the declarations relied upon by Plaintiff's counsel to prove his hourly rates requested are reasonable in this case.

**d. Plaintiff's Counsel Obtained Limited Success.**

The Fifth Circuit provides the standard for assessing attorney fees where a prevailing party meets with only limited success. Under *Hensley's* standard for partial success, a court may award reduced fees to plaintiffs that are prevailing parties but have lost on some claims. The court may use its "equitable discretion" to "arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.[49] Defendants maintain that Plaintiff's counsel success was limited because he obtained only a portion of the relief he sought.

Specifically, this Honorable Court reviewed the record evidence and granted OPSO's motion to dismiss thereby dismissing Plaintiff's Section 1983 claim based on respondeat superior liability.[50] Other examples of limited success include this Honorable Court's denial of Plaintiff's

---

[48] *Funez*, at *3.
[49] *Hensley* at 436-37
[50] See Rec. Doc. 47.

Motion for leave to file 3rd Amended Complaint, denial of Plaintiff's Motion for Summary Judgment, and the court dismissing Plaintiff's injunctive and declaratory relief claims.[51] Therefore, Plaintiff's counsel did not achieve excellent results overall and realized only limited success in his litigation. And yet, in presenting his justification for an astounding $211,989.94 in legal fees, Most has billed for every minute worked on this case, irrespective of what claims, arguments, or motions, the work entailed (and, again, with now way to know due to Most's vague and block billing).   Hence, a reduced fee award is appropriate.

### III.      THE *JOHNSON* FACTORS WARRANT A DOWNWARD ADJUSTMENT OF THE LODESTAR

Once this Honorable Court determines 1) what hours are legitimately billed, 2) what an appropriate reasonable rate for Louisiana in an over-detention case is, and 3) what rate should be applied for the work being billed, this Honorable Court will then be able to determine the lodestar. After the lodestar is determined, however, the Court may adjust the lodestar upward or downward depending on the twelve factors set forth *in Johnson v. Ga. Highway Express, Inc.*[52] The 12 Johnson factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[53]

---

[51] See Rec. Docs 140 and 230 respectfully.
[52] 488 F.2d 724, 717-19 (5th Cir. 1974).
[53] *Id.*

Jurisprudence has established, however, that a District Court may only adjust the lodestar up or down in accordance with relevant *Johnson* factors that were not already included in the determination of the lodestar.[54] Specifically, District Courts have been advised that each court must be careful when applying the *Johnson* factors to make sure "not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments."[55] District Courts have also been advised that typically "[f]our of the *Johnson* factors- the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation-are presumably fully reflected in the lodestar amount."[56] In light of this jurisprudence, Plaintiff Counsel's fee petition seeking an upward adjustment should be rejected because the factors upon which he basis his claim will already be included in the determination of the lodestar. Nor do any of the other *Johnson* factors justify any upward adjustment.

Specifically, Plaintiff's attorney argues that evaluation of the factors set forth in *Johnson* warrant a fee multiplier of 1.5 times applied to his requested attorney's fees.[57] His argument is based *Johnson* factors such as the complexity of this case and experience of the attorneys which have already been considered in the lodestar.[58] Because these factors have been subsumed in defendant's lodestar analysis, the court should not double count these factors in evaluating whether an upward adjustment is warranted.

---

[54] *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).

[55] *Id.*

[56] *Id.*

[57] See Rec. Doc 261-1 pg.23

[58] *Blum at* 898 (noting that novelty and complexity of the issues, special skill and experience of counsel, and quality of representation are generally subsumed within the lodestar calculation). See also *Shipes* at 321-22 (5th Cir. 1993)(noting that the skill required, special time limits imposed, and preclusion of employment are generally included within the lodestar.)

It should be noted with respect to *Johnson* factor number six-whether the fee is fixed or contingent- the Supreme Court has barred any use of a contingency fee arrangement as the basis for an adjustment.[59] Thus, the only Johnson factors <u>not</u> subsumed in the lodestar nor prohibited from consideration are: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases.

In addressing these factors it should then be noted that the customary fees have been addressed *supra* in determining reasonable hourly rates.  Moreover, there is no direct evidence or indication that the fees requested by Plaintiff's counsel reflects the professional relationship between plaintiff and his counsel.

Furthermore, there was nothing particularly undesirable about this case as many civil rights litigation cases have problematic and unpleasant aspects of the case. Awards in similar cases factor has already been discussed and consumed in the lodestar analysis. Accordingly, Defendants submit that the *Johnson* factors, to the extent such factors were not subsumed in the lodestar calculation, do not warrant an upward adjustment of the lodestar amount as discussed above. There are no exceptional circumstances permitting this Honorable Court to adjust the amount.

## IV.   <u>PLAINTIFF'S COUNSEL'S OUT OF POCKET COSTS SHOULD BE REDUCED</u>

A prevailing party is only entitled to reasonable and necessary expenses "that are normally itemized and billed in addition to the hourly rate" if these expenses are "reasonable in amount" and of the type ordinarily billed to a private client.[60] Fees for activities that constitute overhead are not recoverable.[61] Overhead is usually considered to be expenses "normally absorbed by the

---

[59] *Shipes* at 323 (5th Cir. 1993).
[60] *Bee v. Graves*, 910 F.2d 686, 690 (10th Cir. 1990).
[61] *Western Sur. CO. v. Bradford Elec. Co., Inc*., 483 F.Supp. 2d 1114, 1121 (N.D. Ala.2007)

practicing attorney."[62] Moreover, expenses that are merely for counsel's convenience are not compensable.[63]

Plaintiff's counsel seeks compensation for such costs as postage fees, gas mileage for travel and deposition transcript costs. Defendants contend that the requested cost were not reasonably incurred and should not be properly awarded. Certain items of the total amount of costs requested, such as postage and service should be disallowed on the grounds that such expenses are generally considered overhead, or part of the cost of operating a law firm.[64] In that same vein, several entries for costs are vague and strictly for counsel's convenience. For example, Plaintiff seeks recovery of mileage for attendance at oral argument, meeting at Tulane and Broad, travel to Tulane and Broad, attend settlement conference/oral argument as well as deposition attendance and an Uber trip to oral argument.[65] Counsel has provided no further explanation relative to these entries and has presented no competent evidence with respect to the arrival of these "costs" amounts. As such, they should be disallowed.

### V.        PLAINTIFF'S REQUEST FOR FEES ON FEES

Plaintiff's counsel further seeks "fees on fees" for time spent preparing the motion for an attorney's fee award. Specifically, counsel alleges that he should be compensated for over 10 billable hours in drafting the Motion for Attorney's fees after the parties had reached settlement.[66] Here, over 10 billable hours for the preparation of Plaintiff's Motion for Attorney's fees is excessive and exhibits a substantial failure on the part of counsel to exercise billing judgment. As such, the hours for fees on fees should be reduced.

---

[62] *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)
[63] *Monelus v. Tocodrian Inc*., 609 F. Supp.2d 1328 (S.D. Fla. 2009).
[64] *Rowe v. Lucas*, 479 F. Supp, 1258, 1263
[65] See Rec. Doc 261-19 (Ex P).
[66] Rec. Doc 261-21 at pg. 19

It is well settled that courts in this district have found that 1.5 hours is a reasonable amount of time to draft and file a motion to recover attorney's fees,[67] while the court in *Williams* opined that 8.0 hours to draft a motion to fix attorneys' fees to be excessive.[68] In the present case, the preparation of a motion for attorney's fees should have been a straightforward matter based upon similar motions counsel has filed in other cases. The task of drafting and reviewing the motion was not difficult or complex. Hence, this Honorable Court should find that counsels compensation request for 10 hours to prepare the Motion for Attorney's fees to be excessive given the well-established case law.

## **CONCLUSION**

Sheriff Hutson's administration reviewed Plaintiff's claims and subsequently settled the matter in a good faith attempt to resolve all aspects of this case, including fees. Plaintiff was offered $35,000 in damages with the condition that his attorney, Mr. Most, settle attorney's fees as part of that settlement. Plaintiff's Counsel, instead, convinced his client to accept less money in the settlement ($25,000) so that he could attempt to litigate this matter for an excessive amount in attorney's fees in bad faith.

Undersigned counsel's office is charged with being stewards of limited taxpayer funds; meaning our office must be fiscally responsible in the management of the sums that have been allocated to our office. Paying Plaintiff's counsel the outrageously excessive amount in attorney's fees requested would require us to deviate from our duty as trustees over these funds and would elevate the fee contest to the kind of second major litigation that must be avoided.

---

[67] *Picard v. St. Tammany Par. Hosp.,* No. Civ A, 08-824, 2009 WL 911003, at *4 (E.D. La Aug 19, 2020)
[68] *Williams v. Res-Care, Inc.*, No. CV 17-10200, 2020 WL 4816141, at *4 (E.D. La. Aug. 19, 2020). See also *Cacho v. Gusman,* et al, No. 11-225, 2014 WL 4854737- Judge Shushan declining to award attorney's fees for the preparing of the request for attorney's fees by the Plaintiffs.

Defendants do not dispute that Plaintiff's counsel and associates are entitled to recover reasonable attorney's fees. However, in light of the total recovery of $25,000, Attorney Most's request for **$211,989.94** in attorney's fees is not remotely reasonable, it is simply outrageous. Counsel's fee Petition is padded with unnecessary hours, and hours worked on unsuccessful claims, hidden behind vague entries, block billing entries. Those vague and inflated hours are billed at rates that far exceed reasonable local rates without any real justification for those charges. And Most's stunningly excessive fee request also includes charges for administrative tasks, charges for normal overhead, as well as premium charges for associate, paralegal, and intern level work.

The proposed settlement amount of attorney's fees-$35,000 is reasonable given the hours that actually related to claims counsel was successful on and the appropriate hourly rates of the legal staff who worked those hours. Considering the foregoing, Defendants pray that the attorney's fees requested be greatly reduced under the lodestar approach and in consideration of the limited *Johnson* factors discussed *supra.*

**RESPECTFULLY SUBMITTED,**

**ORLEANS PARISH SHERIFFF'S OFC.**

___/S/Isaka R. Williams__
**Isaka R. Williams (LSBA No. 29704)**
Staff Attorney
Williamsis@opso.us
**Graham Bosworth (LSBA No. 29538)**
Chief Legal Officer
Bosworthg@opso.us
2800 Perdido Street
New Orleans, LA 70119
(504) 822-8000 office
(504) 202-9454 facsimile
*COUNSEL FOR DEFENDANT*
**-PUBLIC ENTITY/FEE EXEMPT-**
**(See La. R.S. 13:4521 & 13:5112)**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 13th day of December 2022, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system.  I also certify that a copy of the foregoing will be sent to all non-CM/ECF participant(s) by United States Mail, properly addressed and postage pre-paid.

                                       */s/Isaka R. Williams _____*
                                       **Isaka R. Williams**