UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RODNEY GRANT**                :        CIVIL ACTION

                                :        NO. 2:17-CV-2797 "G" (3)
**VERSUS**

                                :        CHIEF JUDGE BROWN

**MARLIN GUSMAN, ET AL.**       :
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Reply In Support of Motion for Attorneys Fees and Costs**

Plaintiff prevailed in this matter after five years of hard-fought litigation. Per 42 U.S.C. § 1988, he filed a petition for fees as the prevailing party.[1] Defendants Gusman, Amacker, and Holt ("Individual Defendants") filed an opposition; Defendant Sheriff Hutson did not.[2]

In their opposition, the Individual Defendants decline to follow the well-established process for determining reasonable attorneys fees. That process is to: (1) take the number of hours reasonably spent, (2) multiply by the reasonable hourly rate for attorneys in the district determined through caselaw and affidavits of lawyers, and (3) multiply by an adjustment using the *Johnson* factors. The resulting amount is the attorneys fees owed.

In his motion, Plaintiff used that process to come to a proposed amount of fees. The Individual Defendants, by contrast, did not. They claim Plaintiff's hourly rates are "excessive and patently excessive under federal law," but cite no statute. They posit that the eight affidavits proffered by Plaintiff are insufficient, but do not offer evidence or affidavits supporting that claim. Instead, they reproduce Plaintiff's time entries (omitting, however, Plaintiff's exercise of billing discretion) as evidence of negligence or bad faith, and select an amount – $35,000 – that they assert is "reasonable" without describing what process they used for calculating that amount.

---

[1] Rec. Doc. 261.
[2] See Rec. Doc. 264 at 1 ("Defendants, former Sheriff Marlin N. Gusman, Corey Amacker, and Sidney Holt, by and through undersigned counsel, respectfully submit this response in opposition to Plaintiff's Motion for Attorney's Fees (Rec. Doc. 261)."); *id.* at 21 (opposition filed by "COUNSEL FOR DEFENDANT", singular).

But reasonable attorneys fees are not determined by a defendant picking a number without explanation after a half-decade of resisting settlement or resolution. This Court should decline to follow Defendants' approach. Plaintiff's motion should be granted.

**A.     Plaintiff's motion should be granted because the timekeeping is adequate to achieve the "rough justice" – rather than "auditing perfection" – required by law.**

Defendants ask this Court to reduce Plaintiff's fees because some entries are vague, represent block billing, etc.[3] On this topic, the Supreme Court has cautioned:

> We emphasize, as we have before, that the determination of fees should not result in a second major litigation. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. <u>But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection</u>. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.[4]

From the more than 860 time entries spanning a period of 2,331 days from 2016 to 2022,[5] Defendants have picked out a set that they feel are vague, administrative, or block-billing.[6] But the Court's job is to do "rough justice," not "auditing perfection," and so these minority of entries do not detract from the "overall sense" of the suit.

The exhibits to Defendants' Opposition are comprised of reproductions of time entries already submitted to the court by Plaintiff – but without the notations for Plaintiff's counsel's exercise of billing discretion.[7] For example, Defendants complain about a February 10, 2020 time entry by Attorney David Lanser as "block billing"[8] but they withhold the Court the fact that Plaintiff wrote off $500 from that entry through the exercise of billing discretion.[9]

---

[3] R. Doc. 264 at 4 et seq.
[4] *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (emphasis added; citations and quotation marks omitted).
[5] R. Doc. 261-21 (timesheets).
[6] Rec. Doc. 264 at 4-10.
[7] Rec. Doc. 261-21.
[8] Rec. Doc. 264-2 at 4.

[9] Rec Doc. 261-21 at 14.

Some of Defendants other complaints are that they were billed *too little* for certain time entries. For example, one of Attorney Gabriel's entries referenced by Defendants reads: "Prepared for phone call. Messaged with W. Most re phone call."[10] Defendants complain that that entry constitutes "block billing." Ms. Gabriel billed 0.1 hours for those two tasks, but had she billed them as two separate entries, they would have consumed 0.2 hours. The time as written is not only more accurate as to the amount of time spent on the tasks recorded, but also as to how much Plaintiff is entitled to in fees.

It is significant that Gusman demands billing perfection from Plaintiff's counsel, when he did not expect anything like that from his own counsel. One firm he hired as Sheriff would send him a monthly billing statement with a single paragraph accounting for $130,000 per month in legal fees.[11] Another firm would bill him in 15-minute increments, with attorneys sometimes billing Gusman more than twenty-four hours per day.[12] Plaintiff's counsel has made a good faith effort to conduct contemporaneous timekeeping, something that Gusman did not require from his own lawyers.

Defendants also complain that Mr. Most conducted some "associate level work."[13]  When Mr. Most took on this matter, he was a solo practitioner in a newly-formed practice, without any associates to pass work to. As he hired associates and they became conversant with the case, he assigned associate-level work to them. Plaintiff's counsel's firm has been and remains a small one by necessity, given the risks and long time horizons for payment in civil rights work—a perfect example of which is the instant case. This Court has found that context relevant in

---

[10] Rec. Doc. 264-2 at 6.
[11] Lee Zurik, *Sheriff's budget bloated by mystery legal fees*, Fox 8 (Jan. 21, 2015) ("When we took a close look at the invoices sent in by the firm to the sheriff, we found that twice a month, they charge the sheriff $65,000, for a total of $130,000 a month. The invoices have no detailed explanation, only a paragraph on the work the firm did for that month.")
[12] Katherine Sayre, *As legal fees hit almost $1 million, Orleans Sheriff contract raises questions*, New Orleans Times-Picayune (Dec. 20, 2016) ("The bills show O'Boyle billed for more than 24 hours in a day three times in 2015: 33.75 hours on Sept. 25, 26.5 hours on June 24, and 24.75 hours on June 26. O'Boyle billed between 20 and 23 hours for 10 days last year. . . .  On Sept. 25, a Chehardy Sherman Williams invoice includes a 25-hour charge -- $4,375 -- for O'Boyle to handle one correspondence, leading to her billing 33 hours for that single day.")
[13] Rec. Doc. 264-11.

assessing attorneys fees, noting "that representation of Plaintiffs was somewhat risky given counsel's newly formed law firm and the desirability of seeking other billable work. Counsel took on this litigation without guarantee they would be paid, and the case required considerable time and effort."[14]

Plaintiff's motion should be granted.

**B.     Plaintiff's proposed hourly rates should be adopted because Defendants decline to offer any relevant evidence or citations to caselaw.**

In his fee petition, Plaintiff offered a range of evidence for the reasonableness of his counsel's proposed hourly rates. He provided the sworn affidavit of his own counsel verifying that "the hourly rates proposed in this motion are within the range of rates actually billed by our firm to clients for attorneys of a given number of years' experience, and which clients have paid."[15] He provided the sworn affidavits of eight Eastern District litigators, each of whom testified that the hourly rates sought by Plaintiff's counsel are within the range of what would be considered to be reasonable market rates for attorneys practicing in New Orleans.[16] And he provided dozens of citations to Eastern District orders holding comparable hourly rates to be reasonable given an attorney's experience, as adjusted for inflation.[17]

In response, Individual Defendants offer no affidavits. They offer no citations to caselaw. They instead quote the rates from the Louisiana Attorney General's "General Maximum Hourly Fee Schedule."[18] Defendants do not explain why that schedule would be relevant, and this Court has <u>rejected</u> the relevance of that schedule. In *Bode v. Kenner City,* this Court held that:

---

[14] *Bode v. Kenner City*, 17-cv-5483 at *15 (E.D. La., Oct. 1, 2018) (Brown, C.J.).
[15] Rec. Doc. 261-19 at ¶ 15.
[16] Exhibits to Rec. Doc. 261: Ex. F (Quigley) at ¶ 10; Ex. G (Howell) at 9; Ex. H (Denson) at ¶ 15; Ex. I (Adcock) at ¶ 10; Ex. J (Murphy) at ¶ 19; Ex. K (Molina) at ¶ 8; Ex. L (Anada) at ¶ 9, Ex. P (Most).

Defendants complain about these affidavits in self-contradictory ways. For example, they complain both that the attorneys don't provide "similar services" – but also that they have a "vested interest" interest in seeing rates go up for these services. Rec. Doc. 264 at 14 - 15. Which is it? It cannot be true that the attorneys are irrelevant because they are *outside* this field, and also biased because they are *inside* this field.

[17] Rec. Doc. 261-1 at fns. 80 to 86.
[18] Rec. Doc. 264 at 13

> The Court finds that further reduction of the hourly rates is not warranted in light of the Louisiana Attorney General's Maximum Hourly Fee Schedule as counsel was not representing the State of Louisiana in this matter.

17-cv-5483-NJB at *14 (E.D. La., Oct. 1, 2018) (Brown, C.J.). The Attorney General's fee schedule is also inadequate on its own terms: it is not district-specific, as required by the Lodestar method of determining reasonable fees.[19]

Individual Defendants also complain that none of the attorneys who provided affidavits provide "over detention representation."[20] That is false. Attorney Casey Denson, who provided an affidavit,[21] litigates overdetention cases, including one currently pending in this Court.[22] Ms. Denson has litigated overdetention cases at the trial court level and at the Fifth Circuit.[23] The Individual Defendants are aware of this, as Defendant Gusman himself was a defendant in *Traweek v. Gusman,* 19-cv-01384 (E.D. La.). It is unclear why they falsely told this Court that none of Plaintiff's affiants provide "over detention representation."

Individual Defendants do not cite any cases suggesting that the Lodestar analysis is so cramped in focus, requiring affidavits from attorneys who litigate a particular fact pattern (overdetention) of a particular claim (14th Amendment) under a particular statute (42 U.S.C. § 1983). Almost all of the attorneys providing affidavits have litigated Section 1983 cases in this district.[24]

---

[19] *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) ("In an unbroken and consistent line of precedent, this court has interpreted rates 'prevailing in the community' to mean what it says. Thus, as early as 1974, this court required district courts to consider the customary fee for similar work 'in the community.'")
[20] Rec. Doc. 264 at 14.
[21] Rec. Doc. 261-11.
[22] *Traweek v. Gusman*, 19-cv-01384-NJB-JVM (E.D. La.); *Hicks v. Department of Public Safety & Corrections*, 19-cv-108 (M.D. La.)
[23] *Traweek v. LeBlanc*, 21-30096 (5th Cir. 2022) (unpublished); *Hicks v. LeBlanc*, 832 F. App'x 836, 840 (5th Cir. 2020) (unpublished) ("[t]he Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired.")
[24] *E.g.*, Rec. Doc. 261-9 (Quigley); 261-10 (Howell); 261-11 (Denson); 261-12 (Adcock); 261-15 (Anada).

Defendants also caution the Court not to double-count *Johnson* factors when deciding whether to make an adjustment to the Lodestar.[25] That is true – but because all the factors point to an upwards adjustment, the fact that some factors overlap with the Lodestar analysis is not dispositive.

Because Defendants have offered this Court nothing in the way of evidence or citation to relevant authority to dispute Plaintiff's proposed fee rates, Plaintiff's proposed rates should be adopted.

**C.    Plaintiff's motion should be granted because the Supreme Court rejected Defendant's "proportionality" argument.**

Defendants argue for reduction of Plaintiff's fees because the amount represents "almost 9 times what his client received in the instant case."[26] They contend that the nine-times proportion between damages and fees "is not remotely reasonable, it is simply outrageous."[27]

They do not cite any authority for that proportionality argument. And that argument has been squarely rejected by the Supreme Court. In *Riverside v. Rivera*, 477 US 561, 574 (1986), the Supreme Court held:

> We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.

For that reason, courts frequently award attorneys fees far greater the damages a plaintiff obtains. For example, in *Butler v. Dowd,* the Eighth Circuit upheld $94,680 in attorneys fees on a nominal award of $4.[28] In *Stoedter v. Gates*, a district court awarded more than $260,000 in attorneys fees on a nominal damages award of $1.[29] In *Wilkerson v. Seymour,* the district court awarded $135,905 in fees on a $155 verdict.[30] And so on and so on.[31] If ratios of tens or

---

[25] Rec. Doc. 264 at 17.
[26] Rec. Doc. 264 at 2.
[27] *Id*. at 21.
[28] 979 F.2d 661 (8th Cir. 1992) (en banc), cert. denied 113 S.Ct. 2395 (1993),
[29] *Stoedter v. Gates*, 12-cv-255, Rec. Doc. 316 (D. Ut., March 20, 2018).
[30] 11-CV-4426-TWT, 2015 WL 12806562 (N.D. Ga. Dec. 4, 2015).
[31] *Bravo v. City of Santa Maria*, 810 F.3d 659 (9th Cir. 2016) (upholding more than a million dollars in attorneys fees on a $5,002 damages award); *Brown v. Starrett City Assocs.*, No. 09-CV-3282, 2011 WL

6

hundreds of thousands to one are permissible, then a ratio of nine to one is not "simply outrageous" as Defendants suggest.

The Individual Defendants also claim that Plaintiff's counsel has sought payment for "every minute worked on this case" without adjustment for measure of success.[32] That is wrong. Plaintiff's motion is explicit: he proposes a 25% reduction of his fees to account for the success of claims against some defendants but not others.[33] That is fair, especially considering the significant policy changes achieve through this lawsuit.[34]

Plaintiff's motion should be granted.

### D. Defendants' accusations of ethical misconduct – leveled without a single piece of evidence whatsoever – are incorrect and should be disregarded.

In their brief, Defendants describe how they offered Plaintiff a choice of two different options. Option One was a determinate offer: Plaintiff would be paid $25,000 in damages and entitled to attorneys fees to be determined through negotiation or fee petition. Option Two was a conditional offer: $32,854.21 in damages,[35] but only if the parties conducted a subsequent negotiation and reached agreement on the quantum of attorneys fees before the overall agreement was finalized.

Plaintiff chose Option One. Based on that choice, Defendants accuse Plaintiff's counsel of misconduct, alleging that Plaintiff's counsel "convinced his client to accept less money" so that he could "litigate this matter for an excessive amount in attorney's fees in bad faith."[36]

---

5118438, at *7 (E.D.N.Y. Oct. 27, 2011) (awarding $80,610 in legal fees and $8,619 in expenses following jury verdict of $500).

[32] Rec. Doc. 264 at 15-16.

[33] Rec. Doc. 261-1 at 17 ("Plaintiff proposes discounting hours by half of half (i.e., 25%) to account for the idea that perhaps half of the DOC's half of the case was DOC-only and not of value to prevailing against OPSO.")

[34] *See Cacho v. Gusman*, 11-cv-225, Rec. Doc. 108 at *11-12 (E.D. La., Sept. 29, 2014) ("plaintiffs argue, and the Court agrees, that it is not appropriate to measure their success by looking only to the monetary damages in light of the significant policy changes they achieved as part of, and as a direct result of, their lawsuit.")

[35] In their brief, Defendants say it was $35,000. That is incorrect. It was $32,854.21. See attached Exhibit A (Correspondence of Counsel).

[36] Rec. Doc. 264 at 20.

Defendants do not offer a single item of evidence to support that accusation of misconduct. They only offer their own inference that Plaintiff's choice *must* have derived from his counsel's misconduct and no other reason.

But there are very obvious reasons why a plaintiff might choose a <u>swift</u>, <u>certain</u> settlement over a somewhat larger but <u>uncertain</u> <u>contingent</u> settlement that would be farther away in time – might not even come to pass. Indeed, immediacy and certainty are the reasons *most* plaintiffs resolve cases through settlement rather than take on the risks of trial. As the Eastern District has noted, there is a "strong presumption" in favor of finding a settlement fair because "a settlement is a compromise, a yielding of highest hopes for certainty and resolution."[37] For that reason, Defendants' accusations of misconduct – offered with no evidence and only a faulty inference – should be disregarded.

**E.    Conclusion**

Individual Defendants have declined to participate in the Lodestar fee-calculation process, instead asking this Court to adopt a $35,000 sum that they do not provide any explanation or justification for. Sheriff Hutson has declined to file any opposition whatsoever. For that reason, Plaintiff's proposed attorneys fees should be ordered by this Court.

    Respectfully submitted,

    **Most & Associates**

    */s/ William Most*
    WILLIAM MOST (La. Bar No. 36914)
    CAROLINE GABRIEL (La. Bar. No. 38224)
    DAVID LANSER (La. Bar No. 37764)
    201 St. Charles Ave., Ste. 114 #101
    New Orleans, LA 70170
    Tel: (504) 509-5023
    Email: williammost@gmail.com

    *Attorneys for Plaintiff Rodney Grant*

---

[37] *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 720 (E.D. La., July 9, 2008); *Sierra ex rel. Situated v. E.M.S.P., LLC*, 15-cv-0179 at *6 (E.D. La., Oct. 5, 2015).