**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RODNEY GRANT**                                          **CIVIL ACTION**

**VERSUS**                                                       **CASE NO. 17-2797**

**MARLIN GUSMAN et al.**                              **SECTION: "G"(3)**


**ORDER AND REASONS**

Before the Court is Plaintiff Rodney Grant's ("Plaintiff") Motion for Attorney's Fees.[1] In

the motion, Plaintiff requests that the Court award him $211,989.94 in attorney's fees and costs

pursuant to 42 U.S.C. § 1988 as the prevailing party in this action. Plaintiff prevailed on claims

related to alleged violations of his constitutional and state law rights by Defendants the Orleans

Parish Sheriff's Office's ("OPSO"), former Sheriff Marlin Gusman ("Gusman"), OPSO Sheriff

Susan Hutson ("Hutson"), OPSO Captain Sidney Holt ("Holt"), OPSO Deputy Corey Amacker

("Amacker") (collectively, "OPSO Defendants").[2] OPSO Defendants oppose the motion and ask

the Court to award $35,000 in attorney's fees and costs.[3] Plaintiff replies in further support of the

motion.[4] Having considered the motion, the memoranda in support and opposition, the record, and

the applicable law, the Court grants the motion in part, denies it in part, and awards Plaintiff

---

[1] Rec. Doc. 261.

[2] *Id.* at 1–2. Pursuant to 42 U.S.C. § 1988(b), a "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

[3] Rec. Doc. 264 at 21.

[4] Rec. Doc. 268.

1

$103,830.84 in attorney's fees and costs.

## I. Background

### A.    *Factual Background*

On July 2, 2000, Plaintiff was arrested for simple burglary in New Orleans, Louisiana.[5] Plaintiff allegedly spent 61 days in Orleans Parish Prison ("OPP") following his arrest before being released from OPP custody on September 3, 2000 after the District Attorney failed to file a Bill of Information before the statutory deadline.[6] Plaintiff avers that on October 30, 2000, the District Attorney filed a Bill of Information against Plaintiff.[7] Plaintiff asserts that his arraignment was rescheduled because of a court closure and Plaintiff did not appear for arraignment on November 29, 2000 because he did not receive a summons.[8] Plaintiff alleges that the Bill of Information eventually expired by operation of law but his arrest warrant for the simple burglary charge from November 2000 "stayed in the system."[9]

Thereafter, between 2008 and 2015, Plaintiff was incarcerated in the custody of the Louisiana Department of Public Safety and Corrections (the "DOC") at the Dixon Correctional Institute for a different crime.[10] On June 27, 2016, approximately one year after his release from the Dixon Correctional Institute, Plaintiff was trying to obtain a driver's license when was arrested

---

[5] Rec. Doc. 48 at 2.

[6] *Id.*

[7] *Id*. at 2–3.

[8] *Id*. at 3.

[9] *Id.*

[10] *Id*. Rec. Doc. 129-18 at 1.

for simple burglary based on the November 2000 warrant issued nearly sixteen years earlier.[11] On June 30, 2016, Plaintiff pleaded guilty to the simple burglary charge in Orleans Parish Criminal District Court before Judge Camille Buras ("Judge Buras").[12] Judge Buras sentenced Plaintiff to one year at the Department of Corrections, with "credit for time served from 9-14-08 to 2015" (the time Plaintiff had served at Dixon Correctional Institute on the earlier crime).[13]

On June 30, 2016, the day of sentencing, Judge Buras contacted Blake Arcuri ("Arcuri"), an attorney for OPSO, to request expedited processing for Plaintiff.[14] Arcuri then sent an email to OPSO employees stating: "[Plaintiff] really shouldn't have to actually serve any time once DOC processes it."[15] Gusman responded to Arcuri's email on the same day, stating that "once [Plaintiff] enters a plea and is sentenced, we can get the DOC to compute his time."[16] Holt also responded to Arcuri's email, stating that he had forwarded Arcuri's email to Amacker to have him "contact DOC and see what can be done."[17] Amacker then emailed Arcuri stating that he would "work on getting [Plaintiff's] packet sent to the DOC tomorrow but with the holiday weekend he will not get calculated till Tuesday [July 5, 2016] most likely."[18]

On July 7, 2016, seven days after Plaintiff was sentenced by Judge Buras, the DOC sent

---

[11] Rec. Doc. 48 at 3; Rec. Doc. 136-12.

[12] Rec. Doc. 165-1 at 2.

[13] *Id.*

[14] Rec. Doc. 133-5 at 2.

[15] Rec. Doc. 164-1 at 2.

[16] Rec. Doc. 133-16.

[17] Rec. Doc. 136-12.

[18] Rec. Doc. 133-15.

OPSO an inmate transfer request with July 12, 2016 as the transfer date.[19] Plaintiff remained in OPSO custody until July 12, 2016, when OPSO transported Plaintiff to the DOC facility Elayn Hunt Correctional Center in St. Gabriel, Louisiana ("Elayn Hunt").[20] While at Elayn Hunt, Plaintiff allegedly explained that his sentence was "time served" and he "should be released."[21] According to Plaintiff, an official at Elayn Hunt confirmed that Plaintiff's "sheet indicated 'no sentence.'"[22] Nevertheless, Plaintiff remained in custody and was transferred to the Madison Parish Correctional Center ("MPCC") in Tallulah, Louisiana.[23]

Approximately 15 days after Plaintiff appeared before Judge Buras, Plaintiff's friend Alfred Marshall purportedly became concerned and told Judge Buras that Plaintiff had not yet been released.[24] Judge Buras allegedly called Gusman and MPCC warden Chris Stinson to determine why Plaintiff had not been released from custody.[25] Three days later (or 18 days after being sentenced), on July 18, 2016, Judge Buras held a hearing at which she vacated Plaintiff's one-year sentence for the simple burglary charge from November 2000 and resentenced him to "CREDIT FOR TIME SERVED."[26] Yet, according to Plaintiff, "despite having no legal authority to hold

---

[19] Rec. Doc. 136-2 at 2.

[20] *Id.*

[21] Rec. Doc. 48 at 9.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 3, 9; Rec. Doc. 158-1 at 1.

[Plaintiff]," the DOC still did not release him.[27] On July 25, 2016, Judge Buras contacted two DOC employees three separate times (one email and allegedly two phone calls) to determine why Plaintiff had not been released.[28] In her July 25, 2016 email to a DOC employee, Judge Buras stated:

> I originally sentenced [Plaintiff] on June 30, 2016 to 1 year DOC with [credit for time served] from 2008 as [Plaintiff] had already served a sentence in DOC and my 2000 case did not pop up until he was ready to be discharged.  The court was informed that [Plaintiff] was still incarcerated and so I amended his sentence [on] July 18 2016 to CREDIT FOR TIME SERVED so that he could be immediately released. This morning I was informed by [a DOC captain] that their records show [Plaintiff's] discharge date on NOV 24 2023. Please advise as to what might be the issue with this case as the clear intention of all parties when [Plaintiff] pled guilty was to have this credit for time served sentence result in a release.[29]

Finally, 27 days after Judge Buras sentenced Plaintiff to time served and instructed OPSO to expedite his release, Plaintiff was released from custody on July 27, 2016.[30]

### B.   Procedural Background

On April 2, 2017, Plaintiff filed a complaint against officials from OPSO, and against DOC Secretary LeBlanc ("LeBlanc") and DOC Warden Timothy Hooper ("Hooper") (collectively, the "DOC Defendants") and several other officials.[31] On June 14, 2017, Plaintiff filed the First Amended Complaint.[32] On June 28, 2017, DOC Defendants filed a motion to dismiss Plaintiff's

---

[27] Rec. Doc. 48 at 9.

[28] *Id*.; Rec. Doc. 129-18 at 7; Rec. Doc. 129-22.

[29] Rec. Doc. 143-16 at 2.

[30] Rec. Doc. 158-1 at 2.

[31] Rec. Doc. 1.

[32] Rec. Doc. 16.

First Amended Complaint.[33] On March 27, 2018, the Court granted the DOC Defendants' motion to dismiss in part, dismissing Plaintiff's Section 1983 claim based on *respondeat superior* liability and Plaintiff's Section 1983 claims for monetary damages against DOC Defendants in their official capacity, and denied the motion as to all other claims.[34] On March 29, 2018, the Court granted Gusman, Holt, and Amacker's motion to dismiss in part, dismissing Plaintiff's Section 1983 claim based on *respondeat superior* liability and denied the motion as to all other claims.[35] The Court also granted Plaintiff leave to file a second amended complaint to address the deficiencies identified.[36]

On April 10, 2018, Plaintiff filed the Second Amended Complaint.[37] On August 14, 2018, the Court granted DOC Defendants' motion to dismiss in part to "the extent that the Court dismisse[d] Plaintiff's federal law claims against Warden Hooper;"[38] however, the Court denied DOC Defendants' motion to dismiss "as to Plaintiff's Section 1983 claim against Secretary LeBlanc and as to Plaintiff's *Monell* claim against [Secretary] LeBlanc."[39] That same day, the Court granted OPSO Defendants' motion to dismiss in part to the extent that it dismissed Plaintiff's Section 1983 claims for monetary damages against them in their individual capacities.[40]

---

[33] Rec. Doc. 17.

[34] Rec. Doc. 46.

[35] Rec. Doc. 47.

[36] Rec. Docs. 46, 47.

[37] Rec. Doc. 48.

[38] Rec. Doc. 66 at 26.

[39] *Id.*

[40] Rec. Doc. 67.

On January 7, 2019, DOC Defendants filed a "Motion for Stay of Proceedings" because their counsel's military duties affected his ability to represent DOC Defendants.[41] On January 7, 2019, the Court granted DOC Defendants' "Motion for Stay of Proceedings."[42] On June 4, 2019, the Court issued an order lifting the stay and reopening the case.[43]

On April 13, 2020, the Court denied Plaintiff's "Motion for Sanctions, or in the Alternative, to Compel Preservation and Production of Documents," wherein the Court rejected Plaintiff's request for the Court to issue an adverse inference sanction against DOC Defendants as a sanction for alleged spoilation of electronic data.[44] In its March 30, 2021 Order and Reasons, the Court denied Plaintiff's motion for summary judgment against OPSO Defendants and granted OPSO Defendants' motion for summary judgment only to the extent that it sought dismissal without prejudice of Plaintiff's requests for injunctive and declaratory relief.[45] In its March 31, 2021 Order and Reasons, the Court denied Plaintiff's motion for summary judgment against DOC Defendants, granted DOC Defendants' motion for summary judgment to the extent it sought dismissal of Plaintiff's state law tort claims against Warden Hopper in his individual capacity and injunctive relief against Secretary LeBlanc in his official capacity pursuant to Section 1983, and denied DOC Defendants' motion for summary judgment in all other respects, including Secretary LeBlanc's request for qualified immunity.[46]

---

[41] Rec. Doc. 87.

[42] Rec. Doc. 89.

[43] Rec. Doc. 90.

[44] *See* Rec. Doc. 206.

[45] Rec. Doc. 230.

[46] Rec. Doc. 231.

On April 26, 2021, Secretary LeBlanc appealed to the Fifth Circuit this Court's denial of his motion for summary judgment based, in part, on its denial of qualified immunity regarding Plaintiff's federal and state due-process claims.[47] Accordingly, on May 28, 2021, the Court granted Secretary LeBlanc's motion to stay and administratively close these proceedings pending Secretary LeBlanc's interlocutory appeal.[48]

On February 23, 2022, the Fifth Circuit rendered judgment in favor of Secretary LeBlanc on Plaintiff's federal and state due process claims on the basis of qualified immunity and remanded the matter back to this Court.[49] Accordingly, on July 12, 2022, the Court granted Plaintiff's motion to lift the stay in this matter and reopen the case.[50]

On September 26, 2022, the parties informed the Court that they had consummated a settlement on all remaining claims in this matter.[51] As part of the settlement, OPSO Defendants agreed to pay Plaintiff damages and to consider Plaintiff a prevailing party for the purpose of attorney's fees, but Plaintiff would submit a fee and cost petition to the Court if the parties could not agree on the quantum of attorney's fees and costs.[52] Thus, that same day, the Court issued an order dismissing the action without costs and prejudice to the right to reopen the action if settlement was not consummated within sixty days.[53] The Court explicitly retained jurisdiction to

---

[47] Rec. Doc. 234.

[48] Rec. Doc. 239.

[49] Rec. Doc. 240.

[50] Rec. Doc. 249.

[51] Rec. Doc. 256.

[52] *Id*.

[53] Rec. Doc. 259.

enforce the settlement terms and to determine the amount of attorney's fees.[54]

On November 21, 2022, Plaintiff filed the instant Motion for Attorney's Fees and Costs.[55] On December 13, 2022, Amacker, Gusman, Holt, Hooper, and Hutson opposed the motion.[56] On December 29, 2022, Plaintiff replied in further support of the motion with leave of Court.[57]

## II. Parties' Arguments

### A.   *Plaintiff's Arguments in Support of the Motion for Attorney's Fees*

In support of the instant motion, Plaintiff avers that, after OPSO Defendants and Plaintiff reached a settlement, "[o]ver the next month and a half, the parties endeavored to resolve the quantum of fees and costs without court intervention" and "exchanged twenty-one pieces of correspondence in the effort to reach [an] agreement, but were unable to do so."[58] Thus, Plaintiff requests that the Court fix the amount of attorney's fees and expenses at $211,989.94.[59] Plaintiff bases the request on the following calculation (the "Fee Application"):[60]

| Attorney | Number of Hours | Hourly Rate | Fees |
|---|---|---|---|
| William Most | 411.5 | $350 | $144,025.00 |
| William Most (Joint Over-Detention) | 109.5 | $350 (divided by 6) | $6,387.50 |
| David Lanser | 71.1 | $275 | $19,552.50 |

[54] *Id*.

[55] Rec. Doc. 261.

[56] Rec. Doc. 264.

[57] Rec. Doc. 268.

[58] *Id*. at 4.

[59] Rec. Doc. 261-1 at 24.

[60] Rec. Doc. 261 at 1–2.

| Caroline Gabriel | 28.2 | $250 | $7,050.00 |
|---|---|---|---|
| Meghsha Barner | 19.5 | $235 | $4,582.50 |
| Amanda Hass | 15.6 | $225 | $3,510.00 |
| Allison Sickle | 127.85 | $125 | $15,981.25 |
| *Grant*-Specific Costs | | | $4,577.89 |
| Over-Detention Costs (divided by 6) | | | $274.36 |
| **Subtotal:** | | | $201,088.75 |
| Reduction for Billing Judgment (-$12,653.25) | | | $188,435.50 |
| Reduction for Success of Claims (-25%): | | | $141,326.63 |
| Proposed Johnson Multiplier (1.5x): | | | $211,989.94 |
| **Total:** | | | **$211,989.94** |

Plaintiff advances nine arguments in support of the Fee Application using the lodestar method.[61] First, Plaintiff argues that, as a prevailing party in a civil rights action, he is entitled to reasonable attorney's fees.[62] Plaintiff contends that he is a prevailing party because he and OPSO Defendants "agreed on an amount of damages to be paid by Defendants to Plaintiff, and agreed that Plaintiff is the prevailing party for the purpose of attorney's fees and costs."[63] Thus, Plaintiff concludes that he "is entitled to fees and costs per 42 U.S.C. § 1988."[64]

Second, Plaintiff argues that the hourly rates of counsel used for the lodestar calculation

---

[61] *See id.* at 8–9.

[62] *Id.* at 9.

[63] *Id.* at 10 (quoting Rec. Doc. 257 at 3 (the parties' Joint Status Update)).

[64] *Id.*

are reasonable.[65] Plaintiff contends that he "submits the declaration of lead counsel, verifying the submitted billing entries and verifying that the rates reflect the attorneys' actual billing rates."[66] Plaintiff further contends that he has "submitted the declarations of [seven] attorneys working in the Eastern District [of Louisiana] opining that the hourly rates charged by counsel here are reasonable."[67] Plaintiff provides the following table and argues that the requested rates are reasonable based on each attorney's years of experience and the rates applied in comparable cases within the Eastern District of Louisiana:[68]

| Team Member | Years of Practice | Hourly Rate |
|---|---|---|
| William Most | 11 | $350 |
| David Lanser | 5 | $275 |
| Caroline Gabriel | 4 | $250 |
| Meghsha Barner | 3 | $235 |
| Amanda Hass | 2 | $225 |
| Allison Sickle | N/A | $125 |

Third, Plaintiff argues that the hours submitted in the Fee Application are reasonable and have been subjected to billing judgment.[69] Plaintiff asserts that he "has attached a verified copy of the contemporaneous billing records for this case which includes the dates, amount of time billed,

---

[65] *See id.*

[66] *Id.* at 11 (citing Rec. Doc. 261-19).

[67] *Id.* (citing Rec. Docs. 261-9, 261-10, 261-11, 261-12, 261-13, 261-14, 261-15); Plaintiff avers that one declaration from a partner at Jones Walker, LLP states that the requested rates "are less than what I am used to seeing in private practice in New Orleans." *Id.* (quoting Rec. Doc. 261-15).

[68] *See id.* at 12–14 (citing cases).

[69] *See id.* at 14.

and a description of the services performed."[70] Plaintiff avers that his "counsel has reviewed the time entries . . . and deducted an amount totaling $12,653.25 for "entries that would not be billed to the client" and based on "the exercise of billing discretion."[71] Finally, Plaintiff contends that "counsel sought opportunities to work efficiently: for example, by employing a law student clerk with a lower billable rate than attorneys, and by noting work that was jointly of benefit to several over-detention cases."[72]

Fourth, Plaintiff argues that the hours billed have been adjusted to reflect hours spent on this case jointly with other over-detention cases.[73] Plaintiff avers that counsel "has been involved in a range of over-detention cases, including others against [OPSO]."[74] Where counsel conducted work that applied to these over-detention cases generally, "Plaintiff proposes dividing these hours by six, for the six individual Louisiana over-detention cases brought by undersigned counsel."[75]

Fifth, Plaintiff argues that the hours billed have been adjusted to reflect hours spent on unsuccessful claims. Plaintiff avers that, although he prevailed against OPSO Defendants but not DOC Defendants, "[i]t is not possible . . . to divide work done into 'OPSO hours' and 'DOC hours' . . . due to the nature of [OPSO Defendants and DOC Defendants' respective] defenses: each of them blamed the other for [Plaintiff's over-detention]."[76] However, Plaintiff acknowledges that "it

---

[70] *Id.* at 15 (citing Rec. Doc. 261-21).

[71] *Id.*

[72] *Id.*

[73] *See id.* at 16.

[74] *Id.*

[75] *Id.* at 16–17.

[76] *Id.* at 17.

is appropriate to discount some of the hours" to account for the unsuccessful claims.[77] "Plaintiff proposes discounting hours by half of half (i.e. 25%) to account for the idea that perhaps half of the DOC's half of the case was DOC-only and not of value to prevailing against OPSO [Defendants]."[78]

Sixth, Plaintiff argues that OPSO Defendants' "aggressive defense strategy," which involved filing "repeated dispositive motions, . . . resist[ing] discovery, and engag[ing] in lengthy and inappropriate tactics during deposition," resulted in these fees and costs.[79] Plaintiff avers that DOC Defendants "named their own defense counsel as a 30(b)(6) witness to testify for OPSO," refused to make a settlement offer, and "repeatedly threatened Plaintiff—including a threat to put Plaintiff back in prison for the explicit purpose of obtaining advantage in the civil suit."[80] Thus, Plaintiff concludes that OPSO Defendants must "pay for the consequences of that choice."[81]

Seventh, Plaintiff argues that the Court should apply a 50% multiplier to the lodestar amount based on the facts identified in *Johnson v. Georgia Highway Express*.[82] Plaintiff argues that the first *Johnson* factor—the time and labor required—warrants an upward adjustment because counsel "was a solo practitioner with one contract attorney for assistance" when the case, began, which strained the resources of the firm.[83] Plaintiff avers that the second *Johnson* factor—

---

[77] *Id*. at 17.

[78] *Id*.

[79] *Id*. at 18.

[80] *Id*. (citing Rec. Docs. 261-6, 261-7).

[81] *Id*.

[82] *Id*. (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)).

[83] *Id*. at 19.

novelty and difficulty of the case—warrants an upward adjustment because "this case presented questions of first impression regarding OPSO's policy of over-detention and the interplay of responsibility between [the DOC] and sheriffs in the days after sentencing;" and because such civil rights cases are "difficult, protracted, and risky" given defendants' unwillingness to discuss settlement.[84] Plaintiff contends that the third *Johnson* factor—the skill required—warrants an upward adjustment because counsel prevailed against OPSO despite "dealing with unethical threats by opposing counsel, repeated dispositive motions, an interlocutory appeal, and a large set of documents."[85] Plaintiff asserts that the fourth *Johnson* factor—preclusion of other employment due to accepting the case—weighs in favor of an upward adjustment because counsel's small firm was required to turn down other work due to the time needed to litigate this case.[86]

Plaintiff argues that the fifth *Johnson* factor—the customary fee for similar work—warrants an upward adjustment given the affidavit from a partner at Jones Walker stating that the rates requested are less than typical for private practice.[87] Plaintiff avers that the sixth *Johnson* factor—whether the fee is fixed or contingent—weighs in favor of an upward adjustment because the fee was entirely contingent.[88] Plaintiff contends that the seventh *Johnson* factor—time limitations—warrants an upward adjustment because the case was stayed multiple times based on defense counsel's military service and Secretary LeBlanc's interlocutory appeal, which allowed

---

[84] *Id*. at 19–20 (quoting Rec. Doc. 261-10).

[85] *Id*. at 20.

[86] *Id*.

[87] *Id*. at 20–21.

[88] *Id*. at 21.

OPSO Defendants to save due to inflation over the protracted litigation.[89] Plaintiff asserts that the eighth *Johnson* factor—the amount involved and the results obtained—warrant an upward adjustment because Plaintiff obtained "a life-changing sum, given Plaintiff's indigent status" and the litigation "prompted OPSO to change its 'drive the paperwork once per week policy.'"[90]

Plaintiff argues that the ninth *Johnson* factor—experience, reputation, and ability of attorneys—warrants an upward adjustment because "Plaintiff's counsel are attorneys that specialize in civil rights cases" who, although young, are highly respected.[91] Plaintiff avers that the tenth *Johnson* factor—the undesirability of the case—weighs in favor of an upward adjustment because many private firms avoid civil rights cases as they are less likely to be profitable.[92] Plaintiff contends that the eleventh *Johnson* factor—the nature and length of the professional relationship with the client—weighs in favor of an upward adjustment because counsel worked with Plaintiff for more than half a decade to obtain this outcome and change OPSO's policy, and "required patience and mutual trust."[93] Plaintiff asserts that the twelfth *Johnson* factor—awards in similar cases—has already been addressed in determining reasonable hourly rates.[94] Thus, "[b]ecause all of the *Johnson* factors weigh in favor of an upward[] adjustment, Plaintiff proposes a 1.5 times multiplier be applied to the attorneys fees."[95]

---

[89] *Id.*

[90] *Id.* at 21–22.

[91] *Id.* at 22.

[92] *Id.*

[93] *Id.* at 23.

[94] *Id.*

[95] *Id.*

Eighth, Plaintiff argues that he is entitled to costs along with attorney's fees as the prevailing party pursuant to 42 U.S.C. § 1988(b) and Federal Rule of Civil Procedure 54(d)(1).[96] Thus, Plaintiff avers that, in the Fee Application, costs are divided into those unique to this case and those "that were joint to the individual over-detention cases," the latter of which are divided by six.[97]

Ninth, Plaintiff argues that he is entitled to the requested attorney's fees because the lawsuit was of substantial benefit to the public.[98] Plaintiff avers that, after the filing of this lawsuit, OPSO changed its policy of having a deputy pick up paperwork for delivery to the DOC's headquarters that resulted in the over-detention of inmates.[99] Plaintiff asserts that OPSO began "to electronically transmit records to the DOC," which "reduced the number of overdetained people sentenced in Orleans Parish" and "reduced the [resulting] financial burden on Louisiana taxpayers."[100] For these reasons, Plaintiff asks the Court to grant the motion and award him $211,989.94 in attorney's fees and costs.[101]

**B.   *OPSO Defendants' Arguments in Opposition to the Motion for Attorney's Fees***

OPSO Defendants advance five arguments in opposition to the instant motion.[102] First, OPSO Defendants argue that the 783.25 hours claimed by Plaintiff's lead counsel, four associates,

---

[96] *Id*. at 23–24.

[97] *Id*. at 24.

[98] *See id.* at 7.

[99] *Id*. at 7–8.

[100] *Id*. at 8.

[101] *Id*. at 25.

[102] *See* Rec. Doc. 264.

and one law student are "grossly excessive under the governing legal standard" and grossly disproportionate in being nine times greater than the settlement received by Plaintiff.[103] Specifically, OPSO Defendants argue that the hours requested are unreasonable because: (1) the timesheets contain vague time entries; (2) those timesheets contain block billing; (3) the Fee Application charges for administrative tasks; and (4) Plaintiff's lead counsel, William Most ("Most") charged his premium fees for associate-level work.[104]

OPSO Defendants assert that the hours requested are unreasonable because the timesheets include vague time entries.[105] OPSO Defendants aver that the Court cannot "judge the reasonableness of the time expended with descriptions as scant as 'correspondence,' 'meeting,' and 'phone call,'" and so the "vague entries should be reduced and disallowed."[106]

OPSO Defendants also argue that the hours requested are unreasonable because Plaintiff submits "block-billed time entries" that "describe multiple activities in one time entry or record time by the day instead of the specific tasks."[107] OPSO Defendants aver that these entries "may not offer sufficient evidence of the reasonableness and necessity of the time expended" and thus "a flat reduction of a specific percentage from the award" is warranted that is "commensurate with

---

[103] *Id.* at 2–3.

[104] *See id.* at 4–12.

[105] *Id.* at 6 (arguing that the following dates include vague time entries: 7/12/2016, 7/22/2016, 8/4/2016, 9/21/2016, 10/6/2016, 10/24/2016, 11/18/2016, 11/21/2016, 12/19/2016, 12/22/2016, 2/23/2016, 3/15/2017, 3/20/2017, 3/27/2017, "4/3/2017, 4/28/2017, 5/8/2017, 5/8/2017, 6/8/2017, 6/12/2017, 6/12/2017, 6/12/2017, 6/5/2017, 6/15/2017, 6/25/2017, 7/19/2017, 9/8/2017,9/8/2017, 9/12/2017, 10/2/2017, 10/19/2017, 10/25/2017, 11/20/17, 12/7/2017).

[106] *Id.* at 6–7.

[107] *Id.* at 7 (citing *C and D Prod. Servs. v. Dir., Office of Workers Comp.*, 376 F. App'x 392, 394 (5th Cir. 2010)).

17

the egregiousness of the inadequacy of the documentation."[108] OPSO Defendants attach an exhibit of entries they assert are block billed.[109] Based on these entries, where "several tasks are grouped under one time entry," OPSO Defendants ask the Court to reduce the fee award.[110]

OPSO Defendants further argue that the number of hours requested is unreasonable because the Fee Application contains charges for administrative tasks that should not be included in the award.[111] OPSO Defendants aver that several entries include charges for tasks that "could have been performed by administrative [assistants]."[112] OPSO Defendants conclude that these entries should be disallowed for being "clearly clerical in nature."[113]

Finally, OPSO Defendants argue that the number of hours requested is unreasonable because Most "performed tasks that could have been performed by less experienced attorneys."[114] OPSO Defendants aver that Most charged excessive hours for legal research, drafting, preparing discovering requests, document review, and preparing documents for filing.[115] OPSO Defendants contend that the award should therefore be reduced because this work "should have been passed on to one of the associates on the case."[116]

---

[108] *Id.*

[109] *Id.* at 7, n.27 (citing Rec. Doc. 264-2); *see also id.* at 8–9 (offering a sample of block billing entries from Plaintiff's counsel).

[110] *Id.* at 9.

[111] *See id.*

[112] *Id.* at 10 (citing *In re Educ. Testing Serv. Litig.*, 447 F. Supp. 2d 612 (E.D. La. 2006) (explaining that some work, such as researching, drafting, and document review, should be performed by associate-level attorneys)).

[113] *Id.*

[114] *Id.*

[115] *See id.* at 11 (providing a sample of entries where Most bills up to 9.1 hours completing these tasks).

[116] *Id.* at 11–12.

Second, OPSO Defendants argue that Plaintiff's requested hourly rates are not reasonable and should be reduced.[117] OPSO Defendants assert that under the "General Maximum Hourly Fee Schedule" promulgated by the Louisiana Attorney General (the "General Fee Schedule"), Most should receive $225 per hour, Caroline Gabriel ("Gabriel"), David Lanser ("Lanser") and Meghsha Barner ("Barner") should receive $150 per hour, Amanda Hass ("Hass") should receive $125 per hour, and Allison Sickle ("Sickle") should receive $40 per hour.[118] OPSO Defendants further argue that the affidavits of other attorneys supporting the reasonableness of the fees requested should be given "no weight" because they pertain to rates "reasonable for civil rights litigation work" rather than over-detention cases.[119] OPSO Defendants also contend that the affidavits are from plaintiffs' attorneys practicing in the Eastern District of Louisiana who "have a vested interest in establishing precedent for higher hourly rates."[120] Finally, OPSO Defendants aver that the fees requested are unreasonable because Plaintiff "obtained only a portion of the relief he sought" after the Court dismissed his Section 1983 claim based on respondeat superior liability and claims for injunctive and declaratory relief.[121] Thus, OPSO Defendants conclude that the rates requested are unreasonable.[122]

Third, OPSO Defendants argue that the *Johnson* factors do not warrant an upward

---

[117] *See id.* at 12–16.

[118] *Id*. at 13–14.

[119] *Id*. at 14.

[120] *Id*. at 15.

[121] *Id*. at 15–16. OPSO Defendants also point out that the Court denied Plaintiff's motion for leave to file a third amended complaint and motion for summary judgment. *Id.*

[122] *Id*. at 16.

adjustment of the lodestar amount.[123] They argue that "there was nothing particularly undesirable about this case as many civil rights litigation cases have problematic and unpleasant aspects of the case."[124] Thus, OPSO Defendants conclude that an upward adjustment of the lodestar amount is not warranted.[125]

Fourth, OPSO Defendants argue that Plaintiff's request for out-of-pocket costs should be reduced because it includes expenses that "are generally considered overhead, [] part of the cost of operating a law firm," or "vague and strictly for counsel's convenience."[126] For example, OPSO Defendants aver that recovery for postage and service, and mileage for attendance at oral argument, settlement conferences, depositions and meetings should be excluded.[127]

Fifth, OPSO Defendants argue that Plaintiff seeks "'fees on fees' for time spent preparing the motion for an attorney's fee award" in the amount of ten billable hours that should be excluded.[128] OPSO Defendants assert that courts have found eight hours to draft a motion to fix attorney's fees to be excessive, and under two hours to be reasonable.[129]

For these reasons, OPSO Defendants assert that $35,000 in attorney's fees is reasonable.[130] OPSO Defendants aver that they "settled the matter in a good faith attempt to resolve all aspects

---

[123] *See id.*

[124] *Id.*

[125] *Id.* at 18.

[126] *Id.* at 19.

[127] *Id.*

[128] *Id.*

[129] *Id.* at 20 (citing *Williams v. Res-Care, Inc.*, No. 17-10200, 2020 WL 4816141, at *4 (E.D. La. Aug. 19, 2020)).

[130] *Id.* at 21.

of this case, including fees."[131] OPSO Defendants assert that they offered to settle the claim for $35,000 along with an attorney's fees settlement but Plaintiff's counsel "convinced his client to accept less money in the settlement ($25,000) so that he could attempt to litigate this matter for an excessive amount in attorney's fees in bad faith."[132] Thus, OPSO Defendant's conclude that "[t]he proposed settlement amount of attorney's fees" is reasonable.[133]

## C. *Plaintiff's Arguments in Further Support of the Motion for Attorney's Fees.*

In reply, Plaintiff makes five arguments in further support of the instant motion. First, Plaintiff argues that OPSO Defendants "declined to follow the well-established method" of calculating the lodestar amount and adjusting it based on the *Johnson* factors to determine the appropriate attorney's fee award.[134] Plaintiff asserts that, whereas he used this method to calculate reasonable attorney's fees, OPSO Defendants determined $35,000 to be a reasonable attorney's fee award "without describing what process they used for calculating that amount."[135]

Second, Plaintiff argues that the time entries submitted are not inadequate or vague.[136] Plaintiff asserts that the Supreme Court does not require the Court to conduct "auditing perfection" but rather simply to "do 'rough justice'" to its "overall sense of suit."[137] Plaintiff further contends that OPSO Defendants' opposition is "comprised of reproductions of time entries already

---

[131] *Id*. at 20.

[132] *Id*.

[133] *Id*. at 21.

[134] Rec. Doc. 268 at 1.

[135] *Id*.

[136] *See id.* at 2.

[137] *Id*. (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

submitted to the court by Plaintiff—but without the notations for Plaintiff's counsel's exercise of billing judgment."[138] Plaintiff asserts that OPSO Defendants withheld that Plaintiff wrote off some of those entries "through the exercise of billing discretion."[139] Plaintiff further avers that certain entries that OPSO Defendants labeled as "block billing" actually decreased the amount of time billed.[140] Finally, Plaintiff argues that the context of Most's practice—he began this case as "a solo practitioner in a newly-formed practice" and his firm "remains a small one by necessity, given the risks and long time horizons for payment in civil rights work"—is relevant to attorney's fees.[141]

Third, Plaintiff argues that his proposed hourly rates should be adopted because "Plaintiff offered a range of evidence for [their] reasonableness."[142] Plaintiff asserts that, in response, OPSO Defendants only cite the General Fee Schedule, which this Court has found to be irrelevant because no counsel is representing the State of Louisiana.[143] Plaintiff further asserts that OPSO Defendants know that some of the attorneys that provide affidavits in support of the hourly rates do practice over-detention cases and, regardless, "the Lodestar analysis is [not] so cramped in focus" for affidavits from attorneys who have litigated Section 1983 cases in this district to be inapplicable to over-detention cases.[144] Finally, Plaintiff contends that, although the Court should not double-

---

[138] *Id.* (citing Rec. Doc. 261-21).

[139] *Id.*

[140] *Id.* at 3.

[141] *Id.* at 3–4 (citing *Bode v. Kenner City*, No. 17-5483, 2018 WL 4701541, at *7 (E.D. La., Oct. 1, 2018) (Brown, C.J.)); Plaintiff notes that Most gave associates work as his firm expanded and as they became familiar with the case. *Id.* at 3.

[142] *Id.* at 4.

[143] *Id.* at 4–5 (citing *Bode*, 2018 WL 4701541, at *6).

[144] *Id.* at 5.

count based on the *Johnson* factors, "the fact that some factors overlap with the Lodestar analysis is not dispositive" given that all factors point to an upward adjustment.[145]

Fourth, Plaintiff argues that OPSO Defendants' argument that the award requested is unreasonable because it is nine times greater than the damages obtained has been rejected by the Supreme Court in *Riverside v. Rivera*.[146] Plaintiff asserts that courts in other circuits have upheld substantial attorney's fees on top of only nominal damages.[147] Plaintiff further contends that OPSO Defendants are wrong that counsel "has sought payment for 'every minute worked on this case'" because Plaintiff "proposes a 25% reduction of fees due to his success on claims against some defendants but not others."[148] Thus, Plaintiff concludes that the requested fee award is fair, "especially considering the significant policy changes achieve[d] through this lawsuit."[149]

Fifth, Plaintiff argues that OPSO Defendants' accusations of ethical misconduct regarding the settlement are false.[150] Plaintiff avers that he was given two options during settlement negotiations: (1) receive $25,000 in damages and determine attorney's fees through negotiation or fee petition; or (2) agree to a $32,854.21 damages award conditioned upon the parties reaching "agreement on the quantum of attorneys fees before the overall agreement [is] finalized."[151] Plaintiff states that he chose the first option, not through his counsel's misconduct, but because it

---

[145] *Id*. at 6.

[146] *Id*. (quoting *Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.").

[147] *Id*. (citing cases).

[148] *Id*. at 7.

[149] *Id*.

[150] *See id.* at 7–8.

[151] *Id*. at 7.

was a "swift, certain settlement" rather than an "uncertain contingent settlement that would be farther away in time."[152] Thus, Plaintiff concludes that "[OPSO] Defendants' accusations of misconduct—offered with no evidence and only a faulty inference—should be disregarded."[153]

### III. Law and Analysis

Pursuant to 42 U.S.C. § 1988(b), the Court, in its discretion, may allow a prevailing party in any action brought under Section 1983 "a reasonable attorney's fee as party of the costs." In the September 26, 2022 Joint Notice of Settlement, the parties "agreed that Plaintiff is the prevailing party for the purpose of attorneys fees and costs."[154] Thus, the Court must determine the reasonable fees and costs to award Plaintiff as the prevailing party over OPSO Defendants.

Reasonable attorney's fees are calculated using the "lodestar" method.[155] Under this method, "the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers."[156] "[T]here is a strong presumption that the lodestar figure is reasonable."[157] However, after calculating the lodestar, a district court may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[158]

---

[152] *Id.* at 8.

[153] *Id.*

[154] Rec. Doc. 256 at 1.

[155] *Rutherford v. Harris Cty., Tex.,*, 197 F.3d 173, 192 (5th Cir. 1999).

[156] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).

[157] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

[158] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those

The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account.[159] Such reconsideration is "impermissible double-counting."[160]

Here, Plaintiff requests a total award of $211,989.94 based on the following calculation in the Fee Application, which includes the proposed billing rates and the number of hours billed by Plaintiff's counsel:[161]

| Attorney | Number of Hours | Hourly Rate | Fees |
|---|---|---|---|
| William Most | 411.5 | $350 | $144,025.00 |
| William Most (Joint Over-Detention) | 109.5 | $350 (divided by 6) | $6,387.50 |
| David Lanser | 71.1 | $275 | $19,552.50 |
| Caroline Gabriel | 28.2 | $250 | $7,050.00 |
| Meghsha Barner | 19.5 | $235 | $4,582.50 |
| Amanda Hass | 15.6 | $225 | $3,510.00 |
| Allison Sickle | 127.85 | $125 | $15,981.25 |
| *Grant*-Specific Costs | | | $4,577.89 |
| Over-Detention Costs (divided by 6) | | | $274.36 |
| **Subtotal:** | | | $201,088.75 |

services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

[159] *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 800 (5th Cir. 2006) (citation omitted).

[160] *Id.*

[161] Rec. Doc. 261 at 1–2.

| | |
|---|---|
| Reduction for Billing Judgment (-$12,653.25) | $188,435.50 |
| Reduction for Success of Claims (-25%): | $141,326.63 |
| Proposed Johnson Multiplier (1.5x): | $211,989.94 |
| **Total:** | **$211,989.94** |

## A.    *The Number of Hours*

"[T]he first step in determining reasonable attorney's fees is an evaluation of the number of hours reasonably expended."[162] "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[163] "[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete."[164] Furthermore, when an attorney or paralegal performs a task that could be handled by clerical staff, the opponent should not be charged.[165] Tasks that are purely clerical in nature include faxing, mailing, filing and delivering legal documents.[166] "Charges for excessive, duplicative, or inadequately documented work must be excluded."[167] The party seeking fees must demonstrate the exercise of billing judgment, which refers to the usual practice of writing off unproductive, excessive, or redundant hours.[168]

---

[162] *Louisiana Power*, 50 F.3d at 324.

[163] *Id*. (quotation marks and citations omitted).

[164] *Id*.

[165] *Kuperman v. ICF Int'l*, No. 08- 565, 2009 WL 10737138, at *9 (E.D. La. Oct. 13, 2009).

[166] *See Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 710–11 (E.D. La. 2001); *Kuperman*, 2009 WL 10737138, at *9.

[167] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

[168] *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

In support of the motion, Plaintiff offers timesheets, which record the professional services performed by each attorney in this matter.[169] The documentation contains information on the tasks performed, by whom they were performed, the date they were performed, the time expended to accomplish that task, and the applicable hourly rates charged.[170] Plaintiff argues that the requested hours are reasonable because Plaintiff's counsel provided verified copies of contemporaneous billing records that comply with Local Rule 54.2, reviewed the entries and deducted $12,653.25 through the exercise of billing judgment, and worked efficiently by employing a law student clerk with a lower billable rate and dividing by six any hours worked to the benefit of all six of counsel's over-detention cases.[171] OPSO Defendants argue that the requested hours are unreasonable because the time entries are overly vague, include block billing and charges for administrative tasks, and apply senior partner rates to work that could have been handled by junior lawyers.[172]

After careful review of the Fee Application and attached records, the Court finds OPSO Defendants' arguments unavailing. Regarding the argument that the entries are too vague, the Supreme Court has stated that a motion for attorney's fees "should not result in a second major litigation."[173] "Trial courts need not, and indeed should not, become green-eyeshade accounts" but rather "may take into account their overall sense of a suit" where the party "submit[s] appropriate documentation."[174] Thus, in recognizing that the "practical considerations of the daily practice of

---

[169] Rec. Doc. 261-21.

[170] *See id.*

[171] Rec. Doc. 261-1 at 15.

[172] *See* Rec. Doc. 264 at 3–12.

[173] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[174] *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437) ("The fee applicant . . . must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.' But trial

law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered," the Fifth Circuit has found that a district court does not err "in refusing to reduce the hours in question for vagueness" where it has "familiarity with [the] case, including the quality of the attorneys' work over a period of several years."[175] Accordingly, the Court declines to reduce the number of hours billed over the course of a litigation where Plaintiff prevailed after five and a half years and where Plaintiff provides the appropriate documentation to support his request.

For these same reasons, the Court declines to reduce the number of hours due to the block billing time entries submitted. Block billing is the practice of "describing multiple activities in only one time entry."[176] "A reduction for block billing is not automatic" even though "[c]ourts disfavor the practice . . . because it impairs the required reasonableness evaluation."[177] The Fifth Circuit has affirmed attorney's fee awards where the requested fees were reasonable despite block billing.[178] Therefore, given that Plaintiff's requested number of hours is reasonable, the Court declines to reduce the hours requested based on Plaintiff's use of block billing.[179]

---

courts need not . . . become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.") (internal citations omitted).

[175] *Louisiana Power*, 50 F.3d at 327.

[176] *C and D Prod. Servs. v. Dir., Office of Workers Comp.*, 376 F. App'x 392, 394 (5th Cir. 2010)).

[177] *Fralick v. Plumbers and Pipefitters Nat'l Pension Fund*, No. 09-752, 2011 WL 487754, at *5 (N.D. Tex. Feb. 11, 2011).

[178] *See Jinsun, L.L.C. v. Mireskandari*, No. 20-20563, 2022 WL 35622, at *1 (5th Cir. 2022) (per curiam).

[179] The Court also notes that rather than provide only one listing per day with all tasks performed, Plaintiff generally blocked related tasks into a single entry, which makes it less difficult for the Court to assess that entry's reasonableness. *See* Rec. Doc. 264-2.

OPSO Defendants also contend that the Court should exclude hours billed for administrative tasks, but they only object to approximately 10 of the 783.25 hours billed in this case.[180] Furthermore, OPSO Defendants' objections omit that Plaintiff excluded some of these entries from his calculation through the exercise of billing judgment.[181] Accordingly, the Court will not reduce the number of hours on this basis.[182]

OPSO Defendants also argue that the number of hours should be reduced because Plaintiff's counsel billed senior partner rates for work that could have been handled by junior lawyers.[183] However, as Plaintiff argues, Most was a sole practitioner when he began representing Plaintiff. The submitted timesheets reflect Plaintiff's assertion that "[a]s [Most] hired associates and they became conversant with the case, he assigned associate-level work to them."[184] Furthermore, Most represented Plaintiff "without guarantee [he] would be paid, and the case required considerable time and effort."[185] Thus, the Court finds that Most's allocation of work does not warrant a reduction in the number of hours billed.

Finally, OPSO Defendants argue that the number of hours spent by Most preparing the instant motion should be reduced because the number of hours billed on the task is excessive and

---

[180] *See* Rec. Doc. 264-3.

[181] *Compare* Rec. Doc. 261-21 at 4 *with* 264-3 at 1 (providing one of multiple instances where OPSO Defendants ignore that Plaintiff omitted the entry objected to from his calculation).

[182] *See Bode v. Kenner City*, No. 17-5483, 2018 WL 4701541, at *5 (E.D. La. Oct. 1, 2018) (Brown, C.J.) (declining to exclude "less than 10 hours" billed on inter-office communications and administrative tasks out of approximately 200 hours over the course of a two-year litigation).

[183] Rec. Doc. 264 at 10–12.

[184] *See* Rec. Doc. 261-21; Rec. Doc. 268 at 3.

[185] *Bode*, 2018 WL 4701541, at *7 (declining to reduce the lodestar amount given the riskiness of counsel's decision to represent the plaintiff).

unreasonable.[186] Upon review, Most billed 11.2 hours for preparation of this motion.[187] In *Williams v. Res-Care, Inc.*, another judge in the Eastern District of Louisiana found that "8.0 hours to draft a motion to fix attorneys' fees is quite excessive" and noted "the lack of substantive depth in the motion" in reducing the number of hours billed preparing the motion from eight to three hours.[188] Although the Court finds 11.2 hours to prepare the instant motion excessive, the motion filed cannot be described as "lacking in substantive depth." Accordingly, the Court reduces the number of hours spent preparing the instant motion by 50%, or 5.6 hours. Thus, the Court finds that Most is entitled to bill for 405.9 hours.[189] The Court declines to further reduce the number of hours billed because it finds that Plaintiff exercised billing judgment in reducing the number of hours requested by $12,653.25 and dividing some of Most's hours by six to account for work he performed that applied to all six of his over-detention cases.[190]

**B.      *The Hourly Rates***

        The second step of the analysis is to determine a reasonable hourly rate for each attorney. "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command."[191] It is the plaintiff's burden to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the relevant

---

[186] Rec. Doc. 264 at 19–20.

[187] *See* Rec. Doc. 261-21 at 19.

[188] No. 17-10200, 2020 WL 4816141, at *4 (E.D. La. Aug. 19, 2020).

[189] The 411.5 hours billed by Most reduced by 5.6 hours equals 405.9 hours.

[190] *See* Rec. Doc. 261-1.

[191] *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (quotations and citation omitted).

community for similar services by lawyers of reasonably comparable skill, experience and reputation."[192]

As discussed above, Plaintiff's Fee Application indicates hourly billing rates of $350 for Most, who has practiced for approximately 11 years and has eight years of civil rights litigation experience, $275 for Lanser, who has practiced for approximately five years, $250 for Gabriel, who has practiced for approximately four years, $235 for Barner, who has practiced for approximately three years, $225 for Hass, who has practiced for approximately two years, and $125 for Sickle, a law student intern from Loyola University New Orleans College of Law.[193] Plaintiff asserts that the requested rates are reasonable in light of comparable cases in the Eastern District of Louisiana.[194] Plaintiff also offers declarations from other attorneys working in the district stating that the requested rates are reasonable.[195] OPSO Defendants argue that the billing rates are unreasonable because they exceed those in the General Fee Schedule, the attached declarations are self-serving and inapplicable to over-detention cases, and Plaintiff achieved only partial success on his claims.[196]

The Court may reduce the hourly rate if it determines that the requested rate is not within the range of prevailing market rates. Although Plaintiff offers declarations from other attorneys in the Eastern District of Louisiana, the Fifth Circuit makes clear that the district court "is itself an

---

[192] *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985).

[193] Rec. Doc. 261-1 at 12–14.

[194] *Id*. at 12.

[195] *Id*. at 11.

[196] Rec. Doc. 264 at 13–16.

expert on the question [of reasonable billing rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony."[197] Therefore, the declarations attached to the Fee Application are not determinative. Furthermore, many of the cases cited by Plaintiff to support the attorneys' hourly rates are not for similar services performed during civil rights litigation.[198] Accordingly, the Court conducts its own analysis regarding the attorneys' reasonable hourly rates.

Upon a review of the case law, the Court determines that the requested billing rates for the services provided are excessive. As the senior attorney representing Plaintiff, Most requests a billing rate of $350 per hour based on his 11 years of practice and eight years of civil rights litigation experience. In 2014, another judge in the Eastern District of Louisiana found that $185 was a reasonable hourly billing rate for an attorney with 11 years of practice in a civil rights case.[199] Furthermore, in 2018, the court in *Gilmore v. Audubon Nature Institute, Inc.* awarded $275 per hour to two attorneys in a civil rights case with 16 years of experience, finding that $275 "represents a reasonable blending of various other hourly rates awarded in other cases [in the Eastern District of Louisiana]."[200] Most recently, four months ago this Court determined that a rate of $350 per hour was a reasonable billing rate for an attorney with 30 years of experience in a civil rights case.[201] By comparison, Most has only been practicing for 11 years and, when he first began

---

[197] *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).

[198] *See* Rec. Doc. 261-1 at 12–13, n.80 (citing numerous cases that did not involve the denial of a plaintiff's civil rights).

[199] *Cacho v. Gusman*, No. 11-225, 2014 WL 4854737, at *6 (E.D. La. Sept. 29, 2014).

[200] *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 509–510 (E.D. La. 2018).

[201] *Richard v. St. Tammany Par. Sheriff's Dep't*, No. 17-9703, 2022 WL 4534728, at *2–*3 (E.D. La. Sept. 28, 2022).

representing Plaintiff over five years ago, he had less than three years of civil rights litigation experience. Accordingly, the Court finds $275 per hour to be a reasonable billing rate for an attorney of Most's experience.[202]

Regarding the hourly billing rates for the rest of Plaintiff's attorneys, they are entitled to lower hourly billing rates as associates with five years or less experience. "Judges in this district award attorney's fees in the amount of $200 for work performed by an associate with less than five years of experience."[203] However, associates with five to six years of experience can command hourly billing rates up to $250.[204] Accordingly, the Court finds $225 to be a reasonable hourly billing rate for Lanser, the most senior associate, and $200 to be a reasonable hourly billing rate for Gabriel, Barner, and Hass. With regard to the work performed by Sickle, this Court has found that a "$75.00 hourly rate. . . for work performed by a law clerk [is] appropriate."[205] Thus, the Court finds that $75 is a reasonable hourly billing rate for Sickle. "The Court finds that further reduction of the hourly rates is not warranted in light of the [General Fee Schedule] as counsel was not representing the State of Louisiana in this matter" and because the General Fee Schedule is not district specific.[206]

---

[202] *See Ivy v. Tran*, No. 20-1475, 2021 WL 1428877, at *2 (E.D. La. Apr. 15, 2021) (determining that Most's request that he receive attorney's fees at an hourly billing rate of $275 per hour was *prima facie* reasonable given that the requested rate was not opposed).

[203] *Girod LoanCo, LLC v. Heisler*, No. 19-13150, 2020 WL 3605947, at *8 (E.D. La. July 2, 2020) (Brown, C.J.) (citing *Batiste v. Lewis*, No. 17-4435, 2019 WL 1591951, at *3 (E.D. La. Apr. 12, 2019) (awarding $200.00 per hour to attorney with five years of experience)).

[204] *Metro Serv. Grp., Inc. v. Waste Connections Bayou, Inc.*, No. 21-1136, 2022 WL 17830466, at *8 (E.D. La. Dec. 21, 2022) (Brown, C.J.).

[205] *Bode*, 2018 WL 4701541, at *6.

[206] *Id.*

### C.       *The Lodestar Calculation*

In the final step, "the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers."[207]  In sum, the Court awards $116,641.25 for work performed by Most (109.5 hours at $275 per hour divided by 6, plus 405.9 hours at $275 per hour), $15,997.50 for work performed by Lanser (71.1 hours at $225 per hour), $5,640 for work performed by Gabriel (28.2 hours at $200 per hour), $3,900 for worked performed by Barner (19.5 hours at $200 per hour), $3,120 for work performed by Hass (15.6 hours at $200 per hour), and $9,588.75 for work performed by Sickle (127.85 hours at $75 per hour). Accordingly, the lodestar amount equals $154,887.50.

The Court also finds that a further reduction based upon Plaintiff's partial success is necessary. In the Fee Application, Plaintiff asks the Court to reduce the lodestar amount by 25% to account for his lack of success on some claims.[208] The Fifth Circuit has recognized that unsuccessful litigation efforts cannot be recognized as reasonable and must be deducted.[209] If recoverable fees can be segregated from unrecoverable fees, even if difficult, the party seeking recovery must segregate unrecoverable fees.[210] When the prevailing party incurs costs for a claim that involves a common core of facts or will be based on legal theories related to another claim, and counsel's time is devoted to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, the court need not segregate fees.[211] Federal courts authorize

---

[207] *Migis*, 135 F.3d at 1047 (citing *Louisiana Power*, 50 F.3d at 324).

[208] *See* Rec. Doc. 261-1.

[209] *See Leroy v. City of Houston*, 906 F.2d 1068, 1084 (5th Cir. 1990); *see also Jason D.W.* v. *Houston Indep. Sch. Dist.*, 158 F.3d 205, 211 (5th Cir. 1998).

[210] *United States for Varco Pruden Bldgs.* v. *Reid & Gary Strickland Co.*, 161 F.3d 915, 922 (5th Cir. 1998).

[211] *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001); *see also Varco*,

a percentage reduction of overall fees when a fee award is due on a claim that is so intertwined with another claim that the time cannot be segregated.[212]

Plaintiff argues that a 25% reduction is appropriate because OPSO Defendants and DOC Defendants defended the claims against them by blaming each other for Plaintiff's over-detention, requiring him "to do discovery and research about DOC Defendants to defeat OPSO Defendants' defenses, and vice versa."[213] Plaintiff asserts that a 25% reduction is fair because it approximates that only half of the hours spent on DOC Defendants were specific them.[214] The Court agrees that the claims against DOC Defendants and OPSO Defendants involved a common core of facts. The Court also acknowledges that counsel obtained a settlement of approximately $1,000 per day for each of Plaintiff's 27 days of over-detention to constitute substantial relief in its claims against OPSO Defendants. However, the Court does not believe that a 25% reduction is sufficient to capture work on unsuccessful claims. Upon review of the timesheets, Plaintiff's counsel charges for communications exclusively with DOC Defendants' attorneys,[215] time spent on unsuccessful discovery motions against DOC Defendants,[216] and time spent on DOC Defendants' successful

---

161 F.3d at 919–20 (holding that a party who won claim for costs of extra work but lost claims for delay damages, fraud and misrepresentation was not required to segregate fees for the successful versus unsuccessful claims because the claims arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts).

[212] *See, e.g., Navigant Consulting, Inc. v. Wilkinson,* No. 02-2186, 2006 WL 2437882, at *2 (N.D. Tex. Aug. 22, 2006).

[213] Rec. Doc. 261-1 at 17.

[214] *Id.*

[215] *See, e.g.,* Rec. Doc. 261-21 at 3 (entry regarding phone call with DOC Defendants' counsel).

[216] *See, e.g., id.* at 14–15 (entries regarding unsuccessful motion for spoliation sanctions).

appeal.[217] Accordingly, the Court determines that a reduction of 35% is appropriate.[218] Thus, the lodestar amount is reduced to $100,676.88.[219]

## D.   *Further Adjustment to the Lodestar Calculation*

After calculating the lodestar, a district court may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[220] The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account.[221] Such reconsideration is "impermissible double-counting."[222] A court should presume that the lodestar calculation is reasonable and should only modify it in exceptional circumstances.[223] Here, the Court finds that the circumstances of this case do not warrant an adjustment to the lodestar. The relevant factors that would warrant an increase or decrease are already accounted for in the Court's determination of the reasonable number of hours and hourly rate. The Court has already factored the time and labor required to represent Plaintiff, the desirability of the case, and Plaintiff's limited success in

---

[217] *See, e.g., id.* at 17–18 (entry regarding replying to DOC Defendants' appeal).

[218] *See Navigant Consulting*, 2006 WL 2437882, at *2 (reducing fees by 40% where successful claims were inextricably intertwined with unsuccessful claims).

[219] 65% of $154,887.50 is $100,676.88.

[220] *Black,* 732 F.3d at 502 (5th Cir. 2013) (citing *Johnson,* 488 F.2d at 717–19). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

[221] *Saizan,* 448 F.3d at 800 (citation omitted).

[222] *Id.*

[223] *Watkins*, 7 F.3d 453, 457 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

determining the lodestar. The Court has also factored the experience of the attorneys in reducing the hourly billing rates included in the lodestar calculation. Adjusting the lodestar based on these same factors "would be impermissible double counting."[224] The parties' other arguments for adjusting the lodestar calculation are unavailing because they do not provide evidence of exceptional circumstances that would warrant a changing of the lodestar amount based on any of the other *Johnson* factors.

However, OPSO Defendants also argue that the original request should be reduced because it was "almost 9 times what his client received in the instant case."[225] As Plaintiff correctly asserts, the Supreme Court has "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers" in part because "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."[226] This reasoning is applicable here. Plaintiff's litigation has contributed to OPSO amending its policies and decreasing the number of days inmates are over-detained. Accordingly, the Court rejects the argument that the attorney's fee award should be reduce because they are disproportionate to the relief obtained.

Finally, OPSO Defendants argue that the fee award should be reduced because they agreed to settle the claim in good faith for $35,000 but Plaintiff's counsel convinced Plaintiff to accept a $25,000 settlement so that counsel could litigate the quantum of fees in this Court.[227] However,

---

[224] *Saizan,* 448 F.3d at 800 (citation omitted).

[225] Rec. Doc. 264 at 2.

[226] *City of Riverside v. Rivera*, 477 US 561, 574 (1986).

[227] Rec. Doc. 264 at 20.

Plaintiff's counsel represents that the higher settlement amount was conditioned upon the parties' later agreeing to attorney's fees through negotiation.[228] The Court agrees with Plaintiff's argument that it was reasonable, and perhaps advisable, for him to accept a definite and immediate $25,000 offer over a *conditional* higher settlement amount that would be received at a later date, if at all. Thus, the Court declines to reduce the fee award for this reason. Accordingly, the Court awards Plaintiff $100,676.88 in attorney's fees.

### E.     Costs and Expenses

In addition to attorney's fees, Plaintiff requests $3,153.96 in costs.[229] OPSO Defendants argue that these costs should be reduced because they include costs for counsel's convenience and costs that are generally considered overhead.[230] "In view of the length and complexity of the case," $3,153.96 is a modest request.[231] Furthermore, a review of the costs charged indicate that the entries are not unreasonable.[232] Accordingly, the Court declines to reduce the costs requested.

### V. Conclusion

For the reasons discussed above, the Court awards Plaintiff attorney's fees in the amount of $100,676.88 and expenses in the amount of $3,153.96 for a total award of $103,830.84 Accordingly,

---

[228] Rec. Doc. 268 at 7.

[229] *See* Rec. Doc. 261 at 1–2. Plaintiff reduces attorney's fees *and* costs by 25%. *Id.* at 2. However, the Court has determined that a 35% reduction is appropriate. Therefore, the Court calculates the costs requested by adding the "case specific costs" ($4,577.89) to 1/6 of the costs applicable to all six of Most's over-detention cases ($274.36) and reducing this amount by 35%.

[230] Rec. Doc. 264 at 19.

[231] *Fucich Contracting, Inc., v. Shread-Kuyrkendall & Assocs., Inc.*, No. 18-2885, 2023 WL 156874, at *5 (E.D. La. Jan. 11, 2023) (reducing a $150,852.17 request for costs by only five percent given the nature of the case).

[232] *See* Rec. Doc. 261-19 at 4–5.

**IT IS HEREBY ORDERED** that Plaintiff Rodney Grant's Motion for Attorney's Fees[233] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Rodney Grant is hereby awarded $103,830.84 in attorney's fees and costs recoverable against OPSO Defendants.

**NEW ORLEANS, LOUISIANA**, this <u>19th</u> day of January, 2023.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[233] Rec. Doc. 261.

39